```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
UNITED STATES OF AMERICA,                                              :
                                                                       :
                              Plaintiff,                               :
                                                                       :         23-CR-622 (JMF)
                 -v-                                                   :
                                                                       :         OPINION AND ORDER
MICHAEL CASTILLERO et al.,                                             :
                                                                       :
                              Defendants.                              :
                                                                       :
-----------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

Defendants Michael Castillero, Francine Lanaia, and Brian Martinsen are charged with securities fraud, wire fraud, investment adviser fraud, and conspiracy to commit those offenses, in connection with an alleged scheme between 2017 and April 2022 to defraud investors in a group of private funds known as the "StraightPath Funds." ECF No. 1 ("Indictment"), at ¶¶ 1, 10-21. Castillero and Martinsen are additionally charged with obstruction of justice and conspiracy to obstruct justice. *Id.* ¶¶ 22-27. Defendants now move, pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, to dismiss the Indictment (or at least the non-obstruction charges). ECF Nos. 40, 41, 42 ("Martinsen MTD Mem."), 45. They also move for a bill of particulars and for other disclosures from the Government. ECF Nos. 37, 38 ("Lanaia Mem."), 39 ("Allee Decl."), 40, 43, 44 ("Martinsen Mem."). Upon review of the parties' motion papers, the motions are DENIED substantially for the reasons stated in the Government's memorandum of law, *see* ECF No. 48 ("Gov't Opp'n"), and set forth below.

## BACKGROUND

The Indictment alleges that, from 2017 to April 2022, Defendants engaged in a scheme to defraud investors through their control of nine related private funds known as the "StraightPath

Funds." Indictment ¶¶ 1, 4, 7.  More specifically, it alleges that they purported to offer investors a unique opportunity to invest early in private companies that were expected to go public in the future, or "pre-IPO" companies, which are far less accessible to individual, non-professional investors.  *Id.* ¶¶ 1, 3, 5.  Defendants allegedly did so through aggressive marketing tactics, including "boiler room"-style call centers where their referral agents cold-called potential investors and delivered aggressive sales pitches.  *Id.* ¶¶ 1, 5.

The Indictment further alleges that Defendants misrepresented to investors that they and their agents would not make any money unless and until the investors profited from their investments.  *Id.* ¶¶ 5-6.  In reality, however, the referral agents are alleged to have earned a commission based on the amount invested by each investor.  *Id.* ¶ 5.  Defendants also allegedly acquired shares in pre-IPO companies, then sold them to investors at arbitrarily inflated prices without disclosing the markups.  *Id.* ¶¶ 2, 6.  The Indictment asserts that Defendants profited at the expense of their investors in violation of their fiduciary duties as investment advisers.  *Id.*

Defendants are also alleged to have misled investors about the structure and management of the StraightPath Funds.  *Id.* ¶ 6.  For example, Defendants allegedly overstated the number of pre-IPO shares that backed the interests sold to investors and falsely represented to investors that their investments were tied to specific shares of specific pre-IPO companies when, in fact, the investments were commingled across different series and funds.  *Id.*  The Indictment alleges that, although Defendants themselves managed and advised the StraightPath Funds, they falsely represented to investors that a particular individual, "Fund Manager-1," was performing these functions.  *Id.*  The Indictment asserts that Defendants used an email address in Fund-Manager-1's name to correspond with investors and listed Fund Manager-1 as the manager in offering memoranda, communications, and other documents.  *Id.* ¶¶ 6, 8.  Defendants allegedly did so in part to conceal the involvement of Castillero and Lanaia, both of whom were suspended and later

permanently barred from working in the securities industry.  *Id.*  The Indictment also alleges that Castillero and Lanaia remained involved in the scheme even when barred.  *Id.* ¶ 8.

The Indictment charges Defendants with soliciting approximately $386 million from at least 2,000 investors over the course of the alleged scheme.  *Id.* ¶ 7.  It alleges that about 30% of these funds were diverted to pay Defendants and their associates, with Defendants themselves receiving over $74 million in investors' funds.  *Id.*  Defendants allegedly evaded regulatory scrutiny by providing false information during regulatory examinations, giving misleading sworn testimony, and destroying records subpoenaed by the U.S. Securities and Exchange Commission ("SEC").  *Id.* ¶ 9.  The Indictment also asserts that Defendants discussed making Fund Manager-1 a scapegoat if the SEC identified any problems during its regulatory investigation.  *Id.*

On May 13, 2022, the SEC filed a civil enforcement against Defendants and others involved in the scheme.  *See SEC v. Castillero*, No. 22-CV-3897 (LAK), ECF No. 1.  The Honorable Lewis A. Kaplan entered a preliminary injunction and appointed a Receiver for the StraightPath Funds.  22-CV-3897, ECF No. 55.  On October 18, 2022, the U.S. Attorney's Office ("USAO") intervened and successfully sought a stay of the civil action pending its criminal investigation.  22-CV-3897, ECF No. 102.  Over thirteen months later, on November 28, 2023, a grand jury returned the Indictment in this case.  *See* Indictment.

## MOTIONS TO DISMISS THE INDICTMENT

First, Defendants move to dismiss the Indictment — or, more precisely, the non-obstruction counts of the Indictment.  *See* Martinsen MTD Mem. 3-9.  "[A] defendant faces a high standard in seeking to dismiss an indictment."  *United States v. Chastain*, No. 22-CR-305 (JMF), 2022 WL 13833637, at *2 (S.D.N.Y. Oct. 21, 2022).  That is because "[a]n indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future

3

prosecution based on the same set of events." *United States v. Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008). Indeed, "[a]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Wedd*, 993 F.3d 104, 120 (2d Cir. 2021).

In light of this standard, Defendants' motion to dismiss is easily rejected. Defendants' motion rests primarily on their contention that Count Four, which charges Defendants with investment adviser fraud under the Investment Advisers Act, is "legally defective." Martinsen MTD Mem. 3. All the other counts should be dismissed, they maintain, because the "same legal defect" in Count Four "is baked into the entire Indictment." *Id.* at 4. Count Four, however, tracks the language of Section 206 of the Investment Advisers Act. *Compare* Indictment ¶ 21, *with* 15 U.S.C. §§ 80b-6(1), (2), (4). That is reason enough to reject Defendants' request to dismiss the charge. *See e.g., United States v. Xu*, No. 23-CR-133-5 (JMF), 2024 WL 1332548, at *2 (S.D.N.Y. Mar. 28, 2024); *United States v. Chastain*, No. 22-CR-305 (JMF), 2022 WL 13833637, at *2 (S.D.N.Y. Oct. 21, 2022).

In any event, Defendants' attack on Count Four is meritless for myriad other reasons. Defendants take issue with the Indictment's allegations that they violated their "fiduciary duties" because, they contend, the Indictment fails to "specify, explain, or provide the legal support for the existence of, the unidentified 'fiduciary duties.'" Martinsen MTD Mem. 3. But the Investment Advisers Act itself imposes federal fiduciary duties on investment advisers. *See e.g.*, *SEC v. Rashid*, 96 F.4th 233, 240 (2d Cir. 2024) ("[T]he Investment Advisers Act established federal fiduciary standards to govern the conduct of investment advisers[.]" (internal quotation marks omitted)); *SEC v. DiBella*, 587 F.3d 553, 568 (2d Cir. 2009) ("The 'legislative history [of the Advisers Act] leaves no doubt that Congress intended to impose enforceable fiduciary obligations' on investment advisors." (quoting *Transamerica Mortgage Advisers, Inc. (TAMA) v.*

4

*Lewis*, 444 U.S. 11, 17 (1979)). Therefore, there is no merit to Defendants' contention that the "existence (or not) and the violations (or not) of fiduciary duties has no bearing on" the charges. Martinsen MTD Mem. 4. Moreover, the relevant fiduciary duties are far from "unidentified" in the Indictment. *Id.* at 3. To the contrary, the Indictment specifies ways in which Defendants are alleged to have "defrauded investors in the StraightPath Funds, for which they acted as fiduciaries," including by "charging investors excessive and undisclosed markups on share prices of pre-IPO companies." Indictment ¶¶ 6; *see also id.* ¶¶ 2, 6 (alleging various ways that Defendants violated their fiduciary duties).

Defendants' other principal argument — that references to "fiduciary duties" are "highly prejudicial" and "obscure the differences" between civil and criminal liability under the Investment Advisers Act — is similarly meritless (and, indeed, gives up the game on their contention that the Indictment fails to identify the fiduciary duties at issue). Martinsen MTD Mem. 4. There is only one difference between civil and criminal liability under the Investment Advisers Act: To be criminally liable, an individual must "willfully violate[]" a provision of the Act. 15 U.S.C. § 80b-17; *United States v. Tagliaferri*, 820 F.3d 568, 573 (2d Cir. 2016). To the extent that Defendants acknowledge that the meaning of "fiduciary duties" under the Investment Advisers Act is clear for purposes of civil liability, therefore, it is *a fortiori* equally clear for purposes of criminal liability. And the Indictment indisputably alleges that Defendants acted "willfully" and charges them under the provision that describes criminal penalties under the Act. Indictment ¶ 21; *see* 15 U.S.C. § 80b-17. It follows that the Indictment's references to "fiduciary duties" therefore do not call for dismissal.

Last, Defendants also take issue with what they describe as "nefarious language" used in all of the counts, namely the phrases "boiler-room style call centers" and "aggressive sales pitches using notes and pitch scripts." Martinsen Mem. 8. Such phrases, they argue, "make

Defendants seem crooked" by including "undefined, gratuitous, and highly prejudicial" words. *Id.* But there is nothing nefarious, let alone unfairly prejudicial, about these phrases. They merely provide factual context to describe the fraudulent scheme with which Defendants are charged. In any event, even if the Court did agree that these phrases are unduly prejudicial, that would, at most, warrant striking the phrases, not dismissing the counts, in the Indictment. Accordingly, the Court rejects any argument that the other counts are defective.

In the final analysis, Defendants' arguments may bear on the proper instructions to the jury at trial. But they do not justify dismissal of the Indictment, in whole or in part. Accordingly, Defendants' motions to dismiss must be and are DENIED.

## MOTIONS FOR A BILL OF PARTICULARS

Next, Defendants move for a bill of particulars. Specifically, they seek an order requiring the Government to (1) produce the identities of all alleged victims; (2) identify all material misrepresentations or omissions; and (3) provide particulars surrounding the alleged breach of fiduciary duties. *See* Lanaia Mem. 11-18; Martinsen Mem. 6-13.

Rule 7(f) of the Federal Rules of Criminal Procedure gives a district court discretion to order a bill of particulars "where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990), *abrogated on other grounds by United States v. Marcus*, 628 F.3d 36, 41 (2d Cir. 2010). But a bill of particulars should not be ordered to force the Government to "particularize all of its evidence," *United States v. Cephas*, 937 F.2d 816, 823 (2d Cir. 1991), nor when sufficient information has already been produced by the Government, *see United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004). "If the information the defendant seeks 'is provided in the indictment or in some acceptable alternate form,' such as discovery, no bill of particulars is required." *United States v. Mora*, No. 19-CR-514 (JPO), 2020 WL 7496281, at *1 (S.D.N.Y.

6

Dec. 21, 2020) (quoting *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987)); *see also United States v. Gonzalez*, No. 04-CR-078 (DAB), 2004 WL 2297341, at *2 (S.D.N.Y. Oct. 13, 2004) ("So long as an indictment and discovery sufficiently enable a defendant to avoid surprise and prepare for trial, a bill of particulars is not warranted."). Ultimately, "[w]hether to grant a bill of particulars is generally a decision entrusted to the sound discretion of the district court." *United States v. Ramirez*, 609 F.3d 495, 502 (2d Cir. 2010).

Exercising that "sound discretion" here, the Court rejects Defendants' requests for a bill of particulars. The Indictment and the Government's disclosures provide Defendants with more than sufficient notice of the charges "to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy." *United States v. Xu*, No. 23-CR-133-5 (JMF), 2024 WL 1332548, at *2 (S.D.N.Y. Mar. 28, 2024). As discussed above, the Indictment identifies the nature of the fraudulent scheme, alleging that Defendants defrauded their victims by charging arbitrary markups, failing to disclose fees, misrepresenting the nature of the investments, and hiding their control of the funds. Indictment ¶¶ 5-8. And the Government has also produced over 850,000 documents, including "bank records showing financial transactions from the victims of fraud" and "an eleven-page letter containing excerpts" of notes from proffers and interviews, such as those conducted by the Government and the SEC. Gov't Opp'n 12. That is enough to enable Defendants to avoid surprise and prepare for trial.

The only request that merits further discussion is Defendants' request for the identities of the alleged victims. Relying on *United States v. Tournant*, No. 22-CR-276 (LTS), 2023 WL 8649893 (S.D.N.Y. Dec. 13, 2023), Defendants argue that the few specific allegations of fraud in the Indictment are insufficient to put them on notice of which of the more than 2,000 investors in StraightPath were victimized. *See* Lanaia Mem. 12-14; Martinsen Mem. 6-9. The district court in *Tournant* ordered a particularized list of victims because the indictment at issue charged a

7

scheme involving "more than 100 institutional and individual investors, along with an undisclosed number of prospective investors" and contained "hundreds of examples of alleged misrepresentations." *Tournant*, 2023 WL 8649893, at *4. Based on the "limited set of examples" of misrepresentations and the "more than seven million pages of discovery," the district court concluded that identifying the scope of the alleged scheme would be a "potentially impossible undertaking" for the defendant. *Id.* at *3-4.

Defendants here are not faced with the same problem. For starters, there is no allegation that they "made different misrepresentations to different investors who were invested in different Funds at different times." *Id.* at *3 (quotation marks omitted). Instead, the Government represents that the alleged scheme was common to most, if not all, of the over 2,000 investors in the StraightPath Funds, *see* Gov't Opp'n 11-12, and Defendants do not argue otherwise, *see* ECF No. 50 ("Lanaia Reply"), at 3-5. In addition, Defendants do not argue that the discovery produced in this case is too voluminous to review ahead of trial. Accordingly, the Government need not provide a particularized list of alleged victims. *See e.g., United States v. Sterritt*, 678 F. Supp. 3d 317, 332 (E.D.N.Y. 2023) ("[T]he government is not required to share the names of each victim-investor, either to apprise [the defendant] of the charges against him or to prove the elements of those charges . . . . [The defendant's] loosely interpreted claim that disclosing the identities of the . . . victim-investors is necessary for [the defendant] to be able to defend himself against the charge of securities fraud is unavailing."); *United States v. Wang*, No. 23-CR-118-3 (AT), 2024 WL 1251105, at *3-4 (S.D.N.Y. Mar. 22, 2024) (denying the defendant's request for a particularized list of victims where the defendant "has a sufficient description of the frauds of which she is accused, as well as the purported victims of the schemes — who are, in the Government's account, nearly all of the investors in the . . . schemes").

For these reasons, Defendants' motions for a bill of particulars are DENIED.

**MOTIONS TO COMPEL DISCLOSURES**

Finally, Defendants move to compel the Government to obtain and produce discovery in the possession of the SEC and the Receiver. *See* Lanaia Mem. 19-23; Martinsen Mem. 19-21. They also seek "early production of all interviews, notes, reports, agreements of memorandum concerning the Government's investigation of Fund Manager-1." Lanaia Mem. 22; Martinsen Mem. 22.

Defendants' entitlement to materials in the possession of the SEC and the Receiver turns on whether the SEC and the Receiver qualify as part of the "prosecution team." *See United States v. Avenatti*, No. 19-CR-374 (JMF), 2022 WL 457315, at *9 (S.D.N.Y. Feb. 15, 2022); *see also United States v. Barcelo*, 628 Fed. App'x 36, 38 (2d Cir. 2015) (summary order) (citing cases). In determining whether another entity acted as part of the prosecution team, courts in this Circuit generally consider five primary factors: "whether the other [entity] (1) participated in the prosecution's witness interviews, (2) was involved in presenting the case to the grand jury, (3) reviewed documents gathered by or shared documents with the prosecution, (4) played a role in the development of prosecutorial strategy, or (5) accompanied the prosecution to court proceedings." *Avenatti*, 2022 WL 457315, at *10 (collecting cases).

Measured against those factors, Defendants' arguments fall short. Neither the USAO nor the SEC played a role in the other's charging decision or prosecutorial strategy. Gov't Opp'n 23-24. The SEC was not involved in the USAO's presentation of this case to the grand jury. Nor has it attended any court proceedings in this case. *See United States v. Velissaris*, No. 22-CR-105 (DLC), 2022 WL 2392360, at *2 (S.D.N.Y. July 3, 2022); Gov't Opp'n 4. At most, the USAO and the SEC conducted some joint interviews. *See* Gov't Opp'n 23. But "jointly conducted interviews, standing alone, do not support a conclusion that the SEC and USAO have conducted a joint investigation, particularly where the defendant's request is not limited to

9

information about those interviews." *Velissaris*, 2022 WL 2392360, at *2 (internal citation omitted); *see also, e.g.*, *United States v. Middendorf*, No. 18-CR-36 (JPO), 2018 WL 3956494, at *5 (S.D.N.Y. Aug. 17, 2018) (concluding that "the Government and SEC did not conduct a 'joint investigation'" where, "beyond conducting joint interviews, the Government and SEC have not coordinated their separate fact-finding efforts"); *United States v. Collins*, 409 F. Supp. 3d 228, 241 (S.D.N.Y. 2019) (finding no joint investigation where "the SEC and the Government both participated in only 16 of 60 interviews of 37 distinct witnesses").

The case for treating the Receiver as part of the prosecution team is even weaker. As an independent court-appointed party in the SEC's civil action, the Receiver is even further removed from this criminal prosecution. The Receiver did not even conduct joint interviews with the USAO. It did provide documents to the USAO, but the mere fact that the USAO requested and received documents from the Receiver as part of its criminal investigation does not transform the Receiver into a member of its prosecution team. *Cf. United States v. Alexandre*, No. 22-CR-326 (JPC), 2023 WL 416405, at *6 (S.D.N.Y. Jan. 26, 2023) ("[A]ccess grants between governmental agencies, which are hardly uncommon, do not indicate by themselves a joint investigation, particularly given the Government's representation that it did not direct the . . . the Receiver to take any investigative actions." (internal quotation marks omitted)).

Defendants' final request — for "early production of all interviews, notes, reports, agreements of memorandum concerning the Government's investigation of Fund Manager-1," Lanaia Mem. 22; Martinsen Mem. 22 — is easily rejected as well. To the extent that such materials are subject to disclosure under *Giglio v. United States*, 405 U.S. 150 (1972), the Government's obligation is to turn them over with sufficient time to permit Defendants to make effective use of them at trial. With seven months remaining before trial in this case, the Government's acknowledgement of that obligation, *see* Gov't Opp'n 22, is sufficient to deny

Defendants' motion, *see, e.g.*, *United States v. Terrell*, No. S1 22-CR-343 (JMF), 2023 WL 7220736, at *2 (S.D.N.Y. Nov. 2, 2023).  To the extent that such materials are subject to disclosure only under the Jencks Act, 18 U.S.C. § 3500, the Court lacks authority to order disclosure, *see Terrell*, 2023 WL 7220736, at *2.  In any event, the Government's representation that it will produce 3500 materials before trial is "more than adequate under the law."  *Id.*

Accordingly, Defendants' motions to compel disclosures must be and are DENIED.  That said, the parties should confer and propose a schedule for all appropriate pretrial disclosures.

## CONCLUSION

For the reasons stated above, Defendants' motions are DENIED in their entirety.  The Clerk of Court is directed to terminate ECF Nos. 38, 40, 42, 44.

SO ORDERED.

Dated: November 18, 2024
       New York, New York

_____
JESSE M. FURMAN
United States District Judge