UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                 :

UNITED STATES,                              :
                                                 :

        -v-                         :              23-CR-622 (JMF)
                                                 :

MICHAEL CASTILLERO,                 :              <u>ORDER</u>
FRANCINE LANAIA, and               :
BRIAN MARTINSEN,                  :
                                               :

                       Defendants.     :
                                             :
-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Attached to this Order is the Court's draft jury instructions that were discussed at the

charge conference earlier today.

       SO ORDERED.

Dated:  October 31, 2025
       New York, New York                                  JESSE M. FURMAN
                                                  United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                            :

UNITED STATES OF AMERICA,              :

                                       :

     -v-                                :

                                       :

MICHAEL CASTILLERO, a/k/a "Michael Alejandro,"  :       23-CR-622 (JMF)
FRANCINE LANAIA,                   :
and BRIAN MARTINSEN,             :

                                       :

                      Defendants.     :

                                       :

------------------------------------------------------------------X

## JURY CHARGE (DRAFT)

October 31, 2025

# Table of Contents

I. GENERAL INTRODUCTORY CHARGES ................................................................. 1

Role of the Court and the Jury ............................................................................... 2

The Parties ............................................................................................................. 2

Conduct of Counsel ............................................................................................... 2

Presumption of Innocence and Burden of Proof ................................................... 3

Proof Beyond a Reasonable Doubt ........................................................................ 4

Lawful Conduct Does Not Negate Unlawful Conduct .......................................... 4

Direct and Circumstantial Evidence ...................................................................... 5

What Is and What Is Not Evidence ........................................................................ 6

Stipulations ........................................................................................................... 8

Charts and Summaries ........................................................................................... 8

Limited Purpose Evidence ..................................................................................... 8

Recordings and Transcripts ................................................................................... 8

Redactions ............................................................................................................. 9

Credibility of Witnesses ........................................................................................ 9

Non-Prosecution Agreements and Accomplice/Cooperator Testimony ................ 10

Immunized Witnesses ............................................................................................ 13

Law Enforcement and Government Witnesses ....................................................... 14

Expert Witnesses ................................................................................................... 14

Uncalled Witnesses ............................................................................................... 15

Number of Witnesses and Uncontradicted Testimony .......................................... 15

Particular Investigative Techniques ....................................................................... 16

All Available Evidence Need Not Be Introduced .................................................. 16

Preparation of Witnesses ....................................................................................... 16

Persons Not on Trial .............................................................................................. 17

A Defendant's Right Not to Testify ....................................................................... 17

II. SUBSTANTIVE CHARGES ................................................................................ 18

The Indictment ........................................................................................................... 18

Conspiracy Charges and Substantive Charges ......................................................... 19

Count Two — Securities Fraud: Elements ............................................................... 21

    Count Two — First Element: Fraudulent Act ..................................................... 22

    Count Two — Second Element: Intent to Defraud .............................................. 37

    Count Two — Third Element: Instrumentality of Interstate Commerce .............. 40

Count Three — Wire Fraud: Elements ..................................................................... 41

    Count Three — First Element: Existence of Scheme or Artifice ......................... 42

    Count Three — Second Element: Knowledge and Intent to Defraud ................... 44

    Count Three — Third Element: Use of Interstate Wires ...................................... 45

Count Four — Investment Adviser Fraud: Elements of the Offense ......................... 47

    Count Four — First Element: Investment Adviser ............................................... 48

    Count Four — Second Element: Fraudulent Act .................................................. 49

    Count Four — Third Element: Knowledge, Intent, and Willfulness ..................... 52

    Count Four — Fourth Element: Interstate Nexus ................................................ 53

Count Six — Obstruction of Justice: Elements ......................................................... 53

    Count Six — First Element: Alteration or Destruction of a Record or Document ... 54

    Count Six — Second Element: Intent to Obstruct ................................................ 54

Aiding and Abetting Liability .................................................................................... 55

Counts One and Five — The Conspiracy Charges: Elements .................................... 58

    Counts One and Five — First Element: Existence of the Conspiracy ................... 59

    Counts One and Five — Second Element: Membership in the Conspiracy ........... 61

    Counts One and Five — Third Element: Overt Act .............................................. 64

    Multiple Conspiracies .......................................................................................... 65

Venue  67

Variance of Dates and Amounts ................................................................................. 68

III. CONCLUDING INSTRUCTIONS ................................................................. 68

Selection of the Foreperson ....................................................................................... 68

Right to See Exhibits and Hear Testimony .............................................................. 69

Juror Note-Taking ...................................................................................................... 69

Bias, Prejudice, and Sympathy ................................................................................. 70

Duty to Deliberate ...................................................................................................... 71

Return of the Verdict .................................................................................................. 72

Closing Comments ...................................................................................................... 73

# I. GENERAL INTRODUCTORY CHARGES

Members of the jury, you have now heard all of the evidence and the lawyers' closing arguments. It is my duty at this point to instruct you as to the law. I am going to read my instructions to you. It is not my favorite way to communicate — and not the most scintillating thing to listen to — but there is a need for precision, and it is important that I get the words just right, and so that is why I will be reading.

I have given you a copy of my instructions to follow along because they cover many points. Please limit yourself to following along; that is, do *not* read ahead in the instructions. If you find it easier to listen and understand while you are following along with me, please do so. If you would prefer, you can just listen and not follow along. In the unlikely event that I deviate from the written instructions, it is my oral instructions that govern and that you must follow. But you may take your copy of the instructions with you into the jury room so you can consult it if you want to re-read any portion of the charge to facilitate your deliberations.

For now, listen carefully and try to concentrate on the substance of what I'm saying. You should not single out any instruction as alone stating the law. Instead, you should consider my instructions as a whole when you retire to deliberate in the jury room.

My instructions to you will be in three parts.

*First*, I will give you general instructions — for example, about your role as the jury, what you can and cannot consider in your deliberations, and the burden of proof.

*Second*, I will describe the law that you must apply to the facts as you find them to be established by the evidence.

*Finally*, I will give you some instructions for your deliberations.

1

1       Role of the Court and the Jury

2              You, the members of the jury, are the sole and exclusive judges of the facts.  You must weigh

3       and consider the evidence without regard to sympathy, prejudice, or passion for or against any party.  It

4       is your duty to accept my instructions as to the law and to apply them to the facts as you determine them.

5       If any party has stated a legal principle differently from any that I state to you in my instructions, it is

6       my instructions that you must follow.

7

8       The Parties

9              In reaching your verdict, you must remember that all parties stand equal before a jury in the

10      courts of the United States.  The fact that the Government is a party and the prosecution is brought in the

11      name of the United States does not entitle the Government or its witnesses to any greater consideration

12      than that accorded to any other party.  By the same token, you must give it no less deference.  The

13      Government and the defendants, Michael Castillero, Francine Lanaia, and Brian Martinsen, stand on

14      equal footing before you.

15             It would be improper for you to consider, in reaching your decision as to whether the

16      Government sustained its burden of proof, any personal feelings you may have about the defendants'

17      race, national origin, religious beliefs, sex, or age.  All persons are entitled to the same presumption of

18      innocence and the Government has the same burden of proof with respect to all persons.

19

20      Conduct of Counsel

21             The personalities and the conduct of counsel are not in any way at issue.  If you formed opinions

22      of any kind about any of the lawyers in the case, favorable or unfavorable, whether you approved or

23      disapproved of their behavior, those opinions should not enter into your deliberations.

2

1        In addition, remember that it is the duty of a lawyer to object when the other side offers

2    testimony or other evidence that the lawyer believes is not properly admissible.  Therefore, you should

3    draw no inference from the fact that there was an objection to any testimony or evidence.  Nor should

4    you draw any inference related to the weight or importance of any testimony or evidence from the fact

5    that I sustained or overruled an objection.  Simply because I have permitted certain testimony or

6    evidence to be introduced does not mean that I have decided on its importance or significance.  That is

7    for you to decide.

8

9        <u>Presumption of Innocence and Burden of Proof</u>

10        All three defendants have pleaded not guilty to the charges against them.  As a result of that plea

11    of not guilty, the burden is on the Government to prove each defendant's guilt beyond a reasonable

12    doubt.  This burden never shifts to a defendant for the simple reason that the law never imposes upon a

13    defendant in a criminal case the burden or duty of testifying, or calling any witness, or locating or

14    producing any evidence.

15        Furthermore, the law presumes the defendants to be innocent of the charges against them.  The

16    presumption of innocence was in their favor when the trial began, continued in their favor throughout

17    the entire trial, remains with them even as I speak to you now, and persists in their favor as to each

18    charged crime during the course of your deliberations in the jury room, unless and until you determine

19    that the Government proves beyond a reasonable doubt that the defendant you are considering

20    committed that crime.

21

1    <u>Proof Beyond a Reasonable Doubt</u>

2        The question that naturally arises is, "What is a reasonable doubt?"  A reasonable doubt is a

3    doubt based on your reason, your judgment, your experience, and your common sense.  It is a doubt that

4    a reasonable person has after carefully weighing all the evidence.  It is a doubt founded in reason and

5    arising out of the evidence in the case — or the lack of evidence.  A reasonable doubt is not caprice or

6    whim.  It is not speculation or suspicion.

7        Proof beyond a *reasonable* doubt does not mean proof beyond all *possible* doubt.  It is

8    practically impossible for a person to be absolutely and completely convinced of any disputed fact that,

9    by its very nature, cannot be proved with mathematical certainty.  The Government's burden is to

10   establish guilt beyond a *reasonable* doubt, not all *possible* doubt.

11       If, after a fair and impartial consideration of all the evidence, you can candidly and honestly say

12   that you are not satisfied with the guilt of the defendant you are considering, that you do not have an

13   abiding belief of that defendant's guilt — in other words, if you have such a doubt as would reasonably

14   cause a prudent person to hesitate in acting in matters of importance in his or her own affairs — then

15   you have a reasonable doubt, and in that circumstance it is your duty to acquit.

16       On the other hand, if, after a fair and impartial consideration of all the evidence, you can

17   candidly and honestly say that you do have an abiding belief of a defendant's guilt, such a belief as a

18   prudent person would be willing to act upon in important matters in the personal affairs of his or her

19   own life, then you have no reasonable doubt, and in that circumstance it is your duty to convict.

20

21   <u>Lawful Conduct Does Not Negate Unlawful Conduct</u>

22       The fact that a defendant may have acted lawfully on one occasion is not relevant to whether he

23   or she acted unlawfully on another occasion.

4

1    **Adapted from *Levine v. S. E. C.*, 436 F.2d 88, 91–92 (2d Cir. 1971) ("Commission found 'the**

2    **testimony of some customers that other misrepresentations had not been made to them would not**

3    **negate the testimony of the customers who testified that price predictions had been made to**

4    **them.'"); *United States v. Chambers*, 800 F. App'x 43, 46 (2d Cir. 2020) ("A defendant may not**

5    **seek to establish his innocence ... through proof of the absence of criminal acts on specific**

6    **occasions." (quoting *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990)); *id.* ("The reasoning**

7    **behind this rule is straightforward: A single occurrence of lawful conduct is simply irrelevant to**

8    **other occurrences of unlawful conduct."); *United States v. Reese*, 666 F.3d 1007, 1020 (7th Cir.**

9    **2012) ("Evidence that a defendant acted lawfully on other occasions is generally inadmissible to**

10   **prove he acted lawfully on the occasion alleged in the indictment."); *United States v. Golfo*, No. 19-**

11   **CV-00095(KAM), 2020 WL 2513445, at *2 (E.D.N.Y. May 15, 2020) ("The Second Circuit has long**

12   **recognized that '[a] defendant may not seek to establish his innocence ... through proof of the**

13   **absence of criminal acts on specific occasions.'")**

14

15   Direct and Circumstantial Evidence

16       There are two types of evidence that you may properly use in deciding whether the defendants

17   are guilty or not guilty of the crimes with which they are charged.

18       One type of evidence is called direct evidence.  Direct evidence of a fact in issue is presented

19   when a witness testifies to that fact based on what he or she personally saw, heard, or otherwise

20   observed through the five senses.  The second type of evidence is circumstantial evidence.

21   Circumstantial evidence is evidence that tends to prove a disputed fact indirectly by proof of other facts.

22       There is a simple example of circumstantial evidence that is often used in this courthouse.

23   Assume that when you came into the courthouse this morning, the sun was shining and it was a nice day

1   outside.  Also assume that the courtroom shades were drawn and you could not look outside.  Assume

2   further that as you were sitting here, someone walked in with an umbrella that was dripping wet, and

3   then, a few moments later, somebody else walked in with a raincoat that was also dripping wet.

4        Now, because you could not look outside the courtroom and you could not see whether it was

5   raining, you would have no direct evidence of that fact.  But, on the combination of facts that I have

6   asked you to assume, it would be reasonable and logical for you to conclude that it was raining.

7        That is all there is to circumstantial evidence.  You infer on the basis of your reason, experience,

8   and common sense from one established fact the existence or the nonexistence of some other fact.

9        The matter of drawing inferences from facts in evidence is not a matter of guesswork or

10  speculation.  An inference is a logical, factual conclusion that you might reasonably draw from other

11  facts that have been proved.  It is for you, and you alone, to decide what inferences you will draw.

12       Many material facts, such as a person's state of mind, are not easily proved by direct evidence.

13  Usually such facts are established by circumstantial evidence and the reasonable inferences you draw.

14  Circumstantial evidence may be given as much weight as direct evidence.  The law makes no distinction

15  between direct and circumstantial evidence.  The law simply requires that before convicting a defendant,

16  you must be satisfied of the defendant's guilt beyond a reasonable doubt, based on all of the evidence in

17  the case.

18

19  <u>What Is and What Is Not Evidence</u>

20       What, then, is the evidence in the case?

21       The evidence in this case is (1) the sworn testimony of the witnesses, (2) the exhibits received

22  into evidence, and (3) any stipulations made by the parties.  Anything else is not evidence.

1    For example, the questions posed to a witness are not evidence; it is the witnesses' answers that

2    are evidence, not the questions.  In addition, materials brought forth only to refresh a witness's

3    recollection are not evidence.  Moreover, testimony that has been stricken or excluded by me is not

4    evidence and may not be considered by you in rendering your verdict.

5    Arguments by the advocates are also not evidence.  What you heard during the opening

6    statements and summations is merely intended to help you understand the evidence and reach your

7    verdict.  If your recollection of the facts differs from the lawyers' statements, you should rely on your

8    recollection.  If a lawyer made a statement during his or her opening or summation and you find that

9    there is no evidence to support the statement, you should disregard the statement.

10    Further, any statements that I may have made during the trial or during these instructions do not

11    constitute evidence.  At times, I may have admonished a witness or directed a witness to be responsive

12    to questions or to keep his or her voice up.  At times, I may have asked a question myself.  Any

13    questions that I asked, or instructions that I gave, were intended only to clarify the presentation of

14    evidence and to bring out something that I thought might be unclear.  You should draw no inference or

15    conclusion of any kind, favorable or unfavorable, with respect to any witness or any party in the case, by

16    reason of any comment, question, or instruction of mine.  The rulings I have made during the trial and

17    these instructions are no indication of my views of what your decision should be.  Nor should you infer

18    that I have any views as to the credibility of any witness, as to the weight of the evidence, or as to how

19    you should decide any issue that is before you.  That is entirely your role.

20    Finally, I instruct you that all of the evidence presented to you in this case was lawfully obtained.

21    Whether you approve or disapprove of how any evidence was obtained should not enter into your

22    deliberations.

23

1      Stipulations

2          Stipulations were entered into relating to various facts in this case.  A stipulation is an agreement

3    between parties as to what certain facts were or what the testimony would be if certain people testified

4    before you.  The stipulation is the same for your purposes as the presentation of live testimony.  You

5    should consider the weight to be given such evidence just as you would any other evidence.

6

7      Charts and Summaries

8          The Government presented exhibits in the form of charts and summaries.  As I mentioned to you

9    earlier, I admitted these charts and summaries in place of, or in addition to, the underlying testimony or

10   documents that they represent in order to save time and avoid unnecessary inconvenience.  You should

11   consider the charts and summaries as you would any other evidence.

12

13     Limited Purpose Evidence

14         If certain testimony or evidence was received for a limited purpose, you must follow the limiting

15   instructions I have given.

16

17     Recordings and Transcripts

18         Recordings and transcripts have been admitted into evidence. Whether you approve or

19   disapprove of the recording of the activity may not enter your deliberations.  I instruct you that these

20   recordings were made in a lawful manner and that no one's rights were violated; that the Government's

21   use of this evidence is lawful; and that it was properly admitted into evidence at this trial.

1    You must, therefore, regardless of any personal opinions, give this evidence full consideration

2    along with all the other evidence in the case in determining whether the Government has proved beyond

3    a reasonable doubt the guilt of the defendant you are considering.

4    I remind you that the transcripts were given to you only as aids or guides to assist you in

5    listening to the recordings; they are not in and of themselves evidence.  You alone should make your

6    own interpretation of what appears on the recordings based on what you heard.  If you think you heard

7    something different than what appeared on the transcript, then what you heard is controlling..

8

9    Redactions

10    As I explained during trial, some of the exhibits admitted into evidence contain redactions of

11    certain information.  "Redacted" means that part of the document or recording was taken or blacked out.

12    There is nothing unusual or improper about such redactions.  You are to concern yourself only with the

13    part of the document that has been admitted into evidence.  You should not consider any possible reason

14    why the other part of it was not admitted into evidence.

15

16    Credibility of Witnesses

17    How do you evaluate the credibility or believability of the witnesses?  The answer is that you use

18    your common sense.  There is no magic formula by which you can evaluate testimony.  You may use the

19    same tests here that you use in your everyday life when evaluating statements made by others to you.

20    You may ask yourselves: Did the witness impress you as open, honest, and candid?  How responsive

21    was the witness to the questions asked on direct examination and on cross-examination?

22    If you find that a witness intentionally told a falsehood, that is always a matter of importance you

23    should weigh carefully.  On the other hand, a witness may be inaccurate, contradictory, or even

1  untruthful in some respects and entirely believable and truthful in other respects.  It is for you to

2  determine whether such inconsistencies are significant or inconsequential, and whether to accept or

3  reject all of the testimony of any witness, or to accept or reject only portions.

4         You are not required to accept testimony even though the testimony is uncontradicted and the

5  witness's testimony is not challenged.  You may reject it because of the witness's bearing or demeanor,

6  or because of the inherent improbability of the testimony, or for other reasons sufficient for you to

7  conclude that the testimony is not worthy of belief.

8         In evaluating the credibility of the witnesses, you should take into account any evidence that a

9  witness may benefit in some way from the outcome of the case.  Such an interest in the outcome creates

10  a motive to testify falsely and may sway a witness to testify in a way that advances his or her own

11  interests.  Therefore, if you find that any witness whose testimony may have an interest in the outcome

12  of this trial, you should bear that factor in mind when evaluating the credibility of his or her testimony

13  and decide whether to accept it with great care.

14         Keep in mind, though, that it does not automatically follow that testimony given by an interested

15  witness is to be disbelieved.  There are many people who, no matter what their interest in the outcome of

16  the case may be, would not testify falsely.  It is for you to decide, based on your own perceptions and

17  common sense, to what extent, if at all, the witness's interest has affected his or her testimony.

18

19         <u>Non-Prosecution Agreements and Accomplice/Cooperator Testimony</u>

20         You heard testimony from witnesses who had entered into agreements with the Government.  It

21  is no concern of yours why the Government made an agreement with a particular witness.  You may,

22  however, consider the effect, if any, that the existence or terms of any such agreement have on the

23  witness's credibility.  A witness who hopes to obtain leniency may have a motive to testify as he

10

1    believes the Government wishes, or he may feel that it is in his interest to incriminate others. As with

2    any witness, your responsibility is to determine whether any such motive or intent has influenced the

3    witness's testimony and whether the witness has told the truth, in whole or in part.

4       One witness, Eric Lachow, testified in exchange for a promise by the Government not to charge

5    him with certain crimes. This type of agreement is known as a "non-prosecution agreement." I instruct

6    you that there is nothing improper in the Government's use of such agreements. They are a common

7    and important law-enforcement tool. However, in evaluating the testimony of a witness with a non-

8    prosecution agreement, you should examine it with greater scrutiny than you would the testimony of an

9    ordinary witness. You should consider what benefits or promises he received from the Government that

10    would motivate him to testify falsely. For example, he may believe that he will continue to receive these

11    benefits only if he produces evidence of criminal conduct.

12       Another witness, Mark Lisser, testified pursuant to what is known as a "cooperation agreement."

13    I instruct you that there is nothing improper in the Government's use of such agreements either. They

14    are also a common and important law-enforcement tool. It is not unusual for the Government to rely on

15    the testimony of witnesses who admit to having participated in criminal activity. The Government must

16    take its witnesses as it finds them and sometimes must use such testimony in a criminal prosecution

17    because otherwise it would be difficult or impossible to detect and prosecute wrongdoers. For these

18    very reasons, the law allows the use of testimony from accomplice or cooperating witnesses. Indeed, the

19    testimony of such a witness may be enough in itself for conviction, if the jury believes that the testimony

20    establishes guilt beyond a reasonable doubt.

21       However, because of the interest an accomplice or cooperator may have in testifying, you should

22    scrutinize any such testimony with special care and caution. You may consider the fact that a witness is

23    a cooperator as bearing upon his credibility. Like the testimony of any other witness, cooperating

1    witness testimony should be given such weight as it deserves in light of the facts and circumstances

2    before you, taking into account the witness's demeanor and candor, the strength and accuracy of the

3    witness's recollection, his background, and the extent to which his testimony is or is not corroborated by

4    other evidence in the case.  You may consider whether a cooperating witness has an interest in the

5    outcome of the case, and if so, whether that interest has affected his testimony.

6          In evaluating the testimony of a cooperating witness, you should ask yourselves the following

7    questions:  Would the accomplice benefit more by lying or by telling the truth?  Was any part of his

8    testimony potentially made up because he believed or hoped that he would receive favorable treatment

9    from the Government by testifying falsely or as he believed the Government wanted?  Or did he believe

10    that his interests would be best served by testifying truthfully?  If you believe that the witness was

11    motivated by hopes of personal gain, was the motivation one that would cause him to lie, or was it one

12    that would cause him to tell the truth?  Did this motivation color his testimony?  It does not follow,

13    however, that simply because a person has admitted to participating in one or more crimes, he is

14    incapable of giving a truthful version of what happened.

15          If you think that the testimony was false, you should reject it.  However, if, after a cautious and

16    careful examination of an accomplice witness's testimony, you are satisfied that the witness told the

17    truth, you may accept his testimony as credible and act upon it accordingly.

18          As with any witness, let me emphasize that the issue of credibility need not be decided in an all-

19    or-nothing fashion.  If you find that a witness has been untruthful in some respect, you may, but are not

20    required to, reject the witness's testimony in its entirety.  Even if you find that a witness testified falsely

21    in one part, you still may accept his testimony in other parts.  How much of a witness's testimony to

22    accept, if any, is a determination entirely for you, the jury.

1    **Adapted from *United States v. Blondet*, 16-CR-387 (JMF) (S.D.N.Y. 2022); *United States v.***

2    ***Ramirez*, 20-CR-22 (JMF) (S.D.N.Y. 2024); *United States v. Kaufman*, 13-CR-411 (JMF) (2013);**

3    ***United States v. Hsu*, 07 Cr. 1066 (VM); Sand, *Modern Federal Jury Instructions - Criminal*, Instr.**

4    **7-5; Sand, *Modern Federal Jury Instructions-Criminal*, Instr. 7-14.**

5

6    Immunized Witnesses

7        You have heard the testimony of a witness, Schuyler Minton, who testified under a grant of

8    immunity from this Court.  What this means is that the testimony of the witness may not be used against

9    the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise

10   failing to comply with the immunity order of this Court.

11       You are instructed that the Government is entitled to call a person who has been granted

12   immunity by order of this Court; you are further instructed that you may convict a defendant on the basis

13   of such a witness's testimony alone, if you find that the testimony proves the defendant guilty beyond a

14   reasonable doubt.

15       However, the testimony of a witness who has been granted immunity should be examined by you

16   with great care.  You should scrutinize it closely to determine whether or not it is colored in such a way

17   as to place guilt upon the defendant in order to further the witness's own interests.  If after a careful

18   examination of the witness's testimony and demeanor upon the witness stand, you are satisfied that the

19   witness told the truth, you should accept it as credible and act upon it accordingly.

20       In addition, it does not follow that simply because a person may have participated in criminal

21   conduct, that he or she is incapable of giving truthful testimony.  Further, it is of no concern of yours

22   why a witness received court-ordered immunity. Your sole concern is whether a witness has given

23   truthful testimony in this courtroom before you.  As with any witness, let me emphasize that the issue of

13

1  credibility need not be decided in an all-or-nothing fashion.  Even if you find that a witness testified

2  falsely in one part, you still may accept his or her testimony in other parts, or may disregard all of it.

3  That is a determination entirely for you, the jury.

4  **Adapted from *United States v. Ramirez*, 20-CR-22 (JMF) (S.D.N.Y. 2024); *United States v.***

5  ***Deligatti*, No. 15 Cr. 491 (KBF) (S.D.N.Y. 2018); Sand, *Modern Federal Jury Instructions -***

6  ***Criminal*, Instr. 7-9.**

7

8  Law Enforcement and Government Witnesses

9  You have heard testimony from law enforcement or other government witnesses, including

10  representatives of the United States Postal Inspection Service and the Securities and Exchange

11  Commission.  The fact that a witness may be employed as a law enforcement official or government

12  employee does not mean that his or her testimony is necessarily deserving of more or less consideration

13  or greater or lesser weight than that of an ordinary witness.  It is your decision, after reviewing all the

14  evidence, whether to accept the testimony of any law enforcement witness or government witness, as it

15  is with every other type of witness, and to give to that testimony the weight you find it deserves.

16

17  Expert Witnesses

18  You have heard testimony of expert witnesses.  As I previously explained, an expert witness is

19  someone who, by education or experience, has acquired learning or experience in a specialized area of

20  knowledge.  Such a witness is permitted to express his or her opinions on matters about which he or she

21  has specialized knowledge and training.  A party may present expert testimony to you on the theory that

14

1    someone who is experienced in the field can assist you in understanding the evidence or in reaching an

2    independent decision on the facts.

3        Your role in judging credibility applies to experts as well as other witnesses.  In weighing an

4    expert's opinion, you may consider the expert's qualifications, education, and reasons for testifying, as

5    well as all of the other considerations that ordinarily apply, including all the other evidence in the case.

6    If you find the opinion of an expert is based on sufficient data, education, and experience, and the other

7    evidence does not give you reason to doubt his or her conclusions, you would be justified in placing

8    reliance on his or her testimony.  However, you should not accept witness testimony simply because the

9    witness is an expert.  The determination of the facts in this case rests solely with you.

10

11    Uncalled Witnesses

12        There are people whose names you have heard during the course of the trial but who did not

13    appear here to testify.  I instruct you that each party had an equal opportunity, or lack of opportunity, to

14    call any of these witnesses.  Therefore, you should not draw any inferences or reach any conclusions as

15    to what they would have testified to had they been called.  Their absence should not affect your

16    judgment in any way.

17        You should, however, remember my instruction that the law does not impose on a defendant in a

18    criminal case the burden or duty of calling any witness or producing any evidence.  The burden of proof

19    remains at all times with the Government.

20

21    Number of Witnesses and Uncontradicted Testimony

22        I remind you that the defendants are not required to call any witnesses or offer any evidence,

23    since they are presumed to be innocent.  On the other hand, the Government is not required to prove

15

1     each element of the offense by any particular number of witnesses.  The testimony of a single witness

2     may be enough to convince you beyond a reasonable doubt of the existence of the elements of the

3     charged offenses — if you believe that the witness has truthfully and accurately related what he or she

4     has told you.  The testimony of a single witness may also be enough to convince you that reasonable

5     doubt exists, in which case you must return a not guilty verdict.

6

7          Particular Investigative Techniques

8          There is no legal requirement that the Government prove its case through any particular means.

9     While you are to carefully consider the evidence and/or lack of evidence adduced by the Government,

10    you are not to speculate as to why the Government used the techniques it did or why it did not use other

11    techniques.

12

13         All Available Evidence Need Not Be Introduced

14         The law does not require any party to call as witnesses all persons who may have been present at

15    any time or place involved in the case, or who may appear to have some knowledge of the matter in

16    issue at this trial.  Nor does the law require any party to produce as exhibits all relevant papers and

17    things available to either party during the course of the trial.  Your concern is to determine whether or

18    not, on the evidence or lack of evidence, the Government has met its burden of proving each element of

19    each charge beyond a reasonable doubt with respect to each defendant.

20

21         Preparation of Witnesses

22         You have heard evidence during the trial that witnesses have discussed the facts of the case and

23    their testimony with their own lawyers or with Government lawyers before they appeared in court.

16

1 Although you may consider these facts when you are evaluating a witness's credibility, there is nothing

2 either unusual or inherently improper about a witness meeting with lawyers before testifying so that the

3 witness can be aware of the subjects he or she will be questioned about, focus on the subjects, and have

4 the opportunity to review relevant exhibits before being questioned about them.  Such consultation helps

5 conserve your time and the Court's time.  In fact, it would be unusual for a lawyer to call a witness

6 without such consultation.

7  As always, the weight you give to the fact or the nature of these issues and what inferences you

8 draw from them are matters completely within your discretion.

9

10  <u>Persons Not on Trial</u>

11  During the course of the trial, you have heard the names of other individuals mentioned in

12 connection with this case.  Some of these other individuals have been mentioned in connection with

13 what the Government alleges was illegal activity.   You may not draw any inference, favorable or

14 unfavorable, toward the Government or the defendant from the fact that any person is not on trial here.

15 Nor may you speculate as to what became of them and why.  These matters are wholly outside your

16 concern and have no bearing on your function as jurors in deciding the case before you.

17

18  <u>A Defendant's Right Not to Testify</u>

19  The defendants did not testify in this trial.  Under our Constitution, a defendant is presumed

20 innocent and has no obligation to testify or to present any other evidence because, as I have told you, it

21 is the Government's burden to prove a defendant guilty beyond a reasonable doubt.  That burden

22 remains on the Government throughout the entire trial and never shifts to the defendants.  The

23 defendants is never required to prove that they are innocent.

1    You may not attach any significance to the fact that the defendants did not testify.  No adverse

2    inference against the defendants may be drawn by you because the defendants did not take the witness

3    stand.  You may not consider this in any way in your deliberations in the jury room.

4

5                        **II. SUBSTANTIVE CHARGES**

6    That concludes my introductory instructions.  Let me now turn to the charges.

7

8    The Indictment

9    The defendants are formally charged in an Indictment.  As I instructed you at the outset of this

10    trial, the Indictment is not evidence.  It is simply an accusation, a statement of the charges made against

11    the defendants.  It gives the defendants notice of the charges against them, and it informs the court and

12    the public of the nature of the accusation.  But it is not evidence, and it does not prove or even indicate

13    guilt.  It does not create any presumption or permit any inference that the defendants are guilty.  As a

14    result, you are to give it no weight in deciding the defendants' guilt or lack of guilt.  What matters is the

15    evidence you heard at this trial.  Indeed, as I have previously noted, the defendants are presumed

16    innocent, and each has entered a plea of not guilty.  It is the prosecution's burden to prove each

17    defendant's guilt beyond a reasonable doubt.

18    The Indictment before you contains six counts, or charges.  Each count of the Indictment relates

19    to a different alleged crime.  In your deliberations and in reaching your verdict, you must bear in mind

20    that guilt is individual.  You must therefore consider each count and each defendant separately, must

21    weigh the evidence as to each defendant separately for each count in which that defendant is charged,

22    and return a verdict of guilty or not guilty for each defendant on each count.  Your verdict as to each

18

1    defendant must be determined separately with respect to that defendant, solely on the evidence, or lack

2    of evidence, presented against that defendant, without regard to the guilt or innocence of anyone else.

3          So what are the charges in the Indictment?

4          Count One charges all three defendants, Michael Castillero, Francine Lanaia, and Brian

5    Martinsen, with conspiring to commit securities fraud, wire fraud, and investment adviser fraud.

6          Count Two charges all three defendants with committing securities fraud.

7          Count Three charges all three defendants with and wire fraud.

8          Count Four charges all three defendants with committing investment adviser fraud.

9          Count Five charges two of the defendants — Mr. Castillero and Mr. Martinsen — with

10   conspiring to obstruct justice.

11         And Count Six charges those same two defendants with obstruction of justice.

12         During trial, you heard some evidence regarding guidance from the United States Securities and

13   Exchange Commission (or SEC) and a financial industry regulatory authority known as FINRA.  I

14   remind you that the defendants are not charged with violating any of that guidance; indeed, a violation

15   of the FINRA or SEC rules or guidance, standing alone, does not constitute a crime.

16         With that, I will instruct you about the six crimes charged in the Indictment.

17

18         Conspiracy Charges and Substantive Charges

19         Two counts — specifically, Counts One and Five — are conspiracy charges.  The other counts

20   — Counts Two, Three, Four, and Six — are called "substantive" charges.  I will instruct you as to each

21   count separately in just a moment, but let me briefly explain the difference between a conspiracy charge

22   and a substantive charge.

19

1    A conspiracy count is different from a substantive count.  Generally speaking, a conspiracy

2    charge alleges that two or more persons agreed together to accomplish an unlawful objective.  The focus

3    of a conspiracy count, therefore, is on whether there was an unlawful agreement.  There can be no

4    conspiracy unless at least two people reached such an unlawful agreement, whether express or implied.

5    A substantive count, on the other hand, charges a defendant with the actual commission of an

6    offense.  A substantive offense therefore may be committed by a single person, and it need not involve

7    any agreement with anyone.

8    A conspiracy to commit a crime is an entirely separate and different offense from a substantive

9    crime, the commission of which may be an object or goal of the conspiracy.  And because the essence of

10   the crime of conspiracy is an agreement or understanding to commit a crime, it does not matter if the

11   crime, the commission of which was an objective of the conspiracy, was ever committed.  In other

12   words, if a conspiracy exists and certain other requirements are met, it is punishable as a crime even if

13   its purpose was not accomplished.  Consequently, a conspiracy charge does not require proof that the

14   crime or crimes that were the objective or objectives of the conspiracy actually were committed.

15   By contrast, conviction on a substantive count requires proof that the crime charged actually

16   was committed, but it does not require proof of an agreement.  If a defendant both participates in a

17   conspiracy and commits the crime or crimes that were the object or objects of the conspiracy, that

18   defendant may be guilty of both the conspiracy and the substantive crime or crimes.

19   With that, I will turn to the elements of each count.  I am going to begin, however, with the

20   substantive counts because explaining them first will simplify my instructions with respect to Counts

21   One and Five, which are the conspiracy counts.  So I will begin with Count Two.

22   **Adapted from _United States v. Balouchzehi_, 21-CR-658 (JMF) (S.D.N.Y. 2023); _United_**

23   **_States v. Raji_, 19-CR-870 (JMF) (S.D.N.Y. 2022).**

20

1

2      <u>Count Two — Securities Fraud: Elements</u>

3      Count Two charges all three defendants with securities fraud.  Specifically, Count Two charges

4      that from at least in or about 2017 through in or about April 2022, the defendants made false and

5      misleading statements to investors about StraightPath's operations, the pricing and availability of

6      StraightPath's pre-IPO shares, and misappropriated investor funds.

7      For a defendant to be found guilty of Count Two, the Government must prove each of the

8      following three elements beyond a reasonable doubt:

9      *First*, that in connection with the purchase or sale of a security, the defendant you are

10     considering did any one or more of the following:

11     (a) employed a device, scheme, or artifice to defraud;

12     (b) made an untrue statement of a material fact or omitted to state a material fact that made what

13     was said, under the circumstances, misleading; or

14     (c) engaged in an act, practice, or course of business that operated, or would operate, as a fraud

15     or deceit upon a purchaser or seller.

16     *Second*, that the defendant you are considering acted willfully, knowingly, and with the intent to

17     defraud.

18     And *third*, that the defendant you are considering knowingly used, or caused to be used, any

19     means or instruments of transportation or communication in interstate commerce or the use of the mails

20     in furtherance of the fraudulent conduct.

21     **Adapted from Sand, *Modern Federal Jury Instructions-Criminal*  57-20; *United States v.***

22     ***Larmore*, 24-CR-140 (PAE) (S.D.N.Y. 2024); *United States v. Teyibo*, 877 F. Supp. 846 (S.D.N.Y.**

1    **1995),** *aff'd mem.* **101 F.3d 681 (2d Cir. 1996) (citing Treatise);** *United States v. Martoma,* **12-CR-**

2    **973 (PGG) (S.D.N.Y. 2014).**

3

4    Count Two — First Element: Fraudulent Act

5    The first element that the Government must prove beyond a reasonable doubt with respect to

6    Count Two is that, in connection with the purchase or sale of a security, the defendant you are

7    considering did any one or more of the following:

8    (a) employed a device, scheme, or artifice to defraud;

9    (b) made an untrue statement of a material fact or omitted to state a material fact that made what

10   was said, under the circumstances, misleading;

11   (c) failed, with an intent to defraud, to disclose a material fact that the defendant you are

12   considering had a known duty to disclose; or

13   (d) engaged in an act, practice, or course of business that operated, or would operate, as a fraud

14   or deceit upon a purchaser or seller.

15   It is not necessary for the Government to establish all of these types of unlawful conduct in

16   connection with the sale or purchase of securities.  Any one is sufficient for a conviction, but you must

17   be unanimous as to which type of unlawful conduct you find to have been proved.

18   In assessing whether this first element of Count Two is satisfied, it does not matter whether the

19   alleged unlawful conduct was successful or not, or that the defendant you are considering profited or

20   received any benefits as a result of the alleged scheme.  Success is not an element of the crime charged.

21   However, if you find that the defendant you are considering did profit from the alleged scheme, you may

22   consider that in relation to the third element of intent, which I will discuss shortly.

22

1   **Adapted from Sand, *Modern Federal Jury Instructions-Criminal*  57-21 ("Nor does it matter**

2   **whether the alleged unlawful conduct was successful or not, or that the defendant profited or**

3   **received any benefits as a result of the alleged scheme. Success is not an element of the crime**

4   **charged. However, if you find that the defendant did profit from the alleged scheme, you may**

5   **consider that in relation to the third element of intent, which I will discuss in a moment."); *United***

6   ***States v. Martoma*, 12-CR-973 (PGG) (S.D.N.Y. 2014); *United States v. Steinberg*, No. S4 12 Cr. 121**

7   **(RJS) (S.D.N.Y. Dec. 17, 2013) (Trial Tr. 3712-13); *United States v. Newman*, No. 12 Cr. 121 (RJS)**

8   **(S.D.N.Y. Dec. 12, 2012) (Tr. at 4041-42).**

9   Let me explain some of the terms and concepts relevant to this first element.

10                    **Device, Scheme, or Artifice to Defraud**

11   A "scheme" or "artifice" is merely a plan to accomplish an object.  A "device, scheme, or artifice

12   to defraud" is any plan, device, or course of action to obtain money or property by means of false or

13   fraudulent pretenses, representations, or promises.  "Fraud" is a general term that includes all the various

14   means by which human ingenuity can devise and that are resorted to by an individual to gain some

15   unfair advantage over another person by false representations, false suggestions, suppression of the

16   truth, or deliberate disregard for the truth.  Thus, a "scheme to defraud" is merely a plan to deprive

17   another of money or property by trick, deceit, deception or swindle.

18   It is no defense to an overall scheme to defraud that a defendant was not involved in the scheme

19   from its inception or played only a minor role with no contact with the investors and purchasers of the

20   securities in question.

21   **Adapted from the parties' Requests to Charge; Sand, *Modern Federal Jury Instructions-***

22   ***Criminal*  57-21 ("A device, scheme or artifice to defraud is merely a plan for the accomplishment**

23   **of any objective. Fraud is a general term that embraces all efforts and means that individuals**

23

1  **devise to take advantage of others. The law that the defendant is alleged to have violated prohibits**

2  **all kinds of manipulative and deceptive acts."); *Id.* ("It is no defense to an overall scheme to**

3  **defraud that the defendant was not involved in the scheme from its inception or played only a**

4  **minor role with no contact with the investors and purchasers of the securities in question.").**

5              **False or Misleading Statement**

6       A statement, representation, claim, or document is false or misleading if it is untrue when made

7  and was then known to be untrue by the person making it or causing it to be made.  A representation or

8  statement is fraudulent if it was made with the intent to deceive.

9       A statement may be false or misleading if it directly contradicts what the speaker knew at the

10  time, created an impression of a state of affairs that differed in a material way from the one that actually

11  existed, or stated that there was a risk that had not yet been realized when, in fact, that risk had already

12  materialized or come to fruition.  A statement may also be false or fraudulent if it contains half-truths,

13  omits or conceals material facts, or is ambiguous or incomplete in a manner that makes what is said or

14  represented deliberately misleading or deceptive.  This includes statements that may be literally true but

15  that nevertheless create a materially misleading impression.

16  **Adapted from the Government's Supplemental Request to Charge; *City of Hialeah***

17  ***Employees' Ret. Sys. v. Peloton Interactive, Inc.*, 153 F.4th 288, 301 (2d Cir. 2025) ("We have**

18  **previously explained that warnings that hedging activity 'could' or 'may' impact the prices of**

19  **notes might have 'possibly sufficed' when the notes were first issued, but when the warnings**

20  **remained unchanged after 'market volatility put[ ] to rest any uncertainty as to the price-impact,'**

21  **those warnings became actionable misstatements."); *Set Cap. LLC v. Credit Suisse Grp. AG*, 996**

22  **F.3d 64, 86 (2d Cir. 2021) ("Accepting these well pleaded allegations as true, the Offering**

23  **Documents misrepresented Credit Suisse's knowledge and intent when they warned that Credit**

24

1  **Suisse's hedging activity 'could' or 'may' impact prices of XIV Notes but affirmed that Credit**

2  **Suisse had 'no reason to believe' that it would.");** *In re Alstom SA*, **406 F. Supp. 2d 433, 453**

3  **(S.D.N.Y. 2005) (holding that an omission is actionable if it "affirmatively creat[ed] an impression**

4  **of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]"**

5  **(quoting** *Brody v. Transitional Hosps. Corp.*, **280 F.3d 997, 1006 (9th Cir.2002));** *In re Facebook,*

6  *Inc. IPO Sec. & Derivative Litig.*, **986 F. Supp. 2d 487, 516 (S.D.N.Y. 2013) ("Courts in this Circuit**

7  **have held that a company's purported risk disclosures are misleading where the company warns**

8  **only that a risk may impact its business when that risk has already materialized.");** *In re*

9  *Facebook, Inc. Sec. Litig.*, **87 F.4th 934, 950 (9th Cir. 2023),** *cert. granted in part sub nom.*

10  *Facebook, Inc. v. Amalgamated Bank*, **144 S. Ct. 2629 (2024), and** *cert. dismissed as improvidently*

11  *granted sub nom. Facebook, Inc. v. Amalgamated Bank*, **604 U.S. 4 (2024) ("[A] company may make**

12  **a materially misleading statement when it 'speaks entirely of as-yet-unrealized risks' when the**

13  **risks have 'already come to fruition.'");** *In re Alphabet, Inc. Sec. Litig.*, **1 F.4th 687, 703 (9th Cir.**

14  **2021) ("Risk disclosures that speak entirely of as-yet-unrealized risks and contingencies and do**

15  **not alert the reader that some of these risks may already have come to fruition can mislead**

16  **reasonable investors." (cleaned up)).**

17       The Government need not prove that a defendant personally made a misrepresentation or that he

18  or she personally omitted a material fact.  It is sufficient if the Government establishes that the defendant

19  you are considering caused the statement to be made or the fact to be omitted and knew that the

20  misrepresentation would be communicated to investors.

21       **Adapted from Sand,** *Modern Federal Jury Instructions*, **57-21.**

1    **Non-Disclosure and Fiduciary Duty**

2    I have instructed you on ways in which statements or representations may be false or fraudulent.

3    Separately, the failure to disclose material information may also constitute a fraudulent representation if

4    the defendant you are considering was under a contractual, professional, or legal duty to make such a

5    disclosure; the defendant actually knew such disclosure was required to be made; and the defendant

6    failed to make such disclosure with the intent to defraud.

7    One way in which a duty to disclose material facts exists is when a person owes a "fiduciary"

8    relationship to another. Broadly speaking, a "fiduciary" relationship arises when one person — the

9    client — places special trust and confidence in another person — the fiduciary — in reliance that the

10    fiduciary will exercise his or her discretion and expertise in the interests of the client, and the fiduciary

11    knowingly accepts that special trust and confidence. At the heart of the fiduciary relationship lies

12    reliance and de facto control and dominance. Examples of a fiduciary include (but are not limited to) an

13    executor or administrator of an estate; an attorney with respect to the affairs of his client; a guardian of

14    an infant or incompetent person with respect to his ward; and the officers and directors of a corporation

15    with respect to the stockholders of the corporation.

16    Whether such a relationship existed here between any of the defendants and investors, or any

17    other entity, is a matter of fact for you, the jury, to determine. A fiduciary relationship exists when

18    confidence is reposed on one side and there is resulting superiority and influence on the other. One acts

19    in a fiduciary capacity when the business that he or she transacts or the money or property that he or she

20    handles is not his or her own or for his or her own benefit but for the benefit of another person, as to

21    whom he or she stands in a relation implying and necessitating great confidence and trust on the one part

22    and a high degree of good faith on the other part.

1       If you find that a fiduciary relationship existed, you should next consider whether there was a

2    breach of the duties incumbent upon the fiduciary in the fiduciary relationship.  I instruct you that a

3    fiduciary owes a duty of honest services to his or her customer, including a duty to disclose all material

4    facts concerning the transaction entrusted to him or her.  The concealment by a fiduciary of material

5    information that he or she is under a duty to disclose to another, under circumstances where the non-

6    disclosure can or does result in harm to the other, is a breach of fiduciary duty and can be fraudulent

7    within the meaning of the federal securities laws if the Government has proved beyond a reasonable

8    doubt the other elements of the offense as I explain them to you.  Importantly, however, a breach of

9    fiduciary duty does *not* alone constitute fraud for the purposes of this element.  Consistent with the

10    instructions I've given you, it must be accompanied by deception, misrepresentation, or nondisclosure

11    with an intent to defraud.

12    **Adapted from Sand, *S3 Modern Federal Jury Instructions-Criminal* 15.34 (2025) (defining**

13    **fiduciary duty); *United States v. Milovanovic*, 678 F.3d 713, 723 n.9 (9th Cir. 2012), as amended**

14    **(May 22, 2012) (same); *United States v. Szur*, 289 F.3d 200, 210 (2d Cir. 2002) (same); *United States***

15    ***v. Moses*, 109 F.4th 107, 114 (2d Cir. 2024) (holding that the "jury instruction was proper" where**

16    **there is a "duty to disclose … from a fiduciary or similar relationship"); *United States v. Chestman*,**

17    **947 F.2d 551, 568–69 (2d Cir. 1991) ("One acts in a 'fiduciary capacity' when the business which**

18    **he transacts, or the money or property which he handles, is not his own or for his own benefit, but**

19    **for the benefit of another person, as to whom he stands in a relation implying and necessitating**

20    **great confidence and trust on the one part and a high degree of good faith on the other part"**

21    **(quoting *Black's Law Dictionary* 564 (5th ed. 1979)); *id.* at 568 ("Counted among these hornbook**

22    **fiduciary relations are those existing between attorney and client, executor and heir, guardian and**

23    **ward, principal and agent, trustee and trust beneficiary, and senior corporate official and**

1   shareholder"); *Chiarella v. United States*, 445 U.S. 222, 231 (1980) (reversing conviction when trial

2   court failed to instruct the jury as to need for fiduciary duty); *Santa Fe Indus., Inc. v. Green*, 430

3   U.S. 462, 476 (1977) ("But the cases do not support the proposition, adopted by the Court of

4   Appeals below and urged by respondents here, that a breach of fiduciary duty by majority

5   stockholders, *without any deception, misrepresentation, or nondisclosure, violates the statute and the*

6   *Rule*." (emphasis added)); *Biesenbach v. Guenther*, 588 F.2d 400, 402 (3d Cir. 1978) ("*Santa Fe*

7   made clear that absent deception, misrepresentation, or nondisclosure a breach of fiduciary duty

8   does not violate the statute or Rule"); *N. Collier Fire Control & Rescue Dist. Firefighter Pension*

9   *Plan & Plymouth Cnty. Ret. Ass'n v. MDC Partners, Inc.*, No. 15-CV-6034 (RJS), 2016 WL

10  5794774, at *23 (S.D.N.Y. Sept. 30, 2016) (quoting *Santa Fe* for that proposition); *United States v.*

11  *Wolfson*, 642 F.3d 293, 296 (2011) (" I instruct you that a fiduciary owes … a duty to disclose all

12  material facts concerning the transaction entrusted to him or her. The concealment by a fiduciary

13  of material information which he or she is under a duty to disclose to another, under

14  circumstances where the nondisclosure can or does result in harm to the other is a [b]reach of the

15  fiduciary duty and can be a violation of the federal securities laws, if the government has proven

16  beyond a reasonable doubt the other elements of this offense, as I explained them to you.").

17          Another way a duty to disclose may arise is when a person acts as a broker for a customer.  A

18  broker is a person engaged in the business of effecting transactions in securities for the account of

19  others.  While there is no general fiduciary duty inherent in an ordinary broker-customer relationship, a

20  relationship of trust and confidence does exist between a broker and a customer with respect to those

21  specific matters or transactions that have been entrusted to the broker.  A broker-customer relationship

22  ordinarily exists in situations in which a broker has discretionary authority over the specific customer's

23  account, but discretionary authority over the customer's account is not necessary to create a fiduciary

1  relationship if other features of a fiduciary relationship — like de facto control and dominance — are

2  present.  As a matter of law, if a broker-customer relationship exists, the broker owes an affirmative duty

3  to use reasonable efforts to give the customer information relevant to the affairs that have been entrusted

4  to the broker.  This includes an implied representation that the prices charged are reasonably related to

5  the prices charged in an open competitive market.

6          In order to convict for fraud based on a defendant's failure to disclose, the Government must

7  satisfy you beyond a reasonable doubt that a duty to disclose existed, whether that is a fiduciary duty or

8  a relationship of trust between a broker and a client.  If you find that the Government has shown beyond

9  a reasonable doubt that a fiduciary or similar relationship existed, only then may you consider whether

10  there was a breach of the duties incumbent upon the fiduciary.

11          **Adapted from *United States v. Szur*, 289 F.3d 200, 211 (2d Cir. 2002) ("Although it is true**

12  **that there is no general fiduciary duty inherent in an ordinary broker/customer relationship, a**

13  ***relationship of trust and confidence does exist between a broker and a customer with respect to those***

14  ***matters that have been entrusted to the broker*. This relationship places an affirmative duty on**

15  **brokers to use reasonable efforts to give [the customer] information relevant to the affairs that**

16  **[have] been entrusted to them." (cleaned up and emphasis added)); *id.* (discussing attendant**

17  **duties); *United States v. Skelly*, 442 F.3d 94, 98 (2d Cir. 2006) (emphasizing that discretionary**

18  **authority is typical of the broker-client relationship); *United States v. Wolfson*, 642 F.3d 293, 295**

19  **(2d Cir. 2011) ("Most commonly, this relationship exists in situations in which a broker has**

20  **discretionary authority over the customer's account"); *Id.* ("However, a discretionary account is**

21  **not the sole means by which a fiduciary duty may be created in the context of a broker-customer**

22  **relationship; we have "recognized that particular factual circumstances may serve to create a**

23  **fiduciary duty between a broker and his customer *even in the absence of a discretionary account.*);**

29

1    **_SEC v. First Jersey Securities, Inc._, 101 F.3d 1450, 1469 (2d Cir.1996) ("Sales of securities by**

2    **broker-dealers to their customers carry with them an implied representation that the prices**

3    **charged in those transactions are reasonably related to the prices charged in an open and**

4    **competitive market.").**

5            **Markups**

6            The Government alleges that one way in which the defendants committed fraud was by failing to

7    disclose excessive "markups" of securities sold to investors.  A markup in the securities fraud context is

8    defined as the difference between the price charged to the customer and the prevailing market price.

9            If the seller of a security owes a fiduciary duty to a purchaser or is acting as a broker for an

10   investor, he or she has a duty to disclose the details of a markup if the markup is "excessive."  A markup

11   is excessive when when it bears no reasonable relation to the prevailing market price.  Whether that is

12   the case is to be determined on a case-by-case basis using a broad range of factors, including the

13   expense associated with effectuating the transaction; the reasonable profit fairly earned by the seller; the

14   expertise provided by the seller; the total dollar amount of the transaction; the availability of the

15   financial product in the market; the price or yield of the instrument; the resulting yield after the

16   subtraction of the markup compared to the yield on other securities of comparable quality, maturity,

17   availability, and risk; and the role played by the seller.

18           **Adapted from _Grandon v. Merrill Lynch & Co._, 147 F.3d 184, 189 (2d Cir. 1998) ("The**

19   **markup on a security is the difference between the price charged to the customer and the**

20   **prevailing market price."); _SEC v. First Jersey Securities, Inc._, 101 F.3d 1450, 1469 (2d Cir. 1996)**

21   **("A markup is the difference between the retail price and the 'prevailing market price' of the**

22   **security."); Banca Cremi, S.A. v. Alex. Brown & Sons, Inc., 132 F.3d 1017, 1033 (4th**

23   **Cir.1997) ("'A securities broker's mark-up equals the price charged to the customer minus the**

1    prevailing market price.'" (quoting *Bank of Lexington & Trust Co. v. Vining–Sparks Sec.*

2    *Inc.*, 959 F.2d 606, 613 (6th Cir.1992))); *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 163 (2d Cir.

3    2000) ("Under § 10(b) of the Exchange Act, a seller has a duty to disclose the details of a markup if

4    the markup is 'excessive.' See id. at 534. We declined in [*Press*] to establish a specific range

5    beyond which a markup would be deemed 'excessive,' holding instead that courts must assess a

6    broad range of factors."); *Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 535 (2d Cir. 1999) ("We

7    recently noted in *Grandon* that the determination of excessiveness is to be done on a case-by-case

8    basis, and a markup is excessive 'when it bears no reasonable relation to the prevailing market

9    price.'... A ten percent markup on a T-bill might be virtually always excessive. A ten percent

10    mark-up on an instrument that is difficult to obtain and priced accordingly might not be."); *id.*

11    ("Among the factors relevant to the determination of whether a markup is excessive are the

12    expense associated with effectuating the transaction, the reasonable profit fairly earned by the

13    broker or dealer, the expertise provided by the broker or dealer, the total dollar amount of the

14    transaction, the availability of the financial product in the market, the price or yield of the

15    instrument, the resulting yield after the subtraction of the markup compared to the yield on other

16    securities of comparable quality, maturity, availability, and risk, and the role played by the broker

17    or dealer."); *see Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 534 (2d Cir. 1999) ("[T]he

18    defendant only has a duty to disclose the specifics of a markup—under the rubric of the obligation

19    under Section 10(b) to 'disclose material information'—when there is either a fiduciary

20    relationship with the complaining party or when the markup is 'excessive.'"); *Grandon v. Merrill*

21    *Lynch & Co., Inc.*, 147 F.3d 184, 190 (2d Cir.1998) ("A broker-dealer commits fraud (in violation

22    of § 10(b) and Rule 10b–5) by charging customers excessive markups without proper

23    disclosure."); *S.E.C. v. Feminella*, 947 F. Supp. 722, 731 (S.D.N.Y. 1996) ("It is well established

31

1    that failure to disclose an *excessive* markup constitutes a violation of Section 17(a) of the Securities

2    Act, Section 10(b) of the Exchange Act and Rule 10b–5 thereunder"); *S.E.C. v. Pasternak*, 561 F.

3    Supp. 2d 459, 499 (D.N.J. 2008) ("It has been held that, to impose securities fraud liability for an

4    omission of a 'markup,' the broker-dealer either (1) was in 'a fiduciary relationship with the

5    complaining party' or (2) charged an 'excessive' markup"); *United States Sec. & Exch. Comm'n v.*

6    *Place*, No. CV 16-4291, 2019 WL 634638, at *8 (E.D. Pa. Feb. 14, 2019) ("In the absence of a

7    fiduciary relationship, a defendant has a duty to disclose a markup if the markup is 'excessive.'");

8    *SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1469 (2d Cir. 1996) ("An undisclosed markup of

9    more than 10% above the prevailing market price has been held to constitute fraud *per se*.");

10   *Applications of Powell & Assocs., Inc.*, 47 S.E.C. 746 (Mar. 22, 1982) ("We have consistently held

11   that, at the least, markups of more than 10% are fraudulent in the sale of equity securities.").  *But*

12   *see Chiarella v. United States*, 445 U.S. 222, 228, (1980) ("[O]ne who fails to disclose material

13   information prior to the consummation of a transaction commits fraud only when he is under a

14   duty to do so."); *Id.* ("[T]he element required to make silence fraudulent—a duty to disclose—is

15   absent in this case."); *S.E.C. v. Dorozhko*, 574 F.3d 42, 48 (2d Cir. 2009) ("The Supreme Court

16   held that remaining silent was actionable only where there was a duty to speak, arising from a

17   fiduciary relationship. In *Chiarella*, the Supreme Court held that there was no deception in an

18   employee's silence because he did not have duty to speak."); *Castellano v. Young & Rubicam, Inc.*,

19   257 F.3d 171, 179 (2d Cir. 2001) ("A failure to disclose material information is actionable only

20   when the defendant had an affirmative duty to disclose these facts"); *United States v. Chestman*,

21   947 F.2d 551, 565 (2d Cir. 1991) (restating *Chiarella* rule); *Moss v. Morgan Stanley Inc.*, 719 F.2d

22   5, 12 (2d Cir. 1983) ("The [*Chiarella*] Court explained that liability for nondisclosure of material

23   nonpublic market information under section 10(b) is "premised upon a duty to disclose arising

32

1  **from a relationship of trust and confidence between parties to a transaction.”);** *Id.* **at 15 (“We find**

2  **nothing in the language or legislative history of section 10(b) or rule 10b–5 to suggest that**

3  **Congress intended to impose a *special duty of disclosure* on broker-dealers simply by virtue of**

4  **their status as market professionals”);** *United States v. Finnerty*, **533 F.3d 143, 148 (2d Cir. 2008)**

5  **(addressing markups and stating that “[t]heft not accomplished by deception (*e.g.*, physically**

6  **taking and carrying away another's property) is not fraud absent a fiduciary duty.”);** *id.* **at 147**

7  **(distinguishing excessive markup cases from interpositioning  “[b]ecause of the dealers' direct**

8  **relationship with their customers”).**

9          **Materiality**

10          If you find that there was a false or misleading statement or an omission in accordance with the

11  foregoing instructions, you must next determine whether the false or misleading statement or omission

12  was material under the circumstances.  A material fact is one that would have been significant to a

13  reasonable investor's investment decision.  We use the word “material” to distinguish between the kinds

14  of statements or information we care about and those that are of no real importance.  Materiality of the

15  information is judged as of the time the information was disclosed or omitted.

16          I remind you that the question of whether a factual representation or omission is “material” is an

17  objective one, involving the significance of an omitted or misrepresented fact to a “reasonable investor.”

18  Proof of actual reliance on a statement by an investor is not required to show materiality.  Instead, it is

19  sufficient if the misrepresentation is one that is capable of influencing a reasonable person's decision

20  and is intended to do so.

21          In considering whether a statement or omission was material, you should consider whether a

22  person of ordinary intelligence would have considered the fact significant — not whether the material

23  misrepresentation or omission would have deceived a person of ordinary intelligence.  Once you find

33

1    that the offense involved the making of a material misrepresentation or omission of a material fact, it

2    does not matter whether any of the alleged victims involved were careless, gullible, or even negligent, or

3    whether they might have uncovered the scheme on their own had they probed more deeply, because the

4    law protects the gullible and unsophisticated as well as the experienced investor.

5          **Adapted from Sand, *Modern Federal Jury Instructions-Criminal* 57-21 ("The Government**

6    **need not prove that the defendant personally made the misrepresentation or that he omitted the**

7    **material fact. It is sufficient if the government establishes that the defendant caused the statement**

8    **to be made or the fact to be omitted. With regard to the alleged misrepresentations (and**

9    **omissions), you must determine whether the statement was true or false when it was made, (and,**

10    **in the case of alleged omissions, whether the omission was misleading)"); *United States v. Larmore*,**

11    **24-CR-140 (PAE) (S.D.N.Y. 2024); *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 161 (2d Cir. 2000)**

12    **("[T]he materiality requirement of Rule 10b–5 [is met] by alleging a statement or omission that a**

13    **reasonable investor would have considered significant in making investment decisions"); *United***

14    ***States v. Vilar*, 729 F.3d 62, 88 (2d Cir. 2013) ("It has long been the law that the government, as**

15    **opposed to a private plaintiff, need prove only materiality, meaning that there is a substantial**

16    **likelihood that a reasonable investor would find [the omission or misrepresentation] important in**

17    **making an investment decision, and not that a victim did, in fact, rely on it" (cleaned up)); *United***

18    ***States v. Schlisser*, 168 F. App'x 483, 486 (2d Cir. 2006) (not taking issue with the instruction,**

19    **"[o]nce you find that there was a material misrepresentation or omission of a material fact,**

20    **it does not matter whether the intended victims were gullible buyers or sophisticated investors,**

21    **because the securities laws protect the gullible and unsophisticated as well as the experienced**

22    **investor."); *Neder v. United States*, 527 U.S. 1, 24-25 (1999) (holding that the "common -law**

1 **requirements of 'justifiable reliance' and 'damages' … plainly have no place in the federal fraud**

2 **statutes").**

3        Language in a contract may be relevant in considering whether a false or fraudulent statement or

4 representation outside the contract was material and whether a defendant acted with fraudulent intent.

5 You should consider all the information available to a reasonable investor to determine whether

6 cautionary language in a document would have prevented an investor from being misled.  But language

7 in a contract — including, for example, a disclaimer on reliance on prior statements — does not render a

8 false or fraudulent statement or representation made outside the contract immaterial as a matter of law.

9        **Adapted from *United States v. Weaver*, 860 F.3d 90, 95 (2d Cir. 2017) ("[C]ontractual**

10 **disclaimers of reliance on prior misrepresentations do not render those misrepresentations**

11 **immaterial under the criminal mail and wire fraud statutes"); *United States v. Larmore*, 24-CR-**

12 **140 (PAE) (S.D.N.Y. 2024) ("In considering whether a statement or omission was material, let me**

13 **caution you that, as a matter of law, a disclaimer cannot cause a misrepresentation to be**

14 **immaterial."); *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002)**

15 **("Consequently, when cautionary language is present, we analyze the allegedly fraudulent**

16 **materials in their entirety to determine whether a reasonable investor would have been**

17 **misled.  The touchstone of the inquiry is not whether isolated statements within a document were**

18 **true, but whether defendants' representations or omissions, considered together and in context,**

19 **would affect the total mix of information and thereby mislead a reasonable investor regarding the**

20 **nature of the securities offered."); *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 411**

21 **(S.D.N.Y. 2003) (same).**

1    **"In Connection With"**

2        As I explained, you must also find that the defendant you are considering participated in

3    fraudulent conduct that was "in connection with" a purchase or sale of securities.  The term "security" or

4    "securities" includes any stock or shares of a company, whether or not the company is publicly traded,

5    and includes interests in the nine StraightPath Funds.

6        You need not find that the defendant you are considering actually participated in any securities

7    transaction if that defendant was engaged in fraudulent conduct that was "in connection with" a

8    purchase or sale.  The "in connection with" aspect of this element is satisfied if you find that there was

9    some nexus or relation between the allegedly fraudulent conduct and the sale or purchase of securities.

10    Fraudulent conduct may be "in connection with" the purchase or sale of securities if you find that the

11    alleged fraudulent conduct "touched upon" a securities transaction.

12    <u>**Adapted from Sand, 3 Modern Federal Jury Instructions-Criminal P 57.03 (2025)**</u>

13    <u>**("Notwithstanding the general rule that it is a question for the court to decide what is a security, a**</u>

14    <u>**judge cannot preempt the jury's province to decide factual disputes concerning the predicate for**</u>

15    <u>**such a ruling."); Sand, 3 Modern Federal Jury Instructions-Criminal P 57-21 (2025) ("You need**</u>

16    <u>**not find that the defendant actually participated in any securities transaction if the defendant was**</u>

17    <u>**engaged in fraudulent conduct that was 'in connection with' a purchase or sale. The 'in**</u>

18    <u>**connection with' aspect of this element is satisfied if you find that there was some nexus or relation**</u>

19    <u>**between the allegedly fraudulent conduct and the sale or purchase of securities. Fraudulent**</u>

20    <u>**conduct may be 'in connection with' the purchase or sale of securities if you find that the alleged**</u>

21    <u>**fraudulent conduct 'touched upon' a securities transaction.")); Sand, *Modern Federal Jury***</u>

22    <u>***Instructions*, Instr. 57-21 (2025); *United States v. Larmore*, 24-CR-140 (PAE) (S.D.N.Y. 2024)**</u>

23

1    <u>Count Two — Second Element: Intent to Defraud</u>

2    The second element that the Government must establish beyond a reasonable doubt with respect

3    to Count Two is that the defendant you are considering devised or participated in the fraudulent scheme

4    knowingly, willfully, and with specific intent to defraud.

5    To "devise" a scheme to defraud is to concoct or plan it.  To "participate" in a scheme to defraud

6    means to associate oneself with it, with the intent to making it succeed.

7    "Knowingly" means to act voluntarily and deliberately, rather than mistakenly or inadvertently.

8    "Willfully" means to act voluntarily and with a wrongful purpose.

9    To act with the "intent to defraud" means to know of the fraudulent nature of the scheme and to

10    act with the intent that it succeed.  Fraud is a general term that embraces all efforts that people devise to

11    take advantage of others.  Intent to defraud, in the context of the securities laws, means to act knowingly

12    and with the intent to deceive.

13    The Government must establish beyond a reasonable doubt that the defendant you are

14    considering knew that his or her conduct was calculated to deceive and that he or she nevertheless

15    carried out the alleged fraudulent scheme.  The Government need not prove that the intended victim was

16    actually harmed; only that the defendant you are considering intended to harm the victim by obtaining

17    money or property.  The Government is also not required to prove that the defendant you are considering

18    realized any gain from the scheme, although you may consider any gain that a defendant realized in

19    determining whether that defendant participated in the scheme.  Moreover, the defendant you are

20    considering need not know that he or she was committing a specific legal violation, but must have an

21    awareness of the general wrongfulness of his or her conduct.

22    Because an essential element of fraud is the intent to defraud, it follows that good faith on the

23    part of a defendant defeats a charge of fraud.  False representations or statements, or omissions of

1    material facts, do not amount to a fraud unless done with fraudulent intent.  That is, if a defendant

2    believed in good faith that he or she was entitled to take the money or property from the victim, even if

3    that belief was mistaken, then you must find that defendant not guilty even if others were injured by the

4    defendant's conduct.  The defendants have no burden to establish good faith.  The burden is on the

5    Government to prove fraudulent intent and the consequent lack of good faith beyond a reasonable doubt.

6            In considering whether or not a defendant acted in good faith, you are instructed that a belief by

7    that defendant (if such belief existed) that ultimately everything would work out so that no investors

8    would lose any money or that particular investments would ultimately be financially advantageous for

9    investors does not mean the defendant acted in good faith.  No amount of honest belief on the part of a

10    defendant that a scheme will ultimately make a profit for investors will excuse knowingly fraudulent

11    actions or false representations by him or her.

12            Nor does it constitute good faith if a defendant deliberately made a representation that he or she

13    knew to be false, even if he or she reasonably believed that he or she was legally entitled to the money

14    or property received.  Moreover, a venture commenced in good faith may become fraudulent if it is

15    continued after an intent to defraud has been formed.  That is, good faith does not defeat a charge of

16    fraud if a defendant first made representations in good faith but later, after realizing the representations

17    were false, nevertheless deliberately continued to make them.

18            I remind you again that the defendants have no burden to establish good faith.  The burden is on

19    the Government to prove fraudulent intent and the consequent lack of good faith beyond a reasonable

20    doubt.

21            Whether a person acted knowingly, willfully, and with intent to defraud are questions of fact for

22    you to determine, like any other fact question, based on your evaluation of the evidence.  Direct proof of

23    knowledge and fraudulent intent is almost never available.  It would be a rare case where it could be

38

1   shown that a person wrote or stated that, as of a given time in the past, he or she committed an act with

2   fraudulent intent.  Such direct proof is not required.  Instead, the ultimate facts of knowledge and

3   criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's

4   words, his or her conduct, acts, and all the surrounding circumstances disclosed by the evidence and the

5   rational or logical inferences that may be drawn from them.

6   **Adapted from Sand, *Modern Federal Jury Instructions-Criminal* P 57.03; *United States v.***

7   ***Raji,* 19-CR-870 (JMF) (S.D.N.Y. September 19, 2022) (whole section); *United States v. Avenatti,***

8   **19-cr-374 (JMF) (S.D.N.Y. February 1, 2022); *United States v. Parker,* 19-CR-850 (JSR) (S.D.N.Y.**

9   **2022); *United States v. Lavidas,* 19 Cr. 716 (DLC) (S.D.N.Y. 2020); *United States v. Hoey,* 15 Cr. 229**

10   **(PAE) (S.D.N.Y. 2016); *United States v. Balkany,* 10 Cr. 441 (DLC) (S.D.N.Y. 2010); *United States***

11   ***v. Males,* 459 F.3d 154, 159 (2d Cir. 2006); *United States v. Rossomando,* 144 F.3d 197, 203 (2d Cir.**

12   **1998) ("[W]here a defendant deliberately supplies false information to obtain a bank loan, but**

13   **plans to pay back the loan and therefore believes that no harm will 'ultimately' accrue to the**

14   **bank, the defendant's good-faith intention to pay back the loan is no defense"); *United States v.***

15   ***Leonard,* 529 F.3d 83, 91-92 (2d Cir. 2008); *United States v. Gatto,* 986 F.3d 104, 126 (2d Cir. 2021)**

16   **(affirming "I instruct you that a victim's loss of the right to control the use of its assets constitutes**

17   **deprivation of money or property if, and only if, the scheme could have caused or did cause**

18   **tangible economic harm to the victim"); *United States v. Middendorf,* 18 Cr. 36 (JPO), 2019 WL**

19   **4254025, at &7 (S.D.N.Y. Sept. 9, 2019); *Kousisis v. United States,* 145 S. Ct. 1382, 1398 (2025) ("As**

20   **Judge Learned Hand put it, '[a] man is none the less cheated out of his property, when he is**

21   **induced to part with it by fraud, because he gets a quid pro quo of equal value' … Fraudulent**

22   **inducement 'has long been considered a species of actionable fraud.'"); *United States v. Kaiser,* 609**

23   **F.3d 556, 569 (2d Cir. 2010) (holding that willfullness requires that a defendant "had an**

1    **awareness of the general wrongfulness of his conduct," not that he knew that he was committing a**

2    **specific legal violation"); Sand, Model Federal Jury Instructions-Criminal, Instrs. 44-5; Sand,**

3    ***Modern Federal Jury Instructions*, Instr. 57-24 (2025).**

4

5    <u>Count Two — Third Element: Instrumentality of Interstate Commerce</u>

6    The third element that the Government must prove beyond a reasonable doubt with respect to

7    Count Two is that the defendant you are considering knowingly used or caused to be used an

8    instrumentality of interstate commerce or the mails or the facilities of a national security exchange in

9    furtherance of the scheme to defraud or the fraudulent conduct.

10    The term "mails" includes the U.S. Mail and Federal Express.  The term "instrumentalities of

11    interstate commerce" means instruments, devices, and means of conducting trade, commerce,

12    transportation, or communication among any two states.  Examples of instrumentalities of interstate

13    commerce include telephone calls, emails, or text messages, the wire transfer of money, or use of a

14    facility of a national securities exchange, such as a stock trade made on the Nasdaq or New York Stock

15    Exchange.

16    It is not necessary for the Government to prove the mails, an instrumentality of interstate

17    commerce, or a national securities exchange were used in furtherance of the fraudulent scheme.  Any

18    one — either the mails *or* an instrumentality of interstate commerce *or* the facilities of a national

19    securities exchange — is enough.  But you must be unanimous as to at least one.

20    In considering this element, it is not necessary for you to find that the defendant you are

21    considering was or would have been directly or personally involved in any mailing or the use of an

22    instrumentality of interstate commerce or of a national securities exchange.  If the conduct alleged

23    would naturally and probably result in the use of the mails or an instrumentality of interstate commerce

1  or of a national securities exchange, this element would be satisfied.  When one does an act with the

2  knowledge that use of interstate means of communication will follow in the ordinary course of business,

3  or where such use can reasonably be foreseen, even though not actually intended, then he or she causes

4  such means to be used.

5      Nor is it necessary that the items sent through the mails or communicated through an

6  instrumentality of interstate commerce or a national securities exchange did or would contain the

7  fraudulent material, or anything criminal or objectionable.  The matter mailed or communicated may be

8  entirely innocent so long as it is in furtherance of the scheme to defraud or fraudulent conduct.

9      The use of the mails or instrumentality of interstate commerce need not be central to the

10  execution of the scheme or even be incidental to it.  All that is required is that the use of the mails or

11  instrumentality of interstate commerce or national securities exchange bear some relation to the object of

12  the scheme or fraudulent conduct.

13  **Adapted from Government's Request to Charge; Sand, _Modern Federal Jury Instructions_,**

14  **Instr. 57-25 (2025); _United States v. Larmore_, 24-CR-140 (PAE) (S.D.N.Y. 2024); _United States v._**

15  **_Martoma_, 12-CR-973 (PGG) (S.D.N.Y. 2014).**

16

17  Count Three — Wire Fraud: Elements

18      Count Three charges all three defendants with wire fraud.  Specifically, Count Three charges that

19  from at least in or about 2017 through in or about April 2022, the defendants made false and misleading

20  statements to investors about StraightPath's operations, the pricing and availability of StraightPath's

21  pre-IPO shares, and misappropriated investor funds.

22      For a defendant to be found guilty of Count Three, the Government must prove each of the

23  following three elements beyond a reasonable doubt:

1    *First*, that there was a scheme or artifice to defraud or to obtain money or property by materially

2    false and fraudulent pretenses, representations, or promises.

3    *Second*, that the defendant you are considering knowingly, willfully, and with the intent to

4    defraud, devised or participated in the scheme or artifice.

5    *Third*, that an interstate or international wire communication was used in furtherance of the

6    scheme or artifice.

7    I will discuss each element in turn.

8    **Adapted from the parties' Requests to Charge; *United States v. Raji*, 19-CR-870 (JMF)**

9    **(S.D.N.Y. September 19, 2022); *United States v. Avenatti*, 19-cr-374 (JMF) (S.D.N.Y. February 1,**

10   **2022); *United States v. Lavidas*, 19 Cr. 716 (DLC) (S.D.N.Y. 2020); *United States v. Hoey*, 15 Cr. 229**

11   **(PAE) (S.D.N.Y. 2016); *United States v. Balkany*, 10 Cr. 441 (DLC) (S.D.N.Y. 2010); Sand, *Model***

12   ***Federal Jury Instructions-Criminal*, Instrs. 44-3; *see United States v. Calderon*, 944 F.3d 72, 85 (2d**

13   **Cir. 2019); *United States v. Weaver*, 860 F.3d 90, 94 (2d. Cir. 2017).**

14

15   Count Three — First Element: Existence of Scheme or Artifice

16   The first element that the Government must prove beyond a reasonable doubt with respect to

17   Count Three is that there was a scheme or artifice to defraud or to obtain money or property by means of

18   false or fraudulent pretenses, representations, or promises.

19   I have already instructed about the meaning of "scheme," "artifice," and "defraud," and you

20   should apply those instructions here.  The scheme charged in Count Three is also alleged to have been

21   carried out in part by making false or misleading representations, promises, and statements.  I have

22   already instructed you about the meaning of false or misleading representations, promises, and

23   statements, and you should apply those instructions here as well.

1       The deception need not be premised upon spoken or written words alone.  The arrangement of

2  the words, or the circumstances in which they are used may convey the false and deceptive appearance.

3  Indeed, conduct alone can deceive another, even in circumstances where a person's statements contain

4  no misrepresentation.  If there is deception, the manner in which it is accomplished does not matter.

5       Additionally, as with Count Two, the failure to disclose information may also constitute a

6  fraudulent representation if a defendant was under a legal, professional, or contractual duty to make such

7  a disclosure; the defendant actually knew such disclosure was required to be made; and the defendant

8  failed to make such disclosure with the intent to defraud.  Again, you should refer to my instructions for

9  Count Two with respect to whether and when a a duty to disclose exists.

10      As with Count Two, the false or fraudulent pretense, representation, promise, or omission must

11  relate to a "material" fact or matter.  I have already explained the meaning of the term "material" with

12  respect to Count Two, and you should apply those same instructions here.

13      In addition to proving that a pretense, representation, promise, or statement was false or

14  fraudulent and related to a material fact, in order to establish a scheme to defraud, the Government must

15  prove that the alleged scheme contemplated wrongly depriving another of money or property.  The

16  Government is not, however, required to prove that the defendant you are considering personally

17  originated the scheme to defraud.  Nor is the Government required to prove that the scheme or artifice to

18  defraud actually succeeded — that is, the Government is not required to prove that the intended victim

19  suffered any loss or harm.  Although whether or not the scheme actually succeeded is not the question,

20  you may consider whether it succeeded in determining whether the scheme existed.

21      A scheme to defraud need not be shown by direct evidence, but may be established by all of the

22  circumstances and facts in the case.

43

1       **Adapted from *United States v. Raji*, 19-CR-870 (JMF) (S.D.N.Y. September 19, 2022);**

2    **United States v. Avenatti, 19-cr-374 (JMF) (S.D.N.Y. February 1, 2022); United States v. Balkany,**

3    **10 Cr. 441 (DLC) (S.D.N.Y. 2010); United States v. Hoey, 15 Cr. 229 (PAE) (S.D.N.Y. 2016); Sand,**

4    **Model Federal Jury Instructions-Criminal, Instrs. 44-4; United States v. Chastain, 145 F.4th 282,**

5    **292 (2d Cir. 2025) ("To be guilty of wire fraud, a defendant must (1) 'devise' or 'intend to devise'**

6    **a scheme (2) to 'obtain money or property' (3) 'by means of false or fraudulent pretenses,**

7    **representations, or promises.'"); Kousisis v. United States, 145 S. Ct. 1382, 1391 (2025) ("[I]n all**

8    **cases, because money or property must be an *object* of the defendant's fraud, the traditional**

9    **property interest at issue 'must play more than some bit part in a scheme.' Obtaining the victim's**

10   **money or property must have been the 'aim,' not an 'incidental byproduct,' of the defendant's**

11   **fraud." (cleaned up)); Id. at 1392 ("[T]he wire fraud statute is agnostic about economic loss. The**

12   **statute does not so much as mention loss, let alone require it.").**

13

14      <u>Count Three — Second Element: Knowledge and Intent to Defraud</u>

15      The second element that the Government must establish beyond a reasonable doubt with respect

16  to Count Three is that the defendant you are considering devised or participated in the fraudulent scheme

17  knowingly, willfully, and with specific intent to defraud.

18      To "devise" a scheme to defraud is to concoct or plan it.  To "participate" in a scheme to defraud

19  means to associate oneself with it, with the intent to making it succeed.  Although a mere onlooker is not

20  a participant in a scheme to defraud, it is not necessary that a participant be someone who personally and

21  visibly executes the scheme to defraud.

22      I have already explained the meaning of the terms "knowingly," "willfully," and "intent to

23  defraud," and you should apply those instructions here.

44

1    As with Count Two, good faith on the part of a defendant is a complete defense to the charge of

2    wire fraud.  I previously instructed you on the meaning of "good faith," and you should apply those

3    instructions here.  I remind you, however, that a defendant has no burden to establish good faith.  The

4    burden is on the Government to prove fraudulent intent and the consequent lack of good faith beyond a

5    reasonable doubt.  Further, if the defendant you are considering participated in the scheme to defraud,

6    then a belief by that defendant, if such belief existed, that ultimately everything would work out so that

7    no one would lose any money does not mean that the defendant acted in good faith.

8    **Adapted from Adapted from *United States v. Raji*, 19-CR-870 (JMF) (S.D.N.Y. September**

9    **19, 2022); *United States v. Avenatti*, 19-cr-374 (JMF) (S.D.N.Y. February 1, 2022; *United States v.***

10    **_Lavidas_, 19 Cr. 716 (DLC) (S.D.N.Y. 2020); _United States v. Hoey_, 15 Cr. 229 (PAE) (S.D.N.Y.**

11    **2016); *United States v. Balkany*, 10 Cr. 441 (DLC) (S.D.N.Y. 2010); *United States v. Males*, 459 F.3d**

12    **154, 159 (2d Cir. 2006); *United States v. Rossomando*, 144 F.3d 197, 203 (2d Cir. 1998); *United***

13    **_States v. Middendorf_, 18 Cr. 36 (JPO), 2019 WL 4254025, at &7 (S.D.N.Y. Sept. 9, 2019); Sand,**

14    **Model Federal Jury Instructions-Criminal, Instrs. 44-5.**

15

16    Count Three — Third Element: Use of Interstate Wires

17    The third and final element that the Government must establish beyond a reasonable doubt with

18    respect to Count One is that an interstate wire (for example, a telephone call, email communication, text

19    message, or bank wire transfer) was used in furtherance of the scheme to defraud.

20    The "interstate" requirement means that the wire communication must pass between two or more

21    states.  This could include, for example, a telephone call between two different states, an email between

22    two different states, or a wire transfer between banks located in two different states.

1    To be in furtherance of the scheme, the wire communication must be incident to an essential part

2    of the scheme to defraud and must have been caused, directly or indirectly, by the defendant you are

3    considering.  It is not necessary for the defendant you are considering to be directly or personally

4    involved in any wire communication, as long as the communication is reasonably foreseeable in the

5    execution of the alleged scheme to defraud in which that defendant participated.  In this regard, it would

6    be sufficient to establish this element of the crime if the Government proved that the defendant you are

7    considering caused the wires to be used by others.  This does not mean that the defendant himself or

8    herself must have specifically authorized or directed others to execute a wire communication.  When a

9    person acts with knowledge that the use of wire facilities will follow in the ordinary course of business,

10   or where the use of wire facilities can reasonably be foreseen, even though not actually intended, then he

11   or she causes the wires to be used.  Furthermore, the requirement that an interstate wire facility was used

12   is satisfied even if a wire facility was used by a person with no knowledge of the fraudulent scheme,

13   including a victim of the alleged fraud, so long as the wire was in furtherance of the alleged scheme.

14   The use of a wire facility need not itself be fraudulent.  Stated another way, the material sent by

15   wire need not contain any fraudulent representation, or even any request for money.  It is sufficient if a

16   wire facility was used to further or assist in carrying out the scheme to defraud.

17   Only the use of a wire facility must be reasonably foreseeable, not its interstate

18   component.  Thus, if you find that the use of a wire facility was reasonably foreseeable, and an interstate

19   wire facility was actually used, then this element is satisfied even if it was not foreseeable that the wire

20   communication would cross state boundaries.

21   **Adapted from _United States v. Avenatti_, 19-cr-374 (JMF) (S.D.N.Y. February 1, 2022);**

22   **_United States v. Raji_, 19-CR-870 (JMF) (S.D.N.Y. September 19, 2022);  _United States v. Lavidas_, 19**

1 **Cr. 716 (DLC) (S.D.N.Y. 2020); *United States v. Balkany*, 10 Cr. 441 (DLC) (S.D.N.Y. 2010); *see***

2 ***United States v. Halloran*, 821 F.3d 321, 342 (2d Cir. 2016).**

3

4          Count Four — Investment Adviser Fraud: Elements of the Offense

5          Count Four charges all three defendants with investment adviser fraud.  Specifically, Count Four

6 charges that from at least in or about 2017 through in or about April 2022, the defendants engaged in a

7 scheme to defraud their clients regarding StraightPath's operations and investments, and

8 misappropriated client funds for their own enrichment.

9          For a defendant to be found guilty of Count Four, the Government must prove each of the

10 following four elements beyond a reasonable doubt:

11          *First*, that the defendant you are considering was an investment adviser.

12          *Second*, that the defendant you are considering did any one or more of the following:

13          (a) employed a device, scheme, or artifice to defraud an actual or prospective investor advisory

14 client;

15          (b) engaged in a transaction, practice, or course of business which operated as a fraud and deceit

16 upon those investment advisory clients or prospective investment advisory clients; or

17          (c) engaged in an act, practice, and course of business that was fraudulent, deceptive, and

18 manipulative.

19          *Third*, the defendant you are considering did whatever he or she did to satisfy the second element

20 knowingly, willfully, and with the intent to defraud an investor advisory client.

21          *Fourth*, the defendant you are considering did whatever he or she did to satisfy the second

22 element by use of the mails or an instrumentality of interstate commerce.

1      **Adapted from _United States v. Tagliaferri_, 13-CR-115 (RA) (S.D.N.Y. 2014); _United States v._**

2      **_Balboa_, No 12 Cr. 196 (S.D.N.Y. Dec. 17, 2013).**

3

4      Count Four — First Element: Investment Adviser

5      The first element the Government must prove beyond a reasonable doubt with respect to Count

6      Four is that the defendant you are considering was an investment adviser at the time he or she is alleged

7      to have committed investment adviser fraud.  To determine whether a defendant was an investment

8      adviser, you should primarily consider three factors:

9      _First_, whether that defendant provided advice or was an adviser that issued reports or analyses

10     regarding securities;

11     _Second_, whether that defendant was in the business of providing such advice; and

12     _Third_, whether that defendant was provided compensation for such advice.

13     Keep in mind that whether a person or entity is an investment adviser is a different issue than

14     whether or not the person or entity was a registered investment adviser.  You are instructed that

15     registration with the United States Securities and Exchange Commission as an investment adviser is not

16     required for you to find that a defendant is an investment adviser for purposes of Count Four.

17     **Adapted from _United States v. Tagliaferri_, 13-CR-115 (RA) (S.D.N.Y. 2014); _United States v._**

18     **_Balboa_, No 12 Cr. 196 (S.D.N.Y. Dec. 17, 2013); 15 U.S.C.A. § 80b-2(a)(11) (West) (defining**

19     **"Investment Adviser"); _United States Sec. & Exch. Comm'n v. Ahmed_, 308 F. Supp. 3d 628, 653 (D.**

20     **Conn. 2018) ("[T]he fact that [the defendant] was not licensed, certified, or registered with any**

21     **state or federal agency does not preclude him from being considered an investment adviser under**

22     **the Adviser's Act, as the Act's definition of an adviser turns on conduct, not certification or**

23     **registration." (citing _United States v. Onsa_, 523 Fed. Appx. 63, 65 (2d Cir. 2013)).**

1

2       Count Four — Second Element: Fraudulent Act

3       The second element the Government must prove beyond a reasonable doubt with respect to

4   Count Four is that the defendant you are considering did any one or more of the following:

5       (a) employed a device, scheme, or artifice to defraud an actual or prospective investor-client;

6       (b) engaged in a transaction, practice, or course of business which operated as a fraud and deceit

7   upon those investors or prospective investors; or

8       (c) engaged in an act, practice, and course of business that was fraudulent, deceptive, and

9   manipulative.

10      Any one of these types of alleged fraudulent conduct, if proven by the Government beyond a

11  reasonable doubt, is sufficient.  However, you must be in unanimous agreement as to which type of

12  unlawful conduct, if any, has been proved by the Government.

13      I instructed you on the meaning of "device," "scheme," "artifice to defraud," "fraud," and

14  "deceptive conduct" with respect to Count Two.  You should use those same instructions with respect to

15  Count Four, with the additional instructions I am about to give you.

16      I previously explained the concept of a "fiduciary duty" and that the failure to disclose material

17  information may constitute a fraud if the defendant you are considering had a fiduciary duty to make

18  such a disclosure and knowingly concealed that information.  For purposes of Count Four, I instruct you

19  that, as a matter of law, investment advisers have a fiduciary duty to their investment advisory clients.

20  That is, if you conclude that a defendant acted as an investment advisor, that defendant had an

21  affirmative duty of good faith, an affirmative duty to make full and fair disclosure of all material facts,

22  and an affirmative obligation to employ reasonable care to avoid misleading his or her clients.

49

1    An investment adviser's fiduciary duty, however, extends *only* to his or her client, not to the

2    general public.  Thus, if you decide that the defendant you are considering is an investment adviser, it

3    will also be up to you to determine who that defendant's "client" or "clients" were.  Ordinarily, an

4    investment adviser to a fund owes a fiduciary duty only to the fund itself — not to the investors in the

5    fund.  In some circumstances, however, the investor in a fund may qualify as a client of the fund's

6    investor adviser as well.  In deciding whether an investor in a fund is a client of the fund's investment

7    adviser, you should consider whether the investor received investment advice directly from the adviser,

8    whether the adviser played an active role with respect to the investor, and whether the adviser was

9    attuned to an individual investor' concerns.

10    Whether or not investors qualify as an investment adviser's "clients," investment advisers are

11    prohibited from making false or misleading statements to investors or prospective investors in funds

12    they advise and cannot defraud investors or prospective investors in those funds.

13    **Adapted from Government's Requested Charge; *United States v. Tagliaferri*, 13-CR-115**

14    **(RA) (S.D.N.Y. 2014); *United States v. Balboa*, No 12 Cr. 196 (S.D.N.Y. Dec. 17, 2013); *Transam.***

15    ***Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 17 (1979) ("[Section] 206 establishes 'federal fiduciary**

16    **standards to govern the conduct of investment advisers." (quoting *Santa Fe Indus., Inc. v. Green*,**

17    **430 U.S. 462, 471 n.11 (1977)); *Burks v. Lasker*, 441 U.S. 471, 481-82 n.10 (1979); *SEC v. Capital***

18    ***Gains Research Bureau, Inc.*, 375 U.S. 180, 191-92 (1963) (("The statute, in recognition of the**

19    **adviser's fiduciary relationship to his clients, requires that his advice be disinterested.")); *Sec. &***

20    ***Exch. Comm'n v. Rashid*, 96 F.4th 233, 240 (2d Cir. 2024) ("[The Act] imposed on advisers 'an**

21    **affirmative duty of utmost good faith, and full and fair disclosure of all material facts, as well as**

22    **an affirmative obligation to employ reasonable care to avoid misleading [their] clients.");**

23    ***Goldstein v. Securities and Exchange Commission*, 451 F.3d 873, 882 (D.C. Cir. 2006) (holding that**

50

1  a hedge fund adviser's "client," for purposes of the Advisers Act, is the hedge fund, not the hedge

2  fund investors and that "it is counterintuitive to characterize the investors in a hedge fund as the

3  'clients' of the adviser."); *id.* at 882-83 (rejecting SEC's rule that investors qualify as clients

4  because ("the Commission has not justified treating all investors in hedge funds as clients for the

5  purpose of the rule."); *id.* at 880 (describing a fund adviser as someone who "does not tell the

6  *investor* how to spend his money; the investor made that decision when he invested in the fund.

7  Having bought into the fund, the investor fades into the background; his role is completely

8  passive."); *United States v. Lay*, 612 F.3d 440, 446-47 (6th Cir. 2010) (quoting *Goldstein*, 451 F.3d at

9  883) (permitting the jury to determine whether a client-adviser relationship existed pursuant to

10  the Investment Adviser Act  and noting that"[*Goldstein*] did not hold that a hedge fund investor

11  could never be a client of a hedge fund adviser, or be owed a fiduciary duty by one, for purposes of

12  the criminal fraud provisions of the IAA."); *United States v. Lay*, 566 F. Supp. 2d 652, 670 (N.D.

13  Ohio 2008), aff'd, 612 F.3d 440 (6th Cir. 2010) ("The characteristics defining an adviser-client

14  relationship were determined by the *Goldstein* court to ordinarily be absent in hedge fund

15  scenarios, i.e., the investors do not receive investment advice directly from the adviser, the

16  investor's role is passive, the adviser has no obligation to ensure that fund investment decisions

17  are appropriate investments for each shareholder or obligation to disclose conflicts, and the

18  adviser's advice is not attuned to an individual investor's concerns."); *United States Sec. & Exch.*

19  *Comm'n v. SkiHawk Cap. Partners*, LLC, No. 21-CV-01776-MDB, 2023 WL 2574376, at *11 (D.

20  Colo. Mar. 20, 2023) ("Factors in determining whether an adviser-investor relationship exists

21  include: whether investors receive advice directly from the investment adviser; whether investors

22  are active in the fund's investment decisions; whether the investment adviser has an obligation to

23  ensure that the fund's investment decisions are appropriate investments for each shareholder; and

1  whether the investment adviser's advice is tailored to an investor's particularized needs."); *see*

2  *also SEC v. Lauer*, 478 F. App'x 550, 557 (11th Cir. 2012) (hedge fund adviser's conduct, including

3  "proffer[ing] advice directly to the Funds' investors when he hosted meetings and teleconferences

4  with investors, and [suggesting] in the Funds' newsletter that his market strategy could beat

5  market returns" brought him within the bounds of the term "investment for purposes of the

6  Advisers Act); *United States Sec. & Exch. Comm'n v. Jarkesy*, 603 U.S. 109, 116 (2024) ("Section

7  206(b), as implemented by Rule 206(4)–8, prohibits investment advisers from making 'any untrue

8  statement of a material fact' or engaging in 'fraudulent, deceptive, or manipulative' acts with

9  respect to investors or prospective investors. 17 C.F.R. §§ 275.206(4)–8(a)(1), (2); *see* 15 U.S.C. §

10  80b–6(4)").  *But see S.E.C. v. Northshore Asset Mgmt.*, No. 05-CV-2192 (WHP), 2008 WL 1968299,

11  at *6 (S.D.N.Y. May 5, 2008) (granting summary judgment on an SEC Advisers Act claim

12  "[b]ecause under the Advisers Act, Saludtti's clients were the Ardent Entities, a failure to disclose

13  information or misrepresentations to the Ardent Entities investors cannot form the basis for a

14  claim that Saldutti breached his fiduciary duties to the Ardent Entities."); *Rose v. Rahfco Mgmt.*

15  *Grp., LLC*, No. 13-CV-5804 (VB), 2014 WL 7389900, at *8 (S.D.N.Y. Dec. 15, 2014) (holding that

16  "plaintiffs' claims for … breach of fiduciary duty against movants are dismissed" in part because

17  investment adviser owes fiduciary duties only to the hedge fund").

18

19      Count Four — Third Element: Knowledge, Intent, and Willfulness

20      The third element the Government must prove beyond a reasonable doubt with respect to Count

21  Four is that the defendant you are considering did whatever he or she did to satisfy the second element

22  knowingly, willfully, and with the specific intent to defraud.  I have already explained the meaning of

23  the terms "willfully," "knowingly," and "intent to defraud," and you should apply those instructions

1    here.  As with the earlier counts, let me advise you that since an essential element of the crime charged

2    is intent to defraud, it follows that "good faith," as I have defined before, on the part of a defendant is

3    also a complete defense to a charge of investment adviser fraud.

4

5    Count Four — Fourth Element: Interstate Nexus

6        The fourth element the Government must prove beyond a reasonable doubt with respect to Count

7    Four is that the defendant you are considering did whatever he or she did to satisfy the second element

8    by using the mails or an instrumentality of interstate commerce, such as interstate telephone or wire

9    communications.  I previously discussed the meaning of the terms "mails" and "instrumentality of

10    interstate commerce," and you should apply those instructions here too.

11    **Adapted from the Parties' Requested Charge.**

12

13    Count Six — Obstruction of Justice: Elements

14        The last of the substantive charges, Count Six, charges two of the defendants — Mr. Castillero

15    and Mr. Martinsen — with obstructing justice.  Specifically, it charges that, in or about May 2021, these

16    defendants obstructed the SEC's investigation into StraightPath by deleting email accounts subpoenaed

17    by the SEC and falsely representing to the SEC that such email accounts had never existed.

18        For a defendant to be found guilty of Count Six, the Government must prove each of the

19    following two elements beyond a reasonable doubt:

20        *First*, that the defendant you are considering knowingly altered, destroyed, or caused to be

21    altered or destroyed, a record or document.

1      *Second*, that the defendant you are considering acted with the intent to impede, obstruct, or

2   influence an investigation of a matter within the jurisdiction of an agency of the United States, or in

3   relation to or contemplation of any such matter or case.

4      **Adapted from Government's Requested Charge; Sand, *et al.*, *Modern Federal Jury***

5   ***Instructions*, 46-82; *United States v. Goel*, 22-CR-396 (PKC); *United States v. Calypso*, 17 Cr. 224**

6   **(VEC); *United States v. Coll*, 15 Cr. 360 (LAP); *United States v. Fitts*, 19 Cr. 341 (RA); *United***

7   ***States v. Scott*, 979 F.3d 986 (2d Cir. 2020); *United States v. Gray*, 642 F.3d 371, 372 (2d Cir. 2011).**

8

9      Count Six — First Element: Alteration or Destruction of a Record or Document

10     The first element that the Government must prove beyond a reasonable doubt with respect to

11  Count Six is that the defendant you are considering knowingly altered, destroyed, or caused to be altered

12  or destroyed, a record or document.  I have previously instructed you on the meaning of "knowingly,"

13  and you should apply that definition here.

14     **Adapted from Government's Requested Charge; Sand, *et al.*, *Modern Federal Jury***

15  ***Instructions*, 46-82; *United States v. Goel*, 22-CR-396 (PKC); *United States v. Calypso*, 17 Cr. 224**

16  **(VEC); *United States v. Coll*, 15 Cr. 360 (LAP); *United States v. Fitts*, 19 Cr. 341 (RA); *United***

17  ***States v. Scott*, 979 F.3d 986 (2d Cir. 2020); *United States v. Gray*, 642 F.3d 371, 372 (2d Cir. 2011).**

18

19     Count Six — Second Element: Intent to Obstruct

20     The second element that the Government must establish beyond a reasonable doubt with respect

21  to Count Six is that the defendant you are considering intended to impede, obstruct, or influence an

22  investigation or matter that falls within the jurisdiction of a department or agency of the federal

1  government. I instruct you that the United States Securities and Exchange Commission, or SEC, is an

2  agency of the federal government.

3       Although the Government must prove that the defendant you are considering intended to impede,

4  obstruct, or influence an investigation, it need not prove that a federal investigation was ongoing or

5  imminent at the time that defendant acted or that he was aware that his conduct would impede, obstruct,

6  or influence an investigation that was federal in nature. The Government is required to prove only that

7  the defendant you are considering acted in contemplation of a potential investigation.

8       **Adapted from Government's Requested Charge; Sand, *et al.*, *Modern Federal Jury***

9  ***Instructions*, 46-82; *United States v. Goel*, 22-CR-396 (PKC); *United States v. Calypso*, 17 Cr. 224**

10  **(VEC); *United States v. Coll*, 15 Cr. 360 (LAP); *United States v. Fitts*, 19 Cr. 341 (RA); *United***

11  ***States v. Scott*, 979 F.3d 986 (2d Cir. 2020); *United States v. Gray*, 642 F.3d 371, 372 (2d Cir. 2011).**

12

13      Aiding and Abetting Liability

14       Finally, in addition to charging the defendants with the substantive crimes of securities fraud,

15  wire fraud, investment adviser fraud, and obstruction of justice, Counts Two, Three, Four, and Six also

16  charge the defendants charged in that count with what is called aiding and abetting.

17       Aiding and abetting liability is its own theory of criminal liability. In effect, it is a theory of

18  liability that permits a person to be guilty of a specified crime if that person, while not committing the

19  crime, assisted another person or persons in committing the crime. In other words, as to the relevant

20  predicate acts and crimes, a person can be guilty if he or she committed the crime himself or aided and

21  abetted the commission of the crime by one or more other people. For example, if the Government

22  proves beyond a reasonable doubt that a defendant committed the substantive securities fraud alleged in

23  Count Two, then you need not consider aiding and abetting with respect to that count. If, however, you

1    find that the Government did not prove beyond a reasonable doubt that a defendant engaged in the

2    securities fraud charged in Count Two, to continue using that count as an example, you should consider

3    whether the Government has nonetheless proved beyond a reasonable doubt that that defendant aided

4    and abetted someone else in the commission of securities fraud as alleged in that count.  And again,

5    while I have used Count Two as an example, this concept of aiding and abetting is also alleged in

6    Counts Three, Four, and Six as to the defendants charged in each of those counts.

7        Under the federal aiding and abetting statute, whoever "aids, abets, counsels, commands, induces

8    or procures" the commission of an offense is punishable as a principal.  You should give these words

9    their ordinary meaning.  A person aids or abets a crime if he or she knowingly does some act for the

10   purpose of aiding or encouraging the commission of that crime, with the intention of causing the crime

11   charged to be committed.  To "counsel" means to give advice or recommend.  To "induce" means to

12   lead or move by persuasion or influence as to some action or state of mind.  To "procure" means to

13   bring about by unscrupulous or indirect means.

14       A person who aids and abets another to commit an offense is just as guilty as if he or she

15   committed it himself.  As you can see, the first requirement is that the crime charged was actually

16   committed.  Obviously, no one can be guilty of aiding and abetting the criminal acts of another if no

17   crime was committed by the other person.  But if a crime was committed, then you may consider

18   whether the defendant you are considering or another person aided or abetted the commission of the

19   crime.

20       To aid and abet another in the commission of a crime, it is necessary that a person acted with the

21   same criminal intent necessary for the principal to be guilty, willfully and knowingly associated him or

22   herself in some way with the crime, and willfully and knowingly sought by some act to help make the

23   crime succeed.  Participation in a crime is willful if action is taken voluntarily and intentionally.

1    The mere presence of a person where a crime is being committed, even coupled with knowledge

2    by the person that a crime is being committed, or the mere acquiescence by that person in the criminal

3    conduct of others, even with guilty knowledge, is insufficient to establish aiding and abetting.

4    The Government must prove that an aider and abettor took some conscious action that furthered

5    the commission of the crime and that he or she did so with the intent to bring about the crime.  To

6    determine whether a person aided and abetted a crime, ask yourself:

7        1.  Did the person participate in the crime charged as something he or she wished to bring

8           about?

9        2.  Did the person associate him or herself with the criminal venture knowingly and willfully?

10       3.  Did the person seek by his or her actions to make the criminal venture succeed?

11   If, but only if, the Government proves beyond a reasonable doubt that the answer to all three of

12   these questions is "yes," then a person is an aider and abettor, and therefore guilty of the offense.

13   A person can also be found guilty of a crime if he "willfully caused" another person to commit

14   the crime.  I previously instructed you on the meaning of "willfully," and you should apply those

15   instructions here.  To "cause" means to bring something about, to effect something.  So "willfully

16   caused" means that it is not necessary for the person himself to have physically committed the crime to

17   be guilty of that crime.

18   To determine whether a person "willfully caused" the commission of a substantive crime, ask

19   yourself:

20       1.  Did the person intentionally take action that caused someone else to commit an act that

21          would have been a crime if the person him or herself had committed that act?

22       2.  Did the person intend that the crime would actually be committed by someone else?

1    If the Government proves beyond a reasonable doubt that the answer to both of these questions is

2  "yes," then the person willfully caused another to commit the crime at issue, and he or she is therefore

3  guilty of the offense as if the person him or herself had physically committed it.  The Government need

4  not prove that the person acted through an intermediary who was guilty of a crime.  A person who

5  willfully caused another to commit a crime may be found guilty of that crime even if he or she acted

6  through someone who is entirely innocent of the crime.

7    **Adapted from _United States v. Ramirez_, 20-CR-22 (JMF) (S.D.N.Y. 2024); _United States v._**

8  **_Pabon_, 18 Cr. 319 (SHS) (S.D.N.Y. 2022); _United States v. Berry_, 20 Cr. 84 (AJN) (2021); _United_**

9  **_States v. Mack_, 18 Cr. 834 (PAE) (S.D.N.Y. 2019); _United States v. Lopez-Cabrera_, S5 11-CR-s1032**

10  **(PAE) (S.D.N.Y. 2014); _United States v. Goel_, 22-CR-396 (PKC).**

11

12    Counts One and Five — The Conspiracy Charges: Elements

13    That completes my instructions as to Counts Two, Three, Four, and Six, the substantive counts.

14  Let me turn, then, to the conspiracy charges, Counts One and Five.

15    Count One charges that from at least in or about 2017 through in or about April 2022, all three

16  defendants conspired to commit securities fraud, wire fraud, and investment adviser fraud.

17    Count Five charges that, in or about May 2021, two of the defendants — Mr. Castillero and Mr.

18  Martinsen — conspired to obstruct justice.

19    For a defendant to be found guilty of Count One or Count Five, the Government must prove each

20  of the following three elements beyond a reasonable doubt:

21    _First_, that the conspiracy charged in the Count you are considering existed.

22    _Second_, that the defendant you are considering knowingly and intentionally became a member of

23  the conspiracy, with intent to commit at least one of the goals or objects of the conspiracy.

1    *Third*, that any one of the members of the conspiracy knowingly committed at least one overt act

2    in furtherance of the conspiracy.

3    I will now explain each element in more detail.

4    **Adapted from *United States v. United States v. Giannelli* 20-CR-160 (MKV) (S.D.N.Y.**

5    **2022); *United States v. Raji*, 19-CR-870 (JMF) (S.D.N.Y. 2022); Sand, *Modern Federal Jury***

6    ***Instructions*, Instr. 19-3 (2025); *United States v. Goel*, 22-CR-396 (PKC).**

7

8    Counts One and Five — First Element: Existence of the Conspiracy

9    The first element the Government must prove beyond a reasonable doubt with respect to Counts

10   One and Five is the existence of the conspiracy charged in the count you are considering.

11   So, what is a conspiracy?  A conspiracy is an agreement or an understanding, between two or

12   more persons, to accomplish by joint action a criminal or unlawful purpose.  If you find beyond a

13   reasonable doubt that two or more persons came to an understanding, explicitly or implicitly (that is,

14   spoken or unspoken), to violate the law and to accomplish an unlawful plan, then the Government will

15   have sustained its burden of proof as to this element.

16   To satisfy its burden of proof on this element, the Government is not required to show that two

17   or more people sat around a table and entered into a solemn pact, orally or in writing, stating that they

18   had formed a conspiracy and spelling out who would do what in order to carry out the unlawful project.

19   Common sense tells you that when people, in fact, agree to enter into a criminal conspiracy, much is left

20   to unexpressed understanding.  In determining whether a conspiracy existed, you may consider direct as

21   well as circumstantial evidence.

22   When people enter into a conspiracy to accomplish an unlawful end, they become agents and

23   partners of one another in carrying out the conspiracy.  In determining whether there has been an

59

1  unlawful agreement as alleged, you may consider the acts and conduct of the alleged co-conspirators

2  that were done to carry out the apparent criminal purpose.  The old adage, "Actions speak louder than

3  words," applies here.  Often, the only evidence that is available with respect to the existence of a

4  conspiracy is that of disconnected acts and conduct on the part of the alleged individual co-conspirators.

5  When taken together and considered as a whole, however, these acts and conduct may warrant the

6  inference that a conspiracy existed as conclusively as would direct proof.

7       The objects — or objectives — of a conspiracy are the illegal goals the co-conspirators agree

8  upon or hope to achieve.  As I have mentioned, there are three objects of the conspiracy charged in

9  Count One of the Indictment — first, securities fraud; second, wire fraud; and third, investment adviser

10  fraud.  In order to prove that a defendant is guilty of the conspiracy offense charged in Count One, the

11  Government must establish beyond a reasonable doubt that the defendant you are considering agreed

12  with others to commit one or more of these offenses.  The Government does not need to prove that the

13  conspirators agreed to all three objects of the conspiracy.  To convict, however, you must be unanimous

14  as to at least one type of unlawful conduct that was the object of the conspiracy joined by the defendant.

15       The sole object of the conspiracy with which Mr. Castillero and Mr. Martinsen are charged in

16  Count Five is obstruction of justice.  Accordingly, in order to prove that a defendant is guilty of the

17  conspiracy offense charged in Count Five, the Government must establish beyond a reasonable doubt

18  that the defendant you are considering agreed with others to obstruct justice.

19       I have already explained these substantive crimes to you, and you should apply those instructions

20  here to determine whether the defendant you are considering conspired, or agreed, to commit any of

21  those crimes.

22       **Adapted from _United States v. Raji_, 19-CR-870 (JMF) (S.D.N.Y. 2022); _United States v._**

23  **_Goel_, 22-CR-396 (PKC);  Sand, Modern Federal Jury Instructions, Instr. 19-4; _United States v._**

1    **_Dambelly_, 16 Cr. 002 (JMF) (S.D.N.Y. 2016); _United States v. Lavidas_, 19 Cr. 716 (DLC) (S.D.N.Y.**

2    **2020); _United States v. Campos_, 16 Cr. 395 (VEC) (S.D.N.Y. 2017); _see also United States v. Rea_,**

3    **958 F.2d 1206, 1214 (2d Cir. 1992) ("In order to prove conspiracy, the government need not**

4    **present evidence of an explicit agreement; proof of a tacit understanding will suffice. The**

5    **coconspirators need not have agreed on the details of the conspiracy, so long as they have agreed**

6    **on the essential nature of the plan, and their goals need not be congruent, so long as they are not**

7    **at cross-purposes."); _United States v. Montour_, 944 F.2d 1019, 1025 (2d Cir. 1991) ("To prove the**

8    **existence of an agreement, the government need not present evidence of a formal arrangement**

9    **between the co-conspirators. Rather, it is sufficient if the government can demonstrate that the**

10    **defendant acted together with others to realize a common goal.").**

11

12        Counts One and Five — Second Element: Membership in the Conspiracy

13        The second element the Government must prove beyond a reasonable doubt with respect to

14 Counts One and Five is that the defendant you are considering knowingly and willfully became a

15 member of the conspiracy you are considering — that is, that that defendant participated in the

16 conspiracy with knowledge of its unlawful purpose or purposes and in furtherance of its unlawful

17 objective or objectives.

18        The Government must prove beyond a reasonable doubt that the defendant you are considering

19 knowingly and willfully entered into the conspiracy with a criminal intent — that is, with an unlawful

20 purpose — and that he or she agreed to take part in the conspiracy with knowledge of its unlawful

21 purpose or purposes and with the specific intention of furthering its objective or objectives.

22        I have already explained the meaning of the terms "willfully" and "knowingly," and you should

23 apply those instructions here.

1    It is not necessary for the Government to show that a defendant was fully informed as to all the

2    details of the conspiracy in order for you to infer knowledge on his or her part.  To have guilty

3    knowledge, a defendant need not have known the full extent of the conspiracy, or all of the activities of

4    all its participants.  It is not even necessary that a defendant knew every other member of the conspiracy.

5    When people enter into a conspiracy to accomplish an unlawful end, they become agents or

6    partners of one another in carrying out the conspiracy.  In determining the factual issues before you, you

7    may, but are not required to, take into account any acts or statements made by a defendant's co-

8    conspirators (if any), which were made during, in the course of, and in furtherance of the conspiracy,

9    even though such acts or statements were not made in the presence of that defendant or were made

10    without his or her knowledge.  Acts or statements made in furtherance of the common purpose of the

11    conspiracy are deemed, under the law, to be the acts or statements of all of the members, and all of the

12    members are responsible for such acts or statements.

13    Indeed, each member of a conspiracy may perform separate and distinct acts and may perform

14    them at different times.  Some conspirators may play major roles, while others play minor roles.  An

15    equal role is not what the law requires.  In fact, even a single act may be sufficient to draw a defendant

16    within the scope of the conspiracy.

17    Nor is it necessary that a defendant received any monetary benefit from his participation in the

18    conspiracy, or had a financial stake in the outcome, so long as he or she in fact joined in the conspiracy

19    in the manner I have explained.

20    Keep in mind, however, that a person may know, assemble with, associate with, or be friendly

21    with, one or more members of a conspiracy, without being a conspirator him or herself.  Mere similarity

22    of conduct or the fact that a defendant may have discussed common aims and interests does not

23    necessarily establish proof of the existence of a conspiracy or that defendant's membership in the

62

1    conspiracy.  I also want to caution you that mere knowledge or acquiescence, without participation, in

2    the unlawful plan is not sufficient.

3        Moreover, the fact that the acts of a defendant, without knowledge, merely happen to further

4    the purposes or objectives of the conspiracy, does not make that defendant a member of the conspiracy.

5    More is required under the law.  What is necessary is that the defendant must have participated with

6    knowledge of at least some of the illegal purposes or objects of the conspiracy and with the intention of

7    aiding in the accomplishment of those unlawful ends.

8        The duration and extent of a defendant's participation has no bearing on the issue of that

9    defendant's guilt.  He or she need not have joined the conspiracy at the outset, and may have joined it at

10   any time in its progress.

11       Once a conspiracy is formed, it is presumed to continue until either its objective is accomplished

12   or there is some affirmative act of termination by the members.  So too, once a person is found to be a

13   member of a conspiracy, he or she is presumed to continue as a member in the conspiracy until the

14   conspiracy is terminated, unless it is shown by some affirmative proof that the person withdrew and

15   disassociated him or herself from the conspiracy.

16       In sum, you must find beyond a reasonable doubt that the defendant you are considering, with

17   an understanding of the unlawful character of the conspiracy you are considering, intentionally engaged,

18   advised, or assisted in the conspiracy for the purpose of furthering the illegal undertaking.  He or she

19   thereby becomes a knowing and willing participant in the unlawful agreement — that is to say, a

20   conspirator.

21       **Adapted from Parties' Requests to Charge;** *United States v. Raji*, **19-CR-870 (JMF)**

22   **(S.D.N.Y. 2022);** *United States v. Goel*, **22-CR-396 (PKC); Sand,** *Modern Federal Jury Instructions*,

23   **Instrs. 19-6, 3A-1, 3A-3;** *United States v. Dambelly*, **16 Cr. 002 (JMF) (S.D.N.Y. 2016);** *see also*

1  **_United States v. Aleskerova_, 300 F.3d 286, 292-93 (2d Cir. 2002) (describing manner in which**

2  **government may show participation in conspiracy with required state of mind); _United States v._**

3  **_Rea_, 958 F.2d 1206, 1214 (2d Cir. 1992) ("The defendant's knowledge of the conspiracy and**

4  **participation in it with the requisite criminal intent may be established through circumstantial**

5  **evidence. A defendant need not have joined a conspiracy at its inception in order to incur liability**

6  **for the unlawful acts of the conspiracy committed both before and after he or she became a**

7  **member.") (citations omitted).**

8

9      Counts One and Five — Third Element: Overt Act

10     The third element the Government must prove beyond a reasonable doubt with respect to Counts

11  One and Five is that at least one overt act was committed in furtherance of the conspiracy that you are

12  considering by at least one of the co-conspirators — not necessarily any of the defendants.

13     That means there must have been something more than mere agreement; some overt step or

14  action must have been taken by at least one of the conspirators in furtherance of the conspiracy you are

15  considering.  To put it another way, the agreement must have gone beyond merely talking.

16     You need not reach unanimous agreement on whether a particular overt act was committed in

17  furtherance of the conspiracy you are considering.  But to find this element, you must all agree that at

18  least one overt act was committed.  Moreover, you need not find that a defendant in this case committed

19  the overt act him or herself.  It is sufficient for the Government to show that any conspirator knowingly

20  committed an overt act in furtherance of the conspiracy you are considering, since such an act becomes,

21  in the eyes of the law, the act of all of the members of the conspiracy.

22     In addition, you should bear in mind that the overt act, standing alone, may be an innocent,

23  lawful act.  Frequently, however, an apparently innocent act sheds its harmless character if it is a step in

1  carrying out, promoting, aiding, or assisting a conspiracy.  You are therefore instructed that the overt act

2  does not have to be an act that in and of itself is criminal or an objective of the conspiracy.

3        **Adapted from *United States v. Giannelli*, 20-CR-160 (MKV) (S.D.N.Y 2022); Sand, *Modern***

4  ***Federal Jury Instructions*, Instr. 19-7 (2025); *United States v. Goel*, 22-CR-396 (PKC); *United States***

5  ***v. Salmonese*, 352 F.3d 608, 619 (2d Cir. 2003) ("[T]he overt act element of a conspiracy charge**

6  **may be satisfied by an overt act that is not specified in the indictment"); *United States v. Kozeny*,**

7  **667 F.3d 122, 131–32 (2d Cir. 2011) ("the government may plead one set of overt acts in the**

8  **indictment and prove a different set of overt acts at trial without prejudice to the defendant");**

9  ***United States v. Mackey*, 652 F. Supp. 3d 309, 325 (E.D.N.Y. 2023) ("In the Second Circuit,**

10  **essential conduct, also known as conduct constituting the offense, has occurred any place where**

11  **either the conspiratorial agreement was formed,, or any overt act was (1) committed for the**

12  **purpose of accomplishing the objectives of the conspiracy, so long as it was (2) reasonably**

13  **foreseeable that the overt act would occur in that location." (cleaned up)); *United States v.***

14  ***Ramirez-Amaya*, 812 F.2d 813, 816 (2d Cir. 1987) ("As to a charge of conspiracy, venue may**

15  **properly be laid in the district in which the conspiratorial agreement was formed or in any district**

16  **in which an overt act in furtherance of the conspiracy was committed by any of the**

17  **coconspirators.").**

18

19       <u>Multiple Conspiracies</u>

20       With respect to Count One, which charges all three defendants with conspiracy to commit

21  securities fraud, wire fraud, and investment adviser fraud, the defendants argue that there were actually

22  several separate and independent conspiracies with various groups of members.

65

1    Whether there existed a single unlawful agreement, or many such agreements, or indeed, no

2    agreement at all, is a question of fact for you, the jury, to determine in accordance with the instructions I

3    just gave you.

4    When two or more people join together to further one common unlawful design or purpose, a

5    single conspiracy exists.  By way of contrast, multiple conspiracies exist when there are separate

6    unlawful agreements to achieve distinct purposes.

7    Proof of several separate and independent conspiracies is not proof of the single, overall

8    conspiracy charged in Count One unless one of the conspiracies proved happens to be the single

9    conspiracy described in that Count.

10    You may find that there was a single conspiracy despite the fact that there were changes in

11    personnel, activities, or both, so long as you find beyond a reasonable doubt that some of the co-

12    conspirators continued to act for the duration of the conspiracy for the purposes charged in Count One.

13    The fact that the members of a conspiracy are not always identical does not necessarily imply that

14    separate conspiracies exist.  In addition, the existence of subgroups or subunits within a larger

15    conspiracy does not necessarily mean that the larger conspiracy does not exist.

16    On the other hand, if you find that the conspiracy charged in Count One did not exist, you cannot

17    find any defendant guilty of the single conspiracy charged in Count One.  This is so even if you find that

18    some conspiracy other than the one charged in Count One existed, even though the purposes of both

19    conspiracies may have been the same, and even though there may have been some overlap in

20    membership.

21    Similarly, if you find that the defendant you are considering was a member of another

22    conspiracy, and not the one charged in Count One, then you must acquit that defendant of the conspiracy

66

1    charged in Count One.  A person can be part of more than one conspiracy at the same time, and his or

2    her actions can further the interests of more than one conspiracy at the same time.

3        Therefore, what you must do is determine whether the conspiracy charged in Count One existed.

4    If it did, you then must determine the nature of the conspiracy and who were its members.

5        **Adapted from the Parties' Supplemental Requests to Charge; Sand, *Modern Federal Jury***

6    ***Instructions - Criminal*, Instr. 19-5; *United States v. Blondet*, 16-CR-387 (JMF) (S.D.N.Y. 2022).**

7

8        Venue

9        In addition to all of the elements that I have described for you, in order to convict a defendant on

10   any count of the Indictment, you must also decide whether any act in furtherance of the crime charged

11   occurred within the Southern District of New York.  The Southern District of New York includes

12   Manhattan and the Bronx.

13       The Government need not prove that the crime charged was committed entirely in this District or

14   that the defendant you are considering was present here.  It is sufficient to establish venue if any act in

15   furtherance of the crime occurred within the Southern District of New York and it was reasonably

16   foreseeable to the defendant you are considering that the act would take place in the Southern District of

17   New York.  Any action in this District or any communication into or out of this District can establish

18   venue so long as the action or communication furthered the charged offense.  If you find that the crime

19   charged was committed in more than one district, venue is proper in any district in which the crime was

20   begun, continued, or completed.

21       I should note that on this issue — and this issue alone — the Government's burden is not proof

22   beyond a reasonable doubt, but only proof by a preponderance of the evidence.  Thus, the Government

23   has satisfied its venue obligations as to a count if you conclude that it is more likely than not that any act

1    in furtherance of the crime charged in that count occurred in the Southern District of New York.  By

2    contrast, if you find that the Government failed to prove venue by a preponderance of the evidence with

3    regard to any count, then you must acquit the defendant you are considering of that count.

4    **Adapted from Government's Request to Charge;** *United States v. Blondet*, **16 Cr. 387 (JMF)**

5    **(S.D.N.Y. 2022).**

6

7    <u>Variance of Dates and Amounts</u>

8         The Indictment refers to various dates and amounts.  I instruct you that it does not matter if a

9    specific event is alleged to have occurred on or about a certain date or month, but the evidence indicates

10   that in fact it was a different date or month.  Nor does it matter if the Indictment alleges that a

11   transaction involved a specific number of shares or amount of money, but the evidence indicates that it

12   was a different amount.  The law requires only a substantial similarity between the dates, months, and

13   amounts alleged in the Indictment and the dates, months, and amounts established by the evidence.

14   **Adapted from Government's Request to Charge;** *United States v. Blondet*, **16 Cr. 387 (JMF)**

15   **(S.D.N.Y. 2022).**

16

17                        **III. CONCLUDING INSTRUCTIONS**

18   <u>Selection of the Foreperson</u>

19        In a few minutes, you are going to go into the jury room and begin your deliberations.  Your first

20   task will be to select a foreperson.  The foreperson has no greater voice or authority than any other juror

21   but is the person who will communicate with me when questions arise and when you have reached a

22   verdict and who will be asked in open court to pass your completed Verdict Form to me.  Notes should

23   be signed by the foreperson and should include the date and time they were sent.  They should also be as

1    clear and precise as possible.  Any notes from the jury will become part of the record in this case.  So

2    please be as clear and specific as you can be in any notes that you send.  Do not tell me or anyone else

3    how the jury stands on any issue until after a unanimous verdict is reached.

4

5          Right to See Exhibits and Hear Testimony

6          All of the exhibits will be given to you near the start of deliberations.  In addition, you will also

7    be provided with a list of all the exhibits that were received into evidence.

8          If you want any of the testimony submitted to you or read back to you, you may also request that.

9    Keep in mind that if you ask for testimony, however, the court reporters must search through their notes,

10    the parties must agree on what portions of testimony may be called for, and if they disagree, I must

11    resolve those disagreements.  That can be a time-consuming process.  So please try to be as specific as

12    you possibly can in requesting portions of the testimony, if you do.

13          Again, your requests for testimony — in fact, any communication with the Court — should be

14    made to me in writing, signed by your foreperson with the date and time, and given to one of the Court

15    Security Officers.

16

17          Juror Note-Taking

18          If any one of you took notes during the course of the trial, you should not show your notes to, or

19    discuss your notes with, any other jurors during your deliberations.  Any notes you have taken are to be

20    used solely to assist you.  The fact that a particular juror has taken notes entitles that juror's views to no

21    greater weight than those of any other juror.  Finally, your notes are not to substitute for your

22    recollection of the evidence in the case.  If, during your deliberations, you have any doubt as to any of

1    the testimony, you may — as I just told you — request that the official trial transcript that has been

2    made of these proceedings be submitted or read back to you.

3

4    <u>Bias, Prejudice, and Sympathy</u>

5           All of us, no matter how hard we try, tend to look at others and weigh what they have to say

6    through the lens of our own experience and background.  We each have a tendency to stereotype others

7    and make assumptions about them.  Often, we see life and evaluate evidence through a clouded filter

8    that tends to favor those like ourselves.  You must do the best you can to put aside such stereotypes, for

9    all litigants and witnesses are entitled to a level playing field.

10          In particular, it would be improper for you to consider, in reaching your decision as to whether

11    the Government sustained its burden of proof, any personal feelings you may have about the defendants'

12    race, religion, national origin, gender, sexual orientation, or age.  Similarly, it would be improper for

13    you to consider any personal feelings you may have about the race, religion, national origin, gender,

14    sexual orientation, or age of any witness or anyone else involved in this case.

15          Indeed, under your oath as jurors, you are not to be swayed by bias, prejudice, or sympathy.  You

16    are to be guided solely by the evidence in this case, and as you sift through the evidence, the crucial

17    question that you must ask yourselves for each count is:  Has the Government proved each element of

18    each count beyond a reasonable doubt?

19          It is for you and you alone to decide whether the Government has sustained its burden of proving

20    each defendant's guilt beyond a reasonable doubt, solely on the basis of the evidence or lack of evidence

21    and subject to the law as I have instructed you.

22          It must be clear to you that once you let prejudice, bias, or sympathy interfere with your thinking,

23    there is a risk that you will not arrive at a true and just verdict.

1    If you have a reasonable doubt as to a defendant's guilt with respect to a particular count, then

2    you must render a verdict of not guilty as to that defendant on that count.  On the other hand, if you

3    should find that the Government has met its burden of proving the guilt of a defendant beyond a

4    reasonable doubt with respect to a particular count, then you should not hesitate because of sympathy or

5    any other reason to render a verdict of guilty as to that defendant on that count.

6    I also caution you that, under your oath as jurors, you cannot allow to enter into your

7    deliberations any consideration of the punishment that may be imposed upon a defendant if he or she is

8    convicted.  The duty of imposing a sentence in the event of conviction rests exclusively with the Court,

9    and the issue of punishment may not affect your deliberations as to whether the Government has proved

10   a defendant's guilt beyond a reasonable doubt.

11

12       Duty to Deliberate

13   The most important part of this case, members of the jury, is the part that you as jurors are now

14   about to play as you deliberate on the issues of fact.  I know you will try the issues that have been

15   presented to you according to the oath that you have taken as jurors.  In that oath you promised that you

16   would well and truly try the issues joined in this case and a true verdict render.

17   As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity

18   to express your own views.  Every juror should be heard.  No one juror should hold the center stage in

19   the jury room and no one juror should control or monopolize the deliberations.  If, after listening to your

20   fellow jurors and if, after stating your own view, you become convinced that your view is wrong, do not

21   hesitate because of stubbornness or pride to change your view.  On the other hand, do not surrender your

22   honest beliefs solely because of the opinions of your fellow jurors or because you are outnumbered.

1    Your verdict must be unanimous.  If at any time you are not in agreement, you are instructed that

2    you are not to reveal the standing of the jurors, that is, the split of the vote, to anyone, including me, at

3    any time during your deliberations.

4

5    Return of the Verdict

6    We have prepared a Verdict Form for you to use in recording your decisions, a copy of which is

7    attached to these instructions.  Do not write on your individual copies of the Verdict Form.  My staff

8    will give the official Verdict Form to Juror Number One, who should give it to the foreperson after the

9    foreperson has been selected.

10    You should draw no inference from the questions on the Verdict Form as to what your verdict

11    should be.  The questions are not to be taken as any indication that I have any opinion as to how they

12    should be answered.

13    After you have reached a verdict, the foreperson should fill in the Verdict Form and note the date

14    and time, and you should all sign the Verdict Form.  The foreperson should then give a note — **not** the

15    Verdict Form itself — to the Court Security Officer outside your door stating that you have reached a

16    verdict.  Do not specify what the verdict is in your note.  Instead, the foreperson should retain the

17    Verdict Form and hand it to me in open court when I ask for it.

18    I will stress again that each of you must be in agreement with the verdict that is announced in

19    court.  Once your verdict is announced in open court and officially recorded, it cannot ordinarily be

20    revoked.

21

72

1    <u>Closing Comments</u>

2         Finally, I say this, not because I think it is necessary, but because it is the custom in this

3    courthouse to say it:  You should treat each other with courtesy and respect during your deliberations.

4         All litigants stand equal in this room.  All litigants stand equal before the bar of justice.  All

5    litigants stand equal before you.  Your duty is to decide between these parties fairly and impartially, and

6    to see that justice is done.

7         Under your oath as jurors, you are not to be swayed by sympathy or prejudice.  You should be

8    guided solely by the evidence presented during the trial and the law as I gave it to you, without regard to

9    the consequences of your decision.  You have been chosen to try the issues of fact and to reach a verdict

10   on the basis of the evidence or lack of evidence.  If you let sympathy or prejudice interfere with your

11   clear thinking, there is a risk that you will not arrive at a just verdict.  You must make a fair and

12   impartial decision so that you will arrive at the just verdict.

13        Members of the jury, I ask your patience for a few moments longer.  It is necessary for me to

14   spend a few moments with the lawyers and the court reporter at the side bar.  I will ask you to remain

15   patiently in the jury box, without speaking to each other, and we will return in just a moment to submit

16   the case to you.  Thank you.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
   -v-                                       :        23-CR-622 (JMF)
                                                            :
MICHAEL CASTILLERO, a/k/a "Michael Alejandro,"              :
FRANCINE LANAIA,                                            :        VERDICT FORM
and BRIAN MARTINSEN,                                        :
                                                            :
        Defendants.  :
                                                            :
------------------------------------------------------------------X

*All Answers Must Be Unanimous*

**Count One: Conspiracy to Commit Securities Fraud, Wire Fraud, and Investment Adviser Fraud:**

     **Michael Castillero**

         Guilty _____        Not Guilty _____

     **Francine Lanaia**

         Guilty _____        Not Guilty _____

     **Brian Martinsen**

         Guilty _____        Not Guilty _____

**Count Two: Securities Fraud**

     **Michael Castillero**

         Guilty _____        Not Guilty _____

     **Francine Lanaia**

         Guilty _____        Not Guilty _____

     **Brian Martinsen**

         Guilty _____        Not Guilty _____

**Count Three**: Wire Fraud

    **Michael Castillero**

        Guilty _____        Not Guilty _____

    **Francine Lanaia**

        Guilty _____        Not Guilty _____

    **Brian Martinsen**

        Guilty _____        Not Guilty _____

**Count Four**: Investment Adviser Fraud

    **Michael Castillero**

        Guilty _____        Not Guilty _____

    **Francine Lanaia**

        Guilty _____        Not Guilty _____

    **Brian Martinsen**

        Guilty _____        Not Guilty _____

**Count Five**: Conspiracy to Obstruct Justice

    **Michael Castillero**

        Guilty _____        Not Guilty _____

    **Brian Martinsen**

        Guilty _____        Not Guilty _____

**Count Six: Obstruction of Justice**

      **Michael Castillero**

              Guilty _____             Not Guilty _____

      **Brian Martinsen**

              Guilty _____             Not Guilty _____

*After completing the Verdict Form, please sign your names below and fill in the date and time.*

_____    _____
Foreperson

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

Date and Time: _____

*Once you have signed the Verdict Form, please give a note — **NOT** the Verdict Form itself —*
*to the Court Security Officer stating that you have reached a verdict. The foreperson should retain the*
*official Verdict Form to be handed to the Judge in open court.*

3