UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X
                                               :

UNITED STATES OF AMERICA,          :

                                :

               Plaintiff,        :

                                :               23-CR-622 (JMF)

         -v-                    :

                                :                 ORDER

MICHAEL CASTILLERO et al.,        :

                                :

               Defendants.     :

                                :
----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Attached to this Order are the Court's revised draft jury instructions (Exhibit 1) and a redline showing the differences between the revised draft and the draft discussed at the charge conference on October 31, 2025 (Exhibit 2). *See* ECF No. 192. As discussed during the charge conference, any objections or suggestions with respect to the revised instructions shall be filed **within five hours of this Order being docketed**. Any such objections or suggestions must be limited to issues that were raised at the charge conference (i.e., to changes that the Court either made or did not make in light of the charge conference). Put differently, the parties may not raise any new issues that could have been raised at the charge conference. As discussed, the parties need not renew objections that they made at the charge conference. That is, any objections to the original draft charge have, as far as the Court is concerned, been preserved.

      The Court offers the following brief observations with respect to the two issues addressed by the Government in its letter of November 1, 2025, *see* ECF No. 193:

- The Court has added "or negligent" to the relevant instruction but has omitted the other italicized words in the Government's letter, *see id.* at 1, as superfluous (and less clearly supported by the relevant case law).

- The Court generally agrees with the Government's analysis of whether and how *Janus* applies in the context of a criminal prosecution. That said, the Second Circuit has not yet

decided whether that is because *Janus* does not apply in criminal cases at all (as the Fourth Circuit has held, *see Prousalis v. Moore*, 751 F.3d 272, 276 (4th Cir. 2014)) or because the issue is academic (i.e., any error is harmless) in light of the fact that a defendant can be held criminally liable on an aiding and abetting theory. *See United States v. Chartier*, No. 22-3125, 2024 WL 3617023, at *8-9 & n.9 (2d Cir. Aug. 1, 2024) (summary order); *Prousalis v. United States*, 692 F. App'x 675, 676 (2d Cir. 2017) (summary order). In light of that, the Court concludes that the better course is to omit the language to which Defendants objected and allow the Government to argue the point to the jury based on the aiding-and-abetting instruction (to which Defendants wisely did not object). Accordingly, the Court has deleted the language at issue.

SO ORDERED.

Dated: November 2, 2025
New York, New York

_____
JESSE M. FURMAN
United States District Judge

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                                          :
UNITED STATES OF AMERICA,                                 :
                                                          :
    -v-                                                 :
                                                          :
MICHAEL CASTILLERO, a/k/a "Michael Alejandro,"            :          23-CR-622 (JMF)
FRANCINE LANAIA,                                          :
and BRIAN MARTINSEN,                                      :
                                                          :
                    Defendants.                :
                                                          :
------------------------------------------------------------------------X

**JURY CHARGE**

November 2, 2025

# Table of Contents

I. GENERAL INTRODUCTORY CHARGES ..................................................................... 1

Role of the Court and the Jury ................................................................................... 2

The Parties ................................................................................................................... 2

Conduct of Counsel ..................................................................................................... 2

Presumption of Innocence and Burden of Proof ........................................................ 3

Proof Beyond a Reasonable Doubt .............................................................................. 4

Direct and Circumstantial Evidence ........................................................................... 4

What Is and What Is Not Evidence ............................................................................. 6

Stipulations ................................................................................................................... 7

Charts and Summaries .................................................................................................. 7

Limited Purpose Evidence ............................................................................................ 7

Recordings and Transcripts .......................................................................................... 8

Redactions ..................................................................................................................... 8

Credibility of Witnesses ............................................................................................... 8

Non-Prosecution Agreements and Accomplice/Cooperator Testimony ..................... 9

Immunized Witnesses .................................................................................................. 12

Law Enforcement and Government Witnesses ........................................................... 13

Expert Witnesses ......................................................................................................... 13

Uncalled Witnesses ..................................................................................................... 14

Number of Witnesses and Uncontradicted Testimony ............................................... 14

Particular Investigative Techniques ............................................................................ 15

All Available Evidence Need Not Be Introduced ....................................................... 15

Preparation of Witnesses ............................................................................................. 15

Presence of Counsel ..................................................................................................... 16

Persons Not on Trial .................................................................................................... 16

A Defendant's Right Not to Testify ............................................................................ 17

II. SUBSTANTIVE CHARGES ............................................................................ 17

The Indictment............................................................................................................. 17

Conspiracy Charges and Substantive Charges .......................................................... 19

Count Two — Securities Fraud: Elements ................................................................. 20

  Count Two — First Element: Fraudulent Act............................................................ 21

  Count Two — Second Element: Intent to Defraud .................................................... 33

  Count Two — Third Element: Instrumentality of Interstate Commerce ............................. 36

Count Three — Wire Fraud: Elements........................................................................ 37

  Count Three — First Element: Existence of Scheme or Artifice ......................................... 38

  Count Three — Second Element: Knowledge and Intent to Defraud................................. 40

  Count Three — Third Element: Use of Interstate Wires ...................................................... 41

Count Four — Investment Adviser Fraud: Elements of the Offense ......................................... 43

  Count Four — First Element: Investment Adviser ................................................................ 44

  Count Four — Second Element: Fraudulent Act .................................................................. 45

  Count Four — Third Element: Knowledge, Intent, and Willfulness .................................... 49

  Count Four — Fourth Element: Interstate Nexus ................................................................. 49

Count Six — Obstruction of Justice: Elements ......................................................... 49

  Count Six — First Element: Alteration or Destruction of a Record or Document.............. 50

  Count Six — Second Element: Intent to Obstruct ................................................................ 51

Aiding and Abetting Liability....................................................................................... 51

Counts One and Five — The Conspiracy Charges: Elements................................... 54

  Counts One and Five — First Element: Existence of the Conspiracy ................................ 55

  Counts One and Five — Second Element: Membership in the Conspiracy ........................ 57

  Counts One and Five — Third Element: Overt Act ........................................................... 60

  Multiple Conspiracies ......................................................................................................... 62

Venue  63

Variance of Dates and Amounts ................................................................................................. 64

III. CONCLUDING INSTRUCTIONS ................................................................................. 65

Selection of the Foreperson ........................................................................................................ 65

Right to See Exhibits and Hear Testimony .............................................................................. 65

Juror Note-Taking ........................................................................................................................ 66

Bias, Prejudice, and Sympathy ................................................................................................. 66

Duty to Deliberate ........................................................................................................................ 67

Return of the Verdict ................................................................................................................... 68

Closing Comments ........................................................................................................................ 69

1                         **I. GENERAL INTRODUCTORY CHARGES**

2              Members of the jury, you have now heard all of the evidence and the lawyers' closing

3     arguments.  It is my duty at this point to instruct you as to the law.  I am going to read my instructions to

4     you.  It is not my favorite way to communicate — and not the most scintillating thing to listen to — but

5     there is a need for precision, and it is important that I get the words just right, and so that is why I will be

6     reading.

7              I have given you a copy of my instructions to follow along because they cover many points.

8     Please limit yourself to following along; that is, do *not* read ahead in the instructions.  If you find it

9     easier to listen and understand while you are following along with me, please do so.  If you would

10    prefer, you can just listen and not follow along.  In the unlikely event that I deviate from the written

11    instructions, it is my oral instructions that govern and that you must follow.  But you may take your

12    copy of the instructions with you into the jury room so you can consult it if you want to re-read any

13    portion of the charge to facilitate your deliberations.

14             For now, listen carefully and try to concentrate on the substance of what I'm saying.  You should

15    not single out any instruction as alone stating the law.  Instead, you should consider my instructions as a

16    whole when you retire to deliberate in the jury room.

17             My instructions to you will be in three parts.

18             *First*, I will give you general instructions — for example, about your role as the jury, what you

19    can and cannot consider in your deliberations, and the burden of proof.

20             *Second*, I will describe the law that you must apply to the facts as you find them to be established

21    by the evidence.

22             *Finally*, I will give you some instructions for your deliberations.

23

1    Role of the Court and the Jury

2         You, the members of the jury, are the sole and exclusive judges of the facts.  You must weigh

3    and consider the evidence without regard to sympathy, prejudice, or passion for or against any party.  It

4    is your duty to accept my instructions as to the law and to apply them to the facts as you determine them.

5    If anyone has stated a legal principle differently from any that I state to you in my instructions, it is my

6    instructions that you must follow.

7

8    The Parties

9         In reaching your verdict, you must remember that all parties stand equal before a jury in the

10    courts of the United States.  The fact that the Government is a party and the prosecution is brought in the

11    name of the United States does not entitle the Government or its witnesses to any greater consideration

12    than that accorded to any other party.  By the same token, you must give it no less deference.  The

13    Government and the defendants, Michael Castillero, Francine Lanaia, and Brian Martinsen, stand on

14    equal footing before you.

15         It would be improper for you to consider, in reaching your decision as to whether the

16    Government sustained its burden of proof, any personal feelings you may have about the defendants'

17    race, national origin, religious beliefs, sex, or age.  All persons are entitled to the same presumption of

18    innocence and the Government has the same burden of proof with respect to all persons.

19

20    Conduct of Counsel

21         The personalities and the conduct of counsel are not in any way at issue.  If you formed opinions

22    of any kind about any of the lawyers in the case, favorable or unfavorable, whether you approved or

23    disapproved of their behavior, those opinions should not enter into your deliberations.

1    In addition, remember that it is the duty of a lawyer to object when the other side offers

2  testimony or other evidence that the lawyer believes is not properly admissible.  Therefore, you should

3  draw no inference from the fact that there was an objection to any testimony or evidence.  Nor should

4  you draw any inference related to the weight or importance of any testimony or evidence from the fact

5  that I sustained or overruled an objection.  Simply because I have permitted certain testimony or

6  evidence to be introduced does not mean that I have decided on its importance or significance.  That is

7  for you to decide.

8

9    Presumption of Innocence and Burden of Proof

10    All three defendants have pleaded not guilty to the charges against them.  As a result of that plea

11  of not guilty, the burden is on the Government to prove each defendant's guilt beyond a reasonable

12  doubt.  This burden never shifts to a defendant for the simple reason that the law never imposes upon a

13  defendant in a criminal case the burden or duty of testifying, or calling any witness, or locating or

14  producing any evidence.

15    Furthermore, the law presumes the defendants to be innocent of the charges against them.  The

16  presumption of innocence was in their favor when the trial began, continued in their favor throughout

17  the entire trial, remains with them even as I speak to you now, and persists in their favor as to each

18  charged crime during the course of your deliberations in the jury room, unless and until you determine

19  that the Government proves beyond a reasonable doubt that the defendant you are considering

20  committed that crime.

21

1    <u>Proof Beyond a Reasonable Doubt</u>

2    The question that naturally arises is, "What is a reasonable doubt?"  A reasonable doubt is a

3    doubt based on your reason, your judgment, your experience, and your common sense.  It is a doubt that

4    a reasonable person has after carefully weighing all the evidence.  It is a doubt founded in reason and

5    arising out of the evidence in the case — or the lack of evidence.  A reasonable doubt is not caprice,

6    whim, or speculation.

7    Proof beyond a *reasonable* doubt does not mean proof beyond all *possible* doubt.  It is

8    practically impossible for a person to be absolutely and completely convinced of any disputed fact that,

9    by its very nature, cannot be proved with mathematical certainty.  The Government's burden is to

10    establish guilt beyond a *reasonable* doubt, not all *possible* doubt.

11    If, after a fair and impartial consideration of all the evidence, you can candidly and honestly say

12    that you are not satisfied with the guilt of the defendant you are considering, that you do not have an

13    abiding belief of that defendant's guilt — in other words, if you have such a doubt as would reasonably

14    cause a prudent person to hesitate in acting in matters of importance in his or her own affairs — then

15    you have a reasonable doubt, and in that circumstance it is your duty to acquit.

16    On the other hand, if, after a fair and impartial consideration of all the evidence, you can

17    candidly and honestly say that you do have an abiding belief of a defendant's guilt, such a belief as a

18    prudent person would be willing to act upon in important matters in the personal affairs of his or her

19    own life, then you have no reasonable doubt, and in that circumstance it is your duty to convict.

20

21    <u>Direct and Circumstantial Evidence</u>

22    There are two types of evidence that you may properly use in deciding whether the defendants

23    are guilty or not guilty of the crimes with which they are charged.

4

1    One type of evidence is called direct evidence. Direct evidence of a fact in issue is presented

2  when a witness testifies to that fact based on what he or she personally saw, heard, or otherwise

3  observed through the five senses. The second type of evidence is circumstantial evidence.

4  Circumstantial evidence is evidence that tends to prove a disputed fact indirectly by proof of other facts.

5    There is a simple example of circumstantial evidence that is often used in this courthouse.

6  Assume that when you came into the courthouse this morning, the sun was shining and it was a nice day

7  outside. Also assume that the courtroom shades were drawn and you could not look outside. Assume

8  further that as you were sitting here, someone walked in with an umbrella that was dripping wet, and

9  then, a few moments later, somebody else walked in with a raincoat that was also dripping wet.

10    Now, because you could not look outside the courtroom and you could not see whether it was

11  raining, you would have no direct evidence of that fact. But, on the combination of facts that I have

12  asked you to assume, it would be reasonable and logical for you to conclude that it was raining.

13    That is all there is to circumstantial evidence. You infer on the basis of your reason, experience,

14  and common sense from one established fact the existence or the nonexistence of some other fact.

15    The matter of drawing inferences from facts in evidence is not a matter of guesswork or

16  speculation. An inference is a logical, factual conclusion that you might reasonably draw from other

17  facts that have been proved. It is for you, and you alone, to decide what inferences you will draw.

18    Many material facts, such as a person's state of mind, are not easily proved by direct evidence.

19  Often such facts are established by circumstantial evidence and the reasonable inferences you draw.

20  Circumstantial evidence may be given as much weight as direct evidence. The law makes no distinction

21  between direct and circumstantial evidence. The law simply requires that before convicting a defendant,

22  you must be satisfied of the defendant's guilt beyond a reasonable doubt, based on all of the evidence in

23  the case.

1

2 <u>What Is and What Is Not Evidence</u>

3     What, then, is the evidence in the case?

4     The evidence in this case is (1) the sworn testimony of the witnesses, (2) the exhibits received

5 into evidence, and (3) any stipulations made by the parties.  Anything else is not evidence.

6     For example, the questions posed to a witness are not evidence; it is the witnesses' answers that

7 are evidence, not the questions.  In addition, materials brought forth only to refresh a witness's

8 recollection are not evidence.  Moreover, testimony that has been stricken or excluded by me is not

9 evidence and may not be considered by you in rendering your verdict.

10     Arguments by the advocates are also not evidence.  What you heard during the opening

11 statements and summations is merely intended to help you understand the evidence and reach your

12 verdict.  If your recollection of the facts differs from the lawyers' statements, you should rely on your

13 recollection.  If a lawyer made a statement during his or her opening or summation and you find that

14 there is no evidence to support the statement, you should disregard the statement.

15     Further, any statements that I may have made during the trial or during these instructions do not

16 constitute evidence.  At times, I may have admonished a witness or directed a witness to be responsive

17 to questions or to keep his or her voice up.  At times, I may have asked a question myself.  Any

18 questions that I asked, or instructions that I gave, were intended only to clarify the presentation of

19 evidence and to bring out something that I thought might be unclear.  You should draw no inference or

20 conclusion of any kind, favorable or unfavorable, with respect to any witness or any party in the case, by

21 reason of any comment, question, or instruction of mine.  The rulings I have made during the trial and

22 these instructions are no indication of my views of what your decision should be.  Nor should you infer

1  that I have any views as to the credibility of any witness, as to the weight of the evidence, or as to how

2  you should decide any issue that is before you.  That is entirely your role.

3       Finally, I instruct you that all of the evidence presented to you in this case was lawfully obtained.

4  Whether you approve or disapprove of how any evidence was obtained should not enter into your

5  deliberations.

6

7       Stipulations

8       Stipulations were entered into relating to various facts in this case.  A stipulation is an agreement

9  between parties as to what certain facts were or what the testimony would be if certain people testified

10  before you.  The stipulation is the same for your purposes as the presentation of live testimony.  You

11  should consider the weight to be given such evidence just as you would any other evidence.

12

13       Charts and Summaries

14       The Government presented exhibits in the form of charts and summaries.  As I mentioned to you

15  earlier, I admitted these charts and summaries in place of, or in addition to, the underlying testimony or

16  documents that they represent in order to save time and avoid unnecessary inconvenience.  You should

17  consider the charts and summaries as you would any other evidence.

18

19       Limited Purpose Evidence

20       If certain testimony or evidence was received for a limited purpose, you must follow the limiting

21  instructions I have given.

22

7

1      <u>Recordings and Transcripts</u>

2      Recordings and transcripts have been admitted into evidence. Whether you approve or

3 disapprove of the recording of the activity may not enter your deliberations.  I instruct you that these

4 recordings were made in a lawful manner and that no one's rights were violated; that the Government's

5 use of this evidence is lawful; and that it was properly admitted into evidence at this trial.

6      I remind you that the transcripts were given to you only as aids or guides to assist you in

7 listening to the recordings; they are not in and of themselves evidence.  You alone should make your

8 own interpretation of what appears on the recordings based on what you heard.  If you think you heard

9 something different than what appeared on the transcript, then what you heard is controlling..

10

11      <u>Redactions</u>

12      As I explained during trial, some of the exhibits admitted into evidence contain redactions of

13 certain information.  "Redacted" means that part of the document or recording was taken or blacked out.

14 There is nothing unusual or improper about such redactions.  You are to concern yourself only with the

15 part of the document that has been admitted into evidence.  You should not consider any possible reason

16 why the other part of it was not admitted into evidence.

17

18      <u>Credibility of Witnesses</u>

19      How do you evaluate the credibility or believability of the witnesses?  The answer is that you use

20 your common sense.  There is no magic formula by which you can evaluate testimony.  You may use the

21 same tests here that you use in your everyday life when evaluating statements made by others to you.

22 You may ask yourselves: Did the witness impress you as open, honest, and candid?  How responsive

23 was the witness to the questions asked on direct examination and on cross-examination?

1       If you find that a witness intentionally told a falsehood, that is always a matter of importance you

2   should weigh carefully.  On the other hand, a witness may be inaccurate, contradictory, or even

3   untruthful in some respects and entirely believable and truthful in other respects.  It is for you to

4   determine whether such inconsistencies are significant or inconsequential, and whether to accept or

5   reject all of the testimony of any witness, or to accept or reject only portions.

6       You are not required to accept testimony even though the testimony is uncontradicted and the

7   witness's testimony is not challenged.  You may reject it because of the witness's bearing or demeanor,

8   or because of the inherent improbability of the testimony, or for other reasons sufficient for you to

9   conclude that the testimony is not worthy of belief.

10      In evaluating the credibility of the witnesses, you should take into account any evidence that a

11   witness may benefit in some way from the outcome of the case.  Such an interest in the outcome creates

12   a motive to testify falsely and may sway a witness to testify in a way that advances his or her own

13   interests.  Therefore, if you find that any witness may have an interest in the outcome of this trial, you

14   should bear that factor in mind when evaluating the credibility of his or her testimony and decide

15   whether to accept it with great care.

16      Keep in mind, though, that it does not automatically follow that testimony given by an interested

17   witness is to be disbelieved.  There are many people who, no matter what their interest in the outcome of

18   the case may be, would not testify falsely.  It is for you to decide, based on your own perceptions and

19   common sense, to what extent, if at all, the witness's interest has affected his or her testimony.

20

21      <u>Non-Prosecution Agreements and Accomplice/Cooperator Testimony</u>

22      You heard testimony from witnesses who had entered into agreements with the Government.  It

23   is no concern of yours why the Government made an agreement with a particular witness.  You may,

9

1    however, consider the effect, if any, that the existence or terms of any such agreement have on the

2    witness's credibility.  A witness who hopes to obtain leniency may have a motive to testify as he

3    believes the Government wishes, or he may feel that it is in his interest to incriminate others.  As with

4    any witness, your responsibility is to determine whether any such motive or intent has influenced the

5    witness's testimony and whether the witness has told the truth, in whole or in part.

6        One witness, Eric Lachow, testified in exchange for a promise by the Government not to charge

7    him with certain crimes.  This type of agreement is known as a "non-prosecution agreement."  I instruct

8    you that there is nothing improper in the Government's use of such agreements.  They are a common

9    and important law-enforcement tool.  However, in evaluating the testimony of a witness with a non-

10   prosecution agreement, you should examine it with greater scrutiny than you would the testimony of an

11   ordinary witness.  You should consider what benefits or promises he received from the Government that

12   would motivate him to testify falsely.  For example, he may believe that he will continue to receive these

13   benefits only if he produces evidence of criminal conduct.

14       Another witness, Mark Lisser, testified pursuant to what is known as a "cooperation agreement."

15   I instruct you that there is nothing improper in the Government's use of such agreements either.  They

16   are also a common and important law-enforcement tool.  It is not unusual for the Government to rely on

17   the testimony of witnesses who admit to having participated in criminal activity.  The Government must

18   take its witnesses as it finds them and sometimes must use such testimony in a criminal prosecution

19   because otherwise it would be difficult or impossible to detect and prosecute wrongdoers.  For these

20   very reasons, the law allows the use of testimony from accomplice or cooperating witnesses.  Indeed, the

21   testimony of such a witness may be enough in itself for conviction, if the jury believes that the testimony

22   establishes guilt beyond a reasonable doubt.

1    However, because of the interest an accomplice or cooperator may have in testifying, you should

2    scrutinize any such testimony with special care and caution.  You may consider the fact that a witness is

3    a cooperator as bearing upon his credibility.  Like the testimony of any other witness, cooperating

4    witness testimony should be given such weight as it deserves in light of the facts and circumstances

5    before you, taking into account the witness's demeanor and candor, the strength and accuracy of the

6    witness's recollection, his background, and the extent to which his testimony is or is not corroborated by

7    other evidence in the case.  You may consider whether a cooperating witness has an interest in the

8    outcome of the case, and if so, whether that interest has affected his testimony.

9    In evaluating the testimony of a cooperating witness, you should ask yourselves the following

10   questions:  Would the accomplice benefit more by lying or by telling the truth?  Was any part of his

11   testimony potentially made up because he believed or hoped that he would receive favorable treatment

12   from the Government by testifying falsely or as he believed the Government wanted?  Or did he believe

13   that his interests would be best served by testifying truthfully?  If you believe that the witness was

14   motivated by hopes of personal gain, was the motivation one that would cause him to lie, or was it one

15   that would cause him to tell the truth?  Did this motivation color his testimony?  It does not follow,

16   however, that simply because a person has admitted to participating in one or more crimes, he is

17   incapable of giving a truthful version of what happened.

18   If you think that the testimony was false, you should reject it.  However, if, after a cautious and

19   careful examination of an accomplice witness's testimony, you are satisfied that the witness told the

20   truth, you may accept his testimony as credible and act upon it accordingly.

21   As with any witness, let me emphasize that the issue of credibility need not be decided in an all-

22   or-nothing fashion.  If you find that a witness has been untruthful in some respect, you may, but are not

23   required to, reject the witness's testimony in its entirety.  Even if you find that a witness testified falsely

11

1    in one part, you still may accept his testimony in other parts.  How much of a witness's testimony to

2    accept, if any, is a determination entirely for you, the jury.

3    **Adapted from *United States v. Blondet*, 16-CR-387 (JMF) (S.D.N.Y. 2022); *United States v.***

4    ***Ramirez*, 20-CR-22 (JMF) (S.D.N.Y. 2024); *United States v. Kaufman*, 13-CR-411 (JMF) (2013);**

5    ***United States v. Hsu*, 07 Cr. 1066 (VM); Sand, *Modern Federal Jury Instructions - Criminal*, Instr.**

6    **7-5; Sand, *Modern Federal Jury Instructions-Criminal*, Instr. 7-14.**

7

8    Immunized Witnesses

9          You have heard the testimony of a witness, Schuyler Minton, who testified under a grant of

10   immunity from this Court.  What this means is that the testimony of the witness may not be used against

11   the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise

12   failing to comply with the immunity order of this Court.

13         You are instructed that the Government is entitled to call a person who has been granted

14   immunity by order of this Court; you are further instructed that you may convict a defendant on the basis

15   of such a witness's testimony alone, if you find that the testimony proves the defendant guilty beyond a

16   reasonable doubt.

17         However, the testimony of a witness who has been granted immunity should be examined by you

18   with great care.  You should scrutinize it closely to determine whether or not it is colored in such a way

19   as to place guilt upon the defendant in order to further the witness's own interests.  If after a careful

20   examination of the witness's testimony and demeanor upon the witness stand, you are satisfied that the

21   witness told the truth, you should accept it as credible and act upon it accordingly.

22         In addition, it does not follow that simply because a person may have participated in criminal

23   conduct, that he or she is incapable of giving truthful testimony.  Further, it is of no concern of yours

1  why a witness received court-ordered immunity. Your sole concern is whether a witness has given

2  truthful testimony in this courtroom before you.  As with any witness, let me emphasize that the issue of

3  credibility need not be decided in an all-or-nothing fashion.  Even if you find that a witness testified

4  falsely in one part, you still may accept his or her testimony in other parts, or may disregard all of it.

5  That is a determination entirely for you, the jury.

6     **Adapted from _United States v. Ramirez_, 20-CR-22 (JMF) (S.D.N.Y. 2024); _United States v._**

7  **_Deligatti_, No. 15 Cr. 491 (KBF) (S.D.N.Y. 2018); Sand, _Modern Federal Jury Instructions -_**

8  **_Criminal_, Instr. 7-9.**

9

10      Law Enforcement and Government Witnesses

11      You have heard testimony from law enforcement or other government witnesses, including

12  representatives of the United States Postal Inspection Service and the Securities and Exchange

13  Commission.  The fact that a witness may be employed as a law enforcement official or government

14  employee does not mean that his or her testimony is deserving of more or less consideration or greater or

15  lesser weight than that of an ordinary witness.  It is your decision, after reviewing all the evidence,

16  whether to accept the testimony of any law enforcement witness or government witness, as it is with

17  every other type of witness, and to give to that testimony the weight you find it deserves.

18

19      Expert Witnesses

20      You have heard testimony of expert witnesses.  As I previously explained, an expert witness is

21  someone who, by education or experience, has acquired learning or experience in a specialized area of

22  knowledge.  Such a witness is permitted to express his or her opinions on matters about which he or she

23  has specialized knowledge and training.  A party may present expert testimony to you on the theory that

1   someone who is experienced in the field can assist you in understanding the evidence or in reaching an

2   independent decision on the facts.

3       Your role in judging credibility applies to experts as well as other witnesses. In weighing an

4   expert's opinion, you may consider the expert's qualifications, education, and reasons for testifying, as

5   well as all of the other considerations that ordinarily apply, including all the other evidence in the case.

6   If you find the opinion of an expert is based on sufficient data, education, and experience, and the other

7   evidence does not give you reason to doubt his or her conclusions, you would be justified in placing

8   reliance on his or her testimony. However, you should not accept witness testimony simply because the

9   witness is an expert. The determination of the facts in this case rests solely with you.

10

11      Uncalled Witnesses

12      There are people whose names you have heard during the course of the trial but who did not

13  appear here to testify. I instruct you that each party had an equal opportunity, or lack of opportunity, to

14  call any of these witnesses. Therefore, you should not draw any inferences or reach any conclusions as

15  to what they would have testified to had they been called. Their absence should not affect your

16  judgment in any way.

17      You should, however, remember my instruction that the law does not impose on a defendant in a

18  criminal case the burden or duty of calling any witness or producing any evidence. The burden of proof

19  remains at all times with the Government.

20

21      Number of Witnesses and Uncontradicted Testimony

22      I remind you that the defendants are not required to call any witnesses or offer any evidence,

23  since they are presumed to be innocent. On the other hand, the Government is not required to prove

14

1   each element of the offense by any particular number of witnesses.  The testimony of a single witness

2   may be enough to convince you beyond a reasonable doubt of the existence of the elements of the

3   charged offenses — if you believe that the witness has truthfully and accurately related what he or she

4   has told you.  The testimony of a single witness may also be enough to convince you that reasonable

5   doubt exists, in which case you must return a not guilty verdict.

6

7          Particular Investigative Techniques

8          There is no legal requirement that the Government prove its case through any particular means.

9   While you are to carefully consider the evidence and/or lack of evidence adduced by the Government,

10  you are not to speculate as to why the Government used the techniques it did or why it did not use other

11  techniques.

12

13         All Available Evidence Need Not Be Introduced

14         The law does not require any party to call as witnesses all persons who may have been present at

15  any time or place involved in the case, or who may appear to have some knowledge of the matter in

16  issue at this trial.  Nor does the law require any party to produce as exhibits all relevant papers and

17  things available to either party during the course of the trial.  Your concern is to determine whether or

18  not, on the evidence or lack of evidence, the Government has met its burden of proving each element of

19  each charge beyond a reasonable doubt with respect to each defendant.

20

21         Preparation of Witnesses

22         You have heard evidence during the trial that witnesses have discussed the facts of the case and

23  their testimony with their own lawyers or with Government lawyers before they appeared in court.

15

1    Although you may consider these facts when you are evaluating a witness's credibility, there is nothing

2    either unusual or inherently improper about a witness meeting with lawyers before testifying so that the

3    witness can be aware of the subjects he or she will be questioned about, focus on the subjects, and have

4    the opportunity to review relevant exhibits before being questioned about them.  Such consultation helps

5    conserve your time and the Court's time.  In fact, it would be unusual for a lawyer to call a witness

6    without such consultation.

7        As always, the weight you give to the fact or the nature of these issues and what inferences you

8    draw from them are matters completely within your discretion.

9

10   <u>Presence of Counsel</u>

11       You have heard evidence that some defendants may have communicated with attorneys during

12   the time period at issue in this case.  You may consider these communications, like all other

13   communications of the defendants as to which evidence was received, as evidence that may bear on each

14   defendant's state of mind and intentions and to give that evidence what weight, if any, you deem

15   appropriate considering all the other facts.  However, a lawyer's involvement does not, itself, constitute

16   a defense to the charge in this case.  The defense has not claimed that the defendants' conduct was

17   lawful because they engaged in such conduct in good-faith reliance on the advice of a lawyer.  Both

18   parties agree that the evidence does not support that the defendants acted on the advice of an attorney.

19

20   <u>Persons Not on Trial</u>

21       During the course of the trial, you have heard the names of other individuals mentioned in

22   connection with this case.  Some of these other individuals have been mentioned in connection with

23   what the Government alleges was illegal activity.  You may not draw any inference, favorable or

16

1  unfavorable, toward the Government or the defendant from the fact that any person is not on trial here.

2  Nor may you speculate as to what became of them and why.  These matters are wholly outside your

3  concern and have no bearing on your function as jurors in deciding the case before you.

4

5       A Defendant's Right Not to Testify

6       The defendants did not testify in this trial.  Under our Constitution, a defendant is presumed

7  innocent and has no obligation to testify or to present any other evidence because, as I have told you, it

8  is the Government's burden to prove a defendant guilty beyond a reasonable doubt.  That burden

9  remains on the Government throughout the entire trial and never shifts to the defendants.  The

10 defendants is never required to prove that they are innocent.

11      You may not attach any significance to the fact that the defendants did not testify.  No adverse

12 inference against the defendants may be drawn by you because the defendants did not take the witness

13 stand.  You may not consider this in any way in your deliberations in the jury room.

14

15               **II. SUBSTANTIVE CHARGES**

16      That concludes my introductory instructions.  Let me now turn to the charges.

17

18      The Indictment

19      The defendants are formally charged in an Indictment.  As I instructed you at the outset of this

20 trial, the Indictment is not evidence.  It is simply an accusation, a statement of the charges made against

21 the defendants.  It gives the defendants notice of the charges against them, and it informs the court and

22 the public of the nature of the accusation.  But it is not evidence, and it does not prove or even indicate

23 guilt.  It does not create any presumption or permit any inference that the defendants are guilty.  As a

17

1    result, you are to give it no weight in deciding the defendants' guilt or lack of guilt.  What matters is the

2    evidence you heard at this trial.  Indeed, as I have previously noted, the defendants are presumed

3    innocent, and each has entered a plea of not guilty.  It is the prosecution's burden to prove each

4    defendant's guilt beyond a reasonable doubt.

5            The Indictment before you contains six counts, or charges.  Each count of the Indictment relates

6    to a different alleged crime.  In your deliberations and in reaching your verdict, you must bear in mind

7    that guilt is individual.  You must therefore consider each count and each defendant separately, must

8    weigh the evidence as to each defendant separately for each count in which that defendant is charged,

9    and return a verdict of guilty or not guilty for each defendant on each count.  Your verdict as to each

10   defendant must be determined separately with respect to that defendant, solely on the evidence, or lack

11   of evidence, presented against that defendant, without regard to the guilt or innocence of anyone else.

12           So what are the charges in the Indictment?

13           Count One charges all three defendants, Michael Castillero, Francine Lanaia, and Brian

14   Martinsen, with conspiring to commit securities fraud, wire fraud, and investment adviser fraud.

15           Count Two charges all three defendants with committing securities fraud.

16           Count Three charges all three defendants with wire fraud.

17           Count Four charges all three defendants with committing investment adviser fraud.

18           Count Five charges two of the defendants — Mr. Castillero and Mr. Martinsen — with

19   conspiring to obstruct justice.

20           And Count Six charges Mr. Castillero and Mr. Martinsen with obstruction of justice.

21           During trial, you heard some evidence regarding guidance from the United States Securities and

22   Exchange Commission (or SEC) and a financial industry regulatory authority known as FINRA.  I

18

1  remind you that the defendants are not charged with violating any of that guidance; indeed, a violation

2  of the FINRA or SEC rules or guidance, standing alone, does not constitute a crime.

3      With that, I will instruct you about the six crimes charged in the Indictment.

4

5      <u>Conspiracy Charges and Substantive Charges</u>

6      Two counts — specifically, Counts One and Five — are conspiracy charges.  The other counts

7  — Counts Two, Three, Four, and Six — are called "substantive" charges.  I will instruct you as to each

8  count separately in just a moment, but let me briefly explain the difference between a conspiracy charge

9  and a substantive charge.

10      A conspiracy count is different from a substantive count.  Generally speaking, a conspiracy

11  charge alleges that two or more persons agreed together to accomplish an unlawful objective.  The focus

12  of a conspiracy count, therefore, is on whether there was an unlawful agreement.  There can be no

13  conspiracy unless at least two people reached such an unlawful agreement, whether express or implied.

14      A substantive count, on the other hand, charges a defendant with the actual commission of an

15  offense.  A substantive offense therefore may be committed by a single person, and it need not involve

16  any agreement with anyone.

17      A conspiracy to commit a crime is an entirely separate and different offense from a substantive

18  crime, the commission of which may be an object or goal of the conspiracy.  And because the essence of

19  the crime of conspiracy is an agreement or understanding to commit a crime, it does not matter if the

20  crime, the commission of which was an objective of the conspiracy, was ever committed.  In other

21  words, if a conspiracy exists and certain other requirements are met, it is punishable as a crime even if

22  its purpose was not accomplished.  Consequently, a conspiracy charge does not require proof that the

23  crime or crimes that were the objective or objectives of the conspiracy actually were committed.

19

1      By contrast, conviction on a substantive count requires proof that the crime charged actually

2    was committed, but it does not require proof of an agreement.  If a defendant both participates in a

3    conspiracy and commits the crime or crimes that were the object or objects of the conspiracy, that

4    defendant may be guilty of both the conspiracy and the substantive crime or crimes.

5      With that, I will turn to the elements of each count.  I am going to begin, however, with the

6    substantive counts because explaining them first will simplify my instructions with respect to Counts

7    One and Five, which are the conspiracy counts.  So I will begin with Count Two.

8    **Adapted from _United States v. Balouchzehi_, 21-CR-658 (JMF) (S.D.N.Y. 2023); _United**

9    **States v. Raji_, 19-CR-870 (JMF) (S.D.N.Y. 2022).**

10

11    <u>Count Two — Securities Fraud: Elements</u>

12      Count Two charges all three defendants with securities fraud.  Specifically, Count Two charges

13    that from at least in or about 2017 through in or about April 2022, the defendants made false and

14    misleading statements to investors about StraightPath's operations, the pricing and availability of

15    StraightPath's pre-IPO shares, and misappropriated investor funds.

16      For a defendant to be found guilty of Count Two, the Government must prove each of the

17    following three elements beyond a reasonable doubt:

18    _First_, that in connection with the purchase or sale of a security, the defendant you are

19    considering did any one or more of the following:

20    (a) employed a device, scheme, or artifice to defraud;

21    (b) made an untrue statement of a material fact or omitted to state a material fact that made what

22    was said, under the circumstances, misleading; or

1      (c) engaged in an act, practice, or course of business that operated, or would operate, as a fraud

2    or deceit upon a purchaser or seller.

3        *Second*, that the defendant you are considering acted willfully, knowingly, and with the intent to

4    defraud.

5        And *third*, that the defendant you are considering knowingly used, or caused to be used, any

6    means or instruments of transportation or communication in interstate commerce or the use of the mails

7    in furtherance of the fraudulent conduct.

8        **Adapted from Sand, *Modern Federal Jury Instructions-Criminal* 57-20; *United States v.***

9    ***Larmore*, 24-CR-140 (PAE) (S.D.N.Y. 2024); *United States v. Teyibo*, 877 F. Supp. 846 (S.D.N.Y.**

10   **1995), *aff'd mem.* 101 F.3d 681 (2d Cir. 1996) (citing Treatise); *United States v. Martoma*, 12-CR-**

11   **973 (PGG) (S.D.N.Y. 2014).**

12

13      Count Two — First Element: Fraudulent Act

14        The first element that the Government must prove beyond a reasonable doubt with respect to

15   Count Two is that, in connection with the purchase or sale of a security, the defendant you are

16   considering did any one or more of the following:

17      (a) employed a device, scheme, or artifice to defraud;

18      (b) made an untrue statement of a material fact or omitted to state a material fact that made what

19   was said, under the circumstances, misleading;

20      (c) failed, with an intent to defraud, to disclose a material fact that the defendant you are

21   considering knew he or she had a duty to disclose; or

22      (d) engaged in an act, practice, or course of business that operated, or would operate, as a fraud

23   or deceit upon a purchaser or seller.

1    It is not necessary for the Government to establish all of these types of unlawful conduct in

2    connection with the sale or purchase of securities.  Any one is sufficient for a conviction, but you must

3    be unanimous as to which type of unlawful conduct you find to have been proved.

4    In assessing whether this first element of Count Two is satisfied, it does not matter whether the

5    alleged unlawful conduct was successful or not, or that the defendant you are considering profited or

6    received any benefits as a result of the alleged scheme.  Success is not an element of the crime charged.

7    However, if you find that the defendant you are considering did profit from the alleged scheme, you may

8    consider that in relation to the third element of intent, which I will discuss shortly.

9    **Adapted from Sand, *Modern Federal Jury Instructions-Criminal* 57-21 ("Nor does it matter**

10    **whether the alleged unlawful conduct was successful or not, or that the defendant profited or**

11    **received any benefits as a result of the alleged scheme. Success is not an element of the crime**

12    **charged. However, if you find that the defendant did profit from the alleged scheme, you may**

13    **consider that in relation to the third element of intent, which I will discuss in a moment."); *United***

14    ***States v. Martoma*, 12-CR-973 (PGG) (S.D.N.Y. 2014); *United States v. Steinberg*, No. S4 12 Cr. 121**

15    **(RJS) (S.D.N.Y. Dec. 17, 2013) (Trial Tr. 3712-13); *United States v. Newman*, No. 12 Cr. 121 (RJS)**

16    **(S.D.N.Y. Dec. 12, 2012) (Tr. at 4041-42).**

17    Let me explain some of the terms and concepts relevant to this first element.

18    **Device, Scheme, or Artifice to Defraud**

19    A "scheme" or "artifice" is merely a plan to accomplish an object.  A "device, scheme, or artifice

20    to defraud" is any plan, device, or course of action to obtain money or property by means of false or

21    fraudulent pretenses, representations, or promises.  "Fraud" is a general term that includes all the various

22    means by which human ingenuity can devise and that are resorted to by an individual to gain some

23    unfair advantage over another person by false representations, false suggestions, suppression of the

22

1    truth, or deliberate disregard for the truth.  Thus, a "scheme to defraud" is merely a plan to deprive

2    another of money or property by trick, deceit, deception or swindle.

3          It is no defense to an overall scheme to defraud that a defendant was not involved in the scheme

4    from its inception or played only a minor role.

5          **Adapted from the parties' Requests to Charge; Sand, _Modern Federal Jury Instructions-_**

6    **_Criminal_  57-21 ("A device, scheme or artifice to defraud is merely a plan for the accomplishment**

7    **of any objective. Fraud is a general term that embraces all efforts and means that individuals**

8    **devise to take advantage of others. The law that the defendant is alleged to have violated prohibits**

9    **all kinds of manipulative and deceptive acts."); _Id._ ("It is no defense to an overall scheme to**

10   **defraud that the defendant was not involved in the scheme from its inception or played only a**

11   **minor role with no contact with the investors and purchasers of the securities in question.").**

12                    **False or Misleading Statement**

13         A statement, representation, claim, or document is false or misleading if it is untrue when made

14   and was then known to be untrue by the person making it or causing it to be made.  A representation or

15   statement is fraudulent if it was made with the intent to deceive.

16         A statement may be false or misleading if it directly contradicts what the speaker knew at the

17   time, created an impression of a state of affairs that differed in a material way from the one that actually

18   existed, or stated that there was a risk that had not yet been realized when, in fact, that risk had already

19   materialized or come to fruition.  A statement may also be false or fraudulent if it contains half-truths,

20   omits or conceals material facts, or is ambiguous or incomplete in a manner that makes what is said or

21   represented deliberately misleading or deceptive.  This includes statements that may be literally true but

22   that nevertheless create a materially misleading impression.

1    The deception need not be premised upon spoken or written words alone. The arrangement of

2    the words, or the circumstances in which they are used may convey the false and deceptive appearance.

3    Indeed, conduct alone can deceive another, even in circumstances where a person's statements contain

4    no misrepresentation. If there is deception, the manner in which it is accomplished does not matter.

5    **Adapted from the Government's Supplemental Request to Charge; *City of Hialeah***

6    ***Employees' Ret. Sys. v. Peloton Interactive, Inc.*, 153 F.4th 288, 301 (2d Cir. 2025) ("We have**

7    **previously explained that warnings that hedging activity 'could' or 'may' impact the prices of**

8    **notes might have 'possibly sufficed' when the notes were first issued, but when the warnings**

9    **remained unchanged after 'market volatility put[ ] to rest any uncertainty as to the price-impact,'**

10   **those warnings became actionable misstatements."); *Set Cap. LLC v. Credit Suisse Grp. AG*, 996**

11   **F.3d 64, 86 (2d Cir. 2021) ("Accepting these well pleaded allegations as true, the Offering**

12   **Documents misrepresented Credit Suisse's knowledge and intent when they warned that Credit**

13   **Suisse's hedging activity 'could' or 'may' impact prices of XIV Notes but affirmed that Credit**

14   **Suisse had 'no reason to believe' that it would."); *In re Alstom SA*, 406 F. Supp. 2d 433, 453**

15   **(S.D.N.Y. 2005) (holding that an omission is actionable if it "affirmatively creat[ed] an impression**

16   **of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]"**

17   **(quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir.2002)); *In re Facebook,***

18   ***Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 516 (S.D.N.Y. 2013) ("Courts in this Circuit**

19   **have held that a company's purported risk disclosures are misleading where the company warns**

20   **only that a risk may impact its business when that risk has already materialized."); *In re***

21   ***Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 950 (9th Cir. 2023), *cert. granted in part sub nom.***

22   ***Facebook, Inc. v. Amalgamated Bank*, 144 S. Ct. 2629 (2024), and *cert. dismissed as improvidently***

23   ***granted sub nom. Facebook, Inc. v. Amalgamated Bank*, 604 U.S. 4 (2024) ("[A] company may make**

1 **a materially misleading statement when it 'speaks entirely of as-yet-unrealized risks' when the**

2 **risks have 'already come to fruition.'");** *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 703 (9th Cir.

3 **2021) ("Risk disclosures that speak entirely of as-yet-unrealized risks and contingencies and do**

4 **not alert the reader that some of these risks may already have come to fruition can mislead**

5 **reasonable investors." (cleaned up)).**

6 **Non-Disclosure and Fiduciary Duty**

7        I have instructed you on ways in which statements or representations may be false or fraudulent.

8 Separately, the failure to disclose material information may also constitute a fraudulent representation if

9 the defendant you are considering was under a legal duty to make such a disclosure; the defendant

10 actually knew such disclosure was required to be made; and the defendant failed to make such disclosure

11 with the intent to defraud.

12        One way in which a duty to disclose material facts exists is when a person owes a "fiduciary"

13 relationship to another. Broadly speaking, a "fiduciary" relationship arises when one person — the

14 client — places special trust and confidence in another person — the fiduciary — in reliance that the

15 fiduciary will exercise his or her discretion and expertise in the interests of the client, and the fiduciary

16 knowingly accepts that special trust and confidence. At the heart of the fiduciary relationship lies

17 reliance and de facto control and dominance. Examples of a fiduciary include (but are not limited to) an

18 executor or administrator of an estate; an attorney with respect to the affairs of his client; a guardian of

19 an infant or incompetent person with respect to his ward; and the officers and directors of a corporation

20 with respect to the stockholders of the corporation.

21        Whether such a relationship existed here between any of the defendants and investors, or any

22 other entity, is a matter of fact for you, the jury, to determine. A fiduciary relationship exists when

23 confidence is reposed on one side and there is resulting superiority and influence on the other. One acts

25

1    in a fiduciary capacity when the business that he or she transacts or the money or property that he or she

2    handles is not his or her own or for his or her own benefit but for the benefit of another person, as to

3    whom he or she stands in a relation implying and necessitating great confidence and trust on the one part

4    and a high degree of good faith on the other part.

5        I hereby instruct you that the mere sale of securities from one party to another does not in itself

6    create a fiduciary relationship.  When parties deal at arms' length in a commercial transaction, there is

7    no relationship of confidence or trust sufficient to find the existence of a fiduciary relationship.

8        If you find that a fiduciary relationship existed, you should next consider whether there was a

9    breach of the duties incumbent upon the fiduciary in the fiduciary relationship.  I instruct you that a

10   fiduciary owes a duty of honest services to his or her customer, including a duty to disclose all material

11   facts concerning the transaction entrusted to him or her.  The concealment by a fiduciary of material

12   information that he or she is under a duty to disclose to another, when the fiduciary knows he or she has

13   such a duty to disclose, is a breach of fiduciary duty and can be fraudulent within the meaning of the

14   federal securities laws if the Government has proved beyond a reasonable doubt the other elements of

15   the offense as I explain them to you.  Importantly, however, a breach of fiduciary duty does *not* alone

16   constitute fraud for the purposes of this element.  Consistent with the instructions I've given you, it must

17   be accompanied by deception, misrepresentation, or nondisclosure with an intent to defraud.

18       **Adapted from Sand, *S3 Modern Federal Jury Instructions-Criminal* 15.34 (2025) (defining**

19   **fiduciary duty); *United States v. Milovanovic*, 678 F.3d 713, 723 n.9 (9th Cir. 2012), as amended**

20   **(May 22, 2012) (same); *United States v. Szur*, 289 F.3d 200, 210 (2d Cir. 2002) (same); *United States***

21   ***v. Moses*, 109 F.4th 107, 114 (2d Cir. 2024) (holding that the "jury instruction was proper" where**

22   **there is a "duty to disclose … from a fiduciary or similar relationship"); *United States v. Chestman*,**

23   **947 F.2d 551, 568–69 (2d Cir. 1991) ("One acts in a 'fiduciary capacity' when the business which**

26

1    he transacts, or the money or property which he handles, is not his own or for his own benefit, but

2    for the benefit of another person, as to whom he stands in a relation implying and necessitating

3    great confidence and trust on the one part and a high degree of good faith on the other part"

4    (quoting *Black's Law Dictionary* 564 (5th ed. 1979)); *id.* at 568 ("Counted among these hornbook

5    fiduciary relations are those existing between attorney and client, executor and heir, guardian and

6    ward, principal and agent, trustee and trust beneficiary, and senior corporate official and

7    shareholder"); *Chiarella v. United States*, 445 U.S. 222, 231 (1980) (reversing conviction when trial

8    court failed to instruct the jury as to need for fiduciary duty); *Santa Fe Indus., Inc. v. Green*, 430

9    U.S. 462, 476 (1977) ("But the cases do not support the proposition, adopted by the Court of

10   Appeals below and urged by respondents here, that a breach of fiduciary duty by majority

11   stockholders, *without any deception, misrepresentation, or nondisclosure, violates the statute and the*

12   *Rule*." (emphasis added)); *Biesenbach v. Guenther*, 588 F.2d 400, 402 (3d Cir. 1978) ("*Santa Fe*

13   made clear that absent deception, misrepresentation, or nondisclosure a breach of fiduciary duty

14   does not violate the statute or Rule"); *N. Collier Fire Control & Rescue Dist. Firefighter Pension*

15   *Plan & Plymouth Cnty. Ret. Ass'n v. MDC Partners, Inc.*, No. 15-CV-6034 (RJS), 2016 WL

16   5794774, at *23 (S.D.N.Y. Sept. 30, 2016) (quoting *Santa Fe* for that proposition); *United States v.*

17   *Wolfson*, 642 F.3d 293, 296 (2011) (" I instruct you that a fiduciary owes … a duty to disclose all

18   material facts concerning the transaction entrusted to him or her. The concealment by a fiduciary

19   of material information which he or she is under a duty to disclose to another, under

20   circumstances where the nondisclosure can or does result in harm to the other is a [b]reach of the

21   fiduciary duty and can be a violation of the federal securities laws, if the government has proven

22   beyond a reasonable doubt the other elements of this offense, as I explained them to you.").

27

1     Another way a duty to disclose may arise is when a person acts as a broker for a customer.  A

2     broker is a person engaged in the business of effecting transactions in securities for the account of

3     others.  While there is no general fiduciary duty inherent in an ordinary broker-customer relationship, a

4     relationship of trust and confidence does exist between a broker and a customer with respect to those

5     specific matters or transactions that have been entrusted to the broker in circumstances where the broker

6     asserts de facto control and dominance over the transaction or relationship.  As a matter of law, if a

7     broker-customer relationship exists, the broker owes an affirmative duty to use reasonable efforts to give

8     the customer information relevant to the affairs that have been entrusted to the broker.  This includes an

9     implied representation that the prices charged are reasonably related to the prices charged in an open

10    competitive market.

11    In order to convict for fraud based on a defendant's failure to disclose, the Government must

12    satisfy you beyond a reasonable doubt that a duty to disclose existed, whether that is a fiduciary duty or

13    a relationship of trust, de facto control, and dominance between a broker and a client.  If you find that

14    the Government has shown beyond a reasonable doubt that a fiduciary or similar relationship existed,

15    only then may you consider whether there was a breach of the duties incumbent upon the fiduciary.

16    **Adapted from *United States v. Szur*, 289 F.3d 200, 211 (2d Cir. 2002) ("Although it is true**

17    **that there is no general fiduciary duty inherent in an ordinary broker/customer relationship, a**

18    ***relationship of trust and confidence does exist between a broker and a customer with respect to those***

19    ***matters that have been entrusted to the broker*. This relationship places an affirmative duty on**

20    **brokers to use reasonable efforts to give [the customer] information relevant to the affairs that**

21    **[have] been entrusted to them." (cleaned up and emphasis added)); *id.* (discussing attendant**

22    **duties); *United States v. Skelly*, 442 F.3d 94, 98 (2d Cir. 2006) (emphasizing that discretionary**

23    **authority is typical of the broker-client relationship); *United States v. Wolfson*, 642 F.3d 293, 295**

1  **(2d Cir. 2011) ("Most commonly, this relationship exists in situations in which a broker has**

2  **discretionary authority over the customer's account"); *Id.* ("However, a discretionary account is**

3  **not the sole means by which a fiduciary duty may be created in the context of a broker-customer**

4  **relationship; we have "recognized that particular factual circumstances may serve to create a**

5  **fiduciary duty between a broker and his customer *even in the absence of a discretionary account*.);**

6  ***SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1469 (2d Cir.1996) ("Sales of securities by**

7  **broker-dealers to their customers carry with them an implied representation that the prices**

8  **charged in those transactions are reasonably related to the prices charged in an open and**

9  **competitive market.").**

10                    **Materiality**

11          If you find that there was a false or misleading statement or an omission in accordance with the

12  foregoing instructions, you must next determine whether the false or misleading statement or omission

13  was material under the circumstances.  A material fact is one that would have been significant to a

14  reasonable investor's investment decision in a particular market.  We use the word "material" to

15  distinguish between the kinds of statements or information we care about and those that are of no real

16  importance.  Materiality of the information is judged as of the time the information was disclosed or

17  omitted.

18          I remind you that the question of whether a factual representation or omission is "material" is an

19  objective one, involving the significance of an omitted or misrepresented fact to a "reasonable investor."

20  Material information in this context is information that a reasonable person would have considered

21  important in making an investment decision in light of the total mix of information publicly available.

22  Proof of actual reliance on a statement by an investor is not required to show materiality.  Instead, it is

29

1  sufficient if the misrepresentation is one that is capable of influencing a reasonable person's decision

2  and is intended to do so.

3      In considering whether a statement or omission was material, you should consider whether a

4  person of ordinary intelligence would have considered the fact significant — not whether the material

5  misrepresentation or omission would have deceived a person of ordinary intelligence.  Once you find

6  that the offense involved the making of a material misrepresentation or omission of a material fact, it

7  does not matter whether any of the alleged victims involved were careless, gullible, or negligent because

8  the law protects the gullible and unsophisticated as well as the experienced investor.

9  **Adapted from Sand, *Modern Federal Jury Instructions-Criminal*  57-21 ("The Government**

10 **need not prove that the defendant personally made the misrepresentation or that he omitted the**

11 **material fact. It is sufficient if the government establishes that the defendant caused the statement**

12 **to be made or the fact to be omitted. With regard to the alleged misrepresentations (and**

13 **omissions), you must determine whether the statement was true or false when it was made, (and,**

14 **in the case of alleged omissions, whether the omission was misleading)"); *United States v. Larmore*,**

15 **24-CR-140 (PAE) (S.D.N.Y. 2024); *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 161 (2d Cir. 2000)**

16 **("[T]he materiality requirement of Rule 10b–5 [is met] by alleging a statement or omission that a**

17 **reasonable investor would have considered significant in making investment decisions"); *United***

18 ***States v. Vilar*, 729 F.3d 62, 88 (2d Cir. 2013) ("It has long been the law that the government, as**

19 **opposed to a private plaintiff, need prove only materiality, meaning that there is a substantial**

20 **likelihood that a reasonable investor would find [the omission or misrepresentation] important in**

21 **making an investment decision, and not that a victim did, in fact, rely on it" (cleaned up)); *United***

22 ***States v. Schlisser*, 168 F. App'x 483, 486 (2d Cir. 2006) (not taking issue with the instruction,**

23 **"[o]nce you find that there was a material misrepresentation or omission of a material fact,**

1    **it does not matter whether the intended victims were gullible buyers or sophisticated investors,**

2    **because the securities laws protect the gullible and unsophisticated as well as the experienced**

3    **investor.");** *Neder v. United States*, **527 U.S. 1, 24-25 (1999) (holding that the "common -law**

4    **requirements of 'justifiable reliance' and 'damages' … plainly have no place in the federal fraud**

5    **statutes").**

6           Language in a contract may be relevant in considering whether a false or fraudulent statement or

7    representation outside the contract was material and whether a defendant acted with fraudulent intent.

8    You should consider all the information available to a reasonable investor to determine whether

9    cautionary language in a document would have prevented an investor from being misled.  But language

10   in a contract — including, for example, a disclaimer on reliance on prior statements — does not render a

11   false or fraudulent statement or representation made outside the contract immaterial as a matter of law.

12          **Adapted from** *United States v. Weaver*, **860 F.3d 90, 95 (2d Cir. 2017) ("[C]ontractual**

13   **disclaimers of reliance on prior misrepresentations do not render those misrepresentations**

14   **immaterial under the criminal mail and wire fraud statutes");** *United States v. Larmore*, **24-CR-**

15   **140 (PAE) (S.D.N.Y. 2024) ("In considering whether a statement or omission was material, let me**

16   **caution you that, as a matter of law, a disclaimer cannot cause a misrepresentation to be**

17   **immaterial.");** *Halperin v. eBanker USA.com, Inc.*, **295 F.3d 352, 357 (2d Cir. 2002)**

18   **("Consequently, when cautionary language is present, we analyze the allegedly fraudulent**

19   **materials in their entirety to determine whether a reasonable investor would have been**

20   **misled.  The touchstone of the inquiry is not whether isolated statements within a document were**

21   **true, but whether defendants' representations or omissions, considered together and in context,**

22   **would affect the total mix of information and thereby mislead a reasonable investor regarding the**

1    **nature of the securities offered.”); *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 411**

2    **(S.D.N.Y. 2003) (same).**

3            **“In Connection With”**

4        As I explained, you must also find that the defendant you are considering participated in

5    fraudulent conduct that was “in connection with” a purchase or sale of securities.  The term “security” or

6    “securities” includes any stock or shares of a company, whether or not the company is publicly traded,

7    and includes interests in the nine StraightPath Funds.

8        You need not find that the defendant you are considering actually participated in any securities

9    transaction if that defendant was engaged in fraudulent conduct that was “in connection with” a

10   purchase or sale.  The “in connection with” aspect of this element is satisfied if you find that there was

11   some nexus or relation between the allegedly fraudulent conduct and the sale or purchase of securities.

12   Fraudulent conduct may be “in connection with” the purchase or sale of securities if you find that the

13   alleged fraudulent conduct “touched upon” a securities transaction.

14       **Adapted from Sand, 3 Modern Federal Jury Instructions-Criminal P 57.03 (2025)**

15   **(“Notwithstanding the general rule that it is a question for the court to decide what is a security, a**

16   **judge cannot preempt the jury’s province to decide factual disputes concerning the predicate for**

17   **such a ruling.”); Sand, 3 Modern Federal Jury Instructions-Criminal P 57-21 (2025) (“You need**

18   **not find that the defendant actually participated in any securities transaction if the defendant was**

19   **engaged in fraudulent conduct that was ‘in connection with’ a purchase or sale. The ‘in**

20   **connection with’ aspect of this element is satisfied if you find that there was some nexus or relation**

21   **between the allegedly fraudulent conduct and the sale or purchase of securities. Fraudulent**

22   **conduct may be ‘in connection with’ the purchase or sale of securities if you find that the alleged**

1     **fraudulent conduct 'touched upon' a securities transaction.")); Sand, _Modern Federal Jury_**

2     **_Instructions_, Instr. 57-21 (2025); _United States v. Larmore_, 24-CR-140 (PAE) (S.D.N.Y. 2024)**

3

4        Count Two — Second Element: Intent to Defraud

5        The second element that the Government must establish beyond a reasonable doubt with respect

6   to Count Two is that the defendant you are considering devised or participated in the fraudulent scheme

7   knowingly, willfully, and with specific intent to defraud.

8        To "devise" a scheme to defraud is to concoct or plan it.  To "participate" in a scheme to defraud

9   means to associate oneself with it, with the intent to making it succeed.

10       "Knowingly" means to act voluntarily and deliberately, rather than mistakenly or inadvertently.

11        "Willfully" means to act voluntarily and with a wrongful purpose.

12        To act with the "intent to defraud" means to know of the fraudulent nature of the scheme and to

13   act with the intent that it succeed.  I previously instructed you on the meaning of fraud, and you should

14   follow those instructions here.  Intent to defraud, in the context of the securities laws, means to act

15   knowingly and with the intent to deceive.

16        The Government must establish beyond a reasonable doubt that the defendant you are

17   considering knew that his or her conduct was calculated to deceive and that he or she nevertheless

18   carried out the alleged fraudulent scheme.  The Government need not prove that the intended victim was

19   actually harmed.  The Government is also not required to prove that the defendant you are considering

20   realized any gain from the scheme, although you may consider any gain that a defendant realized in

21   determining whether that defendant participated in the scheme.  Moreover, the defendant you are

22   considering need not know that he or she was committing a specific legal violation, but must have an

23   awareness of the general wrongfulness of his or her conduct.

1       Because an essential element of fraud is the intent to defraud, it follows that good faith on the

2    part of a defendant defeats a charge of fraud.  False representations or statements, or omissions of

3    material facts, do not amount to a fraud unless done with fraudulent intent.  An honest belief in the truth

4    of the representation made by a defendant, however inaccurate the representation may turn out to be,

5    negates a charge of fraud.  The defendants have no burden to establish good faith.  The burden is on the

6    Government to prove fraudulent intent and the consequent lack of good faith beyond a reasonable doubt.

7       In considering whether or not a defendant acted in good faith, you are instructed that a belief by

8    that defendant (if such belief existed) that ultimately everything would work out so that no investors

9    would lose any money or that particular investments would ultimately be financially advantageous for

10   investors does not mean the defendant acted in good faith.  No amount of honest belief on the part of a

11   defendant that a scheme will ultimately make a profit for investors will excuse knowingly fraudulent

12   actions or false representations by him or her.

13      Nor does it constitute good faith if a defendant deliberately made a representation that he or she

14   knew to be false, even if he or she reasonably believed that he or she was legally entitled to the money

15   or property received.  Moreover, a venture commenced in good faith may become fraudulent if it is

16   continued after an intent to defraud has been formed.  That is, good faith does not defeat a charge of

17   fraud if a defendant first made representations in good faith but later, after realizing the representations

18   were false, nevertheless deliberately continued to make them.

19      I remind you again that the defendants have no burden to establish good faith.  The burden is on

20   the Government to prove fraudulent intent and the consequent lack of good faith beyond a reasonable

21   doubt.

22      Whether a person acted knowingly, willfully, and with intent to defraud are questions of fact for

23   you to determine, like any other fact question, based on your evaluation of the evidence.  Direct proof of

1    knowledge and fraudulent intent is almost never available.  It would be a rare case where it could be

2    shown that a person wrote or stated that, as of a given time in the past, he or she committed an act with

3    fraudulent intent.  Such direct proof is not required.  Instead, the ultimate facts of knowledge and

4    criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's

5    words, his or her conduct, acts, and all the surrounding circumstances disclosed by the evidence and the

6    rational or logical inferences that may be drawn from them.

7    **Adapted from Sand, *Modern Federal Jury Instructions-Criminal* P 57.03; *United States v.***

8    ***Raji*, 19-CR-870 (JMF) (S.D.N.Y. September 19, 2022) (whole section); *United States v. Avenatti*,**

9    **19-cr-374 (JMF) (S.D.N.Y. February 1, 2022); *United States v. Parker*, 19-CR-850 (JSR) (S.D.N.Y.**

10   **2022); *United States v. Lavidas*, 19 Cr. 716 (DLC) (S.D.N.Y. 2020); *United States v. Hoey*, 15 Cr. 229**

11   **(PAE) (S.D.N.Y. 2016); *United States v. Balkany*, 10 Cr. 441 (DLC) (S.D.N.Y. 2010); *United States***

12   ***v. Males*, 459 F.3d 154, 159 (2d Cir. 2006); *United States v. Rossomando*, 144 F.3d 197, 203 (2d Cir.**

13   **1998) ("[W]here a defendant deliberately supplies false information to obtain a bank loan, but**

14   **plans to pay back the loan and therefore believes that no harm will 'ultimately' accrue to the**

15   **bank, the defendant's good-faith intention to pay back the loan is no defense"); *United States v.***

16   ***Leonard*, 529 F.3d 83, 91-92 (2d Cir. 2008); *United States v. Gatto*, 986 F.3d 104, 126 (2d Cir. 2021)**

17   **(affirming "I instruct you that a victim's loss of the right to control the use of its assets constitutes**

18   **deprivation of money or property if, and only if, the scheme could have caused or did cause**

19   **tangible economic harm to the victim"); *United States v. Middendorf*, 18 Cr. 36 (JPO), 2019 WL**

20   **4254025, at &7 (S.D.N.Y. Sept. 9, 2019); *Kousisis v. United States*, 145 S. Ct. 1382, 1398 (2025) ("As**

21   **Judge Learned Hand put it, '[a] man is none the less cheated out of his property, when he is**

22   **induced to part with it by fraud, because he gets a quid pro quo of equal value' … Fraudulent**

23   **inducement 'has long been considered a species of actionable fraud.'"); *United States v. Kaiser*, 609**

35

1  **F.3d 556, 569 (2d Cir. 2010) (holding that willfullness requires that a defendant "had an**

2  **awareness of the general wrongfulness of his conduct," not that he knew that he was committing a**

3  **specific legal violation"); Sand, Model Federal Jury Instructions-Criminal, Instrs. 44-5; Sand,**

4  ***Modern Federal Jury Instructions*, Instr. 57-24 (2025).**

5

6  <u>Count Two — Third Element: Instrumentality of Interstate Commerce</u>

7  The third element that the Government must prove beyond a reasonable doubt with respect to

8  Count Two is that the defendant you are considering knowingly used or caused to be used an

9  instrumentality of interstate commerce or the mails or the facilities of a national security exchange in

10  furtherance of the scheme to defraud or the fraudulent conduct.

11  The term "mails" includes the U.S. Mail and Federal Express.  The term "instrumentalities of

12  interstate commerce" means instruments, devices, and means of conducting trade, commerce,

13  transportation, or communication among any two states.  Examples of instrumentalities of interstate

14  commerce include telephone calls, emails, or text messages, the wire transfer of money, or use of a

15  facility of a national securities exchange, such as a stock trade made on the Nasdaq or New York Stock

16  Exchange.

17  It is not necessary for the Government to prove the mails, an instrumentality of interstate

18  commerce, and a national securities exchange were used in furtherance of the fraudulent scheme.  Any

19  one — either the mails *or* an instrumentality of interstate commerce *or* the facilities of a national

20  securities exchange — is enough.  But you must be unanimous as to at least one.

21  In considering this element, it is not necessary for you to find that the defendant you are

22  considering was or would have been directly or personally involved in any mailing or the use of an

23  instrumentality of interstate commerce or of a national securities exchange.  If the conduct alleged

1    would naturally and probably result in the use of the mails or an instrumentality of interstate commerce

2    or of a national securities exchange, this element would be satisfied.  When one does an act with the

3    knowledge that use of interstate means of communication will follow in the ordinary course of business,

4    or where such use can reasonably be foreseen, even though not actually intended, then he or she causes

5    such means to be used.

6          Nor is it necessary that the items sent through the mails or communicated through an

7    instrumentality of interstate commerce or a national securities exchange did or would contain the

8    fraudulent material, or anything criminal or objectionable.  The matter mailed or communicated may be

9    entirely innocent so long as it is in furtherance of the scheme to defraud or fraudulent conduct.

10         The use of the mails or instrumentality of interstate commerce need not be central to the

11    execution of the scheme or even be incidental to it.  All that is required is that the use of the mails or

12    instrumentality of interstate commerce or national securities exchange bear some relation to the object of

13    the scheme or fraudulent conduct.

14    **Adapted from Government's Request to Charge; Sand, _Modern Federal Jury Instructions_,**

15    **Instr. 57-25 (2025); _United States v. Larmore_, 24-CR-140 (PAE) (S.D.N.Y. 2024); _United States v._**

16    **_Martoma_, 12-CR-973 (PGG) (S.D.N.Y. 2014).**

17

18    Count Three — Wire Fraud: Elements

19         Count Three charges all three defendants with wire fraud.  Specifically, Count Three charges that

20    from at least in or about 2017 through in or about April 2022, the defendants made false and misleading

21    statements to investors about StraightPath's operations, the pricing and availability of StraightPath's

22    pre-IPO shares, and misappropriated investor funds.

1    For a defendant to be found guilty of Count Three, the Government must prove each of the

2  following three elements beyond a reasonable doubt:

3    *First*, that there was a scheme or artifice to defraud or to obtain money or property by materially

4  false and fraudulent pretenses, representations, or promises.

5    *Second*, that the defendant you are considering knowingly, willfully, and with the intent to

6  defraud, devised or participated in the scheme or artifice.

7    *Third*, that an interstate or international wire communication was used in furtherance of the

8  scheme or artifice.

9    I will discuss each element in turn.

10    **Adapted from the parties' Requests to Charge; *United States v. Raji*, 19-CR-870 (JMF)**

11  **(S.D.N.Y. September 19, 2022); *United States v. Avenatti*, 19-cr-374 (JMF) (S.D.N.Y. February 1,**

12  **2022); *United States v. Lavidas*, 19 Cr. 716 (DLC) (S.D.N.Y. 2020); *United States v. Hoey*, 15 Cr. 229**

13  **(PAE) (S.D.N.Y. 2016); *United States v. Balkany*, 10 Cr. 441 (DLC) (S.D.N.Y. 2010); Sand, *Model***

14  ***Federal Jury Instructions-Criminal*, Instrs. 44-3; *see United States v. Calderon*, 944 F.3d 72, 85 (2d**

15  **Cir. 2019); *United States v. Weaver*, 860 F.3d 90, 94 (2d. Cir. 2017).**

16

17    Count Three — First Element: Existence of Scheme or Artifice

18    The first element that the Government must prove beyond a reasonable doubt with respect to

19  Count Three is that there was a scheme or artifice to defraud or to obtain money or property by means of

20  false or fraudulent pretenses, representations, or promises.

21    I have already instructed about the meaning of "scheme," "artifice," and "defraud," and you

22  should apply those instructions here.  The scheme charged in Count Three is also alleged to have been

23  carried out in part by making false or misleading representations, promises, and statements.  I have

38

1    already instructed you about the meaning of false or misleading representations, promises, statements,

2    half-truths, and disclaimers, and you should apply those instructions here as well.

3        Additionally, as with Count Two, the failure to disclose information may also constitute a

4    fraudulent representation if a defendant was under a legal duty to make such a disclosure; the defendant

5    actually knew such disclosure was required to be made; and the defendant failed to make such disclosure

6    with the intent to defraud.  Again, you should refer to my instructions for Count Two with respect to

7    whether and when a duty to disclose exists.

8        As with Count Two, the false or fraudulent pretense, representation, promise, or omission must

9    relate to a "material" fact or matter.  I have already explained the meaning of the term "material" with

10    respect to Count Two, and you should apply those same instructions here.

11        In addition to proving that a pretense, representation, promise, or statement was false or

12    fraudulent and related to a material fact, in order to establish a scheme to defraud, the Government must

13    prove that the alleged scheme contemplated wrongly depriving another of money or property.  Money or

14    property may be obtained even when something else is simultaneously given in return.

15        The Government is not required to prove that the defendant you are considering personally

16    originated the scheme to defraud.  Nor is the Government required to prove that the scheme or artifice to

17    defraud actually succeeded — that is, the Government is not required to prove that the intended victim

18    suffered any loss or harm.  Although whether or not the scheme actually succeeded is not the question,

19    you may consider whether it succeeded in determining whether the scheme existed.

20        A scheme to defraud need not be shown by direct evidence, but may be established by all of the

21    circumstances and facts in the case.

22    **Adapted from *United States v. Raji*, 19-CR-870 (JMF) (S.D.N.Y. September 19, 2022);**

23    ***United States v. Avenatti*, 19-cr-374 (JMF) (S.D.N.Y. February 1, 2022); *United States v. Balkany*,**

39

1    **10 Cr. 441 (DLC) (S.D.N.Y. 2010); _United States v. Hoey_, 15 Cr. 229 (PAE) (S.D.N.Y. 2016); Sand,**

2    **_Model Federal Jury Instructions-Criminal_, Instrs. 44-4; _United States v. Chastain_, 145 F.4th 282,**

3    **292 (2d Cir. 2025) ("To be guilty of wire fraud, a defendant must (1) 'devise' or 'intend to devise'**

4    **a scheme (2) to 'obtain money or property' (3) 'by means of false or fraudulent pretenses,**

5    **representations, or promises.'"); _Kousisis v. United States_, 145 S. Ct. 1382, 1391 (2025) ("[I]n all**

6    **cases, because money or property must be an _object_ of the defendant's fraud, the traditional**

7    **property interest at issue 'must play more than some bit part in a scheme.' Obtaining the victim's**

8    **money or property must have been the 'aim,' not an 'incidental byproduct,' of the defendant's**

9    **fraud." (cleaned up)); _Id._ at 1392 ("[T]he wire fraud statute is agnostic about economic loss. The**

10   **statute does not so much as mention loss, let alone require it.").**

11

12          Count Three — Second Element: Knowledge and Intent to Defraud

13          The second element that the Government must establish beyond a reasonable doubt with respect

14   to Count Three is that the defendant you are considering devised or participated in the fraudulent scheme

15   knowingly, willfully, and with specific intent to defraud.

16          To "devise" a scheme to defraud is to concoct or plan it.  To "participate" in a scheme to defraud

17   means to associate oneself with it, with the intent to making it succeed.

18          It is not necessary for the government to establish that the defendant originated the scheme to

19   defraud.  It is sufficient if you find that there was a scheme to defraud, even if somebody else originated

20   it, and that the defendant, while aware of the existence of the scheme, knowingly participated in it.

21          It is also not required that the defendant have participated in or have had knowledge of all the

22   operations of the scheme.  The guilt of the defendant is not governed by the extent of his participation.

1    It is also not necessary that the defendant you are considering have participated in the scheme

2    from the beginning. A person who comes in at a later point with knowledge of the scheme's general

3    operation, although not necessarily all its details, and intentionally acts in a way to further the unlawful

4    goals, becomes a participant in the scheme.

5    I have already explained the meaning of the terms "knowingly," "willfully," and "intent to

6    defraud," and you should apply those instructions here.

7    As with Count Two, good faith on the part of a defendant is a complete defense to the charge of

8    wire fraud.  I previously instructed you on the meaning of "good faith," and you should apply those

9    instructions here.  I remind you, however, that a defendant has no burden to establish good faith.  The

10    burden is on the Government to prove fraudulent intent and the consequent lack of good faith beyond a

11    reasonable doubt.  Further, if the defendant you are considering participated in the scheme to defraud,

12    then a belief by that defendant, if such belief existed, that ultimately everything would work out so that

13    no one would lose any money does not mean that the defendant acted in good faith.

14    **Adapted from Adapted from _United States v. Raji_, 19-CR-870 (JMF) (S.D.N.Y. September**

15    **19, 2022); _United States v. Avenatti_, 19-cr-374 (JMF) (S.D.N.Y. February 1, 2022; _United States v._**

16    **_Lavidas_, 19 Cr. 716 (DLC) (S.D.N.Y. 2020); _United States v. Hoey_, 15 Cr. 229 (PAE) (S.D.N.Y.**

17    **2016); _United States v. Balkany_, 10 Cr. 441 (DLC) (S.D.N.Y. 2010); _United States v. Males_, 459 F.3d**

18    **154, 159 (2d Cir. 2006); _United States v. Rossomando_, 144 F.3d 197, 203 (2d Cir. 1998); _United_**

19    **_States v. Middendorf_, 18 Cr. 36 (JPO), 2019 WL 4254025, at &7 (S.D.N.Y. Sept. 9, 2019); Sand,**

20    **Model Federal Jury Instructions-Criminal, Instrs. 44-5.**

21

22    Count Three — Third Element: Use of Interstate Wires

41

1        The third and final element that the Government must establish beyond a reasonable doubt with

2    respect to Count One is that an interstate wire (for example, a telephone call, email communication, text

3    message, or bank wire transfer) was used in furtherance of the scheme to defraud.

4        The "interstate" requirement means that the wire communication must pass between two or more

5    states.  This could include, for example, a telephone call between two different states, an email between

6    two different states, or a wire transfer between banks located in two different states.

7        To be in furtherance of the scheme, the wire communication must be incident to an essential part

8    of the scheme to defraud and must have been caused, directly or indirectly, by the defendant you are

9    considering.  It is not necessary for the defendant you are considering to be directly or personally

10   involved in any wire communication, as long as the communication is reasonably foreseeable in the

11   execution of the alleged scheme to defraud in which that defendant participated.  In this regard, it would

12   be sufficient to establish this element of the crime if the Government proved that the defendant you are

13   considering caused the wires to be used by others.  This does not mean that the defendant himself or

14   herself must have specifically authorized or directed others to execute a wire communication.  When a

15   person acts with knowledge that the use of wire facilities will follow in the ordinary course of business,

16   or where the use of wire facilities can reasonably be foreseen, even though not actually intended, then he

17   or she causes the wires to be used.  Furthermore, the requirement that an interstate wire facility was used

18   is satisfied even if a wire facility was used by a person with no knowledge of the fraudulent scheme,

19   including a victim of the alleged fraud, so long as the wire was in furtherance of the alleged scheme.

20       The use of a wire facility need not itself be fraudulent.  Stated another way, the material sent by

21   wire need not contain any fraudulent representation, or even any request for money.  It is sufficient if a

22   wire facility was used to further or assist in carrying out the scheme to defraud.

1    Only the use of a wire facility must be reasonably foreseeable, not its interstate

2    component.  Thus, if you find that the use of a wire facility was reasonably foreseeable, and an interstate

3    wire facility was actually used, then this element is satisfied even if it was not foreseeable that the wire

4    communication would cross state boundaries.

5    **Adapted from *United States v. Avenatti*, 19-cr-374 (JMF) (S.D.N.Y. February 1, 2022);**

6    ***United States v. Raji*, 19-CR-870 (JMF) (S.D.N.Y. September 19, 2022);  *United States v. Lavidas*, 19**

7    **Cr. 716 (DLC) (S.D.N.Y. 2020); *United States v. Balkany*, 10 Cr. 441 (DLC) (S.D.N.Y. 2010); *see***

8    ***United States v. Halloran*, 821 F.3d 321, 342 (2d Cir. 2016).**

9

10    Count Four — Investment Adviser Fraud: Elements of the Offense

11    Count Four charges all three defendants with investment adviser fraud.  Specifically, Count Four

12    charges that from at least in or about 2017 through in or about April 2022, the defendants engaged in a

13    scheme to defraud their clients regarding StraightPath's operations and investments, and

14    misappropriated client funds for their own enrichment.

15    For a defendant to be found guilty of Count Four, the Government must prove each of the

16    following four elements beyond a reasonable doubt:

17    *First*, that the defendant you are considering was an investment adviser.

18    *Second*, that the defendant you are considering did any one or more of the following:

19    (a) employed a device, scheme, or artifice to defraud an actual or prospective investor advisory

20    client;

21    (b) engaged in a transaction, practice, or course of business which operated as a fraud and deceit

22    upon those investment advisory clients or prospective investment advisory clients; or

23    (c) engaged in an act, practice, and course of business that was fraudulent or deceptive.

43

1    *Third*, the defendant you are considering did whatever he or she did to satisfy the second element

2    knowingly, willfully, and with the intent to defraud an investor advisory client.

3    *Fourth*, the defendant you are considering did whatever he or she did to satisfy the second

4    element by use of the mails or an instrumentality of interstate commerce.

5    **Adapted from *United States v. Tagliaferri*, 13-CR-115 (RA) (S.D.N.Y. 2014); *United States v.***

6    ***Balboa*, No 12 Cr. 196 (S.D.N.Y. Dec. 17, 2013).**

7

8    Count Four — First Element: Investment Adviser

9    The first element the Government must prove beyond a reasonable doubt with respect to Count

10   Four is that the defendant you are considering was an investment adviser at the time he or she is alleged

11   to have committed investment adviser fraud.  An investment adviser means "any person who, for

12   compensation, engages in the business of advising others, either directly or through publications or

13   writings, as to the value of securities or as to the advisability of investing in, purchasing or selling

14   securities, or who, for compensation and as a part of a regular business, issues or promulgates analyses

15   or reports concerning securities."  But the definition of investment adviser does not include any broker

16   or dealer whose performance of such services is solely incidental to the conduct of his or her business as

17   a broker or dealer and who receives no special compensation for such services.

18   To determine whether a defendant was an investment adviser, you should primarily consider

19   three factors:

20   *First*, whether that defendant provided advice or was an adviser that issued reports or analyses

21   regarding securities;

22   *Second*, whether that defendant was in the business of providing such advice; and

23   *Third*, whether that defendant was provided compensation for such advice.

44

1          Keep in mind that whether a person or entity is an investment adviser is a different issue than

2    whether or not the person or entity was a registered investment adviser.  You are instructed that

3    registration with the United States Securities and Exchange Commission as an investment adviser is not

4    required for you to find that a defendant is an investment adviser for purposes of Count Four.

5          **Adapted from _United States v. Tagliaferri_, 13-CR-115 (RA) (S.D.N.Y. 2014); _United States v._**

6    **_Balboa_, No 12 Cr. 196 (S.D.N.Y. Dec. 17, 2013); 15 U.S.C.A. § 80b-2(a)(11) (West) (defining**

7    **"Investment Adviser"); _United States Sec. & Exch. Comm'n v. Ahmed_, 308 F. Supp. 3d 628, 653 (D.**

8    **Conn. 2018) ("[T]he fact that [the defendant] was not licensed, certified, or registered with any**

9    **state or federal agency does not preclude him from being considered an investment adviser under**

10   **the Adviser's Act, as the Act's definition of an adviser turns on conduct, not certification or**

11   **registration." (citing _United States v. Onsa_, 523 Fed. Appx. 63, 65 (2d Cir. 2013)).**

12

13   Count Four — Second Element: Fraudulent Act

14         The second element the Government must prove beyond a reasonable doubt with respect to

15   Count Four is that the defendant you are considering did any one or more of the following:

16         (a) employed a device, scheme, or artifice to defraud an actual or prospective investor-client;

17         (b) engaged in a transaction, practice, or course of business which operated as a fraud and deceit

18   upon those investor-clients or prospective investor-clients; or

19         (c) engaged in an act, practice, and course of business that was fraudulent or deceptive.

20         Any one of these types of alleged fraudulent conduct, if proven by the Government beyond a

21   reasonable doubt, is sufficient.  However, you must be in unanimous agreement as to which type of

22   unlawful conduct, if any, has been proved by the Government.

1       I instructed you on the meaning of "device," "scheme," "artifice to defraud," "fraud," and

2    "deceptive conduct" with respect to Count Two.  You should use those same instructions with respect to

3    Count Four, with the additional instructions I am about to give you.

4       I previously explained the concept of a "fiduciary duty" and that the failure to disclose material

5    information may constitute a fraud if the defendant you are considering had a fiduciary duty to make

6    such a disclosure and knowingly concealed that information.  For purposes of Count Four, I instruct you

7    that, as a matter of law, investment advisers have a fiduciary duty to their investment advisory clients.

8    That is, if you conclude that a defendant acted as an investment advisor, that defendant had an

9    affirmative duty of good faith, an affirmative duty to make full and fair disclosure of all material facts,

10   and an affirmative obligation to employ reasonable care to avoid misleading his or her clients.

11      An investment adviser's fiduciary duty, however, extends *only* to his or her client, not to the

12   general public.  Thus, if you decide that the defendant you are considering is an investment adviser, it

13   will also be up to you to determine who that defendant's "client" or "clients" were.  An investment

14   adviser to a fund owes a fiduciary duty to the fund itself.  In some circumstances, an investor in a fund

15   may qualify as a client of the fund's investor adviser as well.  In deciding whether an investor in a fund

16   is a client of the fund's investment adviser, you should consider whether the investor received

17   investment advice directly from the adviser, whether the adviser played an active role with respect to the

18   investor, and whether the adviser was attuned to an individual investor' concerns.

19      Whether or not investors qualify as an investment adviser's "clients," investment advisers are

20   prohibited from making false or misleading statements to investors or prospective investors in funds

21   they advise and cannot defraud investors or prospective investors in those funds.

22   **Adapted from Government's Requested Charge; *United States v. Tagliaferri*, 13-CR-115**

23   **(RA) (S.D.N.Y. 2014); *United States v. Balboa*, No 12 Cr. 196 (S.D.N.Y. Dec. 17, 2013); *Transam.***

1    *Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 17 (1979) ("[Section] 206 establishes 'federal fiduciary

2    standards to govern the conduct of investment advisers." (quoting *Santa Fe Indus., Inc. v. Green*,

3    430 U.S. 462, 471 n.11 (1977)); *Burks v. Lasker*, 441 U.S. 471, 481-82 n.10 (1979); *SEC v. Capital*

4    *Gains Research Bureau, Inc.*, 375 U.S. 180, 191-92 (1963) (("The statute, in recognition of the

5    adviser's fiduciary relationship to his clients, requires that his advice be disinterested.")); *Sec. &*

6    *Exch. Comm'n v. Rashid*, 96 F.4th 233, 240 (2d Cir. 2024) ("[The Act] imposed on advisers 'an

7    affirmative duty of utmost good faith, and full and fair disclosure of all material facts, as well as

8    an affirmative obligation to employ reasonable care to avoid misleading [their] clients.");

9    *Goldstein v. Securities and Exchange Commission*, 451 F.3d 873, 882 (D.C. Cir. 2006) (holding that

10   a hedge fund adviser's "client," for purposes of the Advisers Act, is the hedge fund, not the hedge

11   fund investors and that "it is counterintuitive to characterize the investors in a hedge fund as the

12   'clients' of the adviser."); *id.* at 882-83 (rejecting SEC's rule that investors qualify as clients

13   because ("the Commission has not justified treating all investors in hedge funds as clients for the

14   purpose of the rule."); *id.* at 880 (describing a fund adviser as someone who "does not tell the

15   *investor* how to spend his money; the investor made that decision when he invested in the fund.

16   Having bought into the fund, the investor fades into the background; his role is completely

17   passive."); *United States v. Lay*, 612 F.3d 440, 446-47 (6th Cir. 2010) (quoting *Goldstein*, 451 F.3d at

18   883) (permitting the jury to determine whether a client-adviser relationship existed pursuant to

19   the Investment Adviser Act  and noting that"[*Goldstein*] did not hold that a hedge fund investor

20   could never be a client of a hedge fund adviser, or be owed a fiduciary duty by one, for purposes of

21   the criminal fraud provisions of the IAA."); *United States v. Lay*, 566 F. Supp. 2d 652, 670 (N.D.

22   Ohio 2008), aff'd, 612 F.3d 440 (6th Cir. 2010) ("The characteristics defining an adviser-client

23   relationship were determined by the *Goldstein* court to ordinarily be absent in hedge fund

47

1  scenarios, i.e., the investors do not receive investment advice directly from the adviser, the

2  investor's role is passive, the adviser has no obligation to ensure that fund investment decisions

3  are appropriate investments for each shareholder or obligation to disclose conflicts, and the

4  adviser's advice is not attuned to an individual investor's concerns."); *United States Sec. & Exch.*

5  *Comm'n v. SkiHawk Cap. Partners,* LLC, No. 21-CV-01776-MDB, 2023 WL 2574376, at *11 (D.

6  Colo. Mar. 20, 2023) ("Factors in determining whether an adviser-investor relationship exists

7  include: whether investors receive advice directly from the investment adviser; whether investors

8  are active in the fund's investment decisions; whether the investment adviser has an obligation to

9  ensure that the fund's investment decisions are appropriate investments for each shareholder; and

10  whether the investment adviser's advice is tailored to an investor's particularized needs."); *see*

11  *also SEC v. Lauer,* 478 F. App'x 550, 557 (11th Cir. 2012) (hedge fund adviser's conduct, including

12  "proffer[ing] advice directly to the Funds' investors when he hosted meetings and teleconferences

13  with investors, and [suggesting] in the Funds' newsletter that his market strategy could beat

14  market returns" brought him within the bounds of the term "investment for purposes of the

15  Advisers Act); *United States Sec. & Exch. Comm'n v. Jarkesy,* 603 U.S. 109, 116 (2024) ("Section

16  206(b), as implemented by Rule 206(4)–8, prohibits investment advisers from making 'any untrue

17  statement of a material fact' or engaging in 'fraudulent, deceptive, or manipulative' acts with

18  respect to investors or prospective investors. 17 C.F.R. §§ 275.206(4)–8(a)(1), (2); *see* 15 U.S.C. §

19  80b–6(4)").  *But see S.E.C. v. Northshore Asset Mgmt.*, No. 05-CV-2192 (WHP), 2008 WL 1968299,

20  at *6 (S.D.N.Y. May 5, 2008) (granting summary judgment on an SEC Advisers Act claim

21  "[b]ecause under the Advisers Act, Saludtti's clients were the Ardent Entities, a failure to disclose

22  information or misrepresentations to the Ardent Entities investors cannot form the basis for a

23  claim that Saludtti breached his fiduciary duties to the Ardent Entities."); *Rose v. Rahfco Mgmt.*

**_Grp., LLC_, No. 13-CV-5804 (VB), 2014 WL 7389900, at \*8 (S.D.N.Y. Dec. 15, 2014) (holding that "plaintiffs' claims for … breach of fiduciary duty against movants are dismissed" in part because investment adviser owes fiduciary duties only to the hedge fund").**

Count Four — Third Element: Knowledge, Intent, and Willfulness

The third element the Government must prove beyond a reasonable doubt with respect to Count Four is that the defendant you are considering did whatever he or she did to satisfy the second element knowingly, willfully, and with the specific intent to defraud.  I have already explained the meaning of the terms "willfully," "knowingly," and "intent to defraud," and you should apply those instructions here.  As with the earlier counts, let me advise you that since an essential element of the crime charged is intent to defraud, it follows that "good faith," as I have defined before, on the part of a defendant is also a complete defense to a charge of investment adviser fraud.

Count Four — Fourth Element: Interstate Nexus

The fourth element the Government must prove beyond a reasonable doubt with respect to Count Four is that the defendant you are considering did whatever he or she did to satisfy the second element by using the mails or an instrumentality of interstate commerce, such as interstate telephone or wire communications.  I previously discussed the meaning of the terms "mails" and "instrumentality of interstate commerce," and you should apply those instructions here too.

**Adapted from the Parties' Requested Charge.**

Count Six — Obstruction of Justice: Elements

49

1    The last of the substantive charges, Count Six, charges two of the defendants — Mr. Castillero

2    and Mr. Martinsen — with obstructing justice.  Specifically, it charges that, in or about May 2021, these

3    defendants obstructed the SEC's investigation into StraightPath by deleting email accounts subpoenaed

4    by the SEC and falsely representing to the SEC that such email accounts had never existed.

5    For a defendant to be found guilty of Count Six, the Government must prove each of the

6    following two elements beyond a reasonable doubt:

7    *First*, that the defendant you are considering knowingly altered, destroyed, or caused to be

8    altered or destroyed, a record or document.

9    *Second*, that the defendant you are considering acted with the intent to impede, obstruct, or

10   influence an investigation of a matter within the jurisdiction of an agency of the United States, or in

11   relation to or contemplation of any such matter or case.

12   **Adapted from Government's Requested Charge; Sand, *et al.*, *Modern Federal Jury***

13   ***Instructions*, 46-82; *United States v. Goel*, 22-CR-396 (PKC); *United States v. Calypso*, 17 Cr. 224**

14   **(VEC); *United States v. Coll*, 15 Cr. 360 (LAP); *United States v. Fitts*, 19 Cr. 341 (RA); *United***

15   ***States v. Scott*, 979 F.3d 986 (2d Cir. 2020); *United States v. Gray*, 642 F.3d 371, 372 (2d Cir. 2011).**

16

17   <u>Count Six — First Element: Alteration or Destruction of a Record or Document</u>

18   The first element that the Government must prove beyond a reasonable doubt with respect to

19   Count Six is that the defendant you are considering knowingly altered, destroyed, or caused to be altered

20   or destroyed, a record or document.  I have previously instructed you on the meaning of "knowingly,"

21   and you should apply that definition here.

22   **Adapted from Government's Requested Charge; Sand, *et al.*, *Modern Federal Jury***

23   ***Instructions*, 46-82; *United States v. Goel*, 22-CR-396 (PKC); *United States v. Calypso*, 17 Cr. 224**

1    **(VEC);** ***United States v. Coll,*** **15 Cr. 360 (LAP);** ***United States v. Fitts,*** **19 Cr. 341 (RA);** ***United***

2    ***States v. Scott,*** **979 F.3d 986 (2d Cir. 2020);** ***United States v. Gray,*** **642 F.3d 371, 372 (2d Cir. 2011).**

3

4    <u>Count Six — Second Element: Intent to Obstruct</u>

5    The second element that the Government must establish beyond a reasonable doubt with respect

6    to Count Six is that the defendant you are considering intended to impede, obstruct, or influence an

7    investigation or matter that falls within the jurisdiction of a department or agency of the federal

8    government.  I instruct you that the United States Securities and Exchange Commission, or SEC, is an

9    agency of the federal government.

10    Although the Government must prove that the defendant you are considering intended to impede,

11    obstruct, or influence an investigation, it need not prove that a federal investigation was ongoing or

12    imminent at the time that defendant acted or that he was aware that his conduct would impede, obstruct,

13    or influence an investigation that was federal in nature.  The Government is required to prove only that

14    the defendant you are considering acted in contemplation of a potential investigation.

15    **Adapted from Government's Requested Charge; Sand,** ***et al.,*** ***Modern Federal Jury***

16    ***Instructions,*** **46-82;** ***United States v. Goel,*** **22-CR-396 (PKC);** ***United States v. Calypso,*** **17 Cr. 224**

17    **(VEC);** ***United States v. Coll,*** **15 Cr. 360 (LAP);** ***United States v. Fitts,*** **19 Cr. 341 (RA);** ***United***

18    ***States v. Scott,*** **979 F.3d 986 (2d Cir. 2020);** ***United States v. Gray,*** **642 F.3d 371, 372 (2d Cir. 2011).**

19

20    <u>Aiding and Abetting Liability</u>

21    Finally, in addition to charging the defendants with the substantive crimes of securities fraud,

22    wire fraud, investment adviser fraud, and obstruction of justice, Counts Two, Three, Four, and Six also

23    charge the defendants charged in those counts with what is called aiding and abetting.

1    Aiding and abetting liability is its own theory of criminal liability.  In effect, it is a theory of

2    liability that permits a person to be guilty of a specified crime if that person, while not committing the

3    crime, assisted another person or persons in committing the crime.  In other words, as to the relevant

4    predicate acts and crimes, a person can be guilty if he or she committed the crime himself or aided and

5    abetted the commission of the crime by one or more other people.  For example, if the Government

6    proves beyond a reasonable doubt that a defendant committed the substantive securities fraud alleged in

7    Count Two, then you need not consider aiding and abetting with respect to that count.  If, however, you

8    find that the Government did not prove beyond a reasonable doubt that a defendant engaged in the

9    securities fraud charged in Count Two, to continue using that count as an example, you should consider

10    whether the Government has nonetheless proved beyond a reasonable doubt that that defendant aided

11    and abetted someone else in the commission of securities fraud as alleged in that count.  And again,

12    while I have used Count Two as an example, this concept of aiding and abetting is also alleged in

13    Counts Three, Four, and Six as to the defendants charged in each of those counts.

14    Under the federal aiding and abetting statute, whoever "aids, abets, counsels, commands, induces

15    or procures" the commission of an offense is punishable as a principal.  You should give these words

16    their ordinary meaning.  A person aids or abets a crime if he or she knowingly does some act for the

17    purpose of aiding or encouraging the commission of that crime, with the intention of causing the crime

18    charged to be committed.  To "counsel" means to give advice or recommend.  To "induce" means to

19    lead or move by persuasion or influence as to some action or state of mind.  To "procure" means to

20    bring about by unscrupulous or indirect means.

21    A person who aids and abets another to commit an offense is just as guilty as if he or she

22    committed it himself.  As you can see, the first requirement is that the crime charged was actually

23    committed.  Obviously, no one can be guilty of aiding and abetting the criminal acts of another if no

1    crime was committed by the other person.  But if a crime was committed, then you may consider

2    whether the defendant you are considering or another person aided or abetted the commission of the

3    crime.

4          To aid and abet another in the commission of a crime, it is necessary that a person acted with the

5    same criminal intent necessary for the principal to be guilty, willfully and knowingly associated him or

6    herself in some way with the crime, and willfully and knowingly sought by some act to help make the

7    crime succeed.  Participation in a crime is willful if action is taken voluntarily and intentionally.

8          The mere presence of a person where a crime is being committed, even coupled with knowledge

9    by the person that a crime is being committed, or the mere acquiescence by that person in the criminal

10   conduct of others, even with guilty knowledge, is insufficient to establish aiding and abetting.

11         The Government must prove that an aider and abettor took some conscious action that furthered

12   the commission of the crime and that he or she did so with the intent to bring about the crime.  To

13   determine whether a person aided and abetted a crime, ask yourself:

14         1.  Did the person participate in the crime charged as something he or she wished to bring

15            about?

16         2.  Did the person associate him or herself with the criminal venture knowingly and willfully?

17         3.  Did the person seek by his or her actions to make the criminal venture succeed?

18         If, but only if, the Government proves beyond a reasonable doubt that the answer to all three of

19   these questions is "yes," then a person is an aider and abettor, and therefore guilty of the offense.

20         A person can also be found guilty of a crime if he "willfully caused" another person to commit

21   the crime.  I previously instructed you on the meaning of "willfully," and you should apply those

22   instructions here.  To "cause" means to bring something about, to effect something.  So "willfully

1 caused" means that it is not necessary for the person himself to have physically committed the crime to

2 be guilty of that crime.

3        To determine whether a person "willfully caused" the commission of a substantive crime, ask

4 yourself:

5     1. Did the person intentionally take action that caused someone else to commit an act that

6       would have been a crime if the person him or herself had committed that act?

7     2. Did the person intend that the crime would actually be committed by someone else?

8       If the Government proves beyond a reasonable doubt that the answer to both of these questions is

9 "yes," then the person willfully caused another to commit the crime at issue, and he or she is therefore

10 guilty of the offense as if the person him or herself had physically committed it. The Government need

11 not prove that the person acted through an intermediary who was guilty of a crime. A person who

12 willfully caused another to commit a crime may be found guilty of that crime even if he or she acted

13 through someone who is entirely innocent of the crime.

14       **Adapted from *United States v. Ramirez*, 20-CR-22 (JMF) (S.D.N.Y. 2024); *United States v.***

15 ***Pabon*, 18 Cr. 319 (SHS) (S.D.N.Y. 2022); *United States v. Berry*, 20 Cr. 84 (AJN) (2021); *United***

16 ***States v. Mack*, 18 Cr. 834 (PAE) (S.D.N.Y. 2019); *United States v. Lopez-Cabrera*, S5 11-CR-s1032**

17 **(PAE) (S.D.N.Y. 2014); *United States v. Goel*, 22-CR-396 (PKC).**

18

19     Counts One and Five — The Conspiracy Charges: Elements

20       That completes my instructions as to Counts Two, Three, Four, and Six, the substantive counts.

21 Let me turn, then, to the conspiracy charges, Counts One and Five.

22       Count One charges that from at least in or about 2017 through in or about April 2022, all three

23 defendants conspired to commit securities fraud, wire fraud, and investment adviser fraud.

1    Count Five charges that, in or about May 2021, two of the defendants — Mr. Castillero and Mr.

2    Martinsen — conspired to obstruct justice.

3    For a defendant to be found guilty of Count One or Count Five, the Government must prove each

4    of the following three elements beyond a reasonable doubt:

5    *First*, that the conspiracy charged in the Count you are considering existed.

6    *Second*, that the defendant you are considering knowingly and intentionally became a member of

7    the conspiracy, with intent to commit at least one of the goals or objects of the conspiracy.

8    *Third*, that any one of the members of the conspiracy knowingly committed at least one overt act

9    in furtherance of the conspiracy.

10    I will now explain each element in more detail.

11    **Adapted from *United States v. United States v. Giannelli* 20-CR-160 (MKV) (S.D.N.Y.**

12    **2022); *United States v. Raji*, 19-CR-870 (JMF) (S.D.N.Y. 2022); Sand, *Modern Federal Jury***

13    ***Instructions*, Instr. 19-3 (2025); *United States v. Goel*, 22-CR-396 (PKC).**

14

15    Counts One and Five — First Element: Existence of the Conspiracy

16    The first element the Government must prove beyond a reasonable doubt with respect to Counts

17    One and Five is the existence of the conspiracy charged in the count you are considering.

18    So, what is a conspiracy?  A conspiracy is an agreement or an understanding, between two or

19    more persons, to accomplish by joint action a criminal or unlawful purpose.  If you find beyond a

20    reasonable doubt that two or more persons came to an understanding, explicitly or implicitly (that is,

21    spoken or unspoken), to violate the law and to accomplish an unlawful plan, then the Government will

22    have sustained its burden of proof as to this element.

55

1    To satisfy its burden of proof on this element, the Government is not required to show that two

2    or more people sat around a table and entered into a solemn pact, orally or in writing, stating that they

3    had formed a conspiracy and spelling out who would do what in order to carry out the unlawful project.

4    Common sense tells you that when people, in fact, agree to enter into a criminal conspiracy, much is left

5    to unexpressed understanding.  In determining whether a conspiracy existed, you may consider direct as

6    well as circumstantial evidence.

7    When people enter into a conspiracy to accomplish an unlawful end, they become agents and

8    partners of one another in carrying out the conspiracy.  In determining whether there has been an

9    unlawful agreement as alleged, you may consider the acts and conduct of the alleged co-conspirators

10   that were done to carry out the apparent criminal purpose.  The old adage, "Actions speak louder than

11   words," applies here.  Often, the only evidence that is available with respect to the existence of a

12   conspiracy is that of disconnected acts and conduct on the part of the alleged individual co-conspirators.

13   When taken together and considered as a whole, however, these acts and conduct may warrant the

14   inference that a conspiracy existed as conclusively as would direct proof.

15   The objects — or objectives — of a conspiracy are the illegal goals the co-conspirators agree

16   upon or hope to achieve.  As I have mentioned, there are three objects of the conspiracy charged in

17   Count One of the Indictment — first, securities fraud; second, wire fraud; and third, investment adviser

18   fraud.  In order to prove that a defendant is guilty of the conspiracy offense charged in Count One, the

19   Government must establish beyond a reasonable doubt that the defendant you are considering agreed

20   with others to commit one or more of these offenses.  The Government does not need to prove that the

21   conspirators agreed to all three objects of the conspiracy.  To convict, however, you must be unanimous

22   as to at least one type of unlawful conduct that was the object of the conspiracy joined by the defendant.

56

1    The sole object of the conspiracy with which Mr. Castillero and Mr. Martinsen are charged in

2    Count Five is obstruction of justice.  Accordingly, in order to prove that a defendant is guilty of the

3    conspiracy offense charged in Count Five, the Government must establish beyond a reasonable doubt

4    that the defendant you are considering agreed with others to obstruct justice.

5    I have already explained these substantive crimes to you, and you should apply those instructions

6    here to determine whether the defendant you are considering conspired, or agreed, to commit any of

7    those crimes.

8    **Adapted from *United States v. Raji*, 19-CR-870 (JMF) (S.D.N.Y. 2022); *United States v.***

9    **_Goel_, 22-CR-396 (PKC);  Sand, Modern Federal Jury Instructions, Instr. 19-4; *United States v.***

10    **_Dambelly_, 16 Cr. 002 (JMF) (S.D.N.Y. 2016);  *United States v. Lavidas*, 19 Cr. 716 (DLC) (S.D.N.Y.**

11    **2020); *United States v. Campos*, 16 Cr. 395 (VEC) (S.D.N.Y. 2017); *see also United States v. Rea*,**

12    **958 F.2d 1206, 1214 (2d Cir. 1992) ("In order to prove conspiracy, the government need not**

13    **present evidence of an explicit agreement; proof of a tacit understanding will suffice. The**

14    **coconspirators need not have agreed on the details of the conspiracy, so long as they have agreed**

15    **on the essential nature of the plan, and their goals need not be congruent, so long as they are not**

16    **at cross-purposes."); *United States v. Montour*, 944 F.2d 1019, 1025 (2d Cir. 1991) ("To prove the**

17    **existence of an agreement, the government need not present evidence of a formal arrangement**

18    **between the co-conspirators. Rather, it is sufficient if the government can demonstrate that the**

19    **defendant acted together with others to realize a common goal.").**

20

21    <u>Counts One and Five — Second Element: Membership in the Conspiracy</u>

22    The second element the Government must prove beyond a reasonable doubt with respect to

23    Counts One and Five is that the defendant you are considering knowingly and willfully became a

1    member of the conspiracy you are considering — that is, that that defendant participated in the

2    conspiracy with knowledge of its unlawful purpose or purposes and in furtherance of its unlawful

3    objective or objectives.

4    　　　　The Government must prove beyond a reasonable doubt that the defendant you are considering

5    knowingly and willfully entered into the conspiracy with a criminal intent — that is, with an unlawful

6    purpose — and that he or she agreed to take part in the conspiracy with knowledge of its unlawful

7    purpose or purposes and with the specific intention of furthering its objective or objectives.

8    　　　　I have already explained the meaning of the terms "willfully" and "knowingly," and you should

9    apply those instructions here.

10   　　　　It is not necessary for the Government to show that a defendant was fully informed as to all the

11   details of the conspiracy in order for you to infer knowledge on his or her part.  To have guilty

12   knowledge, a defendant need not have known the full extent of the conspiracy, or all of the activities of

13   all its participants.  It is not even necessary that a defendant knew every other member of the conspiracy.

14   　　　　When people enter into a conspiracy to accomplish an unlawful end, they become agents or

15   partners of one another in carrying out the conspiracy.  In determining the factual issues before you, you

16   may, but are not required to, take into account any acts or statements made by a defendant's co-

17   conspirators (if any), which were made during, in the course of, and in furtherance of the conspiracy,

18   even though such acts or statements were not made in the presence of that defendant or were made

19   without his or her knowledge.  Acts or statements made in furtherance of the common purpose of the

20   conspiracy are deemed, under the law, to be the acts or statements of all of the members, and all of the

21   members are responsible for such acts or statements.

22   　　　　Indeed, each member of a conspiracy may perform separate and distinct acts and may perform

23   them at different times.  Some conspirators may play major roles, while others play minor roles.  An

1    equal role is not what the law requires.  In fact, even a single act may be sufficient to draw a defendant

2    within the scope of the conspiracy.

3          Nor is it necessary that a defendant received any monetary benefit from his participation in the

4    conspiracy, or had a financial stake in the outcome, so long as he or she in fact joined in the conspiracy

5    in the manner I have explained.

6          Keep in mind, however, that a person may know, assemble with, associate with, or be friendly

7    with, one or more members of a conspiracy, without being a conspirator him or herself.  Mere similarity

8    of conduct or the fact that a defendant may have discussed common aims and interests does not

9    necessarily establish proof of the existence of a conspiracy or that defendant's membership in the

10   conspiracy.  I also want to caution you that mere knowledge or acquiescence, without participation, in

11   the unlawful plan is not sufficient.

12          Moreover, the fact that the acts of a defendant, without knowledge, merely happen to further

13   the purposes or objectives of the conspiracy, does not make that defendant a member of the conspiracy.

14   More is required under the law.  What is necessary is that the defendant must have participated with

15   knowledge of at least some of the illegal purposes or objects of the conspiracy and with the intention of

16   aiding in the accomplishment of those unlawful ends.

17          The duration and extent of a defendant's participation has no bearing on the issue of that

18   defendant's guilt.  He or she need not have joined the conspiracy at the outset, and may have joined it at

19   any time in its progress.

20          Once a conspiracy is formed, it is presumed to continue until either its objective is accomplished

21   or there is some affirmative act of termination by the members.  So too, once a person is found to be a

22   member of a conspiracy, he or she is presumed to continue as a member in the conspiracy until the

1  conspiracy is terminated, unless it is shown by some affirmative proof that the person withdrew and

2  disassociated him or herself from the conspiracy.

3      In sum, you must find beyond a reasonable doubt that the defendant you are considering, with

4  an understanding of the unlawful character of the conspiracy you are considering, intentionally engaged,

5  advised, or assisted in the conspiracy for the purpose of furthering the illegal undertaking.  He or she

6  thereby becomes a knowing and willing participant in the unlawful agreement — that is to say, a

7  conspirator.

8      **Adapted from Parties' Requests to Charge; *United States v. Raji*, 19-CR-870 (JMF)**

9  **(S.D.N.Y. 2022); *United States v. Goel*, 22-CR-396 (PKC); Sand, *Modern Federal Jury Instructions*,**

10  **Instrs. 19-6, 3A-1, 3A-3; *United States v. Dambelly*, 16 Cr. 002 (JMF) (S.D.N.Y. 2016); *see also***

11  ***United States v. Aleskerova*, 300 F.3d 286, 292-93 (2d Cir. 2002) (describing manner in which**

12  **government may show participation in conspiracy with required state of mind); *United States v.***

13  ***Rea*, 958 F.2d 1206, 1214 (2d Cir. 1992) ("The defendant's knowledge of the conspiracy and**

14  **participation in it with the requisite criminal intent may be established through circumstantial**

15  **evidence. A defendant need not have joined a conspiracy at its inception in order to incur liability**

16  **for the unlawful acts of the conspiracy committed both before and after he or she became a**

17  **member.") (citations omitted).**

18

19      Counts One and Five — Third Element: Overt Act

20      The third element the Government must prove beyond a reasonable doubt with respect to Counts

21  One and Five is that at least one overt act was committed in furtherance of the conspiracy that you are

22  considering by at least one of the co-conspirators — not necessarily any of the defendants.

1    That means there must have been something more than mere agreement; some overt step or

2  action must have been taken by at least one of the conspirators in furtherance of the conspiracy you are

3  considering.  To put it another way, the agreement must have gone beyond merely talking.

4    You need not reach unanimous agreement on whether a particular overt act was committed in

5  furtherance of the conspiracy you are considering.  But to find this element, you must all agree that at

6  least one overt act was committed.  Moreover, you need not find that a defendant in this case committed

7  the overt act him or herself.  It is sufficient for the Government to show that any conspirator knowingly

8  committed an overt act in furtherance of the conspiracy you are considering, since such an act becomes,

9  in the eyes of the law, the act of all of the members of the conspiracy.

10    In addition, you should bear in mind that the overt act, standing alone, may be an innocent,

11  lawful act.  Frequently, however, an apparently innocent act sheds its harmless character if it is a step in

12  carrying out, promoting, aiding, or assisting a conspiracy.  You are therefore instructed that the overt act

13  does not have to be an act that in and of itself is criminal or an objective of the conspiracy.

14    **Adapted from *United States v. Giannelli*, 20-CR-160 (MKV) (S.D.N.Y 2022); Sand, *Modern***

15  ***Federal Jury Instructions*, Instr. 19-7 (2025); *United States v. Goel*, 22-CR-396 (PKC); *United States***

16  ***v. Salmonese*, 352 F.3d 608, 619 (2d Cir. 2003) ("[T]he overt act element of a conspiracy charge**

17  **may be satisfied by an overt act that is not specified in the indictment"); *United States v. Kozeny*,**

18  **667 F.3d 122, 131–32 (2d Cir. 2011) ("the government may plead one set of overt acts in the**

19  **indictment and prove a different set of overt acts at trial without prejudice to the defendant");**

20  ***United States v. Mackey*, 652 F. Supp. 3d 309, 325 (E.D.N.Y. 2023) ("In the Second Circuit,**

21  **essential conduct, also known as conduct constituting the offense, has occurred any place where**

22  **either the conspiratorial agreement was formed,, or any overt act was (1) committed for the**

23  **purpose of accomplishing the objectives of the conspiracy, so long as it was (2) reasonably**

61

1    **foreseeable that the overt act would occur in that location." (cleaned up)); *United States v.***

2    ***Ramirez-Amaya*, 812 F.2d 813, 816 (2d Cir. 1987) ("As to a charge of conspiracy, venue may**

3    **properly be laid in the district in which the conspiratorial agreement was formed or in any district**

4    **in which an overt act in furtherance of the conspiracy was committed by any of the**

5    **coconspirators.").**

6

7    <u>Multiple Conspiracies</u>

8    With respect to Count One, which charges all three defendants with conspiracy to commit

9    securities fraud, wire fraud, and investment adviser fraud, the defendants argue that there were actually

10   several separate and independent conspiracies with various groups of members.

11   Whether there existed a single unlawful agreement, or many such agreements, or indeed, no

12   agreement at all, is a question of fact for you, the jury, to determine in accordance with the instructions I

13   just gave you.

14   When two or more people join together to further one common unlawful design or purpose, a

15   single conspiracy exists.  By way of contrast, multiple conspiracies exist when there are separate

16   unlawful agreements to achieve distinct purposes.

17   Proof of several separate and independent conspiracies is not proof of the single, overall

18   conspiracy charged in Count One unless one of the conspiracies proved happens to be the single

19   conspiracy described in that Count.

20   You may find that there was a single conspiracy despite the fact that there were changes in

21   personnel, activities, or both, so long as you find beyond a reasonable doubt that some of the co-

22   conspirators continued to act for the duration of the conspiracy for the purposes charged in Count One.

23   The fact that the members of a conspiracy are not always identical does not necessarily imply that

1    separate conspiracies exist.  In addition, the existence of subgroups or subunits within a larger

2    conspiracy does not necessarily mean that the larger conspiracy does not exist.

3          On the other hand, if you find that the conspiracy charged in Count One did not exist, you cannot

4    find any defendant guilty of the single conspiracy charged in Count One.  This is so even if you find that

5    some conspiracy other than the one charged in Count One existed, even though the purposes of both

6    conspiracies may have been the same, and even though there may have been some overlap in

7    membership.

8          Similarly, if you find that the defendant you are considering was a member of another

9    conspiracy, and not the one charged in Count One, then you must acquit that defendant of the conspiracy

10   charged in Count One.  A person can be part of more than one conspiracy at the same time, and his or

11   her actions can further the interests of more than one conspiracy at the same time.

12         Therefore, what you must do is determine whether the conspiracy charged in Count One existed.

13   If it did, you then must determine the nature of the conspiracy and who were its members.

14         **Adapted from the Parties' Supplemental Requests to Charge; Sand, *Modern Federal Jury***

15   ***Instructions - Criminal*, Instr. 19-5; *United States v. Blondet*, 16-CR-387 (JMF) (S.D.N.Y. 2022).**

16

17         <u>Venue</u>

18         In addition to all of the elements that I have described for you, in order to convict a defendant on

19   any count of the Indictment, you must also decide whether any act in furtherance of the crime charged

20   occurred within the Southern District of New York.  The Southern District of New York includes

21   Manhattan and the Bronx.

22         The Government need not prove that the crime charged was committed entirely in this District or

23   that the defendant you are considering was present here.  It is sufficient to establish venue if any act in

1    furtherance of the crime occurred within the Southern District of New York and it was reasonably

2    foreseeable to the defendant you are considering that the act would take place in the Southern District of

3    New York.  Any action in this District or any communication into or out of this District can establish

4    venue so long as the action or communication furthered the charged offense.  If you find that the crime

5    charged was committed in more than one district, venue is proper in any district in which the crime was

6    begun, continued, or completed.

7         I should note that on this issue — and this issue alone — the Government's burden is not proof

8    beyond a reasonable doubt, but only proof by a preponderance of the evidence.  Thus, the Government

9    has satisfied its venue obligations as to a count if you conclude that it is more likely than not that any act

10   in furtherance of the crime charged in that count occurred in the Southern District of New York.  By

11   contrast, if you find that the Government failed to prove venue by a preponderance of the evidence with

12   regard to any count, then you must acquit the defendant you are considering of that count.

13   **Adapted from Government's Request to Charge; _United States v. Blondet_, 16 Cr. 387 (JMF)**

14   **(S.D.N.Y. 2022).**

15

16        Variance of Dates and Amounts

17        The Indictment refers to various dates and amounts.  I instruct you that it does not matter if a

18   specific event is alleged to have occurred on or about a certain date or month, but the evidence indicates

19   that in fact it was a different date or month.  Nor does it matter if the Indictment alleges that a

20   transaction involved a specific number of shares or amount of money, but the evidence indicates that it

21   was a different amount.  The law requires only a substantial similarity between the dates, months, and

22   amounts alleged in the Indictment and the dates, months, and amounts established by the evidence.

1    **Adapted from Government's Request to Charge; _United States v. Blondet_, 16 Cr. 387 (JMF)**

2    **(S.D.N.Y. 2022).**

3

4                              **III. CONCLUDING INSTRUCTIONS**

5    Selection of the Foreperson

6        In a few minutes, you are going to go into the jury room and begin your deliberations.  Your first

7    task will be to select a foreperson.  The foreperson has no greater voice or authority than any other juror

8    but is the person who will communicate with me when questions arise and when you have reached a

9    verdict and who will be asked in open court to pass your completed Verdict Form to me.  Notes should

10   be signed by the foreperson and should include the date and time they were sent.  They should also be as

11   clear and precise as possible.  Any notes from the jury will become part of the record in this case.  So

12   please be as clear and specific as you can be in any notes that you send.  Do not tell me or anyone else

13   how the jury stands on any issue until after a unanimous verdict is reached.

14

15   Right to See Exhibits and Hear Testimony

16       All of the exhibits will be given to you near the start of deliberations.  In addition, you will also

17   be provided with a list of all the exhibits that were received into evidence.

18       If you want any of the testimony submitted to you or read back to you, you may also request that.

19   Keep in mind that if you ask for testimony, however, the court reporters must search through their notes,

20   the parties must agree on what portions of testimony may be called for, and if they disagree, I must

21   resolve those disagreements.  That can be a time-consuming process.  So please try to be as specific as

22   you possibly can in requesting portions of the testimony, if you do.

1    Again, your requests for testimony — in fact, any communication with the Court — should be

2    made to me in writing, signed by your foreperson with the date and time, and given to one of the Court

3    Security Officers.

4

5    Juror Note-Taking

6    If any one of you took notes during the course of the trial, you should not show your notes to, or

7    discuss your notes with, any other jurors during your deliberations.  Any notes you have taken are to be

8    used solely to assist you.  The fact that a particular juror has taken notes entitles that juror's views to no

9    greater weight than those of any other juror.  Finally, your notes are not to substitute for your

10    recollection of the evidence in the case.  If, during your deliberations, you have any doubt as to any of

11    the testimony, you may — as I just told you — request that the official trial transcript that has been

12    made of these proceedings be submitted or read back to you.

13

14    Bias, Prejudice, and Sympathy

15    All of us, no matter how hard we try, tend to look at others and weigh what they have to say

16    through the lens of our own experience and background.  We each have a tendency to stereotype others

17    and make assumptions about them.  Often, we see life and evaluate evidence through a clouded filter

18    that tends to favor those like ourselves.  You must do the best you can to put aside such stereotypes, for

19    all litigants and witnesses are entitled to a level playing field.

20    In particular, it would be improper for you to consider, in reaching your decision as to whether

21    the Government sustained its burden of proof, any personal feelings you may have about the defendants'

22    race, religion, national origin, gender, sexual orientation, or age.  Similarly, it would be improper for

1    you to consider any personal feelings you may have about the race, religion, national origin, gender,

2    sexual orientation, or age of any witness or anyone else involved in this case.

3            Indeed, under your oath as jurors, you are not to be swayed by bias, prejudice, or sympathy.  You

4    are to be guided solely by the evidence in this case, and as you sift through the evidence, the crucial

5    question that you must ask yourselves for each count is:  Has the Government proved each element of

6    each count beyond a reasonable doubt?

7            It is for you and you alone to decide whether the Government has sustained its burden of proving

8    each defendant's guilt beyond a reasonable doubt, solely on the basis of the evidence or lack of evidence

9    and subject to the law as I have instructed you.

10           It must be clear to you that once you let prejudice, bias, or sympathy interfere with your thinking,

11   there is a risk that you will not arrive at a true and just verdict.

12           If you have a reasonable doubt as to a defendant's guilt with respect to a particular count, then

13   you must render a verdict of not guilty as to that defendant on that count.  On the other hand, if you

14   should find that the Government has met its burden of proving the guilt of a defendant beyond a

15   reasonable doubt with respect to a particular count, then you should not hesitate because of sympathy or

16   any other reason to render a verdict of guilty as to that defendant on that count.

17           I also caution you that, under your oath as jurors, you cannot allow to enter into your

18   deliberations any consideration of the punishment that may be imposed upon a defendant if he or she is

19   convicted.  The duty of imposing a sentence in the event of conviction rests exclusively with the Court,

20   and the issue of punishment may not affect your deliberations as to whether the Government has proved

21   a defendant's guilt beyond a reasonable doubt.

22

23           <u>Duty to Deliberate</u>

67

1      The most important part of this case, members of the jury, is the part that you as jurors are now

2      about to play as you deliberate on the issues of fact.  I know you will try the issues that have been

3      presented to you according to the oath that you have taken as jurors.  In that oath you promised that you

4      would well and truly try the issues joined in this case and a true verdict render.

5      As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity

6      to express your own views.  Every juror should be heard.  No one juror should hold the center stage in

7      the jury room and no one juror should control or monopolize the deliberations.  If, after listening to your

8      fellow jurors and if, after stating your own view, you become convinced that your view is wrong, do not

9      hesitate because of stubbornness or pride to change your view.  On the other hand, do not surrender your

10     honest beliefs solely because of the opinions of your fellow jurors or because you are outnumbered.

11     Your verdict must be unanimous.  If at any time you are not in agreement, you are instructed that

12     you are not to reveal the standing of the jurors, that is, the split of the vote, to anyone, including me, at

13     any time during your deliberations.

14

15     <u>Return of the Verdict</u>

16     We have prepared a Verdict Form for you to use in recording your decisions, a copy of which is

17     attached to these instructions.  Do not write on your individual copies of the Verdict Form.  My staff

18     will give the official Verdict Form to Juror Number One, who should give it to the foreperson after the

19     foreperson has been selected.

20     You should draw no inference from the questions on the Verdict Form as to what your verdict

21     should be.  The questions are not to be taken as any indication that I have any opinion as to how they

22     should be answered.

1    After you have reached a verdict, the foreperson should fill in the Verdict Form and note the date

2    and time, and you should all sign the Verdict Form.  The foreperson should then give a note — **not** the

3    Verdict Form itself — to the Court Security Officer outside your door stating that you have reached a

4    verdict.  Do not specify what the verdict is in your note.  Instead, the foreperson should retain the

5    Verdict Form and hand it to me in open court when I ask for it.

6    I will stress again that each of you must be in agreement with the verdict that is announced in

7    court.  Once your verdict is announced in open court and officially recorded, it cannot ordinarily be

8    revoked.

9

10    <u>Closing Comments</u>

11    Finally, I say this, not because I think it is necessary, but because it is the custom in this

12    courthouse to say it:  You should treat each other with courtesy and respect during your deliberations.

13    All litigants stand equal in this room.  All litigants stand equal before the bar of justice.  All

14    litigants stand equal before you.  Your duty is to decide between these parties fairly and impartially, and

15    to see that justice is done.

16    Under your oath as jurors, you are not to be swayed by sympathy or prejudice.  You should be

17    guided solely by the evidence presented during the trial and the law as I gave it to you, without regard to

18    the consequences of your decision.  You have been chosen to try the issues of fact and to reach a verdict

19    on the basis of the evidence or lack of evidence.  If you let sympathy or prejudice interfere with your

20    clear thinking, there is a risk that you will not arrive at a just verdict.  You must make a fair and

21    impartial decision so that you will arrive at the just verdict.

22    Members of the jury, I ask your patience for a few moments longer.  It is necessary for me to

23    spend a few moments with the lawyers and the court reporter at the side bar.  I will ask you to remain

1    patiently in the jury box, without speaking to each other, and we will return in just a moment to submit

2    the case to you.  Thank you.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                       :

UNITED STATES OF AMERICA,          :

                                :

     -v-                          :             23-CR-622 (JMF)

                                :

MICHAEL CASTILLERO, a/k/a "Michael Alejandro,"   :
FRANCINE LANAIA,                    :          <u>VERDICT FORM</u>
and BRIAN MARTINSEN,             :

                                :

                 Defendants.      :

                                :
------------------------------------------------------------------X

*All Answers Must Be Unanimous*

**<u>Count One</u>: Conspiracy to Commit Securities Fraud, Wire Fraud, and Investment Adviser Fraud:**

        **Michael Castillero**

                     Guilty _____            Not Guilty _____

        **Francine Lanaia**

                     Guilty _____            Not Guilty _____

        **Brian Martinsen**

                     Guilty _____            Not Guilty _____

**<u>Count Two</u>: Securities Fraud**

        **Michael Castillero**

                     Guilty _____            Not Guilty _____

        **Francine Lanaia**

                     Guilty _____            Not Guilty _____

        **Brian Martinsen**

                     Guilty _____            Not Guilty _____

**Count Three**: Wire Fraud

 **Michael Castillero**

   Guilty _____   Not Guilty _____

 **Francine Lanaia**

   Guilty _____   Not Guilty _____

 **Brian Martinsen**

   Guilty _____   Not Guilty _____

**Count Four**: Investment Adviser Fraud

 **Michael Castillero**

   Guilty _____   Not Guilty _____

 **Francine Lanaia**

   Guilty _____   Not Guilty _____

 **Brian Martinsen**

   Guilty _____   Not Guilty _____

**Count Five**: Conspiracy to Obstruct Justice

 **Michael Castillero**

   Guilty _____   Not Guilty _____

 **Brian Martinsen**

   Guilty _____   Not Guilty _____

**Count Six: Obstruction of Justice**

      **Michael Castillero**

              Guilty _____             Not Guilty _____

      **Brian Martinsen**

              Guilty _____             Not Guilty _____

*After completing the Verdict Form, please sign your names below and fill in the date and time.*

_____    _____
Foreperson

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

Date and Time:    _____

*Once you have signed the Verdict Form, please give a note — **NOT** the Verdict Form itself —
to the Court Security Officer stating that you have reached a verdict.  The foreperson should retain the
official Verdict Form to be handed to the Judge in open court.*

Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                 :

UNITED STATES OF AMERICA,           :

                               :

    -v-                           :

                               :

MICHAEL CASTILLERO, a/k/a "Michael Alejandro,"  :        23-CR-622 (JMF)
FRANCINE LANAIA,                 :
and BRIAN MARTINSEN,             :

                               :

                 Defendants.      :

                               :

------------------------------------------------------------------------X

**JURY CHARGE** ~~(DRAFT)~~

~~October 31~~ November 2, 2025

# Table of Contents

I. GENERAL INTRODUCTORY CHARGES ................................................................... 1

Role of the Court and the Jury ................................................................................. 2

The Parties ................................................................................................................. 2

Conduct of Counsel ................................................................................................... 2

Presumption of Innocence and Burden of Proof ....................................................... 3

Proof Beyond a Reasonable Doubt ............................................................................ 4

Direct and Circumstantial Evidence .......................................................................... 5

What Is and What Is Not Evidence ............................................................................ 6

Stipulations ................................................................................................................ 8

Charts and Summaries ............................................................................................... 8

Limited Purpose Evidence ......................................................................................... 8

Recordings and Transcripts ....................................................................................... 8

Redactions .................................................................................................................. 9

Credibility of Witnesses ............................................................................................ 9

Non-Prosecution Agreements and Accomplice/Cooperator Testimony .................. 10

Immunized Witnesses .............................................................................................. 13

Law Enforcement and Government Witnesses ........................................................ 14

Expert Witnesses ..................................................................................................... 14

Uncalled Witnesses .................................................................................................. 15

Number of Witnesses and Uncontradicted Testimony ............................................ 15

Particular Investigative Techniques ........................................................................ 16

All Available Evidence Need Not Be Introduced .................................................... 16

Preparation of Witnesses ......................................................................................... 16

Presence of Counsel ................................................................................................. 17

Persons Not on Trial ................................................................................................ 17

A Defendant's Right Not to Testify ......................................................................... 18

II. SUBSTANTIVE CHARGES ................................................................................ 18

The Indictment ..................................................................................................... 18

Conspiracy Charges and Substantive Charges ................................................... 20

Count Two — Securities Fraud: Elements .......................................................... 21

    Count Two — First Element: Fraudulent Act .................................................. 22

    Count Two — Second Element: Intent to Defraud .......................................... 37

    Count Two — Third Element: Instrumentality of Interstate Commerce ............ 41

Count Three — Wire Fraud: Elements ................................................................ 42

    Count Three — First Element: Existence of Scheme or Artifice ...................... 43

    Count Three — Second Element: Knowledge and Intent to Defraud ................. 45

    Count Three — Third Element: Use of Interstate Wires .................................. 46

Count Four — Investment Adviser Fraud: Elements of the Offense .................... 48

    Count Four — First Element: Investment Adviser ........................................... 49

    Count Four — Second Element: Fraudulent Act .............................................. 50

    Count Four — Third Element: Knowledge, Intent, and Willfulness ................... 54

    Count Four — Fourth Element: Interstate Nexus ............................................ 54

Count Six — Obstruction of Justice: Elements ................................................... 55

    Count Six — First Element: Alteration or Destruction of a Record or Document .............. 56

    Count Six — Second Element: Intent to Obstruct ........................................... 56

Aiding and Abetting Liability .............................................................................. 57

Counts One and Five — The Conspiracy Charges: Elements ............................... 60

    Counts One and Five — First Element: Existence of the Conspiracy ................ 60

    Counts One and Five — Second Element: Membership in the Conspiracy ......... 63

    Counts One and Five — Third Element: Overt Act .......................................... 66

    Multiple Conspiracies ................................................................................... 67

Venue  69

Variance of Dates and Amounts ................................................................................................. 69

      III. CONCLUDING INSTRUCTIONS .............................................................. 70

Selection of the Foreperson ....................................................................................... 70

Right to See Exhibits and Hear Testimony .............................................................. 70

Juror Note-Taking....................................................................................................... 71

Bias, Prejudice, and Sympathy .................................................................................. 71

Duty to Deliberate ...................................................................................................... 73

Return of the Verdict .................................................................................................. 73

Closing Comments ...................................................................................................... 74

1     # I. GENERAL INTRODUCTORY CHARGES

2     Members of the jury, you have now heard all of the evidence and the lawyers' closing

3     arguments.  It is my duty at this point to instruct you as to the law.  I am going to read my instructions to

4     you.  It is not my favorite way to communicate — and not the most scintillating thing to listen to — but

5     there is a need for precision, and it is important that I get the words just right, and so that is why I will be

6     reading.

7     I have given you a copy of my instructions to follow along because they cover many points.

8     Please limit yourself to following along; that is, do *not* read ahead in the instructions.  If you find it

9     easier to listen and understand while you are following along with me, please do so.  If you would

10    prefer, you can just listen and not follow along.  In the unlikely event that I deviate from the written

11    instructions, it is my oral instructions that govern and that you must follow.  But you may take your

12    copy of the instructions with you into the jury room so you can consult it if you want to re-read any

13    portion of the charge to facilitate your deliberations.

14    For now, listen carefully and try to concentrate on the substance of what I'm saying.  You should

15    not single out any instruction as alone stating the law.  Instead, you should consider my instructions as a

16    whole when you retire to deliberate in the jury room.

17    My instructions to you will be in three parts.

18    *First*, I will give you general instructions — for example, about your role as the jury, what you

19    can and cannot consider in your deliberations, and the burden of proof.

20    *Second*, I will describe the law that you must apply to the facts as you find them to be established

21    by the evidence.

22    *Finally*, I will give you some instructions for your deliberations.

23

1

1     <u>Role of the Court and the Jury</u>

2         You, the members of the jury, are the sole and exclusive judges of the facts.  You must weigh

3     and consider the evidence without regard to sympathy, prejudice, or passion for or against any party.  It

4     is your duty to accept my instructions as to the law and to apply them to the facts as you determine them.

5     If ~~any party~~<u>anyone</u> has stated a legal principle differently from any that I state to you in my instructions,

6     it is my instructions that you must follow.

7

8     <u>The Parties</u>

9         In reaching your verdict, you must remember that all parties stand equal before a jury in the

10    courts of the United States.  The fact that the Government is a party and the prosecution is brought in the

11    name of the United States does not entitle the Government or its witnesses to any greater consideration

12    than that accorded to any other party.  By the same token, you must give it no less deference.  The

13    Government and the defendants, Michael Castillero, Francine Lanaia, and Brian Martinsen, stand on

14    equal footing before you.

15        It would be improper for you to consider, in reaching your decision as to whether the

16    Government sustained its burden of proof, any personal feelings you may have about the defendants'

17    race, national origin, religious beliefs, sex, or age.  All persons are entitled to the same presumption of

18    innocence and the Government has the same burden of proof with respect to all persons.

19

20    <u>Conduct of Counsel</u>

21        The personalities and the conduct of counsel are not in any way at issue.  If you formed opinions

22    of any kind about any of the lawyers in the case, favorable or unfavorable, whether you approved or

23    disapproved of their behavior, those opinions should not enter into your deliberations.

2

1      In addition, remember that it is the duty of a lawyer to object when the other side offers

2  testimony or other evidence that the lawyer believes is not properly admissible.  Therefore, you should

3  draw no inference from the fact that there was an objection to any testimony or evidence.  Nor should

4  you draw any inference related to the weight or importance of any testimony or evidence from the fact

5  that I sustained or overruled an objection.  Simply because I have permitted certain testimony or

6  evidence to be introduced does not mean that I have decided on its importance or significance.  That is

7  for you to decide.

8

9      <u>Presumption of Innocence and Burden of Proof</u>

10     All three defendants have pleaded not guilty to the charges against them.  As a result of that plea

11  of not guilty, the burden is on the Government to prove each defendant's guilt beyond a reasonable

12  doubt.  This burden never shifts to a defendant for the simple reason that the law never imposes upon a

13  defendant in a criminal case the burden or duty of testifying, or calling any witness, or locating or

14  producing any evidence.

15     Furthermore, the law presumes the defendants to be innocent of the charges against them.  The

16  presumption of innocence was in their favor when the trial began, continued in their favor throughout

17  the entire trial, remains with them even as I speak to you now, and persists in their favor as to each

18  charged crime during the course of your deliberations in the jury room, unless and until you determine

19  that the Government proves beyond a reasonable doubt that the defendant you are considering

20  committed that crime.

21

1    <u>Proof Beyond a Reasonable Doubt</u>

2    The question that naturally arises is, "What is a reasonable doubt?"  A reasonable doubt is a

3    doubt based on your reason, your judgment, your experience, and your common sense.  It is a doubt that

4    a reasonable person has after carefully weighing all the evidence.  It is a doubt founded in reason and

5    arising out of the evidence in the case — or the lack of evidence.  A reasonable doubt is not caprice,

6    whim, or ~~whim.  It is not~~ speculation ~~or suspicion~~.

7    Proof beyond a *reasonable* doubt does not mean proof beyond all *possible* doubt.  It is

8    practically impossible for a person to be absolutely and completely convinced of any disputed fact that,

9    by its very nature, cannot be proved with mathematical certainty.  The Government's burden is to

10    establish guilt beyond a *reasonable* doubt, not all *possible* doubt.

11    If, after a fair and impartial consideration of all the evidence, you can candidly and honestly say

12    that you are not satisfied with the guilt of the defendant you are considering, that you do not have an

13    abiding belief of that defendant's guilt — in other words, if you have such a doubt as would reasonably

14    cause a prudent person to hesitate in acting in matters of importance in his or her own affairs — then

15    you have a reasonable doubt, and in that circumstance it is your duty to acquit.

16    On the other hand, if, after a fair and impartial consideration of all the evidence, you can

17    candidly and honestly say that you do have an abiding belief of a defendant's guilt, such a belief as a

18    prudent person would be willing to act upon in important matters in the personal affairs of his or her

19    own life, then you have no reasonable doubt, and in that circumstance it is your duty to convict.

20

21    ~~Lawful Conduct Does Not Negate Unlawful Conduct~~

22    ~~The fact that a defendant may have acted lawfully on one occasion is not relevant to whether he~~

23    ~~or she acted unlawfully on another occasion.~~

4

1    Adapted from *Levine v. S. E. C.*, 436 F.2d 88, 91–92 (2d Cir. 1971) ("Commission found 'the

2    testimony of some customers that other misrepresentations had not been made to them would not

3    negate the testimony of the customers who testified that price predictions had been made to

4    them.'"); *United States v. Chambers*, 800 F. App'x 43, 46 (2d Cir. 2020) ("A defendant may not

5    seek to establish his innocence ... through proof of the absence of criminal acts on specific

6    occasions." (quoting *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990)); *id.* ("The reasoning

7    behind this rule is straightforward: A single occurrence of lawful conduct is simply irrelevant to

8    other occurrences of unlawful conduct."); *United States v. Reese*, 666 F.3d 1007, 1020 (7th Cir.

9    2012) ("Evidence that a defendant acted lawfully on other occasions is generally inadmissible to

10   prove he acted lawfully on the occasion alleged in the indictment."); *United States v. Golfo*, No. 19-

11   CV-00095(KAM), 2020 WL 2513445, at *2 (E.D.N.Y. May 15, 2020) ("The Second Circuit has long

12   recognized that '[a] defendant may not seek to establish his innocence ... through proof of the

13   absence of criminal acts on specific occasions.'")

14

15

16   <u>Direct and Circumstantial Evidence</u>

17       There are two types of evidence that you may properly use in deciding whether the defendants

18   are guilty or not guilty of the crimes with which they are charged.

19       One type of evidence is called direct evidence.  Direct evidence of a fact in issue is presented

20   when a witness testifies to that fact based on what he or she personally saw, heard, or otherwise

21   observed through the five senses.  The second type of evidence is circumstantial evidence.

22   Circumstantial evidence is evidence that tends to prove a disputed fact indirectly by proof of other facts.

1    There is a simple example of circumstantial evidence that is often used in this courthouse.

2    Assume that when you came into the courthouse this morning, the sun was shining and it was a nice day

3    outside.  Also assume that the courtroom shades were drawn and you could not look outside.  Assume

4    further that as you were sitting here, someone walked in with an umbrella that was dripping wet, and

5    then, a few moments later, somebody else walked in with a raincoat that was also dripping wet.

6    Now, because you could not look outside the courtroom and you could not see whether it was

7    raining, you would have no direct evidence of that fact.  But, on the combination of facts that I have

8    asked you to assume, it would be reasonable and logical for you to conclude that it was raining.

9    That is all there is to circumstantial evidence.  You infer on the basis of your reason, experience,

10   and common sense from one established fact the existence or the nonexistence of some other fact.

11   The matter of drawing inferences from facts in evidence is not a matter of guesswork or

12   speculation.  An inference is a logical, factual conclusion that you might reasonably draw from other

13   facts that have been proved.  It is for you, and you alone, to decide what inferences you will draw.

14   Many material facts, such as a person's state of mind, are not easily proved by direct evidence.

15   ~~Usually~~Often such facts are established by circumstantial evidence and the reasonable inferences you

16   draw.  Circumstantial evidence may be given as much weight as direct evidence.  The law makes no

17   distinction between direct and circumstantial evidence.  The law simply requires that before convicting a

18   defendant, you must be satisfied of the defendant's guilt beyond a reasonable doubt, based on all of the

19   evidence in the case.

20

21   <u>What Is and What Is Not Evidence</u>

22   What, then, is the evidence in the case?

6

1       The evidence in this case is (1) the sworn testimony of the witnesses, (2) the exhibits received

2    into evidence, and (3) any stipulations made by the parties.  Anything else is not evidence.

3       For example, the questions posed to a witness are not evidence; it is the witnesses' answers that

4    are evidence, not the questions.  In addition, materials brought forth only to refresh a witness's

5    recollection are not evidence.  Moreover, testimony that has been stricken or excluded by me is not

6    evidence and may not be considered by you in rendering your verdict.

7       Arguments by the advocates are also not evidence.  What you heard during the opening

8    statements and summations is merely intended to help you understand the evidence and reach your

9    verdict.  If your recollection of the facts differs from the lawyers' statements, you should rely on your

10    recollection.  If a lawyer made a statement during his or her opening or summation and you find that

11    there is no evidence to support the statement, you should disregard the statement.

12       Further, any statements that I may have made during the trial or during these instructions do not

13    constitute evidence.  At times, I may have admonished a witness or directed a witness to be responsive

14    to questions or to keep his or her voice up.  At times, I may have asked a question myself.  Any

15    questions that I asked, or instructions that I gave, were intended only to clarify the presentation of

16    evidence and to bring out something that I thought might be unclear.  You should draw no inference or

17    conclusion of any kind, favorable or unfavorable, with respect to any witness or any party in the case, by

18    reason of any comment, question, or instruction of mine.  The rulings I have made during the trial and

19    these instructions are no indication of my views of what your decision should be.  Nor should you infer

20    that I have any views as to the credibility of any witness, as to the weight of the evidence, or as to how

21    you should decide any issue that is before you.  That is entirely your role.

1    Finally, I instruct you that all of the evidence presented to you in this case was lawfully obtained.

2    Whether you approve or disapprove of how any evidence was obtained should not enter into your

3    deliberations.

4

5    Stipulations

6    Stipulations were entered into relating to various facts in this case. A stipulation is an agreement

7    between parties as to what certain facts were or what the testimony would be if certain people testified

8    before you. The stipulation is the same for your purposes as the presentation of live testimony. You

9    should consider the weight to be given such evidence just as you would any other evidence.

10

11    Charts and Summaries

12    The Government presented exhibits in the form of charts and summaries. As I mentioned to you

13    earlier, I admitted these charts and summaries in place of, or in addition to, the underlying testimony or

14    documents that they represent in order to save time and avoid unnecessary inconvenience. You should

15    consider the charts and summaries as you would any other evidence.

16

17    Limited Purpose Evidence

18    If certain testimony or evidence was received for a limited purpose, you must follow the limiting

19    instructions I have given.

20

21    Recordings and Transcripts

22    Recordings and transcripts have been admitted into evidence. Whether you approve or

23    disapprove of the recording of the activity may not enter your deliberations. I instruct you that these

8

1    recordings were made in a lawful manner and that no one's rights were violated; that the Government's

2    use of this evidence is lawful; and that it was properly admitted into evidence at this trial.

3        ~~You must, therefore, regardless of any personal opinions, give this evidence full consideration~~

4    ~~along with all the other evidence in the case in determining whether the Government has proved beyond~~

5    ~~a reasonable doubt the guilt of the defendant you are considering.~~

6        I remind you that the transcripts were given to you only as aids or guides to assist you in

7    listening to the recordings; they are not in and of themselves evidence. You alone should make your

8    own interpretation of what appears on the recordings based on what you heard. If you think you heard

9    something different than what appeared on the transcript, then what you heard is controlling..

10

11    <u>Redactions</u>

12        As I explained during trial, some of the exhibits admitted into evidence contain redactions of

13    certain information. "Redacted" means that part of the document or recording was taken or blacked out.

14    There is nothing unusual or improper about such redactions. You are to concern yourself only with the

15    part of the document that has been admitted into evidence. You should not consider any possible reason

16    why the other part of it was not admitted into evidence.

17

18    <u>Credibility of Witnesses</u>

19        How do you evaluate the credibility or believability of the witnesses? The answer is that you use

20    your common sense. There is no magic formula by which you can evaluate testimony. You may use the

21    same tests here that you use in your everyday life when evaluating statements made by others to you.

22    You may ask yourselves: Did the witness impress you as open, honest, and candid? How responsive

23    was the witness to the questions asked on direct examination and on cross-examination?

9

1    If you find that a witness intentionally told a falsehood, that is always a matter of importance you

2    should weigh carefully.  On the other hand, a witness may be inaccurate, contradictory, or even

3    untruthful in some respects and entirely believable and truthful in other respects.  It is for you to

4    determine whether such inconsistencies are significant or inconsequential, and whether to accept or

5    reject all of the testimony of any witness, or to accept or reject only portions.

6    You are not required to accept testimony even though the testimony is uncontradicted and the

7    witness's testimony is not challenged.  You may reject it because of the witness's bearing or demeanor,

8    or because of the inherent improbability of the testimony, or for other reasons sufficient for you to

9    conclude that the testimony is not worthy of belief.

10    In evaluating the credibility of the witnesses, you should take into account any evidence that a

11    witness may benefit in some way from the outcome of the case.  Such an interest in the outcome creates

12    a motive to testify falsely and may sway a witness to testify in a way that advances his or her own

13    interests.  Therefore, if you find that any witness ~~whose testimony~~ may have an interest in the outcome

14    of this trial, you should bear that factor in mind when evaluating the credibility of his or her testimony

15    and decide whether to accept it with great care.

16    Keep in mind, though, that it does not automatically follow that testimony given by an interested

17    witness is to be disbelieved.  There are many people who, no matter what their interest in the outcome of

18    the case may be, would not testify falsely.  It is for you to decide, based on your own perceptions and

19    common sense, to what extent, if at all, the witness's interest has affected his or her testimony.

20

21    <u>Non-Prosecution Agreements and Accomplice/Cooperator Testimony</u>

22    You heard testimony from witnesses who had entered into agreements with the Government.  It

23    is no concern of yours why the Government made an agreement with a particular witness.  You may,

10

1    however, consider the effect, if any, that the existence or terms of any such agreement have on the

2    witness's credibility.  A witness who hopes to obtain leniency may have a motive to testify as he

3    believes the Government wishes, or he may feel that it is in his interest to incriminate others.  As with

4    any witness, your responsibility is to determine whether any such motive or intent has influenced the

5    witness's testimony and whether the witness has told the truth, in whole or in part.

6         One witness, Eric Lachow, testified in exchange for a promise by the Government not to charge

7    him with certain crimes.  This type of agreement is known as a "non-prosecution agreement."  I instruct

8    you that there is nothing improper in the Government's use of such agreements.  They are a common

9    and important law-enforcement tool.  However, in evaluating the testimony of a witness with a non-

10   prosecution agreement, you should examine it with greater scrutiny than you would the testimony of an

11   ordinary witness.  You should consider what benefits or promises he received from the Government that

12   would motivate him to testify falsely.  For example, he may believe that he will continue to receive these

13   benefits only if he produces evidence of criminal conduct.

14        Another witness, Mark Lisser, testified pursuant to what is known as a "cooperation agreement."

15   I instruct you that there is nothing improper in the Government's use of such agreements either.  They

16   are also a common and important law-enforcement tool.  It is not unusual for the Government to rely on

17   the testimony of witnesses who admit to having participated in criminal activity.  The Government must

18   take its witnesses as it finds them and sometimes must use such testimony in a criminal prosecution

19   because otherwise it would be difficult or impossible to detect and prosecute wrongdoers.  For these

20   very reasons, the law allows the use of testimony from accomplice or cooperating witnesses.  Indeed, the

21   testimony of such a witness may be enough in itself for conviction, if the jury believes that the testimony

22   establishes guilt beyond a reasonable doubt.

11

1     However, because of the interest an accomplice or cooperator may have in testifying, you should

2     scrutinize any such testimony with special care and caution.  You may consider the fact that a witness is

3     a cooperator as bearing upon his credibility.  Like the testimony of any other witness, cooperating

4     witness testimony should be given such weight as it deserves in light of the facts and circumstances

5     before you, taking into account the witness's demeanor and candor, the strength and accuracy of the

6     witness's recollection, his background, and the extent to which his testimony is or is not corroborated by

7     other evidence in the case.  You may consider whether a cooperating witness has an interest in the

8     outcome of the case, and if so, whether that interest has affected his testimony.

9     In evaluating the testimony of a cooperating witness, you should ask yourselves the following

10    questions:  Would the accomplice benefit more by lying or by telling the truth?  Was any part of his

11    testimony potentially made up because he believed or hoped that he would receive favorable treatment

12    from the Government by testifying falsely or as he believed the Government wanted?  Or did he believe

13    that his interests would be best served by testifying truthfully?  If you believe that the witness was

14    motivated by hopes of personal gain, was the motivation one that would cause him to lie, or was it one

15    that would cause him to tell the truth?  Did this motivation color his testimony?  It does not follow,

16    however, that simply because a person has admitted to participating in one or more crimes, he is

17    incapable of giving a truthful version of what happened.

18    If you think that the testimony was false, you should reject it.  However, if, after a cautious and

19    careful examination of an accomplice witness's testimony, you are satisfied that the witness told the

20    truth, you may accept his testimony as credible and act upon it accordingly.

21    As with any witness, let me emphasize that the issue of credibility need not be decided in an all-

22    or-nothing fashion.  If you find that a witness has been untruthful in some respect, you may, but are not

23    required to, reject the witness's testimony in its entirety.  Even if you find that a witness testified falsely

12

1    in one part, you still may accept his testimony in other parts.  How much of a witness's testimony to

2    accept, if any, is a determination entirely for you, the jury.

3    **Adapted from *United States v. Blondet*, 16-CR-387 (JMF) (S.D.N.Y. 2022); *United States v.***

4    ***Ramirez*, 20-CR-22 (JMF) (S.D.N.Y. 2024); *United States v. Kaufman*, 13-CR-411 (JMF) (2013);**

5    ***United States v. Hsu*, 07 Cr. 1066 (VM); Sand, *Modern Federal Jury Instructions - Criminal*, Instr.**

6    **7-5; Sand, *Modern Federal Jury Instructions-Criminal*, Instr. 7-14.**

7

8    <u>Immunized Witnesses</u>

9        You have heard the testimony of a witness, Schuyler Minton, who testified under a grant of

10   immunity from this Court.  What this means is that the testimony of the witness may not be used against

11   the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise

12   failing to comply with the immunity order of this Court.

13       You are instructed that the Government is entitled to call a person who has been granted

14   immunity by order of this Court; you are further instructed that you may convict a defendant on the basis

15   of such a witness's testimony alone, if you find that the testimony proves the defendant guilty beyond a

16   reasonable doubt.

17       However, the testimony of a witness who has been granted immunity should be examined by you

18   with great care.  You should scrutinize it closely to determine whether or not it is colored in such a way

19   as to place guilt upon the defendant in order to further the witness's own interests.  If after a careful

20   examination of the witness's testimony and demeanor upon the witness stand, you are satisfied that the

21   witness told the truth, you should accept it as credible and act upon it accordingly.

22       In addition, it does not follow that simply because a person may have participated in criminal

23   conduct, that he or she is incapable of giving truthful testimony.  Further, it is of no concern of yours

1  why a witness received court-ordered immunity. Your sole concern is whether a witness has given

2  truthful testimony in this courtroom before you.  As with any witness, let me emphasize that the issue of

3  credibility need not be decided in an all-or-nothing fashion.  Even if you find that a witness testified

4  falsely in one part, you still may accept his or her testimony in other parts, or may disregard all of it.

5  That is a determination entirely for you, the jury.

6    **Adapted from _United States v. Ramirez_, 20-CR-22 (JMF) (S.D.N.Y. 2024); _United States v._**

7  **_Deligatti_, No. 15 Cr. 491 (KBF) (S.D.N.Y. 2018); Sand, _Modern Federal Jury Instructions -_**

8  **_Criminal_, Instr. 7-9.**

9

10      Law Enforcement and Government Witnesses

11      You have heard testimony from law enforcement or other government witnesses, including

12  representatives of the United States Postal Inspection Service and the Securities and Exchange

13  Commission.  The fact that a witness may be employed as a law enforcement official or government

14  employee does not mean that his or her testimony is ~~necessarily~~ deserving of more or less consideration

15  or greater or lesser weight than that of an ordinary witness.  It is your decision, after reviewing all the

16  evidence, whether to accept the testimony of any law enforcement witness or government witness, as it

17  is with every other type of witness, and to give to that testimony the weight you find it deserves.

18

19      Expert Witnesses

20      You have heard testimony of expert witnesses.  As I previously explained, an expert witness is

21  someone who, by education or experience, has acquired learning or experience in a specialized area of

22  knowledge.  Such a witness is permitted to express his or her opinions on matters about which he or she

23  has specialized knowledge and training.  A party may present expert testimony to you on the theory that

14

1    someone who is experienced in the field can assist you in understanding the evidence or in reaching an

2    independent decision on the facts.

3        Your role in judging credibility applies to experts as well as other witnesses.  In weighing an

4    expert's opinion, you may consider the expert's qualifications, education, and reasons for testifying, as

5    well as all of the other considerations that ordinarily apply, including all the other evidence in the case.

6    If you find the opinion of an expert is based on sufficient data, education, and experience, and the other

7    evidence does not give you reason to doubt his or her conclusions, you would be justified in placing

8    reliance on his or her testimony.  However, you should not accept witness testimony simply because the

9    witness is an expert.  The determination of the facts in this case rests solely with you.

10

11        Uncalled Witnesses

12        There are people whose names you have heard during the course of the trial but who did not

13    appear here to testify.  I instruct you that each party had an equal opportunity, or lack of opportunity, to

14    call any of these witnesses.  Therefore, you should not draw any inferences or reach any conclusions as

15    to what they would have testified to had they been called.  Their absence should not affect your

16    judgment in any way.

17        You should, however, remember my instruction that the law does not impose on a defendant in a

18    criminal case the burden or duty of calling any witness or producing any evidence.  The burden of proof

19    remains at all times with the Government.

20

21        Number of Witnesses and Uncontradicted Testimony

22        I remind you that the defendants are not required to call any witnesses or offer any evidence,

23    since they are presumed to be innocent.  On the other hand, the Government is not required to prove

15

1  each element of the offense by any particular number of witnesses.  The testimony of a single witness

2  may be enough to convince you beyond a reasonable doubt of the existence of the elements of the

3  charged offenses — if you believe that the witness has truthfully and accurately related what he or she

4  has told you.  The testimony of a single witness may also be enough to convince you that reasonable

5  doubt exists, in which case you must return a not guilty verdict.

6

7          Particular Investigative Techniques

8          There is no legal requirement that the Government prove its case through any particular means.

9  While you are to carefully consider the evidence and/or lack of evidence adduced by the Government,

10  you are not to speculate as to why the Government used the techniques it did or why it did not use other

11  techniques.

12

13          All Available Evidence Need Not Be Introduced

14          The law does not require any party to call as witnesses all persons who may have been present at

15  any time or place involved in the case, or who may appear to have some knowledge of the matter in

16  issue at this trial.  Nor does the law require any party to produce as exhibits all relevant papers and

17  things available to either party during the course of the trial.  Your concern is to determine whether or

18  not, on the evidence or lack of evidence, the Government has met its burden of proving each element of

19  each charge beyond a reasonable doubt with respect to each defendant.

20

21          Preparation of Witnesses

22          You have heard evidence during the trial that witnesses have discussed the facts of the case and

23  their testimony with their own lawyers or with Government lawyers before they appeared in court.

16

1   Although you may consider these facts when you are evaluating a witness's credibility, there is nothing

2   either unusual or inherently improper about a witness meeting with lawyers before testifying so that the

3   witness can be aware of the subjects he or she will be questioned about, focus on the subjects, and have

4   the opportunity to review relevant exhibits before being questioned about them.  Such consultation helps

5   conserve your time and the Court's time.  In fact, it would be unusual for a lawyer to call a witness

6   without such consultation.

7        As always, the weight you give to the fact or the nature of these issues and what inferences you

8   draw from them are matters completely within your discretion.

9

10       Presence of Counsel

11       You have heard evidence that some defendants may have communicated with attorneys during

12   the time period at issue in this case.  You may consider these communications, like all other

13   communications of the defendants as to which evidence was received, as evidence that may bear on each

14   defendant's state of mind and intentions and to give that evidence what weight, if any, you deem

15   appropriate considering all the other facts.  However, a lawyer's involvement does not, itself, constitute

16   a defense to the charge in this case.  The defense has not claimed that the defendants' conduct was

17   lawful because they engaged in such conduct in good-faith reliance on the advice of a lawyer.  Both

18   parties agree that the evidence does not support that the defendants acted on the advice of an attorney.

19

20       Persons Not on Trial

21       During the course of the trial, you have heard the names of other individuals mentioned in

22   connection with this case.  Some of these other individuals have been mentioned in connection with

23   what the Government alleges was illegal activity.  You may not draw any inference, favorable or

17

1  unfavorable, toward the Government or the defendant from the fact that any person is not on trial here.

2  Nor may you speculate as to what became of them and why.  These matters are wholly outside your

3  concern and have no bearing on your function as jurors in deciding the case before you.

4

5       A Defendant's Right Not to Testify

6       The defendants did not testify in this trial.  Under our Constitution, a defendant is presumed

7  innocent and has no obligation to testify or to present any other evidence because, as I have told you, it

8  is the Government's burden to prove a defendant guilty beyond a reasonable doubt.  That burden

9  remains on the Government throughout the entire trial and never shifts to the defendants.  The

10  defendants is never required to prove that they are innocent.

11       You may not attach any significance to the fact that the defendants did not testify.  No adverse

12  inference against the defendants may be drawn by you because the defendants did not take the witness

13  stand.  You may not consider this in any way in your deliberations in the jury room.

14

15                    **II. SUBSTANTIVE CHARGES**

16       That concludes my introductory instructions.  Let me now turn to the charges.

17

18       The Indictment

19       The defendants are formally charged in an Indictment.  As I instructed you at the outset of this

20  trial, the Indictment is not evidence.  It is simply an accusation, a statement of the charges made against

21  the defendants.  It gives the defendants notice of the charges against them, and it informs the court and

22  the public of the nature of the accusation.  But it is not evidence, and it does not prove or even indicate

23  guilt.  It does not create any presumption or permit any inference that the defendants are guilty.  As a

18

1    result, you are to give it no weight in deciding the defendants' guilt or lack of guilt.  What matters is the

2    evidence you heard at this trial.  Indeed, as I have previously noted, the defendants are presumed

3    innocent, and each has entered a plea of not guilty.  It is the prosecution's burden to prove each

4    defendant's guilt beyond a reasonable doubt.

5         The Indictment before you contains six counts, or charges.  Each count of the Indictment relates

6    to a different alleged crime.  In your deliberations and in reaching your verdict, you must bear in mind

7    that guilt is individual.  You must therefore consider each count and each defendant separately, must

8    weigh the evidence as to each defendant separately for each count in which that defendant is charged,

9    and return a verdict of guilty or not guilty for each defendant on each count.  Your verdict as to each

10    defendant must be determined separately with respect to that defendant, solely on the evidence, or lack

11    of evidence, presented against that defendant, without regard to the guilt or innocence of anyone else.

12         So what are the charges in the Indictment?

13         Count One charges all three defendants, Michael Castillero, Francine Lanaia, and Brian

14    Martinsen, with conspiring to commit securities fraud, wire fraud, and investment adviser fraud.

15         Count Two charges all three defendants with committing securities fraud.

16         Count Three charges all three defendants with ~~and~~ wire fraud.

17         Count Four charges all three defendants with committing investment adviser fraud.

18         Count Five charges two of the defendants — Mr. Castillero and Mr. Martinsen — with

19    conspiring to obstruct justice.

20         And Count Six charges ~~those same two defendants~~ Mr. Castillero and Mr. Martinsen with

21    obstruction of justice.

22         During trial, you heard some evidence regarding guidance from the United States Securities and

23    Exchange Commission (or SEC) and a financial industry regulatory authority known as FINRA.  I

1    remind you that the defendants are not charged with violating any of that guidance; indeed, a violation

2    of the FINRA or SEC rules or guidance, standing alone, does not constitute a crime.

3          With that, I will instruct you about the six crimes charged in the Indictment.

4

5          Conspiracy Charges and Substantive Charges

6          Two counts — specifically, Counts One and Five — are conspiracy charges.  The other counts

7    — Counts Two, Three, Four, and Six — are called "substantive" charges.  I will instruct you as to each

8    count separately in just a moment, but let me briefly explain the difference between a conspiracy charge

9    and a substantive charge.

10         A conspiracy count is different from a substantive count.  Generally speaking, a conspiracy

11   charge alleges that two or more persons agreed together to accomplish an unlawful objective.  The focus

12   of a conspiracy count, therefore, is on whether there was an unlawful agreement.  There can be no

13   conspiracy unless at least two people reached such an unlawful agreement, whether express or implied.

14         A substantive count, on the other hand, charges a defendant with the actual commission of an

15   offense.  A substantive offense therefore may be committed by a single person, and it need not involve

16   any agreement with anyone.

17         A conspiracy to commit a crime is an entirely separate and different offense from a substantive

18   crime, the commission of which may be an object or goal of the conspiracy.  And because the essence of

19   the crime of conspiracy is an agreement or understanding to commit a crime, it does not matter if the

20   crime, the commission of which was an objective of the conspiracy, was ever committed.  In other

21   words, if a conspiracy exists and certain other requirements are met, it is punishable as a crime even if

22   its purpose was not accomplished.  Consequently, a conspiracy charge does not require proof that the

23   crime or crimes that were the objective or objectives of the conspiracy actually were committed.

20

1    By contrast, conviction on a substantive count requires proof that the crime charged actually

2  was committed, but it does not require proof of an agreement.  If a defendant both participates in a

3  conspiracy and commits the crime or crimes that were the object or objects of the conspiracy, that

4  defendant may be guilty of both the conspiracy and the substantive crime or crimes.

5    With that, I will turn to the elements of each count.  I am going to begin, however, with the

6  substantive counts because explaining them first will simplify my instructions with respect to Counts

7  One and Five, which are the conspiracy counts.  So I will begin with Count Two.

8    **Adapted from _United States v. Balouchzehi_, 21-CR-658 (JMF) (S.D.N.Y. 2023); _United_**

9  **_States v. Raji_, 19-CR-870 (JMF) (S.D.N.Y. 2022).**

10

11    Count Two — Securities Fraud: Elements

12    Count Two charges all three defendants with securities fraud.  Specifically, Count Two charges

13  that from at least in or about 2017 through in or about April 2022, the defendants made false and

14  misleading statements to investors about StraightPath's operations, the pricing and availability of

15  StraightPath's pre-IPO shares, and misappropriated investor funds.

16    For a defendant to be found guilty of Count Two, the Government must prove each of the

17  following three elements beyond a reasonable doubt:

18    _First_, that in connection with the purchase or sale of a security, the defendant you are

19  considering did any one or more of the following:

20    (a) employed a device, scheme, or artifice to defraud;

21    (b) made an untrue statement of a material fact or omitted to state a material fact that made what

22  was said, under the circumstances, misleading; or

1    (c) engaged in an act, practice, or course of business that operated, or would operate, as a fraud

2    or deceit upon a purchaser or seller.

3    *Second*, that the defendant you are considering acted willfully, knowingly, and with the intent to

4    defraud.

5    And *third*, that the defendant you are considering knowingly used, or caused to be used, any

6    means or instruments of transportation or communication in interstate commerce or the use of the mails

7    in furtherance of the fraudulent conduct.

8    **Adapted from Sand, *Modern Federal Jury Instructions-Criminal* 57-20; *United States v.***

9    ***Larmore*, 24-CR-140 (PAE) (S.D.N.Y. 2024); *United States v. Teyibo*, 877 F. Supp. 846 (S.D.N.Y.**

10   **1995), *aff'd mem.* 101 F.3d 681 (2d Cir. 1996) (citing Treatise); *United States v. Martoma*, 12-CR-**

11   **973 (PGG) (S.D.N.Y. 2014).**

12

13   Count Two — First Element: Fraudulent Act

14   The first element that the Government must prove beyond a reasonable doubt with respect to

15   Count Two is that, in connection with the purchase or sale of a security, the defendant you are

16   considering did any one or more of the following:

17   (a) employed a device, scheme, or artifice to defraud;

18   (b) made an untrue statement of a material fact or omitted to state a material fact that made what

19   was said, under the circumstances, misleading;

20   (c) failed, with an intent to defraud, to disclose a material fact that the defendant you are

21   considering knew he or she had a known duty to disclose; or

22   (d) engaged in an act, practice, or course of business that operated, or would operate, as a fraud

23   or deceit upon a purchaser or seller.

22

1    It is not necessary for the Government to establish all of these types of unlawful conduct in

2 connection with the sale or purchase of securities.  Any one is sufficient for a conviction, but you must

3 be unanimous as to which type of unlawful conduct you find to have been proved.

4    In assessing whether this first element of Count Two is satisfied, it does not matter whether the

5 alleged unlawful conduct was successful or not, or that the defendant you are considering profited or

6 received any benefits as a result of the alleged scheme.  Success is not an element of the crime charged.

7 However, if you find that the defendant you are considering did profit from the alleged scheme, you may

8 consider that in relation to the third element of intent, which I will discuss shortly.

9    **Adapted from Sand, *Modern Federal Jury Instructions-Criminal*  57-21 ("Nor does it matter**

10 **whether the alleged unlawful conduct was successful or not, or that the defendant profited or**

11 **received any benefits as a result of the alleged scheme. Success is not an element of the crime**

12 **charged. However, if you find that the defendant did profit from the alleged scheme, you may**

13 **consider that in relation to the third element of intent, which I will discuss in a moment."); *United***

14 ***States v. Martoma*, 12-CR-973 (PGG) (S.D.N.Y. 2014); *United States v. Steinberg*, No. S4 12 Cr. 121**

15 **(RJS) (S.D.N.Y. Dec. 17, 2013) (Trial Tr. 3712-13); *United States v. Newman*, No. 12 Cr. 121 (RJS)**

16 **(S.D.N.Y. Dec. 12, 2012) (Tr. at 4041-42).**

17    Let me explain some of the terms and concepts relevant to this first element.

18        **Device, Scheme, or Artifice to Defraud**

19    A "scheme" or "artifice" is merely a plan to accomplish an object.  A "device, scheme, or artifice

20 to defraud" is any plan, device, or course of action to obtain money or property by means of false or

21 fraudulent pretenses, representations, or promises.  "Fraud" is a general term that includes all the various

22 means by which human ingenuity can devise and that are resorted to by an individual to gain some

23 unfair advantage over another person by false representations, false suggestions, suppression of the

23

1    truth, or deliberate disregard for the truth.  Thus, a "scheme to defraud" is merely a plan to deprive

2    another of money or property by trick, deceit, deception or swindle.

3    It is no defense to an overall scheme to defraud that a defendant was not involved in the scheme

4    from its inception or played only a minor role ~~with no contact with the investors and purchasers of the~~

5    ~~securities in question.~~.

6    **Adapted from the parties' Requests to Charge; Sand, _Modern Federal Jury Instructions-_**

7    **_Criminal_  57-21 ("A device, scheme or artifice to defraud is merely a plan for the accomplishment**

8    **of any objective. Fraud is a general term that embraces all efforts and means that individuals**

9    **devise to take advantage of others. The law that the defendant is alleged to have violated prohibits**

10    **all kinds of manipulative and deceptive acts."); _Id._ ("It is no defense to an overall scheme to**

11    **defraud that the defendant was not involved in the scheme from its inception or played only a**

12    **minor role with no contact with the investors and purchasers of the securities in question.").**

13    **False or Misleading Statement**

14    A statement, representation, claim, or document is false or misleading if it is untrue when made

15    and was then known to be untrue by the person making it or causing it to be made.  A representation or

16    statement is fraudulent if it was made with the intent to deceive.

17    A statement may be false or misleading if it directly contradicts what the speaker knew at the

18    time, created an impression of a state of affairs that differed in a material way from the one that actually

19    existed, or stated that there was a risk that had not yet been realized when, in fact, that risk had already

20    materialized or come to fruition.  A statement may also be false or fraudulent if it contains half-truths,

21    omits or conceals material facts, or is ambiguous or incomplete in a manner that makes what is said or

22    represented deliberately misleading or deceptive.  This includes statements that may be literally true but

23    that nevertheless create a materially misleading impression.

24

1     The deception need not be premised upon spoken or written words alone.  The arrangement of

2  the words, or the circumstances in which they are used may convey the false and deceptive appearance.

3  Indeed, conduct alone can deceive another, even in circumstances where a person's statements contain

4  no misrepresentation.  If there is deception, the manner in which it is accomplished does not matter.

5  **Adapted from the Government's Supplemental Request to Charge; *City of Hialeah***

6  ***Employees' Ret. Sys. v. Peloton Interactive, Inc.*, 153 F.4th 288, 301 (2d Cir. 2025) ("We have**

7  **previously explained that warnings that hedging activity 'could' or 'may' impact the prices of**

8  **notes might have 'possibly sufficed' when the notes were first issued, but when the warnings**

9  **remained unchanged after 'market volatility put[ ] to rest any uncertainty as to the price-impact,'**

10  **those warnings became actionable misstatements."); *Set Cap. LLC v. Credit Suisse Grp. AG*, 996**

11  **F.3d 64, 86 (2d Cir. 2021) ("Accepting these well pleaded allegations as true, the Offering**

12  **Documents misrepresented Credit Suisse's knowledge and intent when they warned that Credit**

13  **Suisse's hedging activity 'could' or 'may' impact prices of XIV Notes but affirmed that Credit**

14  **Suisse had 'no reason to believe' that it would."); *In re Alstom SA*, 406 F. Supp. 2d 433, 453**

15  **(S.D.N.Y. 2005) (holding that an omission is actionable if it "affirmatively creat[ed] an impression**

16  **of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]"**

17  **(quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir.2002)); *In re Facebook,***

18  ***Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 516 (S.D.N.Y. 2013) ("Courts in this Circuit**

19  **have held that a company's purported risk disclosures are misleading where the company warns**

20  **only that a risk may impact its business when that risk has already materialized."); *In re***

21  ***Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 950 (9th Cir. 2023), *cert. granted in part sub nom.***

22  ***Facebook, Inc. v. Amalgamated Bank*, 144 S. Ct. 2629 (2024), and *cert. dismissed as improvidently***

23  ***granted sub nom. Facebook, Inc. v. Amalgamated Bank*, 604 U.S. 4 (2024) ("[A] company may make**

25

1    **a materially misleading statement when it 'speaks entirely of as-yet-unrealized risks' when the**

2    **risks have 'already come to fruition.'"); *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 703 (9th Cir.**

3    **2021) ("Risk disclosures that speak entirely of as-yet-unrealized risks and contingencies and do**

4    **not alert the reader that some of these risks may already have come to fruition can mislead**

5    **reasonable investors." (cleaned up)).**

6    ~~The Government need not prove that a defendant personally made a misrepresentation or that he~~

7    ~~or she personally omitted a material fact. It is sufficient if the Government establishes that the defendant~~

8    ~~you are considering caused the statement to be made or the fact to be omitted and knew that the~~

9    ~~misrepresentation would be communicated to investors.~~

10    ~~**Adapted from Sand, *Modern Federal Jury Instructions*, 57-21.**~~

11         **Non-Disclosure and Fiduciary Duty**

12    I have instructed you on ways in which statements or representations may be false or fraudulent.

13    Separately, the failure to disclose material information may also constitute a fraudulent representation if

14    the defendant you are considering was under a ~~contractual, professional, or~~ legal duty to make such a

15    disclosure; the defendant actually knew such disclosure was required to be made; and the defendant

16    failed to make such disclosure with the intent to defraud.

17    One way in which a duty to disclose material facts exists is when a person owes a "fiduciary"

18    relationship to another. Broadly speaking, a "fiduciary" relationship arises when one person — the

19    client — places special trust and confidence in another person — the fiduciary — in reliance that the

20    fiduciary will exercise his or her discretion and expertise in the interests of the client, and the fiduciary

21    knowingly accepts that special trust and confidence. At the heart of the fiduciary relationship lies

22    reliance and de facto control and dominance. Examples of a fiduciary include (but are not limited to) an

23    executor or administrator of an estate; an attorney with respect to the affairs of his client; a guardian of

1   an infant or incompetent person with respect to his ward; and the officers and directors of a corporation

2   with respect to the stockholders of the corporation.

3       Whether such a relationship existed here between any of the defendants and investors, or any

4   other entity, is a matter of fact for you, the jury, to determine.  A fiduciary relationship exists when

5   confidence is reposed on one side and there is resulting superiority and influence on the other.  One acts

6   in a fiduciary capacity when the business that he or she transacts or the money or property that he or she

7   handles is not his or her own or for his or her own benefit but for the benefit of another person, as to

8   whom he or she stands in a relation implying and necessitating great confidence and trust on the one part

9   and a high degree of good faith on the other part.

10       I hereby instruct you that the mere sale of securities from one party to another does not in itself

11   create a fiduciary relationship.  When parties deal at arms' length in a commercial transaction, there is

12   no relationship of confidence or trust sufficient to find the existence of a fiduciary relationship.

13       If you find that a fiduciary relationship existed, you should next consider whether there was a

14   breach of the duties incumbent upon the fiduciary in the fiduciary relationship.  I instruct you that a

15   fiduciary owes a duty of honest services to his or her customer, including a duty to disclose all material

16   facts concerning the transaction entrusted to him or her.  The concealment by a fiduciary of material

17   information that he or she is under a duty to disclose to another, ~~under circumstances where~~when the

18   ~~non-disclosure can~~fiduciary knows he or ~~does result in harms~~she has such a duty to ~~the other~~disclose, is a

19   breach of fiduciary duty and can be fraudulent within the meaning of the federal securities laws if the

20   Government has proved beyond a reasonable doubt the other elements of the offense as I explain them

21   to you.  Importantly, however, a breach of fiduciary duty does *not* alone constitute fraud for the purposes

22   of this element.  Consistent with the instructions I've given you, it must be accompanied by deception,

23   misrepresentation, or nondisclosure with an intent to defraud.

27

1       **Adapted from Sand, *S3 Modern Federal Jury Instructions-Criminal* 15.34 (2025) (defining**

2       **fiduciary duty); *United States v. Milovanovic*, 678 F.3d 713, 723 n.9 (9th Cir. 2012), as amended**

3       **(May 22, 2012) (same); *United States v. Szur*, 289 F.3d 200, 210 (2d Cir. 2002) (same); *United States***

4       ***v. Moses*, 109 F.4th 107, 114 (2d Cir. 2024) (holding that the "jury instruction was proper" where**

5       **there is a "duty to disclose … from a fiduciary or similar relationship"); *United States v. Chestman*,**

6       **947 F.2d 551, 568–69 (2d Cir. 1991) ("One acts in a 'fiduciary capacity' when the business which**

7       **he transacts, or the money or property which he handles, is not his own or for his own benefit, but**

8       **for the benefit of another person, as to whom he stands in a relation implying and necessitating**

9       **great confidence and trust on the one part and a high degree of good faith on the other part"**

10      **(quoting *Black's Law Dictionary* 564 (5th ed. 1979)); *id.* at 568 ("Counted among these hornbook**

11      **fiduciary relations are those existing between attorney and client, executor and heir, guardian and**

12      **ward, principal and agent, trustee and trust beneficiary, and senior corporate official and**

13      **shareholder"); *Chiarella v. United States*, 445 U.S. 222, 231 (1980) (reversing conviction when trial**

14      **court failed to instruct the jury as to need for fiduciary duty); *Santa Fe Indus., Inc. v. Green*, 430**

15      **U.S. 462, 476 (1977) ("But the cases do not support the proposition, adopted by the Court of**

16      **Appeals below and urged by respondents here, that a breach of fiduciary duty by majority**

17      **stockholders, *without any deception, misrepresentation, or nondisclosure, violates the statute and the***

18      ***Rule.*" (emphasis added)); *Biesenbach v. Guenther*, 588 F.2d 400, 402 (3d Cir. 1978) ("*Santa Fe***

19      **made clear that absent deception, misrepresentation, or nondisclosure a breach of fiduciary duty**

20      **does not violate the statute or Rule"); *N. Collier Fire Control & Rescue Dist. Firefighter Pension***

21      ***Plan & Plymouth Cnty. Ret. Ass'n v. MDC Partners, Inc.*, No. 15-CV-6034 (RJS), 2016 WL**

22      **5794774, at *23 (S.D.N.Y. Sept. 30, 2016) (quoting *Santa Fe* for that proposition); *United States v.***

23      ***Wolfson*, 642 F.3d 293, 296 (2011) (" I instruct you that a fiduciary owes … a duty to disclose all**

1    **material facts concerning the transaction entrusted to him or her. The concealment by a fiduciary**

2    **of material information which he or she is under a duty to disclose to another, under**

3    **circumstances where the nondisclosure can or does result in harm to the other is a [b]reach of the**

4    **fiduciary duty and can be a violation of the federal securities laws, if the government has proven**

5    **beyond a reasonable doubt the other elements of this offense, as I explained them to you.").**

6    Another way a duty to disclose may arise is when a person acts as a broker for a customer.  A

7    broker is a person engaged in the business of effecting transactions in securities for the account of

8    others.  While there is no general fiduciary duty inherent in an ordinary broker-customer relationship, a

9    relationship of trust and confidence does exist between a broker and a customer with respect to those

10   specific matters or transactions that have been entrusted to the broker. ~~A broker-customer relationship~~

11   ~~ordinarily exists in situations in which a broker has discretionary authority over the specific customer's~~

12   ~~account, but discretionary authority over the customer's account is not necessary to create a fiduciary~~

13   ~~relationship if other features of a fiduciary relationship — like de facto control and dominance — are~~

14   ~~present.~~ in circumstances where the broker asserts de facto control and dominance over the transaction

15   or relationship.  As a matter of law, if a broker-customer relationship exists, the broker owes an

16   affirmative duty to use reasonable efforts to give the customer information relevant to the affairs that

17   have been entrusted to the broker.  This includes an implied representation that the prices charged are

18   reasonably related to the prices charged in an open competitive market.

19   In order to convict for fraud based on a defendant's failure to disclose, the Government must

20   satisfy you beyond a reasonable doubt that a duty to disclose existed, whether that is a fiduciary duty or

21   a relationship of trust, de facto control, and dominance between a broker and a client.  If you find that

22   the Government has shown beyond a reasonable doubt that a fiduciary or similar relationship existed,

23   only then may you consider whether there was a breach of the duties incumbent upon the fiduciary.

1    **Adapted from _United States v. Szur_, 289 F.3d 200, 211 (2d Cir. 2002) ("Although it is true**

2    **that there is no general fiduciary duty inherent in an ordinary broker/customer relationship, a**

3    **_relationship of trust and confidence does exist between a broker and a customer with respect to those_**

4    **_matters that have been entrusted to the broker_. This relationship places an affirmative duty on**

5    **brokers to use reasonable efforts to give [the customer] information relevant to the affairs that**

6    **[have] been entrusted to them." (cleaned up and emphasis added)); _id._ (discussing attendant**

7    **duties); _United States v. Skelly_, 442 F.3d 94, 98 (2d Cir. 2006) (emphasizing that discretionary**

8    **authority is typical of the broker-client relationship); _United States v. Wolfson_, 642 F.3d 293, 295**

9    **(2d Cir. 2011) ("Most commonly, this relationship exists in situations in which a broker has**

10   **discretionary authority over the customer's account"); _Id._ ("However, a discretionary account is**

11   **not the sole means by which a fiduciary duty may be created in the context of a broker-customer**

12   **relationship; we have "recognized that particular factual circumstances may serve to create a**

13   **fiduciary duty between a broker and his customer _even in the absence of a discretionary account._);**

14   **_SEC v. First Jersey Securities, Inc._, 101 F.3d 1450, 1469 (2d Cir.1996) ("Sales of securities by**

15   **broker-dealers to their customers carry with them an implied representation that the prices**

16   **charged in those transactions are reasonably related to the prices charged in an open and**

17   **competitive market.").**

18   ~~**Markups**~~

19   ~~The Government alleges that one way in which the defendants committed fraud was by failing to~~

20   ~~disclose excessive "markups" of securities sold to investors. A markup in the securities fraud context is~~

21   ~~defined as the difference between the price charged to the customer and the prevailing market price.~~

22   ~~If the seller of a security owes a fiduciary duty to a purchaser or is acting as a broker for an~~

23   ~~investor, he or she has a duty to disclose the details of a markup if the markup is "excessive." A markup~~

30

1   is excessive when when it bears no reasonable relation to the prevailing market price.  Whether that is

2   the case is to be determined on a case-by-case basis using a broad range of factors, including the

3   expense associated with effectuating the transaction; the reasonable profit fairly earned by the seller; the

4   expertise provided by the seller; the total dollar amount of the transaction; the availability of the

5   financial product in the market; the price or yield of the instrument; the resulting yield after the

6   subtraction of the markup compared to the yield on other securities of comparable quality, maturity,

7   availability, and risk; and the role played by the seller.

8       Adapted from *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 189 (2d Cir. 1998) ("The

9   markup on a security is the difference between the price charged to the customer and the

10  prevailing market price."); *SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1469 (2d Cir. 1996)

11  ("A markup is the difference between the retail price and the 'prevailing market price' of the

12  security."); Banca Cremi, S.A. v. Alex. Brown & Sons, Inc., 132 F.3d 1017, 1033 (4th

13  Cir.1997) ("'A securities broker's mark-up equals the price charged to the customer minus the

14  prevailing market price.'" (quoting Bank of Lexington & Trust Co. v. Vining–Sparks Sec.

15  Inc., 959 F.2d 606, 613 (6th Cir.1992))); *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 163 (2d Cir.

16  2000) ("Under § 10(b) of the Exchange Act, a seller has a duty to disclose the details of a markup if

17  the markup is 'excessive.' See id. at 534. We declined in [*Press*] to establish a specific range

18  beyond which a markup would be deemed 'excessive,' holding instead that courts must assess a

19  broad range of factors."); *Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 535 (2d Cir. 1999) ("We

20  recently noted in *Grandon* that the determination of excessiveness is to be done on a case-by-case

21  basis, and a markup is excessive 'when it bears no reasonable relation to the prevailing market

22  price.'… A ten percent markup on a T-bill might be virtually always excessive. A ten percent

23  mark-up on an instrument that is difficult to obtain and priced accordingly might not be."); *id.*

31

1    ("Among the factors relevant to the determination of whether a markup is excessive are the

2    expense associated with effectuating the transaction, the reasonable profit fairly earned by the

3    broker or dealer, the expertise provided by the broker or dealer, the total dollar amount of the

4    transaction, the availability of the financial product in the market, the price or yield of the

5    instrument, the resulting yield after the subtraction of the markup compared to the yield on other

6    securities of comparable quality, maturity, availability, and risk, and the role played by the broker

7    or dealer."); *see Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 534 (2d Cir. 1999) ("[T]he

8    defendant only has a duty to disclose the specifics of a markup—under the rubric of the obligation

9    under Section 10(b) to 'disclose material information'—when there is either a fiduciary

10   relationship with the complaining party or when the markup is 'excessive.'"); *Grandon v. Merrill*

11   *Lynch & Co., Inc.*, 147 F.3d 184, 190 (2d Cir.1998) ("A broker-dealer commits fraud (in violation

12   of § 10(b) and Rule 10b-5) by charging customers excessive markups without proper

13   disclosure."); *S.E.C. v. Feminella*, 947 F. Supp. 722, 731 (S.D.N.Y. 1996) ("It is well established

14   that failure to disclose an *excessive* markup constitutes a violation of Section 17(a) of the Securities

15   Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder"); *S.E.C. v. Pasternak*, 561 F.

16   Supp. 2d 459, 499 (D.N.J. 2008) ("It has been held that, to impose securities fraud liability for an

17   omission of a 'markup,' the broker-dealer either (1) was in 'a fiduciary relationship with the

18   complaining party' or (2) charged an 'excessive' markup"); *United States Sec. & Exch. Comm'n v.*

19   *Place*, No. CV 16-4291, 2019 WL 634638, at *8 (E.D. Pa. Feb. 14, 2019) ("In the absence of a

20   fiduciary relationship, a defendant has a duty to disclose a markup if the markup is 'excessive.'");

21   *SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1469 (2d Cir. 1996) ("An undisclosed markup of

22   more than 10% above the prevailing market price has been held to constitute fraud *per se*.");

23   *Applications of Powell & Assocs., Inc.*, 47 S.E.C. 746 (Mar. 22, 1982) ("We have consistently held

32

1  ~~that, at the least, markups of more than 10% are fraudulent in the sale of equity securities."). *But~~
2  ~~see Chiarella v. United States, 445 U.S. 222, 228, (1980) ("[O]ne who fails to disclose material~~
3  ~~information prior to the consummation of a transaction commits fraud only when he is under a~~
4  ~~duty to do so."); Id. ("[T]he element required to make silence fraudulent—a duty to disclose—is~~
5  ~~absent in this case."); S.E.C. v. Dorozhko, 574 F.3d 42, 48 (2d Cir. 2009) ("The Supreme Court~~
6  ~~held that remaining silent was actionable only where there was a duty to speak, arising from a~~
7  ~~fiduciary relationship. In Chiarella, the Supreme Court held that there was no deception in an~~
8  ~~employee's silence because he did not have duty to speak."); Castellano v. Young & Rubicam, Inc.,~~
9  ~~257 F.3d 171, 179 (2d Cir. 2001) ("A failure to disclose material information is actionable only~~
10 ~~when the defendant had an affirmative duty to disclose these facts"); United States v. Chestman,~~
11 ~~947 F.2d 551, 565 (2d Cir. 1991) (restating Chiarella rule); Moss v. Morgan Stanley Inc., 719 F.2d~~
12 ~~5, 12 (2d Cir. 1983) ("The [Chiarella] Court explained that liability for nondisclosure of material~~
13 ~~nonpublic market information under section 10(b) is "premised upon a duty to disclose arising~~
14 ~~from a relationship of trust and confidence between parties to a transaction."); Id. at 15 ("We find~~
15 ~~nothing in the language or legislative history of section 10(b) or rule 10b–5 to suggest that~~
16 ~~Congress intended to impose a special duty of disclosure on broker-dealers simply by virtue of~~
17 ~~their status as market professionals"); United States v. Finnerty, 533 F.3d 143, 148 (2d Cir. 2008)~~
18 ~~(addressing markups and stating that "[t]heft not accomplished by deception (e.g., physically~~
19 ~~taking and carrying away another's property) is not fraud absent a fiduciary duty."); id. at 147~~
20 ~~(distinguishing excessive markup cases from interpositioning  "[b]ecause of the dealers' direct~~
21 ~~relationship with their customers").~~

22        **Materiality**

1    If you find that there was a false or misleading statement or an omission in accordance with the

2    foregoing instructions, you must next determine whether the false or misleading statement or omission

3    was material under the circumstances. A material fact is one that would have been significant to a

4    reasonable investor's investment decision in a particular market. We use the word "material" to

5    distinguish between the kinds of statements or information we care about and those that are of no real

6    importance. Materiality of the information is judged as of the time the information was disclosed or

7    omitted.

8    I remind you that the question of whether a factual representation or omission is "material" is an

9    objective one, involving the significance of an omitted or misrepresented fact to a "reasonable investor."

10    Material information in this context is information that a reasonable person would have considered

11    important in making an investment decision in light of the total mix of information publicly available.

12    Proof of actual reliance on a statement by an investor is not required to show materiality. Instead, it is

13    sufficient if the misrepresentation is one that is capable of influencing a reasonable person's decision

14    and is intended to do so.

15    In considering whether a statement or omission was material, you should consider whether a

16    person of ordinary intelligence would have considered the fact significant — not whether the material

17    misrepresentation or omission would have deceived a person of ordinary intelligence. Once you find

18    that the offense involved the making of a material misrepresentation or omission of a material fact, it

19    does not matter whether any of the alleged victims involved were careless, gullible, or even negligent, or

20    whether they might have uncovered the scheme on their own had they probed more deeply, because the

21    law protects the gullible and unsophisticated as well as the experienced investor.

22    **Adapted from Sand, *Modern Federal Jury Instructions-Criminal*  57-21 ("The Government**

23    **need not prove that the defendant personally made the misrepresentation or that he omitted the**

34

1     **material fact. It is sufficient if the government establishes that the defendant caused the statement**

2     **to be made or the fact to be omitted. With regard to the alleged misrepresentations (and**

3     **omissions), you must determine whether the statement was true or false when it was made, (and,**

4     **in the case of alleged omissions, whether the omission was misleading)"); *United States v. Larmore*,**

5     **24-CR-140 (PAE) (S.D.N.Y. 2024); *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 161 (2d Cir. 2000)**

6     **("[T]he materiality requirement of Rule 10b–5 [is met] by alleging a statement or omission that a**

7     **reasonable investor would have considered significant in making investment decisions"); *United***

8     ***States v. Vilar*, 729 F.3d 62, 88 (2d Cir. 2013) ("It has long been the law that the government, as**

9     **opposed to a private plaintiff, need prove only materiality, meaning that there is a substantial**

10    **likelihood that a reasonable investor would find [the omission or misrepresentation] important in**

11    **making an investment decision, and not that a victim did, in fact, rely on it" (cleaned up)); *United***

12    ***States v. Schlisser*, 168 F. App'x 483, 486 (2d Cir. 2006) (not taking issue with the instruction,**

13    **"[o]nce you find that there was a material misrepresentation or omission of a material fact,**

14    **it does not matter whether the intended victims were gullible buyers or sophisticated investors,**

15    **because the securities laws protect the gullible and unsophisticated as well as the experienced**

16    **investor."); *Neder v. United States*, 527 U.S. 1, 24-25 (1999) (holding that the "common -law**

17    **requirements of 'justifiable reliance' and 'damages' … plainly have no place in the federal fraud**

18    **statutes").**

19        Language in a contract may be relevant in considering whether a false or fraudulent statement or

20    representation outside the contract was material and whether a defendant acted with fraudulent intent.

21    You should consider all the information available to a reasonable investor to determine whether

22    cautionary language in a document would have prevented an investor from being misled.  But language

1  in a contract — including, for example, a disclaimer on reliance on prior statements — does not render a

2  false or fraudulent statement or representation made outside the contract immaterial as a matter of law.

3       **Adapted from *United States v. Weaver*, 860 F.3d 90, 95 (2d Cir. 2017) ("[C]ontractual**

4  **disclaimers of reliance on prior misrepresentations do not render those misrepresentations**

5  **immaterial under the criminal mail and wire fraud statutes"); *United States v. Larmore*, 24-CR-**

6  **140 (PAE) (S.D.N.Y. 2024) ("In considering whether a statement or omission was material, let me**

7  **caution you that, as a matter of law, a disclaimer cannot cause a misrepresentation to be**

8  **immaterial."); *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002)**

9  **("Consequently, when cautionary language is present, we analyze the allegedly fraudulent**

10  **materials in their entirety to determine whether a reasonable investor would have been**

11  **misled.  The touchstone of the inquiry is not whether isolated statements within a document were**

12  **true, but whether defendants' representations or omissions, considered together and in context,**

13  **would affect the total mix of information and thereby mislead a reasonable investor regarding the**

14  **nature of the securities offered."); *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 411**

15  **(S.D.N.Y. 2003) (same).**

16            **"In Connection With"**

17       As I explained, you must also find that the defendant you are considering participated in

18  fraudulent conduct that was "in connection with" a purchase or sale of securities.  The term "security" or

19  "securities" includes any stock or shares of a company, whether or not the company is publicly traded,

20  and includes interests in the nine StraightPath Funds.

21       You need not find that the defendant you are considering actually participated in any securities

22  transaction if that defendant was engaged in fraudulent conduct that was "in connection with" a

23  purchase or sale.  The "in connection with" aspect of this element is satisfied if you find that there was

36

1    some nexus or relation between the allegedly fraudulent conduct and the sale or purchase of securities.

2    Fraudulent conduct may be "in connection with" the purchase or sale of securities if you find that the

3    alleged fraudulent conduct "touched upon" a securities transaction.

4    **Adapted from Sand, 3 Modern Federal Jury Instructions-Criminal P 57.03 (2025)**

5    **("Notwithstanding the general rule that it is a question for the court to decide what is a security, a**

6    **judge cannot preempt the jury's province to decide factual disputes concerning the predicate for**

7    **such a ruling."); Sand, 3 Modern Federal Jury Instructions-Criminal P 57-21 (2025) ("You need**

8    **not find that the defendant actually participated in any securities transaction if the defendant was**

9    **engaged in fraudulent conduct that was 'in connection with' a purchase or sale. The 'in**

10   **connection with' aspect of this element is satisfied if you find that there was some nexus or relation**

11   **between the allegedly fraudulent conduct and the sale or purchase of securities. Fraudulent**

12   **conduct may be 'in connection with' the purchase or sale of securities if you find that the alleged**

13   **fraudulent conduct 'touched upon' a securities transaction.")); Sand, *Modern Federal Jury***

14   ***Instructions*, Instr. 57-21 (2025); *United States v. Larmore*, 24-CR-140 (PAE) (S.D.N.Y. 2024)**

15

16       Count Two — Second Element: Intent to Defraud

17       The second element that the Government must establish beyond a reasonable doubt with respect

18   to Count Two is that the defendant you are considering devised or participated in the fraudulent scheme

19   knowingly, willfully, and with specific intent to defraud.

20       To "devise" a scheme to defraud is to concoct or plan it.  To "participate" in a scheme to defraud

21   means to associate oneself with it, with the intent to making it succeed.

22       "Knowingly" means to act voluntarily and deliberately, rather than mistakenly or inadvertently.

23       "Willfully" means to act voluntarily and with a wrongful purpose.

1    To act with the "intent to defraud" means to know of the fraudulent nature of the scheme and to

2    act with the intent that it succeed. ~~Fraud is a general term that embraces all efforts that people devise to~~

3    ~~take advantage of others.~~I previously instructed you on the meaning of fraud, and you should follow

4    those instructions here.  Intent to defraud, in the context of the securities laws, means to act knowingly

5    and with the intent to deceive.

6    The Government must establish beyond a reasonable doubt that the defendant you are

7    considering knew that his or her conduct was calculated to deceive and that he or she nevertheless

8    carried out the alleged fraudulent scheme.  The Government need not prove that the intended victim was

9    actually harmed~~, only that the defendant you are considering intended to harm the victim by obtaining~~

10    ~~money or property.~~.  The Government is also not required to prove that the defendant you are

11    considering realized any gain from the scheme, although you may consider any gain that a defendant

12    realized in determining whether that defendant participated in the scheme.  Moreover, the defendant you

13    are considering need not know that he or she was committing a specific legal violation, but must have an

14    awareness of the general wrongfulness of his or her conduct.

15    Because an essential element of fraud is the intent to defraud, it follows that good faith on the

16    part of a defendant defeats a charge of fraud.  False representations or statements, or omissions of

17    material facts, do not amount to a fraud unless done with fraudulent intent.  ~~That is, if a defendant~~

18    ~~believed in good faith that he or she was entitled to take the money or property from the victim, even if~~

19    ~~that belief was mistaken, then you must find that defendant not guilty even if others were injured by the~~

20    ~~defendant's conduct.~~An honest belief in the truth of the representation made by a defendant, however

21    inaccurate the representation may turn out to be, negates a charge of fraud.  The defendants have no

22    burden to establish good faith.  The burden is on the Government to prove fraudulent intent and the

23    consequent lack of good faith beyond a reasonable doubt.

1    In considering whether or not a defendant acted in good faith, you are instructed that a belief by

2    that defendant (if such belief existed) that ultimately everything would work out so that no investors

3    would lose any money or that particular investments would ultimately be financially advantageous for

4    investors does not mean the defendant acted in good faith.  No amount of honest belief on the part of a

5    defendant that a scheme will ultimately make a profit for investors will excuse knowingly fraudulent

6    actions or false representations by him or her.

7    Nor does it constitute good faith if a defendant deliberately made a representation that he or she

8    knew to be false, even if he or she reasonably believed that he or she was legally entitled to the money

9    or property received.  Moreover, a venture commenced in good faith may become fraudulent if it is

10   continued after an intent to defraud has been formed.  That is, good faith does not defeat a charge of

11   fraud if a defendant first made representations in good faith but later, after realizing the representations

12   were false, nevertheless deliberately continued to make them.

13   I remind you again that the defendants have no burden to establish good faith.  The burden is on

14   the Government to prove fraudulent intent and the consequent lack of good faith beyond a reasonable

15   doubt.

16   Whether a person acted knowingly, willfully, and with intent to defraud are questions of fact for

17   you to determine, like any other fact question, based on your evaluation of the evidence.  Direct proof of

18   knowledge and fraudulent intent is almost never available.  It would be a rare case where it could be

19   shown that a person wrote or stated that, as of a given time in the past, he or she committed an act with

20   fraudulent intent.  Such direct proof is not required.  Instead, the ultimate facts of knowledge and

21   criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's

22   words, his or her conduct, acts, and all the surrounding circumstances disclosed by the evidence and the

23   rational or logical inferences that may be drawn from them.

39

1         **Adapted from Sand, *Modern Federal Jury Instructions-Criminal* P 57.03; *United States v.***

2 ***Raji*, 19-CR-870 (JMF) (S.D.N.Y. September 19, 2022) (whole section); *United States v. Avenatti*,**

3 **19-cr-374 (JMF) (S.D.N.Y. February 1, 2022); *United States v. Parker*, 19-CR-850 (JSR) (S.D.N.Y.**

4 **2022); *United States v. Lavidas*, 19 Cr. 716 (DLC) (S.D.N.Y. 2020); *United States v. Hoey*, 15 Cr. 229**

5 **(PAE) (S.D.N.Y. 2016); *United States v. Balkany*, 10 Cr. 441 (DLC) (S.D.N.Y. 2010); *United States***

6 ***v. Males*, 459 F.3d 154, 159 (2d Cir. 2006); *United States v. Rossomando*, 144 F.3d 197, 203 (2d Cir.**

7 **1998) ("[W]here a defendant deliberately supplies false information to obtain a bank loan, but**

8 **plans to pay back the loan and therefore believes that no harm will 'ultimately' accrue to the**

9 **bank, the defendant's good-faith intention to pay back the loan is no defense"); *United States v.***

10 ***Leonard*, 529 F.3d 83, 91-92 (2d Cir. 2008); *United States v. Gatto*, 986 F.3d 104, 126 (2d Cir. 2021)**

11 **(affirming "I instruct you that a victim's loss of the right to control the use of its assets constitutes**

12 **deprivation of money or property if, and only if, the scheme could have caused or did cause**

13 **tangible economic harm to the victim"); *United States v. Middendorf*, 18 Cr. 36 (JPO), 2019 WL**

14 **4254025, at &7 (S.D.N.Y. Sept. 9, 2019); *Kousisis v. United States*, 145 S. Ct. 1382, 1398 (2025) ("As**

15 **Judge Learned Hand put it, '[a] man is none the less cheated out of his property, when he is**

16 **induced to part with it by fraud, because he gets a quid pro quo of equal value' … Fraudulent**

17 **inducement 'has long been considered a species of actionable fraud.'"); *United States v. Kaiser*, 609**

18 **F.3d 556, 569 (2d Cir. 2010) (holding that willfullness requires that a defendant "had an**

19 **awareness of the general wrongfulness of his conduct," not that he knew that he was committing a**

20 **specific legal violation"); Sand, Model Federal Jury Instructions-Criminal, Instrs. 44-5; Sand,**

21 ***Modern Federal Jury Instructions*, Instr. 57-24 (2025).**

22

1    <u>Count Two — Third Element: Instrumentality of Interstate Commerce</u>

2          The third element that the Government must prove beyond a reasonable doubt with respect to

3    Count Two is that the defendant you are considering knowingly used or caused to be used an

4    instrumentality of interstate commerce or the mails or the facilities of a national security exchange in

5    furtherance of the scheme to defraud or the fraudulent conduct.

6          The term "mails" includes the U.S. Mail and Federal Express.  The term "instrumentalities of

7    interstate commerce" means instruments, devices, and means of conducting trade, commerce,

8    transportation, or communication among any two states.  Examples of instrumentalities of interstate

9    commerce include telephone calls, emails, or text messages, the wire transfer of money, or use of a

10   facility of a national securities exchange, such as a stock trade made on the Nasdaq or New York Stock

11   Exchange.

12         It is not necessary for the Government to prove the mails, an instrumentality of interstate

13   commerce, ~~or~~and a national securities exchange were used in furtherance of the fraudulent scheme.  Any

14   one — either the mails *or* an instrumentality of interstate commerce *or* the facilities of a national

15   securities exchange — is enough.  But you must be unanimous as to at least one.

16         In considering this element, it is not necessary for you to find that the defendant you are

17   considering was or would have been directly or personally involved in any mailing or the use of an

18   instrumentality of interstate commerce or of a national securities exchange.  If the conduct alleged

19   would naturally and probably result in the use of the mails or an instrumentality of interstate commerce

20   or of a national securities exchange, this element would be satisfied.  When one does an act with the

21   knowledge that use of interstate means of communication will follow in the ordinary course of business,

22   or where such use can reasonably be foreseen, even though not actually intended, then he or she causes

23   such means to be used.

1    Nor is it necessary that the items sent through the mails or communicated through an

2    instrumentality of interstate commerce or a national securities exchange did or would contain the

3    fraudulent material, or anything criminal or objectionable.  The matter mailed or communicated may be

4    entirely innocent so long as it is in furtherance of the scheme to defraud or fraudulent conduct.

5    The use of the mails or instrumentality of interstate commerce need not be central to the

6    execution of the scheme or even be incidental to it.  All that is required is that the use of the mails or

7    instrumentality of interstate commerce or national securities exchange bear some relation to the object of

8    the scheme or fraudulent conduct.

9    **Adapted from Government's Request to Charge; Sand, _Modern Federal Jury Instructions_,**

10   **Instr. 57-25 (2025); _United States v. Larmore_, 24-CR-140 (PAE) (S.D.N.Y. 2024); _United States v._**

11   **_Martoma_, 12-CR-973 (PGG) (S.D.N.Y. 2014).**

12

13   Count Three — Wire Fraud: Elements

14   Count Three charges all three defendants with wire fraud.  Specifically, Count Three charges that

15   from at least in or about 2017 through in or about April 2022, the defendants made false and misleading

16   statements to investors about StraightPath's operations, the pricing and availability of StraightPath's

17   pre-IPO shares, and misappropriated investor funds.

18   For a defendant to be found guilty of Count Three, the Government must prove each of the

19   following three elements beyond a reasonable doubt:

20   _First_, that there was a scheme or artifice to defraud or to obtain money or property by materially

21   false and fraudulent pretenses, representations, or promises.

22   _Second_, that the defendant you are considering knowingly, willfully, and with the intent to

23   defraud, devised or participated in the scheme or artifice.

42

1    *Third*, that an interstate or international wire communication was used in furtherance of the

2    scheme or artifice.

3        I will discuss each element in turn.

4    **Adapted from the parties' Requests to Charge; *United States v. Raji*, 19-CR-870 (JMF)**

5    **(S.D.N.Y. September 19, 2022); *United States v. Avenatti*, 19-cr-374 (JMF) (S.D.N.Y. February 1,**

6    **2022); *United States v. Lavidas*, 19 Cr. 716 (DLC) (S.D.N.Y. 2020); *United States v. Hoey*, 15 Cr. 229**

7    **(PAE) (S.D.N.Y. 2016); *United States v. Balkany*, 10 Cr. 441 (DLC) (S.D.N.Y. 2010); Sand, *Model***

8    ***Federal Jury Instructions-Criminal*, Instrs. 44-3; *see United States v. Calderon*, 944 F.3d 72, 85 (2d**

9    **Cir. 2019); *United States v. Weaver*, 860 F.3d 90, 94 (2d. Cir. 2017).**

10

11    Count Three — First Element: Existence of Scheme or Artifice

12        The first element that the Government must prove beyond a reasonable doubt with respect to

13    Count Three is that there was a scheme or artifice to defraud or to obtain money or property by means of

14    false or fraudulent pretenses, representations, or promises.

15        I have already instructed about the meaning of "scheme," "artifice," and "defraud," and you

16    should apply those instructions here.  The scheme charged in Count Three is also alleged to have been

17    carried out in part by making false or misleading representations, promises, and statements.  I have

18    already instructed you about the meaning of false or misleading representations, promises, ~~and~~

19    statements, half-truths, and disclaimers, and you should apply those instructions here as well.

20    ~~The deception need not be premised upon spoken or written words alone.  The arrangement of~~

21    ~~the words, or the circumstances in which they are used may convey the false and deceptive appearance.~~

22    ~~Indeed, conduct alone can deceive another, even in circumstances where a person's statements contain~~

23    ~~no misrepresentation.  If there is deception, the manner in which it is accomplished does not matter.~~

43

1      Additionally, as with Count Two, the failure to disclose information may also constitute a

2   fraudulent representation if a defendant was under a legal, professional, or contractual duty to make such

3   a disclosure; the defendant actually knew such disclosure was required to be made; and the defendant

4   failed to make such disclosure with the intent to defraud.  Again, you should refer to my instructions for

5   Count Two with respect to whether and when a a duty to disclose exists.

6      As with Count Two, the false or fraudulent pretense, representation, promise, or omission must

7   relate to a "material" fact or matter.  I have already explained the meaning of the term "material" with

8   respect to Count Two, and you should apply those same instructions here.

9      In addition to proving that a pretense, representation, promise, or statement was false or

10   fraudulent and related to a material fact, in order to establish a scheme to defraud, the Government must

11   prove that the alleged scheme contemplated wrongly depriving another of money or property.  Money or

12   property may be obtained even when something else is simultaneously given in return.

13      The Government is not, however, required to prove that the defendant you are considering

14   personally originated the scheme to defraud.  Nor is the Government required to prove that the scheme

15   or artifice to defraud actually succeeded — that is, the Government is not required to prove that the

16   intended victim suffered any loss or harm.  Although whether or not the scheme actually succeeded is

17   not the question, you may consider whether it succeeded in determining whether the scheme existed.

18      A scheme to defraud need not be shown by direct evidence, but may be established by all of the

19   circumstances and facts in the case.

20   **Adapted from *United States v. Raji*, 19-CR-870 (JMF) (S.D.N.Y. September 19, 2022);**

21   ***United States v. Avenatti*, 19-cr-374 (JMF) (S.D.N.Y. February 1, 2022); *United States v. Balkany*,**

22   **10 Cr. 441 (DLC) (S.D.N.Y. 2010); *United States v. Hoey*, 15 Cr. 229 (PAE) (S.D.N.Y. 2016); Sand,**

23   ***Model Federal Jury Instructions-Criminal*, Instrs. 44-4; *United States v. Chastain*, 145 F.4th 282,**

44

1   **292 (2d Cir. 2025) ("To be guilty of wire fraud, a defendant must (1) 'devise' or 'intend to devise'**

2   **a scheme (2) to 'obtain money or property' (3) 'by means of false or fraudulent pretenses,**

3   **representations, or promises.'"); *Kousisis v. United States*, 145 S. Ct. 1382, 1391 (2025) ("[I]n all**

4   **cases, because money or property must be an *object* of the defendant's fraud, the traditional**

5   **property interest at issue 'must play more than some bit part in a scheme.' Obtaining the victim's**

6   **money or property must have been the 'aim,' not an 'incidental byproduct,' of the defendant's**

7   **fraud." (cleaned up)); *Id.* at 1392 ("[T]he wire fraud statute is agnostic about economic loss. The**

8   **statute does not so much as mention loss, let alone require it.").**

9

10      Count Three — Second Element: Knowledge and Intent to Defraud

11      The second element that the Government must establish beyond a reasonable doubt with respect

12  to Count Three is that the defendant you are considering devised or participated in the fraudulent scheme

13  knowingly, willfully, and with specific intent to defraud.

14      To "devise" a scheme to defraud is to concoct or plan it.  To "participate" in a scheme to defraud

15  means to associate oneself with it, with the intent to making it succeed.  ~~Although a mere onlooker is not~~

16  ~~a participant in a scheme to defraud, it is not necessary that a participant be someone who personally and~~

17  ~~visibly executes the scheme to defraud.~~

18      It is not necessary for the government to establish that the defendant originated the scheme to

19  defraud.  It is sufficient if you find that there was a scheme to defraud, even if somebody else originated

20  it, and that the defendant, while aware of the existence of the scheme, knowingly participated in it.

21      It is also not required that the defendant have participated in or have had knowledge of all the

22  operations of the scheme.  The guilt of the defendant is not governed by the extent of his participation.

It is also not necessary that the defendant you are considering have participated in the scheme from the beginning. A person who comes in at a later point with knowledge of the scheme's general operation, although not necessarily all its details, and intentionally acts in a way to further the unlawful goals, becomes a participant in the scheme.

I have already explained the meaning of the terms "knowingly," "willfully," and "intent to defraud," and you should apply those instructions here.

As with Count Two, good faith on the part of a defendant is a complete defense to the charge of wire fraud. I previously instructed you on the meaning of "good faith," and you should apply those instructions here. I remind you, however, that a defendant has no burden to establish good faith. The burden is on the Government to prove fraudulent intent and the consequent lack of good faith beyond a reasonable doubt. Further, if the defendant you are considering participated in the scheme to defraud, then a belief by that defendant, if such belief existed, that ultimately everything would work out so that no one would lose any money does not mean that the defendant acted in good faith.

**Adapted from Adapted from *United States v. Raji*, 19-CR-870 (JMF) (S.D.N.Y. September 19, 2022); *United States v. Avenatti*, 19-cr-374 (JMF) (S.D.N.Y. February 1, 2022; *United States v. Lavidas*, 19 Cr. 716 (DLC) (S.D.N.Y. 2020); *United States v. Hoey*, 15 Cr. 229 (PAE) (S.D.N.Y. 2016); *United States v. Balkany*, 10 Cr. 441 (DLC) (S.D.N.Y. 2010); *United States v. Males*, 459 F.3d 154, 159 (2d Cir. 2006); *United States v. Rossomando*, 144 F.3d 197, 203 (2d Cir. 1998); *United States v. Middendorf*, 18 Cr. 36 (JPO), 2019 WL 4254025, at &7 (S.D.N.Y. Sept. 9, 2019); Sand, Model Federal Jury Instructions-Criminal, Instrs. 44-5.**

Count Three — Third Element: Use of Interstate Wires

1    The third and final element that the Government must establish beyond a reasonable doubt with

2    respect to Count One is that an interstate wire (for example, a telephone call, email communication, text

3    message, or bank wire transfer) was used in furtherance of the scheme to defraud.

4    The "interstate" requirement means that the wire communication must pass between two or more

5    states. This could include, for example, a telephone call between two different states, an email between

6    two different states, or a wire transfer between banks located in two different states.

7    To be in furtherance of the scheme, the wire communication must be incident to an essential part

8    of the scheme to defraud and must have been caused, directly or indirectly, by the defendant you are

9    considering. It is not necessary for the defendant you are considering to be directly or personally

10   involved in any wire communication, as long as the communication is reasonably foreseeable in the

11   execution of the alleged scheme to defraud in which that defendant participated. In this regard, it would

12   be sufficient to establish this element of the crime if the Government proved that the defendant you are

13   considering caused the wires to be used by others. This does not mean that the defendant himself or

14   herself must have specifically authorized or directed others to execute a wire communication. When a

15   person acts with knowledge that the use of wire facilities will follow in the ordinary course of business,

16   or where the use of wire facilities can reasonably be foreseen, even though not actually intended, then he

17   or she causes the wires to be used. Furthermore, the requirement that an interstate wire facility was used

18   is satisfied even if a wire facility was used by a person with no knowledge of the fraudulent scheme,

19   including a victim of the alleged fraud, so long as the wire was in furtherance of the alleged scheme.

20   The use of a wire facility need not itself be fraudulent. Stated another way, the material sent by

21   wire need not contain any fraudulent representation, or even any request for money. It is sufficient if a

22   wire facility was used to further or assist in carrying out the scheme to defraud.

47

1      Only the use of a wire facility must be reasonably foreseeable, not its interstate

2  component.  Thus, if you find that the use of a wire facility was reasonably foreseeable, and an interstate

3  wire facility was actually used, then this element is satisfied even if it was not foreseeable that the wire

4  communication would cross state boundaries.

5      **Adapted from _United States v. Avenatti_, 19-cr-374 (JMF) (S.D.N.Y. February 1, 2022);**

6  **_United States v. Raji_, 19-CR-870 (JMF) (S.D.N.Y. September 19, 2022);  _United States v. Lavidas_, 19**

7  **Cr. 716 (DLC) (S.D.N.Y. 2020); _United States v. Balkany_, 10 Cr. 441 (DLC) (S.D.N.Y. 2010); _see_**

8  **_United States v. Halloran_, 821 F.3d 321, 342 (2d Cir. 2016).**

9

10      Count Four — Investment Adviser Fraud: Elements of the Offense

11      Count Four charges all three defendants with investment adviser fraud.  Specifically, Count Four

12  charges that from at least in or about 2017 through in or about April 2022, the defendants engaged in a

13  scheme to defraud their clients regarding StraightPath's operations and investments, and

14  misappropriated client funds for their own enrichment.

15      For a defendant to be found guilty of Count Four, the Government must prove each of the

16  following four elements beyond a reasonable doubt:

17      _First_, that the defendant you are considering was an investment adviser.

18      _Second_, that the defendant you are considering did any one or more of the following:

19      (a) employed a device, scheme, or artifice to defraud an actual or prospective investor advisory

20  client;

21      (b) engaged in a transaction, practice, or course of business which operated as a fraud and deceit

22  upon those investment advisory clients or prospective investment advisory clients; or

1    (c) engaged in an act, practice, and course of business that was fraudulent~~,~~ or deceptive~~, and~~

2    ~~manipulative~~.

3    *Third*, the defendant you are considering did whatever he or she did to satisfy the second element

4    knowingly, willfully, and with the intent to defraud an investor advisory client.

5    *Fourth*, the defendant you are considering did whatever he or she did to satisfy the second

6    element by use of the mails or an instrumentality of interstate commerce.

7    **Adapted from *United States v. Tagliaferri*, 13-CR-115 (RA) (S.D.N.Y. 2014); *United States v.***

8    ***Balboa*, No 12 Cr. 196 (S.D.N.Y. Dec. 17, 2013).**

9

10    Count Four — First Element: Investment Adviser

11    The first element the Government must prove beyond a reasonable doubt with respect to Count

12    Four is that the defendant you are considering was an investment adviser at the time he or she is alleged

13    to have committed investment adviser fraud.  An investment adviser means "any person who, for

14    compensation, engages in the business of advising others, either directly or through publications or

15    writings, as to the value of securities or as to the advisability of investing in, purchasing or selling

16    securities, or who, for compensation and as a part of a regular business, issues or promulgates analyses

17    or reports concerning securities."  But the definition of investment adviser does not include any broker

18    or dealer whose performance of such services is solely incidental to the conduct of his or her business as

19    a broker or dealer and who receives no special compensation for such services.

20    To determine whether a defendant was an investment adviser, you should primarily consider

21    three factors:

22    *First*, whether that defendant provided advice or was an adviser that issued reports or analyses

23    regarding securities;

49

1    *Second*, whether that defendant was in the business of providing such advice; and

2    *Third*, whether that defendant was provided compensation for such advice.

3    Keep in mind that whether a person or entity is an investment adviser is a different issue than

4    whether or not the person or entity was a registered investment adviser.  You are instructed that

5    registration with the United States Securities and Exchange Commission as an investment adviser is not

6    required for you to find that a defendant is an investment adviser for purposes of Count Four.

7    **Adapted from *United States v. Tagliaferri*, 13-CR-115 (RA) (S.D.N.Y. 2014); *United States v.***

8    ***Balboa*, No 12 Cr. 196 (S.D.N.Y. Dec. 17, 2013); 15 U.S.C.A. § 80b-2(a)(11) (West) (defining**

9    **"Investment Adviser"); *United States Sec. & Exch. Comm'n v. Ahmed*, 308 F. Supp. 3d 628, 653 (D.**

10   **Conn. 2018) ("[T]he fact that [the defendant] was not licensed, certified, or registered with any**

11   **state or federal agency does not preclude him from being considered an investment adviser under**

12   **the Adviser's Act, as the Act's definition of an adviser turns on conduct, not certification or**

13   **registration." (citing *United States v. Onsa*, 523 Fed. Appx. 63, 65 (2d Cir. 2013)).**

14

15   Count Four — Second Element: Fraudulent Act

16   The second element the Government must prove beyond a reasonable doubt with respect to

17   Count Four is that the defendant you are considering did any one or more of the following:

18   (a) employed a device, scheme, or artifice to defraud an actual or prospective investor-client;

19   (b) engaged in a transaction, practice, or course of business which operated as a fraud and deceit

20   upon those ~~investors~~investor-clients or prospective ~~investors~~investor-clients; or

21   (c) engaged in an act, practice, and course of business that was fraudulent~~,~~ or deceptive~~, and~~

22   ~~manipulative~~.

1    Any one of these types of alleged fraudulent conduct, if proven by the Government beyond a

2    reasonable doubt, is sufficient.  However, you must be in unanimous agreement as to which type of

3    unlawful conduct, if any, has been proved by the Government.

4    I instructed you on the meaning of "device," "scheme," "artifice to defraud," "fraud," and

5    "deceptive conduct" with respect to Count Two.  You should use those same instructions with respect to

6    Count Four, with the additional instructions I am about to give you.

7    I previously explained the concept of a "fiduciary duty" and that the failure to disclose material

8    information may constitute a fraud if the defendant you are considering had a fiduciary duty to make

9    such a disclosure and knowingly concealed that information.  For purposes of Count Four, I instruct you

10   that, as a matter of law, investment advisers have a fiduciary duty to their investment advisory clients.

11   That is, if you conclude that a defendant acted as an investment advisor, that defendant had an

12   affirmative duty of good faith, an affirmative duty to make full and fair disclosure of all material facts,

13   and an affirmative obligation to employ reasonable care to avoid misleading his or her clients.

14   An investment adviser's fiduciary duty, however, extends *only* to his or her client, not to the

15   general public.  Thus, if you decide that the defendant you are considering is an investment adviser, it

16   will also be up to you to determine who that defendant's "client" or "clients" were.  ~~Ordinarily, an~~An

17   investment adviser to a fund owes a fiduciary duty ~~only~~ to the fund itself  ~~— not to the investors in the~~

18   ~~fund.~~.  In some circumstances, ~~however, the~~an investor in a fund may qualify as a client of the fund's

19   investor adviser as well.  In deciding whether an investor in a fund is a client of the fund's investment

20   adviser, you should consider whether the investor received investment advice directly from the adviser,

21   whether the adviser played an active role with respect to the investor, and whether the adviser was

22   attuned to an individual investor' concerns.

1        Whether or not investors qualify as an investment adviser's "clients," investment advisers are

2  prohibited from making false or misleading statements to investors or prospective investors in funds

3  they advise and cannot defraud investors or prospective investors in those funds.

4        **Adapted from Government's Requested Charge; *United States v. Tagliaferri*, 13-CR-115**

5  **(RA) (S.D.N.Y. 2014); *United States v. Balboa*, No 12 Cr. 196 (S.D.N.Y. Dec. 17, 2013); *Transam.***

6  ***Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 17 (1979) ("[Section] 206 establishes 'federal fiduciary**

7  **standards to govern the conduct of investment advisers." (quoting *Santa Fe Indus., Inc. v. Green*,**

8  **430 U.S. 462, 471 n.11 (1977)); *Burks v. Lasker*, 441 U.S. 471, 481-82 n.10 (1979); *SEC v. Capital***

9  ***Gains Research Bureau, Inc.*, 375 U.S. 180, 191-92 (1963) (("The statute, in recognition of the**

10  **adviser's fiduciary relationship to his clients, requires that his advice be disinterested.")); *Sec. &***

11  ***Exch. Comm'n v. Rashid*, 96 F.4th 233, 240 (2d Cir. 2024) ("[The Act] imposed on advisers 'an**

12  **affirmative duty of utmost good faith, and full and fair disclosure of all material facts, as well as**

13  **an affirmative obligation to employ reasonable care to avoid misleading [their] clients.");**

14  ***Goldstein v. Securities and Exchange Commission*, 451 F.3d 873, 882 (D.C. Cir. 2006) (holding that**

15  **a hedge fund adviser's "client," for purposes of the Advisers Act, is the hedge fund, not the hedge**

16  **fund investors and that "it is counterintuitive to characterize the investors in a hedge fund as the**

17  **'clients' of the adviser."); *id.* at 882-83 (rejecting SEC's rule that investors qualify as clients**

18  **because ("the Commission has not justified treating all investors in hedge funds as clients for the**

19  **purpose of the rule."); *id.* at 880 (describing a fund adviser as someone who "does not tell the**

20  ***investor* how to spend his money; the investor made that decision when he invested in the fund.**

21  **Having bought into the fund, the investor fades into the background; his role is completely**

22  **passive."); *United States v. Lay*, 612 F.3d 440, 446-47 (6th Cir. 2010) (quoting *Goldstein*, 451 F.3d at**

23  **883) (permitting the jury to determine whether a client-adviser relationship existed pursuant to**

1  the Investment Adviser Act  and noting that"[*Goldstein*] did not hold that a hedge fund investor

2  could never be a client of a hedge fund adviser, or be owed a fiduciary duty by one, for purposes of

3  the criminal fraud provisions of the IAA."); *United States v. Lay*, 566 F. Supp. 2d 652, 670 (N.D.

4  Ohio 2008), aff'd, 612 F.3d 440 (6th Cir. 2010) ("The characteristics defining an adviser-client

5  relationship were determined by the *Goldstein* court to ordinarily be absent in hedge fund

6  scenarios, i.e., the investors do not receive investment advice directly from the adviser, the

7  investor's role is passive, the adviser has no obligation to ensure that fund investment decisions

8  are appropriate investments for each shareholder or obligation to disclose conflicts, and the

9  adviser's advice is not attuned to an individual investor's concerns."); *United States Sec. & Exch.*

10 *Comm'n v. SkiHawk Cap. Partners*, LLC, No. 21-CV-01776-MDB, 2023 WL 2574376, at *11 (D.

11 Colo. Mar. 20, 2023) ("Factors in determining whether an adviser-investor relationship exists

12 include: whether investors receive advice directly from the investment adviser; whether investors

13 are active in the fund's investment decisions; whether the investment adviser has an obligation to

14 ensure that the fund's investment decisions are appropriate investments for each shareholder; and

15 whether the investment adviser's advice is tailored to an investor's particularized needs."); *see*

16 *also SEC v. Lauer*, 478 F. App'x 550, 557 (11th Cir. 2012) (hedge fund adviser's conduct, including

17 "proffer[ing] advice directly to the Funds' investors when he hosted meetings and teleconferences

18 with investors, and [suggesting] in the Funds' newsletter that his market strategy could beat

19 market returns" brought him within the bounds of the term "investment for purposes of the

20 Advisers Act); *United States Sec. & Exch. Comm'n v. Jarkesy*, 603 U.S. 109, 116 (2024) ("Section

21 206(b), as implemented by Rule 206(4)–8, prohibits investment advisers from making 'any untrue

22 statement of a material fact' or engaging in 'fraudulent, deceptive, or manipulative' acts with

23 respect to investors or prospective investors. 17 C.F.R. §§ 275.206(4)–8(a)(1), (2); *see* 15 U.S.C. §

53

1    **80b–6(4)").  _But see S.E.C. v. Northshore Asset Mgmt._, No. 05-CV-2192 (WHP), 2008 WL 1968299,**

2    **at \*6 (S.D.N.Y. May 5, 2008) (granting summary judgment on an SEC Advisers Act claim**

3    **"[b]ecause under the Advisers Act, Saludtti's clients were the Ardent Entities, a failure to disclose**

4    **information or misrepresentations to the Ardent Entities investors cannot form the basis for a**

5    **claim that Saldutti breached his fiduciary duties to the Ardent Entities."); _Rose v. Rahfco Mgmt._**

6    **_Grp., LLC_, No. 13-CV-5804 (VB), 2014 WL 7389900, at \*8 (S.D.N.Y. Dec. 15, 2014) (holding that**

7    **"plaintiffs' claims for … breach of fiduciary duty against movants are dismissed" in part because**

8    **investment adviser owes fiduciary duties only to the hedge fund").**

9

10    Count Four — Third Element: Knowledge, Intent, and Willfulness

11    The third element the Government must prove beyond a reasonable doubt with respect to Count

12    Four is that the defendant you are considering did whatever he or she did to satisfy the second element

13    knowingly, willfully, and with the specific intent to defraud.  I have already explained the meaning of

14    the terms "willfully," "knowingly," and "intent to defraud," and you should apply those instructions

15    here.  As with the earlier counts, let me advise you that since an essential element of the crime charged

16    is intent to defraud, it follows that "good faith," as I have defined before, on the part of a defendant is

17    also a complete defense to a charge of investment adviser fraud.

18

19    Count Four — Fourth Element: Interstate Nexus

20    The fourth element the Government must prove beyond a reasonable doubt with respect to Count

21    Four is that the defendant you are considering did whatever he or she did to satisfy the second element

22    by using the mails or an instrumentality of interstate commerce, such as interstate telephone or wire

1    communications.  I previously discussed the meaning of the terms "mails" and "instrumentality of

2    interstate commerce," and you should apply those instructions here too.

3    **Adapted from the Parties' Requested Charge.**

4

5    Count Six — Obstruction of Justice: Elements

6    The last of the substantive charges, Count Six, charges two of the defendants — Mr. Castillero

7    and Mr. Martinsen — with obstructing justice.  Specifically, it charges that, in or about May 2021, these

8    defendants obstructed the SEC's investigation into StraightPath by deleting email accounts subpoenaed

9    by the SEC and falsely representing to the SEC that such email accounts had never existed.

10   For a defendant to be found guilty of Count Six, the Government must prove each of the

11   following two elements beyond a reasonable doubt:

12   *First*, that the defendant you are considering knowingly altered, destroyed, or caused to be

13   altered or destroyed, a record or document.

14   *Second*, that the defendant you are considering acted with the intent to impede, obstruct, or

15   influence an investigation of a matter within the jurisdiction of an agency of the United States, or in

16   relation to or contemplation of any such matter or case.

17   **Adapted from Government's Requested Charge; Sand, *et al.*, *Modern Federal Jury***

18   ***Instructions*, 46-82; *United States v. Goel*, 22-CR-396 (PKC); *United States v. Calypso*, 17 Cr. 224**

19   **(VEC); *United States v. Coll*, 15 Cr. 360 (LAP); *United States v. Fitts*, 19 Cr. 341 (RA); *United***

20   ***States v. Scott*, 979 F.3d 986 (2d Cir. 2020); *United States v. Gray*, 642 F.3d 371, 372 (2d Cir. 2011).**

21

1    Count Six — First Element: Alteration or Destruction of a Record or Document

2    The first element that the Government must prove beyond a reasonable doubt with respect to

3    Count Six is that the defendant you are considering knowingly altered, destroyed, or caused to be altered

4    or destroyed, a record or document.  I have previously instructed you on the meaning of "knowingly,"

5    and you should apply that definition here.

6    **_Adapted from Government's Requested Charge; Sand, et al., Modern Federal Jury_**

7    **_Instructions, 46-82; United States v. Goel, 22-CR-396 (PKC); United States v. Calypso, 17 Cr. 224_**

8    **_(VEC); United States v. Coll, 15 Cr. 360 (LAP); United States v. Fitts, 19 Cr. 341 (RA); United_**

9    **_States v. Scott, 979 F.3d 986 (2d Cir. 2020); United States v. Gray, 642 F.3d 371, 372 (2d Cir. 2011)._**

10

11    Count Six — Second Element: Intent to Obstruct

12    The second element that the Government must establish beyond a reasonable doubt with respect

13    to Count Six is that the defendant you are considering intended to impede, obstruct, or influence an

14    investigation or matter that falls within the jurisdiction of a department or agency of the federal

15    government.  I instruct you that the United States Securities and Exchange Commission, or SEC, is an

16    agency of the federal government.

17    Although the Government must prove that the defendant you are considering intended to impede,

18    obstruct, or influence an investigation, it need not prove that a federal investigation was ongoing or

19    imminent at the time that defendant acted or that he was aware that his conduct would impede, obstruct,

20    or influence an investigation that was federal in nature.  The Government is required to prove only that

21    the defendant you are considering acted in contemplation of a potential investigation.

22    **_Adapted from Government's Requested Charge; Sand, et al., Modern Federal Jury_**

23    **_Instructions, 46-82; United States v. Goel, 22-CR-396 (PKC); United States v. Calypso, 17 Cr. 224_**

1    **(VEC); _United States v. Coll_, 15 Cr. 360 (LAP); _United States v. Fitts_, 19 Cr. 341 (RA); _United_**

2    **_States v. Scott_, 979 F.3d 986 (2d Cir. 2020); _United States v. Gray_, 642 F.3d 371, 372 (2d Cir. 2011).**

3

4    <u>Aiding and Abetting Liability</u>

5    Finally, in addition to charging the defendants with the substantive crimes of securities fraud,

6    wire fraud, investment adviser fraud, and obstruction of justice, Counts Two, Three, Four, and Six also

7    charge the defendants charged in ~~that count~~those counts with what is called aiding and abetting.

8    Aiding and abetting liability is its own theory of criminal liability.  In effect, it is a theory of

9    liability that permits a person to be guilty of a specified crime if that person, while not committing the

10   crime, assisted another person or persons in committing the crime.  In other words, as to the relevant

11   predicate acts and crimes, a person can be guilty if he or she committed the crime himself or aided and

12   abetted the commission of the crime by one or more other people.  For example, if the Government

13   proves beyond a reasonable doubt that a defendant committed the substantive securities fraud alleged in

14   Count Two, then you need not consider aiding and abetting with respect to that count.  If, however, you

15   find that the Government did not prove beyond a reasonable doubt that a defendant engaged in the

16   securities fraud charged in Count Two, to continue using that count as an example, you should consider

17   whether the Government has nonetheless proved beyond a reasonable doubt that that defendant aided

18   and abetted someone else in the commission of securities fraud as alleged in that count.  And again,

19   while I have used Count Two as an example, this concept of aiding and abetting is also alleged in

20   Counts Three, Four, and Six as to the defendants charged in each of those counts.

21   Under the federal aiding and abetting statute, whoever "aids, abets, counsels, commands, induces

22   or procures" the commission of an offense is punishable as a principal.  You should give these words

23   their ordinary meaning.  A person aids or abets a crime if he or she knowingly does some act for the

1    purpose of aiding or encouraging the commission of that crime, with the intention of causing the crime

2    charged to be committed.  To "counsel" means to give advice or recommend.  To "induce" means to

3    lead or move by persuasion or influence as to some action or state of mind.  To "procure" means to

4    bring about by unscrupulous or indirect means.

5        A person who aids and abets another to commit an offense is just as guilty as if he or she

6    committed it himself.  As you can see, the first requirement is that the crime charged was actually

7    committed.  Obviously, no one can be guilty of aiding and abetting the criminal acts of another if no

8    crime was committed by the other person.  But if a crime was committed, then you may consider

9    whether the defendant you are considering or another person aided or abetted the commission of the

10   crime.

11       To aid and abet another in the commission of a crime, it is necessary that a person acted with the

12   same criminal intent necessary for the principal to be guilty, willfully and knowingly associated him or

13   herself in some way with the crime, and willfully and knowingly sought by some act to help make the

14   crime succeed.  Participation in a crime is willful if action is taken voluntarily and intentionally.

15       The mere presence of a person where a crime is being committed, even coupled with knowledge

16   by the person that a crime is being committed, or the mere acquiescence by that person in the criminal

17   conduct of others, even with guilty knowledge, is insufficient to establish aiding and abetting.

18       The Government must prove that an aider and abettor took some conscious action that furthered

19   the commission of the crime and that he or she did so with the intent to bring about the crime.  To

20   determine whether a person aided and abetted a crime, ask yourself:

21       1.  Did the person participate in the crime charged as something he or she wished to bring

22           about?

23       2.  Did the person associate him or herself with the criminal venture knowingly and willfully?

58

3.   Did the person seek by his or her actions to make the criminal venture succeed?

If, but only if, the Government proves beyond a reasonable doubt that the answer to all three of these questions is "yes," then a person is an aider and abettor, and therefore guilty of the offense.

A person can also be found guilty of a crime if he "willfully caused" another person to commit the crime.  I previously instructed you on the meaning of "willfully," and you should apply those instructions here.  To "cause" means to bring something about, to effect something.  So "willfully caused" means that it is not necessary for the person himself to have physically committed the crime to be guilty of that crime.

To determine whether a person "willfully caused" the commission of a substantive crime, ask yourself:

1.   Did the person intentionally take action that caused someone else to commit an act that would have been a crime if the person him or herself had committed that act?

2.   Did the person intend that the crime would actually be committed by someone else?

If the Government proves beyond a reasonable doubt that the answer to both of these questions is "yes," then the person willfully caused another to commit the crime at issue, and he or she is therefore guilty of the offense as if the person him or herself had physically committed it.  The Government need not prove that the person acted through an intermediary who was guilty of a crime.  A person who willfully caused another to commit a crime may be found guilty of that crime even if he or she acted through someone who is entirely innocent of the crime.

**Adapted from _United States v. Ramirez_, 20-CR-22 (JMF) (S.D.N.Y. 2024); _United States v. Pabon_, 18 Cr. 319 (SHS) (S.D.N.Y. 2022); _United States v. Berry_, 20 Cr. 84 (AJN) (2021); _United States v. Mack_, 18 Cr. 834 (PAE) (S.D.N.Y. 2019); _United States v. Lopez-Cabrera_, S5 11-CR-s1032 (PAE) (S.D.N.Y. 2014); _United States v. Goel_, 22-CR-396 (PKC).**

1

2          Counts One and Five — The Conspiracy Charges: Elements

3          That completes my instructions as to Counts Two, Three, Four, and Six, the substantive counts.

4     Let me turn, then, to the conspiracy charges, Counts One and Five.

5          Count One charges that from at least in or about 2017 through in or about April 2022, all three

6     defendants conspired to commit securities fraud, wire fraud, and investment adviser fraud.

7          Count Five charges that, in or about May 2021, two of the defendants — Mr. Castillero and Mr.

8     Martinsen — conspired to obstruct justice.

9          For a defendant to be found guilty of Count One or Count Five, the Government must prove each

10    of the following three elements beyond a reasonable doubt:

11         *First*, that the conspiracy charged in the Count you are considering existed.

12         *Second*, that the defendant you are considering knowingly and intentionally became a member of

13    the conspiracy, with intent to commit at least one of the goals or objects of the conspiracy.

14         *Third*, that any one of the members of the conspiracy knowingly committed at least one overt act

15    in furtherance of the conspiracy.

16         I will now explain each element in more detail.

17    **Adapted from *United States v. United States v. Giannelli* 20-CR-160 (MKV) (S.D.N.Y.**

18    **2022); *United States v. Raji*, 19-CR-870 (JMF) (S.D.N.Y. 2022); Sand, *Modern Federal Jury***

19    ***Instructions*, Instr. 19-3 (2025); *United States v. Goel*, 22-CR-396 (PKC).**

20

21         Counts One and Five — First Element: Existence of the Conspiracy

22         The first element the Government must prove beyond a reasonable doubt with respect to Counts

23    One and Five is the existence of the conspiracy charged in the count you are considering.

1        So, what is a conspiracy?  A conspiracy is an agreement or an understanding, between two or

2   more persons, to accomplish by joint action a criminal or unlawful purpose.  If you find beyond a

3   reasonable doubt that two or more persons came to an understanding, explicitly or implicitly (that is,

4   spoken or unspoken), to violate the law and to accomplish an unlawful plan, then the Government will

5   have sustained its burden of proof as to this element.

6        To satisfy its burden of proof on this element, the Government is not required to show that two

7   or more people sat around a table and entered into a solemn pact, orally or in writing, stating that they

8   had formed a conspiracy and spelling out who would do what in order to carry out the unlawful project.

9   Common sense tells you that when people, in fact, agree to enter into a criminal conspiracy, much is left

10  to unexpressed understanding.  In determining whether a conspiracy existed, you may consider direct as

11  well as circumstantial evidence.

12       When people enter into a conspiracy to accomplish an unlawful end, they become agents and

13  partners of one another in carrying out the conspiracy.  In determining whether there has been an

14  unlawful agreement as alleged, you may consider the acts and conduct of the alleged co-conspirators

15  that were done to carry out the apparent criminal purpose.  The old adage, "Actions speak louder than

16  words," applies here.  Often, the only evidence that is available with respect to the existence of a

17  conspiracy is that of disconnected acts and conduct on the part of the alleged individual co-conspirators.

18  When taken together and considered as a whole, however, these acts and conduct may warrant the

19  inference that a conspiracy existed as conclusively as would direct proof.

20       The objects — or objectives — of a conspiracy are the illegal goals the co-conspirators agree

21  upon or hope to achieve.  As I have mentioned, there are three objects of the conspiracy charged in

22  Count One of the Indictment — first, securities fraud; second, wire fraud; and third, investment adviser

23  fraud.  In order to prove that a defendant is guilty of the conspiracy offense charged in Count One, the

61

1    Government must establish beyond a reasonable doubt that the defendant you are considering agreed

2    with others to commit one or more of these offenses.  The Government does not need to prove that the

3    conspirators agreed to all three objects of the conspiracy.  To convict, however, you must be unanimous

4    as to at least one type of unlawful conduct that was the object of the conspiracy joined by the defendant.

5         The sole object of the conspiracy with which Mr. Castillero and Mr. Martinsen are charged in

6    Count Five is obstruction of justice.  Accordingly, in order to prove that a defendant is guilty of the

7    conspiracy offense charged in Count Five, the Government must establish beyond a reasonable doubt

8    that the defendant you are considering agreed with others to obstruct justice.

9         I have already explained these substantive crimes to you, and you should apply those instructions

10    here to determine whether the defendant you are considering conspired, or agreed, to commit any of

11    those crimes.

12    **Adapted from *United States v. Raji*, 19-CR-870 (JMF) (S.D.N.Y. 2022); *United States v.**

13    *Goel*, 22-CR-396 (PKC);  Sand, Modern Federal Jury Instructions, Instr. 19-4; *United States v.**

14    *Dambelly*, 16 Cr. 002 (JMF) (S.D.N.Y. 2016);  *United States v. Lavidas*, 19 Cr. 716 (DLC) (S.D.N.Y.**

15    2020); *United States v. Campos*, 16 Cr. 395 (VEC) (S.D.N.Y. 2017); *see also United States v. Rea*,**

16    958 F.2d 1206, 1214 (2d Cir. 1992) ("In order to prove conspiracy, the government need not**

17    present evidence of an explicit agreement; proof of a tacit understanding will suffice. The**

18    coconspirators need not have agreed on the details of the conspiracy, so long as they have agreed**

19    on the essential nature of the plan, and their goals need not be congruent, so long as they are not**

20    at cross-purposes."); *United States v. Montour*, 944 F.2d 1019, 1025 (2d Cir. 1991) ("To prove the**

21    existence of an agreement, the government need not present evidence of a formal arrangement**

1  **between the co-conspirators. Rather, it is sufficient if the government can demonstrate that the**

2  **defendant acted together with others to realize a common goal.").**

3

4  <u>Counts One and Five — Second Element: Membership in the Conspiracy</u>

5  The second element the Government must prove beyond a reasonable doubt with respect to

6  Counts One and Five is that the defendant you are considering knowingly and willfully became a

7  member of the conspiracy you are considering — that is, that that defendant participated in the

8  conspiracy with knowledge of its unlawful purpose or purposes and in furtherance of its unlawful

9  objective or objectives.

10  The Government must prove beyond a reasonable doubt that the defendant you are considering

11  knowingly and willfully entered into the conspiracy with a criminal intent — that is, with an unlawful

12  purpose — and that he or she agreed to take part in the conspiracy with knowledge of its unlawful

13  purpose or purposes and with the specific intention of furthering its objective or objectives.

14  I have already explained the meaning of the terms "willfully" and "knowingly," and you should

15  apply those instructions here.

16  It is not necessary for the Government to show that a defendant was fully informed as to all the

17  details of the conspiracy in order for you to infer knowledge on his or her part. To have guilty

18  knowledge, a defendant need not have known the full extent of the conspiracy, or all of the activities of

19  all its participants. It is not even necessary that a defendant knew every other member of the conspiracy.

20  When people enter into a conspiracy to accomplish an unlawful end, they become agents or

21  partners of one another in carrying out the conspiracy. In determining the factual issues before you, you

22  may, but are not required to, take into account any acts or statements made by a defendant's co-

23  conspirators (if any), which were made during, in the course of, and in furtherance of the conspiracy,

63

1    even though such acts or statements were not made in the presence of that defendant or were made

2    without his or her knowledge.  Acts or statements made in furtherance of the common purpose of the

3    conspiracy are deemed, under the law, to be the acts or statements of all of the members, and all of the

4    members are responsible for such acts or statements.

5          Indeed, each member of a conspiracy may perform separate and distinct acts and may perform

6    them at different times.  Some conspirators may play major roles, while others play minor roles.  An

7    equal role is not what the law requires.  In fact, even a single act may be sufficient to draw a defendant

8    within the scope of the conspiracy.

9          Nor is it necessary that a defendant received any monetary benefit from his participation in the

10   conspiracy, or had a financial stake in the outcome, so long as he or she in fact joined in the conspiracy

11   in the manner I have explained.

12          Keep in mind, however, that a person may know, assemble with, associate with, or be friendly

13   with, one or more members of a conspiracy, without being a conspirator him or herself.  Mere similarity

14   of conduct or the fact that a defendant may have discussed common aims and interests does not

15   necessarily establish proof of the existence of a conspiracy or that defendant's membership in the

16   conspiracy.  I also want to caution you that mere knowledge or acquiescence, without participation, in

17   the unlawful plan is not sufficient.

18           Moreover, the fact that the acts of a defendant, without knowledge, merely happen to further

19   the purposes or objectives of the conspiracy, does not make that defendant a member of the conspiracy.

20   More is required under the law.  What is necessary is that the defendant must have participated with

21   knowledge of at least some of the illegal purposes or objects of the conspiracy and with the intention of

22   aiding in the accomplishment of those unlawful ends.

64

1    The duration and extent of a defendant's participation has no bearing on the issue of that

2    defendant's guilt.  He or she need not have joined the conspiracy at the outset, and may have joined it at

3    any time in its progress.

4    Once a conspiracy is formed, it is presumed to continue until either its objective is accomplished

5    or there is some affirmative act of termination by the members.  So too, once a person is found to be a

6    member of a conspiracy, he or she is presumed to continue as a member in the conspiracy until the

7    conspiracy is terminated, unless it is shown by some affirmative proof that the person withdrew and

8    disassociated him or herself from the conspiracy.

9    In sum, you must find beyond a reasonable doubt that the defendant you are considering, with

10   an understanding of the unlawful character of the conspiracy you are considering, intentionally engaged,

11   advised, or assisted in the conspiracy for the purpose of furthering the illegal undertaking.  He or she

12   thereby becomes a knowing and willing participant in the unlawful agreement — that is to say, a

13   conspirator.

14   **Adapted from Parties' Requests to Charge; *United States v. Raji*, 19-CR-870 (JMF)**

15   **(S.D.N.Y. 2022); *United States v. Goel*, 22-CR-396 (PKC); Sand, *Modern Federal Jury Instructions*,**

16   **Instrs. 19-6, 3A-1, 3A-3; *United States v. Dambelly*, 16 Cr. 002 (JMF) (S.D.N.Y. 2016); *see also***

17   ***United States v. Aleskerova*, 300 F.3d 286, 292-93 (2d Cir. 2002) (describing manner in which**

18   **government may show participation in conspiracy with required state of mind); *United States v.***

19   ***Rea*, 958 F.2d 1206, 1214 (2d Cir. 1992) ("The defendant's knowledge of the conspiracy and**

20   **participation in it with the requisite criminal intent may be established through circumstantial**

21   **evidence. A defendant need not have joined a conspiracy at its inception in order to incur liability**

22   **for the unlawful acts of the conspiracy committed both before and after he or she became a**

23   **member.") (citations omitted).**

65

1

2       <u>Counts One and Five — Third Element: Overt Act</u>

3            The third element the Government must prove beyond a reasonable doubt with respect to Counts

4    One and Five is that at least one overt act was committed in furtherance of the conspiracy that you are

5    considering by at least one of the co-conspirators — not necessarily any of the defendants.

6            That means there must have been something more than mere agreement; some overt step or

7    action must have been taken by at least one of the conspirators in furtherance of the conspiracy you are

8    considering.  To put it another way, the agreement must have gone beyond merely talking.

9            You need not reach unanimous agreement on whether a particular overt act was committed in

10   furtherance of the conspiracy you are considering.  But to find this element, you must all agree that at

11   least one overt act was committed.  Moreover, you need not find that a defendant in this case committed

12   the overt act him or herself.  It is sufficient for the Government to show that any conspirator knowingly

13   committed an overt act in furtherance of the conspiracy you are considering, since such an act becomes,

14   in the eyes of the law, the act of all of the members of the conspiracy.

15           In addition, you should bear in mind that the overt act, standing alone, may be an innocent,

16   lawful act.  Frequently, however, an apparently innocent act sheds its harmless character if it is a step in

17   carrying out, promoting, aiding, or assisting a conspiracy.  You are therefore instructed that the overt act

18   does not have to be an act that in and of itself is criminal or an objective of the conspiracy.

19   **Adapted from *United States v. Giannelli*, 20-CR-160 (MKV) (S.D.N.Y 2022); Sand, *Modern***

20   ***Federal Jury Instructions*, Instr. 19-7 (2025); *United States v. Goel*, 22-CR-396 (PKC); *United States***

21   ***v. Salmonese*, 352 F.3d 608, 619 (2d Cir. 2003) ("[T]he overt act element of a conspiracy charge**

22   **may be satisfied by an overt act that is not specified in the indictment"); *United States v. Kozeny*,**

23   **667 F.3d 122, 131–32 (2d Cir. 2011) ("the government may plead one set of overt acts in the**

1    **indictment and prove a different set of overt acts at trial without prejudice to the defendant”);**

2    ***United States v. Mackey*, 652 F. Supp. 3d 309, 325 (E.D.N.Y. 2023) (“In the Second Circuit,**

3    **essential conduct, also known as conduct constituting the offense, has occurred any place where**

4    **either the conspiratorial agreement was formed,, or any overt act was (1) committed for the**

5    **purpose of accomplishing the objectives of the conspiracy, so long as it was (2) reasonably**

6    **foreseeable that the overt act would occur in that location.” (cleaned up)); *United States v.***

7    ***Ramirez-Amaya*, 812 F.2d 813, 816 (2d Cir. 1987) (“As to a charge of conspiracy, venue may**

8    **properly be laid in the district in which the conspiratorial agreement was formed or in any district**

9    **in which an overt act in furtherance of the conspiracy was committed by any of the**

10    **coconspirators.”).**

11

12    Multiple Conspiracies

13    With respect to Count One, which charges all three defendants with conspiracy to commit

14    securities fraud, wire fraud, and investment adviser fraud, the defendants argue that there were actually

15    several separate and independent conspiracies with various groups of members.

16    Whether there existed a single unlawful agreement, or many such agreements, or indeed, no

17    agreement at all, is a question of fact for you, the jury, to determine in accordance with the instructions I

18    just gave you.

19    When two or more people join together to further one common unlawful design or purpose, a

20    single conspiracy exists.  By way of contrast, multiple conspiracies exist when there are separate

21    unlawful agreements to achieve distinct purposes.

1    Proof of several separate and independent conspiracies is not proof of the single, overall

2  conspiracy charged in Count One unless one of the conspiracies proved happens to be the single

3  conspiracy described in that Count.

4    You may find that there was a single conspiracy despite the fact that there were changes in

5  personnel, activities, or both, so long as you find beyond a reasonable doubt that some of the co-

6  conspirators continued to act for the duration of the conspiracy for the purposes charged in Count One.

7  The fact that the members of a conspiracy are not always identical does not necessarily imply that

8  separate conspiracies exist.  In addition, the existence of subgroups or subunits within a larger

9  conspiracy does not necessarily mean that the larger conspiracy does not exist.

10    On the other hand, if you find that the conspiracy charged in Count One did not exist, you cannot

11  find any defendant guilty of the single conspiracy charged in Count One.  This is so even if you find that

12  some conspiracy other than the one charged in Count One existed, even though the purposes of both

13  conspiracies may have been the same, and even though there may have been some overlap in

14  membership.

15    Similarly, if you find that the defendant you are considering was a member of another

16  conspiracy, and not the one charged in Count One, then you must acquit that defendant of the conspiracy

17  charged in Count One.  A person can be part of more than one conspiracy at the same time, and his or

18  her actions can further the interests of more than one conspiracy at the same time.

19    Therefore, what you must do is determine whether the conspiracy charged in Count One existed.

20  If it did, you then must determine the nature of the conspiracy and who were its members.

21  **Adapted from the Parties' Supplemental Requests to Charge; Sand, *Modern Federal Jury***

22  ***Instructions - Criminal*, Instr. 19-5; *United States v. Blondet*, 16-CR-387 (JMF) (S.D.N.Y. 2022).**

23

68

1   <u>Venue</u>

2    In addition to all of the elements that I have described for you, in order to convict a defendant on

3 any count of the Indictment, you must also decide whether any act in furtherance of the crime charged

4 occurred within the Southern District of New York.  The Southern District of New York includes

5 Manhattan and the Bronx.

6    The Government need not prove that the crime charged was committed entirely in this District or

7 that the defendant you are considering was present here.  It is sufficient to establish venue if any act in

8 furtherance of the crime occurred within the Southern District of New York and it was reasonably

9 foreseeable to the defendant you are considering that the act would take place in the Southern District of

10 New York.  Any action in this District or any communication into or out of this District can establish

11 venue so long as the action or communication furthered the charged offense.  If you find that the crime

12 charged was committed in more than one district, venue is proper in any district in which the crime was

13 begun, continued, or completed.

14    I should note that on this issue — and this issue alone — the Government's burden is not proof

15 beyond a reasonable doubt, but only proof by a preponderance of the evidence.  Thus, the Government

16 has satisfied its venue obligations as to a count if you conclude that it is more likely than not that any act

17 in furtherance of the crime charged in that count occurred in the Southern District of New York.  By

18 contrast, if you find that the Government failed to prove venue by a preponderance of the evidence with

19 regard to any count, then you must acquit the defendant you are considering of that count.

20   **Adapted from Government's Request to Charge; _United States v. Blondet_, 16 Cr. 387 (JMF)**

21 **(S.D.N.Y. 2022).**

22

23   <u>Variance of Dates and Amounts</u>

69

1    The Indictment refers to various dates and amounts.  I instruct you that it does not matter if a

2    specific event is alleged to have occurred on or about a certain date or month, but the evidence indicates

3    that in fact it was a different date or month.  Nor does it matter if the Indictment alleges that a

4    transaction involved a specific number of shares or amount of money, but the evidence indicates that it

5    was a different amount.  The law requires only a substantial similarity between the dates, months, and

6    amounts alleged in the Indictment and the dates, months, and amounts established by the evidence.

7    **Adapted from Government's Request to Charge; _United States v. Blondet_, 16 Cr. 387 (JMF)**

8    **(S.D.N.Y. 2022).**

9

10    ### III. CONCLUDING INSTRUCTIONS

11    Selection of the Foreperson

12    In a few minutes, you are going to go into the jury room and begin your deliberations.  Your first

13    task will be to select a foreperson.  The foreperson has no greater voice or authority than any other juror

14    but is the person who will communicate with me when questions arise and when you have reached a

15    verdict and who will be asked in open court to pass your completed Verdict Form to me.  Notes should

16    be signed by the foreperson and should include the date and time they were sent.  They should also be as

17    clear and precise as possible.  Any notes from the jury will become part of the record in this case.  So

18    please be as clear and specific as you can be in any notes that you send.  Do not tell me or anyone else

19    how the jury stands on any issue until after a unanimous verdict is reached.

20

21    Right to See Exhibits and Hear Testimony

22    All of the exhibits will be given to you near the start of deliberations.  In addition, you will also

23    be provided with a list of all the exhibits that were received into evidence.

1    If you want any of the testimony submitted to you or read back to you, you may also request that.

2    Keep in mind that if you ask for testimony, however, the court reporters must search through their notes,

3    the parties must agree on what portions of testimony may be called for, and if they disagree, I must

4    resolve those disagreements.  That can be a time-consuming process.  So please try to be as specific as

5    you possibly can in requesting portions of the testimony, if you do.

6    Again, your requests for testimony — in fact, any communication with the Court — should be

7    made to me in writing, signed by your foreperson with the date and time, and given to one of the Court

8    Security Officers.

9

10    <u>Juror Note-Taking</u>

11    If any one of you took notes during the course of the trial, you should not show your notes to, or

12    discuss your notes with, any other jurors during your deliberations.  Any notes you have taken are to be

13    used solely to assist you.  The fact that a particular juror has taken notes entitles that juror's views to no

14    greater weight than those of any other juror.  Finally, your notes are not to substitute for your

15    recollection of the evidence in the case.  If, during your deliberations, you have any doubt as to any of

16    the testimony, you may — as I just told you — request that the official trial transcript that has been

17    made of these proceedings be submitted or read back to you.

18

19    <u>Bias, Prejudice, and Sympathy</u>

20    All of us, no matter how hard we try, tend to look at others and weigh what they have to say

21    through the lens of our own experience and background.  We each have a tendency to stereotype others

22    and make assumptions about them.  Often, we see life and evaluate evidence through a clouded filter

1   that tends to favor those like ourselves.  You must do the best you can to put aside such stereotypes, for

2   all litigants and witnesses are entitled to a level playing field.

3           In particular, it would be improper for you to consider, in reaching your decision as to whether

4   the Government sustained its burden of proof, any personal feelings you may have about the defendants'

5   race, religion, national origin, gender, sexual orientation, or age.  Similarly, it would be improper for

6   you to consider any personal feelings you may have about the race, religion, national origin, gender,

7   sexual orientation, or age of any witness or anyone else involved in this case.

8           Indeed, under your oath as jurors, you are not to be swayed by bias, prejudice, or sympathy.  You

9   are to be guided solely by the evidence in this case, and as you sift through the evidence, the crucial

10  question that you must ask yourselves for each count is:  Has the Government proved each element of

11  each count beyond a reasonable doubt?

12          It is for you and you alone to decide whether the Government has sustained its burden of proving

13  each defendant's guilt beyond a reasonable doubt, solely on the basis of the evidence or lack of evidence

14  and subject to the law as I have instructed you.

15          It must be clear to you that once you let prejudice, bias, or sympathy interfere with your thinking,

16  there is a risk that you will not arrive at a true and just verdict.

17          If you have a reasonable doubt as to a defendant's guilt with respect to a particular count, then

18  you must render a verdict of not guilty as to that defendant on that count.  On the other hand, if you

19  should find that the Government has met its burden of proving the guilt of a defendant beyond a

20  reasonable doubt with respect to a particular count, then you should not hesitate because of sympathy or

21  any other reason to render a verdict of guilty as to that defendant on that count.

22          I also caution you that, under your oath as jurors, you cannot allow to enter into your

23  deliberations any consideration of the punishment that may be imposed upon a defendant if he or she is

72

1   convicted.  The duty of imposing a sentence in the event of conviction rests exclusively with the Court,

2   and the issue of punishment may not affect your deliberations as to whether the Government has proved

3   a defendant's guilt beyond a reasonable doubt.

4

5             <u>Duty to Deliberate</u>

6            The most important part of this case, members of the jury, is the part that you as jurors are now

7   about to play as you deliberate on the issues of fact.  I know you will try the issues that have been

8   presented to you according to the oath that you have taken as jurors.  In that oath you promised that you

9   would well and truly try the issues joined in this case and a true verdict render.

10           As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity

11   to express your own views.  Every juror should be heard.  No one juror should hold the center stage in

12   the jury room and no one juror should control or monopolize the deliberations.  If, after listening to your

13   fellow jurors and if, after stating your own view, you become convinced that your view is wrong, do not

14   hesitate because of stubbornness or pride to change your view.  On the other hand, do not surrender your

15   honest beliefs solely because of the opinions of your fellow jurors or because you are outnumbered.

16           Your verdict must be unanimous.  If at any time you are not in agreement, you are instructed that

17   you are not to reveal the standing of the jurors, that is, the split of the vote, to anyone, including me, at

18   any time during your deliberations.

19

20           <u>Return of the Verdict</u>

21           We have prepared a Verdict Form for you to use in recording your decisions, a copy of which is

22   attached to these instructions.  Do not write on your individual copies of the Verdict Form.  My staff

1    will give the official Verdict Form to Juror Number One, who should give it to the foreperson after the

2    foreperson has been selected.

3        You should draw no inference from the questions on the Verdict Form as to what your verdict

4    should be.  The questions are not to be taken as any indication that I have any opinion as to how they

5    should be answered.

6        After you have reached a verdict, the foreperson should fill in the Verdict Form and note the date

7    and time, and you should all sign the Verdict Form.  The foreperson should then give a note — **not** the

8    Verdict Form itself — to the Court Security Officer outside your door stating that you have reached a

9    verdict.  Do not specify what the verdict is in your note.  Instead, the foreperson should retain the

10    Verdict Form and hand it to me in open court when I ask for it.

11        I will stress again that each of you must be in agreement with the verdict that is announced in

12    court.  Once your verdict is announced in open court and officially recorded, it cannot ordinarily be

13    revoked.

14

15        <u>Closing Comments</u>

16        Finally, I say this, not because I think it is necessary, but because it is the custom in this

17    courthouse to say it:  You should treat each other with courtesy and respect during your deliberations.

18        All litigants stand equal in this room.  All litigants stand equal before the bar of justice.  All

19    litigants stand equal before you.  Your duty is to decide between these parties fairly and impartially, and

20    to see that justice is done.

21        Under your oath as jurors, you are not to be swayed by sympathy or prejudice.  You should be

22    guided solely by the evidence presented during the trial and the law as I gave it to you, without regard to

23    the consequences of your decision.  You have been chosen to try the issues of fact and to reach a verdict

1    on the basis of the evidence or lack of evidence.  If you let sympathy or prejudice interfere with your

2    clear thinking, there is a risk that you will not arrive at a just verdict.  You must make a fair and

3    impartial decision so that you will arrive at the just verdict.

4         Members of the jury, I ask your patience for a few moments longer.  It is necessary for me to

5    spend a few moments with the lawyers and the court reporter at the side bar.  I will ask you to remain

6    patiently in the jury box, without speaking to each other, and we will return in just a moment to submit

7    the case to you.  Thank you.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                     :

UNITED STATES OF AMERICA,         :

                                       :

     -v-                                 :        23-CR-622 (JMF)

                                       :

MICHAEL CASTILLERO, a/k/a "Michael Alejandro," :

FRANCINE LANAIA,            :        <u>VERDICT FORM</u>

and BRIAN MARTINSEN,        :

                                       :

                    Defendants.     :

                                       :
------------------------------------------------------------------X

*All Answers Must Be Unanimous*

<u>**Count One**</u>**: Conspiracy to Commit Securities Fraud, Wire Fraud, and Investment Adviser Fraud:**

     **Michael Castillero**

               Guilty _____           Not Guilty _____

     **Francine Lanaia**

               Guilty _____           Not Guilty _____

     **Brian Martinsen**

               Guilty _____           Not Guilty _____

<u>**Count Two**</u>**: Securities Fraud**

     **Michael Castillero**

               Guilty _____           Not Guilty _____

     **Francine Lanaia**

               Guilty _____           Not Guilty _____

     **Brian Martinsen**

               Guilty _____           Not Guilty _____

**Count Three: Wire Fraud**

**Michael Castillero**

Guilty _____          Not Guilty _____

**Francine Lanaia**

Guilty _____          Not Guilty _____

**Brian Martinsen**

Guilty _____          Not Guilty _____

**Count Four: Investment Adviser Fraud**

**Michael Castillero**

Guilty _____          Not Guilty _____

**Francine Lanaia**

Guilty _____          Not Guilty _____

**Brian Martinsen**

Guilty _____          Not Guilty _____

**Count Five: Conspiracy to Obstruct Justice**

**Michael Castillero**

Guilty _____          Not Guilty _____

**Brian Martinsen**

Guilty _____          Not Guilty _____

**Count Six: Obstruction of Justice**

  **Michael Castillero**

      Guilty _____     Not Guilty _____

  **Brian Martinsen**

      Guilty _____     Not Guilty _____


*After completing the Verdict Form, please sign your names below and fill in the date and time.*


_____ _____
Foreperson


_____ _____


_____ _____


_____ _____


_____ _____


_____ _____


Date and Time: _____


*Once you have signed the Verdict Form, please give a note — **NOT** the Verdict Form itself —*
*to the Court Security Officer stating that you have reached a verdict.  The foreperson should retain the*
*official Verdict Form to be handed to the Judge in open court.*

3