UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                         :
UNITED STATES OF AMERICA                                 :
                                                         :
                    -v-                                  :          23-CR-622 (JMF)
                                                         :
MICHAEL CASTILLERO et al.,                               :          OPINION AND ORDER
                                                         :
                    Defendants.                          :
                                                         :
-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Following an eleven-day jury trial before this Court, Defendants Michael Castillero, Francine Lanaia, and Brian Martinsen were convicted of securities fraud, wire fraud, investment adviser fraud, and conspiracy to do the same, in connection with a scheme to defraud investors in a group of nine related private funds known as the "StraightPath Funds." *See* ECF No. 1 ("Indictment"), ¶¶ 10-21; ECF No. 196, at 8-9 (jury verdict). Castillero and Martinsen were also convicted of obstruction of justice and conspiracy to do the same. *See* Indictment ¶¶ 22-27; ECF No. 196, at 9-10. On December 18, 2025, Martinsen, joined by his co-defendants, moved, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, for a judgment of acquittal *only* as to Count Four, the substantive investment adviser fraud count. *See* ECF No. 201 ("Defs.' Mem."); ECF Nos. 202, 203. By bottom-line Order entered on March 30, 2026, the Court denied the motion "[f]or reasons to be set forth in an opinion to follow." ECF No. 212. This is that opinion.

**RELEVANT FACTS**

The following is an account of the relevant evidence presented at trial, which the Court is required to view in the light most favorable to the government. *See Glasser v. United States,* 315 U.S. 60, 80 (1942); *United States v. Frank,* 156 F.3d 332, 334 (2d Cir. 1998) (per curiam).

Trial commenced with jury selection on October 20, 2025, and concluded on November 4, 2025. Tr. 1-2321. The Government presented the testimony of eighteen witnesses and introduced various documentary and physical exhibits into evidence. *Id.* at 59-1899. The defense called no witnesses but introduced documentary exhibits and stipulations. *Id.* at 1902-04. The evidence presented at trial showed that from 2017 to April 2022, the three Defendants engaged in a scheme to defraud investors while selling them securities. Defendants conducted this scheme through several entities, including StraightPath Venture Partners LLC ("SPVP"), which was the manager of nine funds known as the "StraightPath Funds." *E.g.*, GX 1. The evidence showed that the three founded and jointly controlled SPVP; the Funds themselves; and StraightPath Management LLC ("StraightPath Management"), which was the "investment adviser" to each of the StraightPath Funds (collectively, "StraightPath"). *E.g.*, Tr. 456, 1428-29, 1620, 1626-27; GX 1-9, 1103. StraightPath purported to be a private fund that sold interests in private, or "pre-IPO," companies to accredited investors. *E.g.*, GX 1. The company sold these interests primarily through boiler-room style call centers, where the defendants and their agents cold-called prospective investors and pitched them on investing in private shares using aggressive sales tactics. *E.g.* Tr. 59-207, 1239-40.

Although Defendants communicated to investors that they earned no fees on the transactions, a substantial portion of the capital contributions StraightPath Funds received from investors was diverted to pay Defendants and their associates. GX 610; GX 1048, at 3; GX 1011

(distribution of income to Defendants). Defendants were able to accumulate those fees by arbitrarily inflating the prices of shares and charging markups ranging from 13% to 85% on average. GX 1036; GX 1012-1015; GX 1023; GX 1038-47. Evidence also supported the Government's theory that Defendants concealed the involvement of Lanaia and Castillero at StraightPath because they were barred from the securities industry by the Financial Industry Regulatory Authority ("FINRA") and that they used various artifices to convince investors that another person was actually at the helm of StraightPath. *E.g.*, Tr. 396-97.

After the Government's case-in-chief, defense counsel moved for a judgment of acquittal, and the Court reserved judgment. Tr. 1891. On November 4, 2026, the Court proceeded to charge the jury. *See* Tr. 2228-302. Without objection, the Court's charge to the jury as to Count Four defined an investment adviser as "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing or selling securities, or who, for compensation and as a part of a regular business, issues or promulgates analyses or reports concerning securities." Tr. 2275. The Court provided the jury with three factors that it should consider in deciding whether any defendant acted as an investment adviser, to wit: whether the defendant provided advice or was an adviser that issued reports or analyses regarding securities; whether the defendant was in the business of providing such advice; and whether the defendant was provided compensation for such advice. Tr. 2275-76. The Court further instructed the jury that "registration with the United States Securities and Exchange Commission as an investment adviser is not required for you to find that a defendant is an investment adviser for purposes of Count Four." Tr. 2276.

3

The Court also instructed the jury that, to find a defendant guilty of investment adviser fraud, it must find that the defendant did any one or more of the following: (1) employed a device, scheme, or artifice to defraud an actual or prospective investor-client; (2) engaged in a transaction, practice, or course of business which operated as a fraud and deceit upon those investor-clients or prospective investor-clients; or (3) engaged in an act, practice, and course of business that was fraudulent or deceptive. Tr. 2276. The Court instructed the jury that, "[w]hether or not investors qualify as an investment adviser's 'clients,' investment advisers are prohibited from making false or misleading statements to investors or prospective investors in funds they advise, and cannot defraud investors or prospective investors in those funds." Tr. 2278. The Court also gave an instruction on aiding and abetting liability and willful causation and instructed that this instruction applied to the charge in Count Four. Tr. 2281-85.[1] During deliberations, the jury sent out a note asking for clarification on the meaning of "advise" for the purpose of the Investment Advisers Act. The Court instructed the jury to apply the common meaning, and directed the jury to the relevant portion of the charge. Tr. 2311.

On November 6, 2025, the jury found Defendants guilty on all counts.

**STANDARD OF REVIEW**

Rule 29(a) of the Federal Rules of Criminal Procedure requires the court to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(a). A defendant challenging the sufficiency of the evidence

---

[1]     Defendants lodged no objections to any of the foregoing instructions. At the charge conference, which was held on November 3, 2025, *see* Tr. 1911-93, the Court had agreed to supplement the definition of investment adviser by quoting from the statute, Tr. 1975-76; remove the term "manipulative" from the instruction as to the second element of Count Four, Tr. 1977, and replace references to investors with "investor-clients," Tr. 1941; *see also* ECF No. 194 (redline showing the differences between the final draft and the charge conference draft).

under Rule 29(a), however, "bears a heavy burden, as the standard of review is exceedingly deferential to the jury's verdict." *United States v. Gu*, 8 F.4th 82, 86 (2d Cir. 2021) (cleaned up). Specifically, a court "must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence," *United States v. Chavez,* 549 F.3d 119, 124 (2d Cir. 2008) (cleaned up), and it must affirm the conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *see also United States v. Guadagna,* 183 F.3d 122, 130 (2d Cir. 1999) (stating that a court may overturn a jury's verdict only if the evidence supporting the verdict is "nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt" (internal quotation marks omitted)). A reviewing court must review the evidence "in its totality, not in isolation." *United States v. Anderson*, 747 F.3d 51, 59 (2d Cir. 2014).

Significantly, if the jury was properly instructed on multiple theories of liability, the Court "must affirm when the evidence is sufficient under [any] of the theories." *United States v. Masotto*, 73 F.3d 1233, 1241 (2d Cir. 1996); *see also Griffin v. United States,* 502 U.S. 46, 56-60 (1991); *United States v. Rutkoske*, 506 F.3d 170, 176 (2d Cir. 2007); *United States v. Frampton*, 382 F.3d 213, 224 (2d Cir. 2004); *United States v. Salmonese*, 352 F.3d 608, 624 (2d Cir. 2003); *cf. Yates v. United States*, 354 U.S. 298, 312 (1957) (holding that a general verdict must be overturned if the "verdict is supportable on one ground but" — due to a *mistake of law* — "not on another, and it is impossible to tell which ground the jury selected"). "In such cases, courts assume that the verdict is based on the valid theory." *Rutkoske*, 506 F.3d at 176.

## DISCUSSION

Defendants move for acquittal only as to Count Four, which charged them with substantive investment adviser fraud in violation of subsections (1), (2), and (4) of 15 U.S.C. § 80b-6. As relevant here, that statute makes it "unlawful for any investment adviser by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly —"

> (1) to employ any device, scheme, or artifice to defraud any client or prospective client;
>
> (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client;
>
> . . . or
>
> (4) to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative.

15 U.S.C. § 80b-6; *see also* Indictment ¶ 21. Significantly, while subsections (1) and (2) are limited to frauds perpetrated upon "any client or prospective client" of the investment adviser, subsection (4) is not so limited. Instead, it broadly prohibits an investment adviser from engaging in "any act, practice or course of business which is fraudulent, deceptive, or manipulative" and does not require proof of a client relationship. *See* Defs.' Mem. 7. The Court's instructions to the jury correctly tracked the statute's different subsections. Tr. 2275-78.

The parties devote much of the briefing to whether the evidence was sufficient to support Defendants' convictions under subsections (1) and (2) of the statute. *Compare* Defs.' Mem. 7-18, *with* ECF No. 206 ("Gov't Mem."), at 16-24. But the Court need not and does not address that question because, viewing the evidence in the light most favorable to the verdict, the Court concludes that the evidence was more than sufficient to support Defendants' conviction under subsection (4). Specifically, and contrary to Defendants' arguments, *see* Defs.' Mem. 18-20, the evidence was more than sufficient to support the jury's conclusions that Defendants (1) acted as,

6

or aided and abetted, investment advisers; and (2) engaged in deceptive business practices as investment advisers.

## A.  Evidence that Defendants Acted as, or Aided and Abetted, Investment Advisers

The Investment Adviser Act defines an "investment adviser" as "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities."  15 U.S.C. § 80b–2(a)(11).  Although something more than an "arms-length" relationship with a client may be required, a person need not "develop personalized relationships with investors" in order to qualify as an investment adviser, as Defendants suggest.  *See* Defs.' Mem. 1.  Indeed, the Second Circuit has held that "a general partner of an investment fund who managed the partnership's investments, and received a portion of the firm's profits as compensation [falls] within the definition of an 'investment adviser." *United States v. Onsa*, 523 F. App'x 63, 64 (2d Cir. 2013) (summary order) (cleaned up and quoting *Abrahamson v. Fleschner*, 568 F.2d 862, 866, 870 (2d Cir. 1977)), *overruled in part on other grounds by Transam. Mortg. Advisors, Inc. v. Lewis,* 444 U.S. 11 (1979)); *id.* (explaining that general partners qualified as investment advisers within the meaning of the statute where they "had engaged in the business of advising others because (1) they distributed reports to the other partners, including limited partners, regarding the fund, and (2) because they managed the funds of others for compensation, thus advising their customers by exercising control over what purchases and sales are made with their clients' funds" (cleaned up and quoting *Abrahamson*, 568 F.2d at 870-71)).  In fact, the Second Circuit has gone so far as to say that those who "manage[] the funds of others for compensation are 'investment advisers' within the meaning of the statute." *Abrahamson*, 568 F.2d at 870; *accord United States v. Pierre*, No. 22-1274, 2024

WL 676373, at *3 (2d Cir. Feb. 20, 2024) (summary order).  This broad definition of investment

adviser, the court explained, is "borne out by the plain language of Section 202(a)(11) and its

related provisions, by evidence of legislative intent and by the broad remedial purposes of the

Act."  *Abrahamson*, 568 F.2d at 870.

The Court's instructions — to which Defendants did not object at trial and do not object

now — tracked these standards.  And there was ample evidence to support the jury's conclusion

that Defendants qualified as investment advisers under these standards.  For one thing,

StraightPath Management, which was collectively owned and operated by Defendants,

repeatedly held itself out as an investment advisor.  StraightPath filed multiple forms with the

Securities and Exchange Commission in which it publicly identified StraightPath Management

as an investment adviser under the Investment Advisers Act.  *See* GX 14, 15.  Additionally, the

private placement memoranda ("PPMs") for each of the nine StraightPath Funds stated that

StraightPath Management served as the investment advisor and would:

> (i) originate, analyze, and recommend investment opportunities to the Fund that
> are consistent with the purpose and investment focus of the Fund, (ii) structure
> investments, (iii) identify funding sources for Portfolio Companies, (iv) supervise
> the preparation and due diligence review of documentation relating to the
> acquisition, financing, and disposition of investments, (v) monitor investments, and
> (vi) provide such other services related thereto as the Manager may reasonably
> request.

*E.g.*, GX 9, at 15; *see also* GX 1-8.  The PPMs also described StraightPath Management as

composed of investment professionals, collectively the "StraightPath Team," who used their

expertise to determine the investment priorities for the Funds:

> The investment professionals of StraightPath Management LLC (the
> "StraightPath Team"), a Delaware limited liability company and the Advisors to
> the Fund (the "Fund Advisors"), have been active in investing in various private
> companies over the last several years, including companies engaged in social
> media, digital media and other technology businesses. Over the last several years
> there have been a number of rapid and fundamental developments in technology
> and consumer usage that the StraightPath Team believes will provide

8

> opportunities to create and build many new successful businesses. . . . While the Fund's initial investment focus will generally be targeted at technology companies, including social and digital media companies, the Investment Advisor will consider all investment opportunities that may be suitable for investment by the Fund.

*E.g.*, GX 9, at 1-2. These exhibits establish that StraightPath Management served as an "investment adviser" to each of the nine StraightPath Funds and that a team of "StraightPath Fund Advisors" identified and selected investment opportunities, structured investments, identified business trends, and maintained a network of associates with access to stockholders within the fund's investment focus. *Id.*

Given Defendants' extensive involvement in the Funds, the jury was entitled to conclude that they were the very "team" of investment advisers that StraightPath Management held itself out as employing. Among other things, the evidence showed that Martinsen performed these advisor functions on a day-to-day basis, with support from both Castillero and Lanaia. *See* Tr. 402, 457 (Eric Lachow testifying that Martinsen undertook the investment adviser's responsibilities); Tr. 1252-53 (Mark Lisser testifying that Martinsen selected the companies that were available to sell to his investors and that Martinsen would inform him daily about the available stock, its price, and the commission). Text messages among the three Defendants confirmed that Martinsen made decisions in an advisory capacity in consultation with both Castillero and Lanaia. *See, e.g.*, GX 210-49 (Martinsen texting Castillero and Lanaia that he had sent them a pitchbook for the company Scopely because "we need to start raising money for this."); GX 210-67 (Martinsen texting Castillero and Lanaia that with money coming in, they could afford to pay an open Kraken contract); GX 206-1 (all three defendants discussing being sold out of Palantir shares, which meant that they "owe[d] [them]selves allot [sic] of money."); GX 206-6 (Martinsen texting Castillero and Lanaia that they could buy Triller but would "need to do it with our own money," to which Castillero responded: "Do it").

9

In short, like the investment advisors in *Abrahamson*, Defendants collectively controlled StraightPath Management, managed the funds of others, and were directly involved in the provision of informational reports to potential investors. *Abrahamson*, 568 F.2d at 870-71; *see, e.g.*, GX 1-9 (PPMs). Moreover, the evidence established that Defendants were handsomely compensated for these services, as each received approximately $25 million over the course of StraightPath's operation. GX 1048, at 3; GX 610. Defendants contend that the record is insufficient to show they were "personally compensated" for providing investment advice in particular — as opposed to other functions they performed on behalf of the StraightPath entities. Defs.' Mem. 14, 20. That Defendants commingled funds across entities, *see* GX 1018, 1005-10, 1022, and issued no invoices specifically designated for advisory services, however, does not shield them from liability. The jury was entitled to infer that at least a portion of the substantial compensation Defendants received was in exchange for investment advice.

Defendants also contend that 15 U.S.C. § 80b-2(a)(17) establishes a distinct statutory category for "person[s] associated with an investment adviser" and that they fall within that category rather than the definition of investment adviser itself. Defs.' Mem. 19. But they cite, and the Court has found, no authority for the novel proposition that Section 80b-2(a)(17) was intended to narrow the definition of investment adviser under Section 80b-2(a)(11) or to displace the body of caselaw interpreting the latter provision. If anything, judging from references to Section 80b-2(a)(17) in other provisions, it appears to have been intended to *expand* liability and promote deterrence of investment adviser-related fraud. *See, e.g.*, 15 U.S.C. § 80b-3(c)(1)(G) (detailing registration requirements for associates of investment advisers); *Pierre*, 2024 WL 676373, at *3 (noting that the United States Sentencing Guidelines provide for a sentence enhancement "[i]f the offense involved . . . a violation of securities law and, at the time of the

10

offense, the defendant was . . . an investment adviser, *or* a person associated with an investment adviser" (quoting U.S.S.G. § 2B1.1(b)(20)(A)(iii)) (emphasis added)).  In any event, the jury was presented with a lot more than evidence of "mere[] . . . association."  Defs.' Mem. 20.  Defendants ignore the substantial trial evidence that their involvement in StraightPath's investment advisory functions — including fund management and the distribution of informational materials to investors — far exceeded mere ownership of the enterprise.

In short, there was ample evidence to support the jury's conclusion that Defendants qualified as investment advisers under the statute.  And if that were not the case, the jury was certainly free to convict on the theory that each Defendant aided and abetted or willfully caused a fraud through Straightpath Management, which was indisputably an investment adviser.  Tr. 2281-85; *see also* 18 U.S.C. § 2(a) ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.").  Either way, the evidence was sufficient to establish that element of Count Four.

## B.  Evidence of Fraudulent, Deceptive, or Manipulative Acts

Additionally, the evidence was more than sufficient for the jury to find that Defendants engaged in an "act, practice, or course of business which is fraudulent, deceptive, or manipulative," 15 U.S.C. § 80b-6(4), namely, by making material misrepresentations or misleading investors or prospective investors, *see, e.g.*, *Sec. & Exch. Comm'n v. Jarkesy*, 603 U.S. 109, 116 (2024) ("Section 206(b), as implemented by Rule 206(4)–8, prohibits investment advisers from making 'any untrue statement of a material fact' or engaging in 'fraudulent, deceptive, or manipulative' acts with respect to investors or prospective investors" (quoting 17 C.F.R. §§ 275.206(4)–8(a)(1), (2); 15 U.S.C. § 80b–6(4))).  Defendants all but concede as much insofar as they do not challenge the jury's verdict, based on the same quantum of proof, finding

11

them guilty of securities fraud and wire fraud.  *See, e.g.*, *S.E.C. v. Tandem Mgmt. Inc.*, No. 95-CV-8411 (JGK), 2001 WL 1488218, at *10 (S.D.N.Y. Nov. 21, 2001) (observing that "[t]he facts needed to support" convictions for securities and wire fraud "are identical" to those needed to establish a violation of Section 80b-6(4)).  Instead, they argue that the evidence was insufficient because there must be a "nexus" between the fraudulent, deceptive, and manipulative acts and their status as investment advisers.  *See* Defs.' Mem. 20-21.

As a threshold matter, although dressed up in sufficiency-of-the-evidence clothes, the gravamen of this argument is that the Court committed legal error in instructing the jury — namely, by omitting a "nexus" element from the instructions as to Section 80b-6(4).  But Defendants failed to object to the Court's instructions on that score, *see* Tr. 1950-77, let alone argue the point in their oral Rule 29 motion, *see* Tr. 1883-92, and, thus, have forfeited the argument they are now making, *see* FED. R. CRIM. P. 30(d), 51(b).  *See United States v. Clemente*, 640 F.2d 1069, 1081 (2d Cir. 1981) ("The defendants, however, failed to object to this portion of the court's charge and thus waived any objection they may have had in this regard).  Moreover, a Rule 29 motion "is not the proper vehicle for raising an objection to jury instructions."  *United States v. Crowe*, 563 F.3d 969, 972 n.5 (9th Cir. 2009); *see, e.g.*, *United States v. Levy*, No. 11-CR-62 (PAC), 2013 WL 3832718, at *3 & n.2 (S.D.N.Y. July 15, 2013) (denying a Rule 29(c) motion where the "argument [did] not address the sufficiency of the evidence," but instead attempted to "rehash certain jury instruction arguments as to why [defendant's] activities should not be considered illegal as a matter of law").  Instead, "evidentiary insufficiency" is the "only" proper "ground for a motion for a judgment of acquittal."  2A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 466 (4th ed. 2022).

Accordingly, the Court need not decide whether Section 80b-6(4) includes a "nexus" requirement, as Defendants belatedly contend.

The Court need not decide the issue for another reason as well: Because, assuming the statute does have a "nexus" requirement, it was met here.  The deceptive conduct proved at trial was directly connected to Defendants' core investment advisory activities at StraightPath, including the management of the funds as well as the creation and distribution of private placement memoranda and investor welcome letters.  Viewed in the light most favorable to the Government, the evidence demonstrated that Defendants engaged in deceptive practices both in managing client funds for compensation and in authoring and distributing investment advisory materials to investors — conduct that renders them "investment advisers within the meaning of the statute."  *Abrahamson*, 568 F.2d at 870 (cleaned up).  For instance, the jury was entitled to conclude that Defendants were directly involved in the distribution of false and misleading materials to investors.  In PPMs distributed to prospective investors, the defendants falsely disclosed that markups "may" be charged, when Defendants knew that StraightPath's business model was to charge markups in every case.  *E.g.*, GX 1-9, at 10 (using "may" language); GX 223-1 at 2 (Martinsen telling Lisser that the markup needed to be higher because otherwise "we would all make nothing on it"); Tr. 461 (testimony that profit from markups went to the defendants, sales agents, referral agents, and brokers).  In addition, the Welcome Letters that Defendants sent to investors deceptively stated that all upfront fees were waived and that the entirety of the investor's capital contribution went to the purchase of shares.  *E.g.*, GX 60-18EA.[2]  The fraudulent misrepresentations at issue were not merely incidental to Defendants'

---

[2]    Defendants contend that these materials were distributed by the funds' manager, not the StraightPath Investment Adviser.  Defs.' Mem. 21.  This distinction is unpersuasive.  The

roles at StraightPath; they were integral to the advisory functions Defendants performed.

Accordingly, whether or not Section 80b-6(4) has a "nexus" requirement, the evidence was more

than sufficient to sustain Defendants' convictions.

## CONCLUSION

For the foregoing reasons, Defendants motion for judgment of acquittal on Count Four

was DENIED.  Sentencing will proceed, as scheduled, on April 15, 2026.  *See* ECF No. 212.

SO ORDERED.

Dated: April 10, 2026
       New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

evidence established that Defendants largely controlled the fund manager account, rendering the organizational lines on which they rely largely meaningless.  *E.g.*, Tr. 418-19; GX 204-1-7.