UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v-<br><br>MICHAEL CASTILLERO et al.,<br><br>Defendants. | 23-CR-622 (JMF)<br><br>OPINION AND ORDER |

JESSE M. FURMAN, United States District Judge:

On November 6, 2025, Defendants Michael Castillero, Brian Martinsen, and Francine Lanaia were convicted of securities fraud, wire fraud, investment adviser fraud, and conspiracy to do the same, in connection with a scheme to defraud investors in a group of nine related private funds known as the "StraightPath Funds." *See* ECF No. 1 ("Indictment"), ¶¶ 10-21; ECF No. 196, at 8-9 (jury verdict). Castillero and Martinsen were also convicted of obstruction of justice and conspiracy to do the same. *See* Indictment ¶¶ 22-27; ECF No. 196, at 9-10. Thereafter, the Court sentenced Castillero principally to eleven years' imprisonment; Martinsen principally to ten years' imprisonment, and Lanaia principally to eight years' imprisonment. ECF No. 291 ("Sent. Tr."), at 88, 93-94, 99-100. Defendants timely filed notices of appeal. *See* ECF Nos. 249-51. They are currently required to surrender for service of their sentences on October 29, 2026. *See* ECF No. 301. Now pending are their motions for bail and to stay their financial penalties pending appeal. *See* ECF No. 282 ("Defs.' Bail Mem."); *see also* ECF Nos. 285-86. For the reasons that follow, the Court DENIES those motions.

## BACKGROUND

### A. The Charges

On November 28, 2023, Defendants were indicted in connection with their operation of StraightPath Venture Partners, LLC ("SPVP"), and its related Funds and entities. The Indictment charged all Defendants with one count of conspiracy to commit securities fraud, wire fraud, and investment adviser fraud, in violation of 18 U.S.C. § 371 (Count One); one substantive count of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. § 240.10b-5 (Count Two); one substantive count of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2 (Count Three); and one substantive count of investment adviser fraud, in violation of 15 U.S.C. §§ 80b-6 and 80b-17, and 18 U.S.C. § 2 (Count Four). In addition, the Indictment charged Castillero and Martinsen — but not Lanaia — with one count of conspiracy to obstruct justice, in violation of 18 U.S.C. § 371 (Count Five); and one substantive count of obstruction of justice, in violation of 18 U.S.C. §§ 1519 and 2 (Count Six).

Count Four of the Indictment — the substantive charge of investment adviser fraud — alleged in relevant part that

> [f]rom at least in or about 2017 through in or about April 2022, in the Southern District of New York and elsewhere, MICHAEL CASTILLERO, a/k/a "Michael Alejandro," FRANCINE LANAIA, and BRIAN MARTINSEN, the defendants, while acting as investment advisors, willfully and knowingly used the mails and a means and instrumentality of interstate commerce, directly and indirectly, to (a) employ a device, scheme, and artifice to defraud clients and prospective clients; (b) engage in a transaction, practice, and course of business which operated as a fraud and deceit upon clients and prospective clients; and (c) engage in an act, practice, and course of business which was fraudulent, deceptive, and manipulative, to wit, CASTILLERO, LANAIA, and MARTINSEN, in violation of their fiduciary duties, engaged in a scheme to defraud their clients regarding StraightPath's operations and investments, and misappropriated client funds for their own enrichment.

Indictment ¶ 21. In so doing, the Count tracked the language of Subsections (1), (2), and (4) of Section 206 of the Investment Advisers Act, 15 U.S.C. § 80b-6, which make it unlawful for an

investment advisor to willfully (1) "employ any device, scheme or artifice to defraud any client or prospective client"; (2) "engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client"; or (4) "engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative." *Id.*

**B. The Trial**

Trial commenced with jury selection on October 20, 2025, and concluded on November 4, 2025. Tr. 1-2321.[1] The Government called eighteen witnesses and introduced various documentary and physical exhibits into evidence. *Id.* at 59-1899. The defense called no witnesses but introduced documentary exhibits and stipulations. *Id.* at 1902-04.

To the extent relevant here, the evidence presented at trial showed that from 2017 to April 2022, the three Defendants engaged in a scheme to defraud investors while selling them securities. Defendants conducted this scheme through several entities, including SPVP, which was the manager of nine funds known as the "StraightPath Funds." *E.g.*, GX 1. The evidence showed that the three founded and jointly controlled SPVP; the Funds themselves; and StraightPath Management LLC ("StraightPath Management"), which was the "investment adviser" to each of the StraightPath Funds (collectively, "StraightPath"). *E.g.*, Tr. 456, 1428-29, 1620-21, 1626-27; GX 1-9, 1103. StraightPath purported to be a private fund that sold interests in private, or "pre-IPO," companies to accredited investors. *E.g.*, GX 1. The company sold these interests primarily through boiler-room style call centers, where the defendants and their agents cold-called prospective investors and pitched them on investing in private shares using aggressive sales tactics. *E.g.* Tr. 59-207, 1239-40.

[1] "Tr." refers to the trial transcript, most of which is available at ECF Nos. 254-74.

Although Defendants communicated to investors that they earned no fees on the transactions, a substantial portion of the capital contributions StraightPath Funds received from investors was diverted to pay Defendants and their associates. GX 610; GX 1048, at 3; GX 1011 (distribution of income to Defendants). Defendants were able to accumulate those fees by arbitrarily inflating the prices of shares and charging markups ranging from 13% to 85% on average. GX 1036; GX 1012-1015; GX 1023; GX 1038-47. Evidence also supported the Government's theory that Defendants concealed the involvement of Lanaia and Castillero at StraightPath because they were barred from the securities industry by the Financial Industry Regulatory Authority ("FINRA") and that they used various artifices to convince investors that another person was actually at the helm of StraightPath. *E.g.*, Tr. 396-97.

**C. The Charge Conference and Jury Instructions**

At the charge conference, Defendants objected to the Court's proposed instructions with respect to Count Four, arguing that the jury should not be permitted to find that Defendants owed a fiduciary duty to individual investors, as opposed to the StraightPath Funds themselves. Tr. 1883, 1958, 1963, 1967-68. The Court overruled those objections. Tr. 1975.

On November 4, 2026, the Court proceeded to charge the jury. *See* Tr. 2228-302. As relevant here, the Court's charge to the jury as to Count Four defined an investment adviser as "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing or selling securities, or who, for compensation and as a part of a regular business, issues or promulgates analyses or reports concerning securities." Tr. 2275. The Court further instructed the jury that, to find a defendant guilty of investment adviser fraud, it must find that the defendant did any one or more of the following: (1) employed a device, scheme, or artifice to

defraud an actual or prospective "investor-client"; (2) engaged in a transaction, practice, or course of business which operated as a fraud and deceit upon those "investor-clients" or prospective "investor-clients"; or (3) engaged in an act, practice, and course of business that was fraudulent or deceptive. Tr. 2276. The Court instructed that "[f]or purposes of Count Four . . . investment advisers have a fiduciary duty to their investment advisory clients." Tr. 2277.

Significantly, the Court explained to the jury that

> [a]n investment adviser's fiduciary duty, however, extends only to his or her client, not to the general public. Thus, if you decide that the defendant you are considering is an investment adviser, it will also be up to you to determine who that defendant's "client" or "clients" were. An investment adviser to a fund owes a fiduciary duty to the fund itself. *In some circumstances, an investor in a fund may qualify as a client of the fund's investor adviser as well. In deciding whether an investor in a fund is a client of the fund's investment adviser, you should consider whether the investor received investment advice directly from the adviser, whether the adviser played an active role with respect to the investor, and whether the adviser was attuned to an individual investor's concerns.*

Tr. 2277-78 (emphasis added). The Court further instructed the jury that, "[w]hether or not investors qualify as an investment adviser's 'clients,' investment advisers are prohibited from making false or misleading statements to investors or prospective investors in funds they advise, and cannot defraud investors or prospective investors in those funds." Tr. 2278.

During deliberations, the jury sent out a note asking for clarification on the meaning of "advise" for the purpose of the Investment Advisers Act. The Court instructed the jury to apply the common meaning and directed the jury to the relevant portion of the charge. Tr. 2311.

On November 6, 2025, the jury found Defendants guilty on all counts.

### D. The Rule 29 Motion

Thereafter, Defendants timely moved, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, for a judgment of acquittal *only* as to Count Four, the substantive investment adviser fraud count. *See* ECF No. 201 ("Defs.' Rule 29 Mem."); ECF Nos. 202, 203.

As relevant here, Defendants argued that the evidence was insufficient for the jury to find that any individual investor was their "client" within the meaning of Subsections (1) and (2) of Section 206 of the Investment Adviser Act. Def's Rule 29 Mem. 14-16. By Opinion and Order entered on April 10, 2026, the Court denied Defendants' motions without addressing the question of whether the evidence was sufficient to support their convictions under Subsections (1) and (2) "because, viewing the evidence in the light most favorable to the verdict, the Court conclude[d] that the evidence was more than sufficient to support Defendants' conviction under subsection (4)." ECF No. 217, at 6.

**E. Sentencing and Appeals**

On May 20, 2026, the Court imposed sentence on Defendants. *See generally* Sent. Tr. The Court sentenced Defendants to the following terms of imprisonment:

- Castillero: 60 months on Counts One, Four, and Five, and 132 months on Counts Two, Three, and Six, all to be served concurrently;
- Martinsen: 60 months on Counts One, Four, and Five, and 120 months on Counts Two, Three, and Six, all to be served concurrently; and
- Lanaia: 60 months on Counts One and Four, and 96 months on Counts Two and Three, all to be served concurrently.

*See id.* at 88, 93-94, 99-100; *see also* ECF Nos. 244, 245, 246. In addition, the Court ordered all three Defendants to pay restitution in the amount of $115 million and ordered Defendants to forfeit certain money and property to the United States. *See* Sent. Tr. 89-90, 95, 101; *see also* ECF Nos. 234, 235, 237, 243.

Defendants timely filed notices of appeal. *See* ECF No. 249, 250, 251. On October 29, 2026, they are scheduled to surrender for service of their sentences. *See* ECF No. 301.

## LEGAL STANDARD

Pursuant to 18 U.S.C. § 3143(b)(1), a district court "shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained" — unless certain conditions are met, in which case bail is required. *See United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004). First, the court must find, "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(b)(1)(A). Second, the court must find "that the appeal is not for the purpose of delay *and* raises a substantial question of law or fact likely to result in" reversal, an order for a new trial, a sentence that does not include imprisonment, or "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." *Id.* § 3143(b)(1)(B) (emphasis added). A "substantial question" is "a 'close' question or one that very well could be decided the other way." *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985) (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985) (cleaned up)). Significantly, however, a question warrants bail pending appeal only if it is "likely to result in reversal or an order for a new trial on *all of the counts* for which [he or she] received prison terms." *Id.* at 126 (emphasis added). A defendant seeking bail pending appeal has the burden of persuasion to show that all of the requirements of the statute are satisfied. *See id.*

## DISCUSSION

The Government does not argue that Defendants pose a risk of a flight or danger to the community. *See generally* ECF No. 294 ("Gov't Mem."); ECF No. 296 ("Reply"), at 1. Thus, the parties' dispute turns on whether Defendants raise substantial questions of law or fact that are likely to result in reversal of their convictions, a new trial, or a substantially reduced sentence.

Defendants argue that they do: that their fraud convictions were tainted by an instructional error that permitted the jury to convict based upon the incorrect legal theory that Defendants owed fiduciary duties to StraightPath's individual investors; and that the obstruction convictions of Martinsen and Castillero are likely to be reversed in light of the Supreme Court's recent decision in *Abouammo v. United States*, 146 S. Ct. 1571 (2026). *See* Def's Bail Mem. 3-12. The Court need not and does not consider Defendants' arguments with respect to the obstruction counts because their arguments with respect to the fraud counts fall short.

First and foremost, Defendants' argument implicates only one of the four fraud-related counts of which they were convicted, namely Count Four. Defendants contend that the Court erred by instructing the jury with respect to Count Four that, "[i]n some circumstances, an investor in a fund may qualify as a client of the fund's investor adviser as well." Tr. 2278; *see* Defs.' Bail Mem. 8. They also contend — for the first time — that the error infected not only Count Four, but also Counts One through Three. *See* Defs.' Bail Mem. 8-9. But the latter contention is without merit. The Court's instruction that "investment advisers have a fiduciary duty to their investment advisory clients" applied *only* to Count Four, Tr. 2277, and it is well established that jurors are presumed to follow their instructions, *see, e.g.*, *Zafiro v. United States*, 506 U.S. 534, 540 (1993). Contrary to Defendants' assertions, the fact that the Court "never told [the jury] that such [a] fiduciary duty" could *not* arise for purposes of Counts One through Three, Reply 5 (emphasis omitted), is of no moment. The Court explicitly indicated when the jury should import definitions from one part of the charge to others, *see, e.g.*, Tr. 2278 ("I have already explained the meaning of the terms 'willfully,' 'knowingly,' and 'intent to defraud,' and you should apply those instructions here."), and never directed "the jurors to apply the elements of Count [Four] when considering Count[s] [One through Three]," *United States v. Santiago*, 214

F. Supp. 2d 421, 426 (S.D.N.Y. 2002). To the contrary, the Court "separately and independently enumerated the particular elements of each count." *Id.* "It is [thus] extremely unlikely that a juror would have 'imported'" Count Four's instruction regarding the fiduciary duties of investment advisers into the instructions on the other counts. *Id.*

As a result, "any error relating to [Count Four] would be harmless as to [the other] counts." *United States v. Percoco*, No. 16-CR-776 (VEC), 2019 WL 493962, at *14 (S.D.N.Y. Feb. 8, 2019). And as noted above, a question warrants bail pending appeal only if it is "likely to result in reversal or an order for a new trial on *all of the counts* for which [the defendant] received prison terms." *Randell*, 761 F.2d at 126 (emphasis added); *see also United States v. Varacalli*, No. S201-CR-594 (JSM) (JSR), 2004 WL 2979780, at *3 (S.D.N.Y. Dec. 21, 2004) ("[Defendant] must show not only that his appeal raises a substantial question of law or fact, but also that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial on all counts on which imprisonment has been imposed." (cleaned up)). That alone calls for denial of Defendants' motion. *See, e.g.*, *Varacalli*, 2004 WL 2979780, at *3 ("[T]he erroneous introduction of the plea allocutions avails Varacalli nothing, since this had nothing to do with the witness tampering charge of which he was also convicted."); *Percoco*, 2019 WL 493962, at *14 (denying bail pending appeal on the basis that any error relating to challenged issue would be harmless at to the other counts).

Second, and in any event, the Court's instructions on Count Four were accurate as a matter of law. Defendants contend that the Court erred when it instructed the jury (in connection with two of the three theories underlying Count Four) that, "[i]n some circumstances, an investor in a fund may qualify as a client of the fund's investor adviser as well." Tr. 2278. They maintain that investors in a fund can never qualify as "clients" within the meaning of the

Investment Advisers Act and that the only "clients" to whom they owed fiduciary duties were the StraightPath Funds themselves. *See* Defs.' Bail Mem. 7. That argument is based on the D.C. Circuit's decision in *Goldstein v. Securities and Exchange Commission,* 451 F.3d 873 (D.C. Cir. 2006). *See* Defs.' Bail Mem. 6-7.[2] *Goldstein* involved an Securities and Exchange Commission ("SEC") rule change relating to an Investment Advisers Act registration exemption for investment advisers with relatively few clients. *See id.* at 874. Under the SEC's prior rule, a hedge fund adviser's "client" for registration purposes had been the fund, not the fund's investors. *See id.* at 876. The new rule made the fund's investors clients as well. *See id.* at 877. The D.C. Circuit vacated that rule change on the ground that the SEC had not "adequately explained how the relationship between hedge fund investors and advisers justifies treating the former as clients of the latter." *Id.* at 882. The Investment Advisers Act, the court reasoned, defined "investment adviser" to mean "'any person who, for compensation, engages in the business of advising others, either *directly* or through publications or writings,'" about securities. *Id.* at 879 (quoting 15 U.S.C. § 80b-2(11)). "An investor in a private fund may benefit from the adviser's advice (or he may suffer from it)," the court continued, "but he does not receive the advice *directly*. He invests a portion of his assets in the fund." *Id.*

Admittedly, there is language in *Goldstein* that, read in isolation, appears to support Defendants' argument here. *See, e.g.*, *id.* at 880 ("If the person or entity controlling the fund is not an 'investment adviser' to each individual investor, then *a fortiori* each investor *cannot* be a 'client' of that person or entity." (latter emphasis added)); *id.* at 881 ("The adviser owes

---

[2] Defendants also cite *National Association of Private Fund Managers v. SEC*, 103 F.4th 1097, 1103 (5th Cir. 2024), and *United States v. Tournant*, No. 22-CR-276 (LTS), 2023 WL 8649893 (S.D.N.Y. Dec. 13, 2023), *see* Defs.' Bail Mem. 6-7, but those decisions ultimately rely, in turn, on *Goldstein* and, thus, require no independent discussion.

fiduciary duties *only* to the fund, not to the fund's investors." (emphasis added)). But elsewhere, the D.C. Circuit made clear that the flaw in the SEC's rule was its categorical treatment of "*all* investors in hedge funds as clients." *Id.* at 883. Hedge funds, the court observed, are "*usually* structured as limited partnerships to achieve maximum separation of ownership and management," and "the general partner manages the fund . . . for a fixed fee and a percentage of the gross profits from the fund" while "[t]he limited partners are passive investors and *generally* take no part in management activities." *Id.* at 876 (emphases added). The court acknowledged that "different classes of investors [may] have different rights or privileges with respect to their investments" and ultimately allowed that an individual investor might qualify as a client: "If . . . certain characteristics present in some investor-adviser relationships . . . mark a 'client' relationship, then the [SEC] should have identified those characteristics and tailored its rule accordingly." *Id.* at 882-83; *id.* at 880 (characterizing *Lowe v. SEC*, 472 U.S. 181 (1985), as holding that the "existence of an advisory relationship depended largely on the character of the advice rendered" and whether adviser played an active role).

Thus, Defendants' argument that investors can *never* qualify as "clients" for purposes of the Investment Advisers Act is "based upon reading too much into the holding of . . . *Goldstein*." *United States v. Lay*, 612 F.3d 440, 446 (6th Cir. 2010). As the Sixth Circuit explained in rejecting an identical argument on appeal from a criminal conviction for investment advisor fraud in violation of the Investment Advisers Act, *Goldstein* "precluded the Securities and Exchange Commission from treating all hedge fund investors as clients of a hedge fund adviser for purposes of circumventing a small-dealer registration exemption. The case did not hold that a hedge fund investor could never be a client of a hedge fund adviser, or be owed a fiduciary duty by one, for purposes of the criminal fraud provisions of the [Investment Advisers Act]." *Id.*

Thus, "[i]t was . . . entirely consistent with *Goldstein*" for this Court, like the district court in *Lay*, "to permit the jury to find as fact that" Defendants owed fiduciary duties to the investors in the funds at issue, as well as to the funds themselves. *Id.*; *see also SEC v. Lauer*, 478 F. App'x 550, 557 (11th Cir. 2012) (unpublished) (holding that a hedge fund adviser's conduct, including "proffer[ing] advice directly to the Funds' investors when he hosted meetings and teleconferences with investors, and [suggesting] in the Funds' newsletter that his market strategy could beat market returns," brought him within the bounds of the term "'investment adviser' for purposes of the [Investment] Advisers Act").

Notably, the Second Circuit itself has adopted that interpretation of the term "client" in the Investment Advisers Act. *See United States v. Bergstein*, 788 F. App'x 742, 747 (2d Cir. 2019) (summary order). There, as here, the defendant appealed from a conviction for investment advisory fraud. *See id.* at 744. There, as here, the defendant invoked *Goldstein* to challenge his conviction on the ground that the district court had erred in allowing the jury to convict based on a finding that he owed fiduciary duties to both the funds at issue and individual investors. *See United States v. Bergstein*, Brief for the Defendant-Appellant, 2018 WL 5806826, at *57-58 (relying on *Goldstein* to argue that "[b]ecause Hallac could not be the fiduciary of both the funds and the investors, the government's two 'client' theories of investment-adviser fraud were legally invalid and should never have been presented to the jury"); *see also United States v. Bergstein*, 16-CR-746 (PKC), ECF No. 350, at 107-14 (Tr. 3205-12) (jury instructions not limiting who constitutes as client for the purposes of the Investment Advisers Act). On appeal, however, the Second Circuit squarely rejected that argument in a single sentence: "We are not persuaded because the factual record indicates that [the adviser at issue] advised *the funds, as well as the funds' investors, and thus the funds were his clients as well*." *Bergstein*, 788 F.

App'x at 747 (emphasis added). In other words, the Second Circuit held that an investor in a fund *can* qualify as a "client" of an investment advisor within the meaning of the Investment Advisers Act. Granted, *Bergstein* was a non-precedential summary order. "But a district judge is not at liberty to disregard, let alone contradict, a Second Circuit ruling squarely on point merely because it was rendered in a summary order." *Boone v. United States*, No. 02-CR-1185 (JMF), 2017 WL 398386, at *1 (S.D.N.Y. Jan. 30, 2017) (cleaned up); *see, e.g.*, *United States v. Payne*, 591 F.3d 46, 58 (2d Cir. 2010) ("[D]enying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases").

In short, consistent with *Bergstein* and *Lay*, the jury here was entitled to find that the investors in the StraightPath Funds qualified as clients for purposes of Count Four. *See* Tr. 2278 (instructing the jury to engage in a fact-specific analysis to determine whether an investor constitutes a client — specifically, by taking into account whether "the investor received investment advice directly from the adviser, whether the adviser played an active role with respect to the investor, and whether the adviser was attuned to an individual investor's concerns"); *cf. Bergstein*, 788 F. App'x at 747; *Lay*, 612 F.3d at 446; *SEC v. SkiHawk Cap. Partners, LLC*, No. 21-CV-01776-MDB, 2023 WL 2574376, at *11 n.9 (D. Colo. Mar. 20, 2023) ("Factors in determining whether an adviser-investor relationship exists include: whether investors receive advice directly from the investment adviser; whether investors are active in the fund's investment decisions; whether the investment adviser has an obligation to ensure that the fund's investment decisions are appropriate investments for each shareholder; and whether the investment adviser's advice is tailored to an investor's particularized needs."). Thus, the Court did not err in instructing the jury on Count Four, and there is no basis to disturb Defendants' convictions on that count.

## CONCLUSION

In sum, there was no error in the Court's instructions on Count Four, and certainly no error that tainted Defendants' convictions on Counts One through Three. It follows that Defendants fail to raise a substantial question with respect to their fraud convictions. And because those counts alone support the sentences imposed on each Defendant, the Court need not and does not address the arguments of Castillero and Martinsen with respect to their obstruction convictions. Defendants are not entitled to bail pending appeal, and their motion for bail pending appeal is thus DENIED. So too is their related request for a stay of their financial penalties. *See* Defs.' Bail Mem. 13-14 (arguing that the Court should stay financial penalties "for the same reasons" that it should grant bail); *see also, e.g.*, *United States v. Silver*, 203 F. Supp. 3d 370, 385 (S.D.N.Y. 2016) (identifying "the likelihood of success on appeal" as one of the factors to be considered in assessing a request to stay a forfeiture order pending appeal).

That said, to give Defendants time to seek relief from the Second Circuit, the Court *sua sponte* extends the deadline for Defendants to surrender to begin serving their sentences to **December 10, 2026**.

The Clerk of Court is directed to terminate ECF Nos. 281, 285, and 286.

SO ORDERED.

Dated: October 14, 2026
New York, New York

JESSE M. FURMAN
United States District Judge